1 | JAMES R. ROSEN, ESQ.  (State Bar No. 119438)
jrosen@rosensaba.com
2 | ADELA CARRASCO, ESQ. (State Bar No. 139636)
acarrasco@rosensaba.com
3 | Members of ROSEN ✧ SABA, LLP
468 North Camden Drive, Third Floor
4 | Beverly Hills, California 90210
Telephone:   (310) 285-1727
5 | Facsimile:    (310) 285-1728

6 | Attorneys for Plaintiff,
E-PASS TECHNOLOGIES, INC.
7 |

8 |

9 |                    UNITED STATES DISTRICT COURT

10 |          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 |                      SAN FRANCISCO DIVISION

12 |

13 | E-PASS TECHNOLOGIES, INC., a
Delaware Corporation,

14 |                    Plaintiff,

15 |          vs.

16 | MOSES &  SINGER, LLP,  a New York
Limited Partnership; STEPHEN N.
17 | WEISS, ESQ., an Individual; and DOES
1 through 50, inclusive,

18 |
19 |                    Defendants.

20 |

*(left margin, vertical text)* ROSEN ✧ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

**Case No.** C 09 5967

**PLAINTIFF'S COMPLAINT FOR:**

1.  **NEGLIGENT MISREPRESENTATION;**
2.  **BREACH OF FIDUCIARY DUTY;**
3.  **PROFESSIONAL NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

21 |
22 |
23 |
24 |
25 |
26 | ///
27 | ///
28 | ///

1

COMPLAINT

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

Plaintiff **E-PASS TECHNOLOGIES, INC.** alleges, as causes of action against Defendants **MOSES & SINGER, LLP, STEPHEN N. WEISS, ESQ.,** and **DOES 1 through 50** (collectively, "Defendants") as follows:

## THE PARTIES

1.      Plaintiff E-Pass Technologies, Inc. ("E-Pass") is a Delaware corporation. E-Pass' principal place of business is located in London, United Kingdom. E-Pass was the plaintiff in related civil actions entitled *E-Pass Technologies, Inc. v. 3COM Corporation, et al.,* United States District Court for the Northern District of California, Case No. 00-CV-2255 (the "3Com Action"); *E-Pass Technologies, Inc. v. Visa International Service Association, et al.,* United States District Court for the Northern District of California, Case No. 03-CV-4747 (the "Visa Action"); *E-Pass Technologies, Inc. v. PalmOne, et al.,* United States District Court for the Northern District of California, Case No. 04-CV-0528 (the "PalmOne Action"), as well as *E-Pass Technologies, Inc. v. Microsoft Corporation, et al.,* United States District Court for the Southern District of Texas Case No. Civ A.H. 02 0439 (the "Microsoft Action") (collectively, the "Underlying Actions").

2.      Defendant MOSES & SINGER, LLP ("MOSES & SINGER") is, and at all times herein mentioned was, a New York Limited Partnership. At all relevant times herein, MOSES & SINGER did business and provided legal services to its clients worldwide and in the City and County of San Francisco, while maintaining its principal place of business and offices in the Chrysler Building, located at 405 Lexington Avenue, New York, NY 10174-1299. At all times mentioned herein, MOSES & SINGER was a law firm that held itself and its principals out to the general public and its clients as having dozens of attorneys specializing in intellectual property and as being sufficiently skilled and knowledgeable to render competent and faithful legal services on behalf of its clients.

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

2

COMPLAINT

ROSEN ✧ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

3.     Defendant Stephen N. Weiss, Esq. ("WEISS") was admitted to the New York State Bar in 1975 and the New Jersey State Bar in 1984. WEISS has practiced as an attorney in New York and New Jersey continuously since those dates of admission. At all times relevant herein, WEISS was a partner in and/or principal of the law firm of MOSES & SINGER and a resident partner in MOSES & SINGER's New York office. In doing the things alleged herein, WEISS acted in each and all of his capacities as an individual, a licensed New York attorney, a partner and/or principal of MOSES & SINGER and as the agent, partner, legal representative and joint venturer of each of MOSES & SINGER's other principals/partners. As E-Pass' principal attorney in the Underlying Actions, WEISS also practiced and performed legal services in the City and County of San Francisco, after gaining *pro hac vice* admission to practice before the courts of California. On information and belief, E-Pass alleges that, at all times herein mentioned, WEISS was a resident of either the State of New York or the State of New Jersey.

4.     Defendants MOSES & SINGER, WEISS and DOES 1-50 provided legal counsel and services to E-Pass as its primary legal counsel and co-counsel of record in the Underlying Actions.   The party-defendants in the 3Com, Visa, PalmOne and Microsoft Actions are hereinafter collectively referred to as the "Underlying Defendants."

5.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1 through 50, inclusive, are unknown to E-Pass who therefore sues said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to E-Pass. E-Pass is informed and believes, and thereupon alleges, however, that each of the defendants designated as a DOE herein was, and is, intentionally, negligently, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby intentionally, negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to E-Pass. E-Pass

COMPLAINT

1   will hereafter seek leave of the Court to amend this Complaint to show the fictitiously

2   sued defendants' true names and capacities, after the same have been ascertained.

3   References in this Complaint to "all Defendants" are deemed to include by reference a

4   specific reference to each Doe Defendant designated herein.

5        6.     At all times mentioned herein, each of the defendants was the agent,

6   principal, partner, alter-ego, joint venturer, employee and/or authorized representative

7   of every other defendant and, in doing the things hereinafter alleged, was acting within

8   the course and scope of such agency, service and representation and directed, aided and

9   abetted, authorized and/or ratified each and every act and conduct hereinafter alleged.

10

11   **JURISDICTION AND VENUE**

12        7.     This Court has jurisdiction over E-Pass' state law claims for breach of

13   fiduciary duty, professional negligence and negligent misrepresentation. According to

14   the September 14, 2009, ruling of the San Francisco Superior Court in the case entitled

15   *E-Pass Technologies, Inc. v. Moses & Singer, LLP, et al.*, San Francisco Superior Court

16   Case No. 09484009 (the "Superior Court Action"), the resolution of E-Pass' claims set

17   forth herein depends upon the determination of a substantial issue(s) of federal patent

18   law. In dismissing E-Pass' state-law complaint against certain defendants therein and

19   sustaining Defendants MOSES & SINGER's and WEISS' second successive demurrer

20   to E-Pass' Second Amended Complaint, the San Francisco Superior Court ruled on

21   September 14, 2009, that this Court has subject matter jurisdiction over E-Pass' stated

22   claims, pursuant to 28 U.S.C. § 1338. A true and correct copy of the San Francisco

23   Superior Court's Order, dated October 1, 2009, reflecting its September 14, 2009, ruling

24   in the Superior Court Action, is attached hereto as **Exhibit "A."**

25        8.     Venue of this action is proper before this Court under 28 U.S.C. §1391(b)

26   because a substantial part of the actions, events or omissions giving rise to E-Pass'

27   claims against Defendants arise out of and/or relate to Defendants' contacts with this

28   District. Specifically, among other things, Defendants filed multiple actions in the

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1  instant District Court on behalf of E-Pass, and in connection therewith obtained *pro hac*
2  *vice* admission to this District so as to, and did, provide legal services to E-Pass in this
3  judicial district. The damages sought by E-Pass in this action exceed the minimum
4  general jurisdictional limits of this Court.

6  ## INTRADISTRICT ASSIGNMENT

7  9.       A substantial part of the events or omissions which give rise to E-Pass'
8  claims against Defendants arise in the County of San Francisco. This action may be
9  properly assigned to a Courthouse serving San Francisco County.

11  ## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12  10.      In or about February 2000, E-Pass became the owner by assignment of U.S.
13  Patent No. 5,276,311 entitled, "Method and Device for Simplifying the Use of a Plurality
14  of Credit Cards, or the Like" (the "'311 Patent"). The '311 Patent describes a method and
15  device for storing information from various individual cards in a single electronic multi-
16  function card.

17  11.      E-Pass' principals had no experience with patents or patent law in the United
18  States. To accomplish their objectives, E-Pass' principal, Hartmut Hennige ("Hennige")
19  and his business partners initiated a search for competent U.S. legal counsel. E-Pass'
20  principals learned that MOSES & SINGER was counsel for Deutsche Bank, a large
21  German bank with business across the world, including the United States. On E-Pass'
22  behalf, Hennige contacted MOSES & SINGER and inquired about MOSES & SINGER
23  and WEISS serving as E-Pass' counsel.

24  12.      During MOSES & SINGER's and WEISS' early communications with E-
25  Pass' principal, E-Pass' principal disclosed to MOSES & SINGER and WEISS that E-
26  Pass had access to considerable resources to help fund the exploration of U.S. business
27  opportunities. MOSES & SINGER and WEISS told Hennige and his business partners
28  that they had extensive experience and expertise in patents/intellectual property, that

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

5

1 MOSES & SINGER was a multi-function firm that could handle the domestic
2 incorporation and legal needs of E-Pass and could assist E-Pass with seeking and
3 obtaining licenses, business opportunities and funding in the United States.

4      13.    E-Pass' principals placed their absolute trust and faith in MOSES & SINGER
5 and WEISS and, on the basis of the representations they received, agreed to retain
6 MOSES & SINGER, WEISS and DOES 1-50 to represent E-Pass' interests. To that end,
7 in or about late 1999, E-Pass retained MOSES & SINGER and WEISS to: (1) establish
8 E-Pass' presence in the U.S. by incorporating E-Pass in the State of Delaware; (2) seek
9 additional licenses and business opportunities for E-Pass and the '311 Patent; (3) seek
10 U.S. funding sources for E-Pass' expanded activities; and (4) assess Microsoft
11 Corporation's proposed $1 million licensing agreement, as described below. MOSES &
12 SINGER and WEISS accepted E-Pass' engagement. However, no written Retainer
13 Agreement outlining the terms and conditions of the parties' agreement or MOSES &
14 SINGER's and WEISS' ethical obligations to E-Pass was presented by MOSES &
15 SINGER and WEISS or executed by the parties.

16      14.    Hennige approached Microsoft Corporation ("Microsoft") to discuss a
17 possible licensing relationship. Interested, in February 2000, Microsoft presented to E-
18 Pass a Memo of Understanding proposing a one-year license for the '311 Patent in
19 exchange for $1 million.

20      15.    E-Pass brought Microsoft's Memo of Understanding to MOSES & SINGER
21 and WEISS. WEISS promptly dismissed Microsoft's proposed license agreement and
22 advised E-Pass to reject Microsoft's proposal so that they could negotiate a better deal for
23 E-Pass. However, E-Pass alleges that WEISS never intended to negotiate a better deal
24 for E-Pass, as to do so would cut off MOSES & SINGER's and WEISS's ability to
25 generate substantial fees. On the advice of its counsel, E-Pass permitted the offer by
26 Microsoft to lapse.

27      16.    At or around the same time, MOSES & SINGER and WEISS also counseled
28 and convinced E-Pass to forego pursuit of other potential licensing opportunities and

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1   instead concentrate on suing entities that WEISS believed were infringing on the '311
2   Patent. WEISS represented to E-Pass that E-Pass and MOSES & SINGER had ample
3   grounds under U.S. law to initiate litigation against entities allegedly infringing E-Pass'
4   patent rights and that E-Pass would make more money suing prospective licensees than
5   by negotiating licenses or deals with them. However, even while making those
6   representations, and afterward, MOSES & SINGER and WEISS knew or should have
7   known that there was insufficient evidence to support any such claims. MOSES &
8   SINGER and WEISS failed to disclose this fact to E-Pass.

9       17.   MOSES & SINGER and/or WEISS also failed to disclose to E-Pass that by
10  engaging in this "litigation strategy," E-Pass would become saddled with a reputation in
11  the patent community as a "patent troll." A "patent troll" is the disparaging label given
12  to the holder of a patent that does not attempt to market or manufacture its product, but
13  rather sues entities for allegedly infringing its patent.

14      18.   Having no expertise in patents or patent law in the United States, E-Pass
15  placed its trust and reliance in MOSES & SINGER's and WEISS' recommendations and
16  agreed to follow their purported "litigation strategy," to E-Pass' extreme and enduring
17  damage, as outlined herein.

18      19.   MOSES & SINGER and WEISS caused E-Pass to be incorporated in the
19  State of Delaware, which finally occurred in May 2000. To maintain control over E-Pass'
20  activities, but in complete disregard of their ethical duties and obligations to E-Pass,
21  MOSES & SINGER and WEISS named and appointed WEISS the Treasurer and
22  Secretary of E-Pass.

23      20.   By naming WEISS the Treasurer and Secretary of E-Pass, WEISS and
24  MOSES & SINGER obtained management rights and assumed duties and obligations in
25  E-Pass. As a result of this action, a serious conflict of interest was created whereby
26  MOSES & SINGER's and WEISS' duties of loyalty were divided between MOSES &
27  SINGER and E-Pass. WEISS, as a partner of MOSES & SINGER in charge of the E-Pass
28  account, had a strong financial interest in generating and realizing as much fee income

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

7

as possible from E-Pass in order to benefit MOSES & SINGER and himself. Yet, at the same time, as an officer of E-Pass, WEISS held fiduciary duties and obligations to E-Pass, to ensure that the best interests of E-Pass were met, including ensuring that E-Pass' legal claims and expenditures were reasonable and made for the purpose of advancing E-Pass' best interests.

21. On February 28, 2000, MOSES & SINGER and WEISS caused to be filed in the United States District Court for the Southern District of New York the first of the Underlying Actions, the 3Com Action, alleging that 3Com Corporation and Palm, Inc. (collectively, "3Com") infringed upon the '311 Patent.

22. Eager to proceed with the profitable "litigation strategy," MOSES & SINGER and WEISS apparently failed to conduct a proper pre-filing investigation and failed to report to E-Pass the results of any such pre-filing investigations allegedly undertaken. Had a proper pre-filing investigation been conducted, great damage to E-Pass' interests would have been avoided.

23. In March, 2000, MOSES & SINGER and WEISS recommended to E-Pass and filed on its behalf an amended complaint, adding Palm, Inc. as a defendant in the 3Com Action. Predictably, thereafter, both 3Com and Palm, Inc. moved to transfer the 3Com Action to the Northern District of California. Good cause existed to oppose the motion to transfer the 3Com Action across the country and into the veritable backyard of Palm, Inc. However, rather than act within the standard of care and oppose the motion, MOSES & SINGER and WEISS *stipulated* to transfer venue of the 3Com Action to the Northern District of California. Defendants' decision caused E-Pass' legal fees and costs to increase dramatically, and necessarily caused E-Pass to retain local counsel to assist with prosecuting E-Pass' patent infringement claims in the Northern District of California.

24. In or about June, 2000, at the behest of MOSES & SINGER and WEISS, E-Pass retained the services of Squire Sanders & Dempsey, LLP ("SQUIRE SANDERS") as its local counsel in the 3Com Action. Mark C. Dosker, Esq. ("DOSKER"), a partner

ROSEN ◆ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

8

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1   of SQUIRE SANDERS in its San Francisco office, became E-Pass' lead local counsel in

2   the 3Com Action, as well as in the subsequently filed Visa and PalmOne Actions.

3          25.    Discovery ensued and E-Pass and 3Com each subsequently filed respective

4   motions for summary judgment in the Northern District of California.  On August 12,

5   2002, the District Court heard and granted 3Com's motion and denied E-Pass' motion.

6   In August 2003, the Federal Circuit Court of Appeals reversed and remanded the District

7   Court's decision, giving E-Pass an opportunity to conduct further discovery and

8   investigation in support of E-Pass' claims.

9          26.    However, instead of focusing on strengthening E-Pass' claims in the 3Com

10  Action, MOSES & SINGER and WEISS recommended the filing of yet more unwarranted

11  litigation.  On E-Pass' behalf, Defendants filed the Visa Action in October 2003, and filed

12  the PalmOne Action in February 2004.

13         27.    Both before and after Defendants filed E-Pass' complaints in the Visa Action

14  and the PalmOne Action, MOSES & SINGER and WEISS represented to E-Pass that all

15  of the Underlying Actions, and in particular the Visa Action, would garner E-Pass

16  significant damages.  WEISS represented to E-Pass that the damages that E-Pass would

17  realize from the Visa Action alone were much greater than any amount E-Pass could

18  expect to recover from the other entities sued, despite the fact that Visa did not sell or

19  manufacture any PDAs.  When pressed for the basis of his assertions, WEISS refused to

20  disclose to E-Pass what evidence he had to support his conclusion, stating only that E-

21  Pass should "trust" him and continue with the litigation.  E-Pass is informed and believes

22  that MOSES & SINGER and WEISS made these representations in order to induce E-Pass

23  to continue with the fee-generating litigation.

24         28.    In early March 2005, E-Pass and the Underlying Defendants in the 3Com,

25  Visa and PalmOne Actions predictably filed motions for summary judgment.

26         29.    E-Pass, MOSES & SINGER and Weiss received from the District Court

27  additional time to conduct discovery to address a number of issues raised by the

28  referenced motions for summary judgment.  During this period of time, the Underlying

COMPLAINT

1  Defendants in the 3Com, Visa and PalmOne Actions were able to exploit the fact that
2  WEISS was the named Treasurer and Secretary of E-Pass in order to delay responding to
3  E-Pass' written discovery until the *day* that E-Pass' opposition to the last of the motions
4  for summary judgment was due. Indeed, *no* depositions were conducted on behalf of E-
5  Pass and effectively *no* new evidence or expert declarations were introduced in support
6  of E-Pass' oppositions to the motions for summary judgment.

7       30.    Nearly one full year later, on March 17, 2006, the Northern District of
8  California *granted* summary judgment in favor of the 3Com, Visa and PalmOne
9  defendants. The District Court premised its finding of non-infringement on a number of
10 independent grounds, including: (1) even under the broader claim construction required
11 by the Federal Circuit Court of Appeals, *none* of the accused devices could infringe any
12 of the claims of the '311 Patent; and, more importantly, (2) E-Pass failed to adduce any
13 evidence to support a finding that any defendant or its customers practiced all of the steps
14 of the claimed '311 Patent method, the most basic of evidence necessary to establish E-
15 Pass' claims of infringement.

16      31.    On January 12, 2007, the Federal Circuit Court of Appeals affirmed the
17 District Court's grant of summary judgment against E-Pass, a true and correct copy of
18 which is attached hereto as **Exhibit "B."** In affirming the judgment, the Federal Circuit
19 Court concluded that: "If, as E-Pass argues, it is 'unfathomable' that no user in possession
20 of one of the accused devices and its manual has practiced the accused method . . . E-Pass
21 should have had no difficulty in meeting its burden of proof and in introducing testimony
22 of even one such user. Having failed to meet that burden, E-Pass has no basis to overturn
23 the district court's decision."

24      32.    Thus, after *seven years* of litigation, E-Pass had incurred in excess of $7.6
25 million in legal fees and costs to MOSES & SINGER and SQUIRE SANDERS, for which
26 E-Pass received absolutely no benefit. For all of Defendants' representations of legal
27 success, E-Pass had lost all its claims and, as a so-called "patent troll," had no ability to
28 market its '311 Patent. E-Pass realized not a single goal it had when it retained

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

COMPLAINT

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1   Defendants.  Defendants, on the other hand, had enriched themselves in the amount in

2   excess of $7.6 million in attorneys' fees and costs, which E-Pass has dutifully paid, but

3   for approximately $200,000.

4          33.     E-Pass' damage did not end with the granting of summary judgment.  On

5   November 21, 2006, while the orders granting summary judgment were on appeal to the

6   Federal Circuit Court of Appeals, the District Court heard and granted the 3Com, Visa

7   and PalmOne defendants' motion for attorneys' fees.  The District Court found that E-

8   Pass' "minimalist pre-filing investigation" combined with the court's finding that E-Pass

9   engaged in vexatious or unjustified litigation, warranted a determination that the case was

10  exceptional and justified an award of attorneys' fees against E-Pass.  In ordering E-Pass

11  to pay attorneys' fees, the District Court found:

12         a)      E-Pass did not present any evidence that the '311 Patent method had

13  "ever been practiced on any of the accused devices;"

14         b)      E-Pass "simply ignored the evidentiary component necessarily a part

15  of an opposition [to a summary judgment motion], making no argument as to any

16  evidentiary issue of the case, offering only as evidence the 'record' in the case;"

17         c)      E-Pass pursued a strategy to "delay and obfuscate in an attempt to keep

18  the case alive as long as possible to stave off summary judgment;"

19         d)      E-Pass "engaged in a strategy of unwarranted delay and obstructive

20  conduct" marked by "changing theories of liability;" by motions to compel E-Pass'

21  compliance with discovery rules; and by forfeited opportunities to take "obviously

22  relevant discovery;"

23         e)      E-Pass' arguments "can only be described as incredible," and that E-

24  Pass' counsel knew or should have known that E-Pass' legal theory was "wholly

25  unacceptable."

26         34.     Upon the Federal Circuit Court's affirmance of the grant of summary

27  judgment against E-Pass, the District Court, on November 14, 2007, awarded defendants

28  in the 3Com Action, the Visa Action and the PalmOne Action more than $2.3 million in

11

ROSEN ⬥ SABA, LLP
468 North Camden Drive, 3ʳᵈ Floor
Beverly Hills, California 90210

1    attorneys' fees and costs, payable by E-Pass.  Attached hereto as **Exhibit "C"** is a true

2    and correct copy of the District Court's November 14, 2007, Order.

3        35.    On March 20, 2009, the Federal Circuit Court of Appeals affirmed the

4    District Court's November 14, 2007, Order.  Attached hereto as **Exhibit "D"** is a true and

5    correct copy of the Federal Circuit Court of Appeals' March 20, 2009, decision affirming

6    the District Court's November 14, 2007, Order.

7        36.    Two years after derailing the Microsoft licensing deal described above,

8    MOSES & SINGER and WEISS commenced an action against Microsoft Corporation for

9    infringement of the '311 Patent, and filed the action in the Southern District of Texas,

10   without regard to E-Pass' costs.

11       37.    Like the other Underlying Actions, MOSES & SINGER and WEISS knew

12   or should have known that there was no legitimate evidence to support the claims asserted

13   on behalf of E-Pass in the Microsoft Action.  This fact is evidenced by the grant of

14   summary judgment against E-Pass by the District Court in Texas in 2006.  On May 2,

15   2007, the Federal Circuit Court affirmed the granting of summary judgment against E-

16   Pass, effectively ending the Microsoft Action.  Attached hereto as **Exhibit "E"** is a true

17   and correct copy of the Federal Circuit Court's May 2, 2007, decision affirming the

18   District Court's grant of summary judgment in the Microsoft Action. MOSES & SINGER

19   and WEISS failed to disclose to E-Pass the fact that there was no legitimate evidence to

20   support E-Pass' claims in the Microsoft Action.

21       38.    As with the 3Com, Visa and PalmOne Actions, the Microsoft Action ended

22   as a total loss to E-Pass.  In its aftermath, E-Pass was left with substantial attorneys' fees

23   and costs, and suffered other damage, as described herein.

24       39.    All of E-Pass' patent infringement claims in the Underlying Actions have

25   been conclusively determined by the Federal Courts to have had no merit.  At all relevant

26   times, Defendants knew, or should have known, that there was no legitimate evidence to

27   support the claims that Defendants asserted on E-Pass' behalf in the Underlying Actions.

28   Nevertheless, Defendants failed to disclose to E-Pass that no legitimate evidence

12

1  supported those claims, and instead affirmatively represented to E-Pass' principals that

2  not only were E-Pass's asserted claims viable, but would also garner E-Pass significant

3  damages.  Accordingly, E-Pass seeks the recovery of damages caused by Defendants'

4  misconduct by misleading E-Pass into bringing and maintaining claims which were not

5  viable, by abandoning Defendants' fiduciary duties, by gouging E-Pass with unreasonable

6  attorneys' fees and costs and by subjecting E-Pass to liability for costs and fees of the

7  prevailing parties in the Underlying Actions, as more fully described herein.

8      40.   Effective May 1, 2008, E-Pass, MOSES & SINGER and WEISS all entered

9  into a written tolling agreement, extending through December 31, 2009, all statutes of

10  limitations applicable to E-Pass' claims against MOSES & SINGER & WEISS arising out

11  of those Defendants' former representation of E-Pass in the Underlying Actions.  This

12  Complaint is timely filed within the terms of the parties' tolling agreement.

13

14              **FIRST CAUSE OF ACTION**

15              **Negligent Misrepresentation**

16      **(Against MOSES & SINGER, WEISS and DOES 1-50)**

17      41.   E-Pass incorporates by reference the allegations contained in Paragraphs 1

18  through 40 of this Complaint as though fully set forth herein.

19      42.   MOSES & SINGER, WEISS and Does 1-50 represented to E-Pass that

20  litigation against the entities sued in the Underlying Actions was an appropriate way to

21  exploit the '311 Patent and made more economic sense than seeking business

22  opportunities.  MOSES & SINGER, WEISS and Does 1-50 further represented to E-Pass

23  that they could prove infringement of the '311 Patent, and that there was sufficient

24  evidence to support E-Pass' claims asserted in the Underlying Actions.

25      43.   Each of the Federal Courts that has addressed the merits of the Underlying

26  Actions found there was no evidence to support E-Pass' claims for infringement.

27  However, at all relevant times, MOSES & SINGER, WEISS and Does 1-50 failed to

28  disclose such facts to E-Pass, which facts MOSES & SINGER and WEISS knew or

ROSEN ◊ SABA, LLP
468 North Camden Drive, 3ʳᵈ Floor
Beverly Hills, California 90210

13

COMPLAINT

ROSEN ◆ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1 should have known. MOSES & SINGER and WEISS further failed to disclose to E-Pass

2 that by choosing to go forward with the above-referenced litigation strategy, E-Pass

3 would be seen in the patent industry as a "patent troll."

4     44.     MOSES & SINGER, WEISS and Does 1-50 also represented to E-Pass that

5 the Visa Action, in particular, would garner E-Pass significant damages. When

6 questioned by E-Pass regarding the validity of this claim, MOSES & SINGER and

7 WEISS further represented that WEISS had seen evidence that supported this conclusion,

8 but that he was not able to disclose the evidence to E-Pass, and E-Pass should trust him.

9 MOSES & SINGER, WEISS and Does 1-50 made these misrepresentations, and the

10 representations alleged herein, in order to induce E-Pass into agreeing to sue Visa and

11 continue with MOSES & SINGER's and WEISS' purported litigation strategy, to the

12 benefit of MOSES & SINGER and WEISS and to the detriment of E-Pass.

13     45.     The representations made by MOSES & SINGER, WEISS and Does 1-50

14 were false and were made without any reasonable ground for believing the representations

15 to be true. Sufficient evidence to corroborate MOSES & SINGER's, WEISS' and Does

16 1-50's statements did not exist, and information was known and available to those

17 Defendants concerning the unreliability and/or falsity of their several material

18 misstatements. Further, MOSES & SINGER, WEISS and Does 1-50, and each of them

19 carelessly failed to check into, assess and/or verify their misstatements, which were

20 otherwise false.

21     46.     E-Pass was ignorant of the falsity of the representations of MOSES &

22 SINGER, WEISS and Does 1-50 and believed them to be true. In justifiable reliance on

23 E-Pass' fiduciary relationship to Defendants and Defendants' representations of material

24 fact, and in ignorance of the true facts, E-Pass was induced to and did: a) reject

25 Microsoft's originally proposed licensing agreement and resist pursuit of similar business

26 relationships; b) maintain their faith and trust in the ability and commitment of MOSES

27 & SINGER, WEISS and Does 1-50 to protect E-Pass' interests; c) pay to MOSES &

28 SINGER, WEISS, SQUIRE SANDERS, DOSKER and Does 1-50 substantial attorneys'

COMPLAINT

1  fees and costs in connection with the litigation of the Underlying Actions; and d) consent
2  to maintain the Underlying Actions and prolong their attorney-client relationship with
3  MOSES & SINGER, WEISS, SQUIRE SANDERS, DOSKER and Does 1-50, through
4  approximately January 2007.

5       47.    As a direct and proximate result of the misrepresentations of MOSES &
6  SINGER, WEISS and Does 1-50 and E-Pass' justifiable reliance in the perceived integrity
7  of the conduct of MOSES & SINGER, WEISS and Does 1-50, and each of them, E-Pass
8  has suffered considerable economic damage including, but not limited to: a) the loss of
9  the Microsoft licensing agreement, described herein; b) substantial and avoidable legal
10  fees and costs to MOSES & SINGER, WEISS, SQUIRE SANDERS, DOSKER and Does
11  1-50; c) the assessment of liability for the attorneys' fees incurred by the defendants in
12  the 3Com Action, the Visa Action and the PalmOne Action in an amount in excess of $2.3
13  million; d) substantial attorneys' fees and costs incurred to E-Pass' successor counsel in
14  order to mitigate the damages caused by the misconduct of all Defendants; e) such
15  additional economic and consequential damages arising out of the misconduct of all
16  Defendants, according to proof; and f) collectable interest from the first day allowed by
17  law and as prayed for herein.

18

19              **SECOND CAUSE OF ACTION**
20                **Breach of Fiduciary Duty**
21       **(Against MOSES & SINGER, WEISS and DOES 1-50)**

22       48.    E-Pass realleges and incorporates by reference as though fully set forth
23  herein, each and every allegation contained in paragraphs 1 through 47 of this Complaint.

24       49.    As a result of the trust, faith and confidence E-Pass reposed in Defendants,
25  and each of them, as a result of Defendants', and each of their, service to E-Pass as trusted
26  legal counsel, a fiduciary duty was created and did arise whereupon all Defendants owed
27  to E-Pass a duty to act with the highest degree of trust and good faith and with the utmost
28  care in the handling of E-Pass' affairs and not obtain or seek to obtain any advantage over

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

COMPLAINT

1    E-Pass by the slightest misrepresentation, concealment or misdeed.

2         50.    In doing the things herein alleged, all Defendants failed to fulfill those duties
3    and, instead, breached such duties as set forth herein.   Defendants committed acts,
4    including, but not limited to, the following acts, which were in breach of the duties and
5    obligations all Defendants owed to E-Pass, their client:

6              a)    rejected out of hand Microsoft's proposed licensing agreement;

7              b)    recommended to E-Pass, which Defendants knew had little to no
8    patent experience in the United States, that it forego pursuing business opportunities
9    concerning the '311 Patent (which produced limited billings for Defendants) in favor of
10   litigation against the Underlying Defendants (which maximized Defendants' billing
11   opportunities);

12             c)    failed to disclose to E-Pass that there was no legitimate evidence to
13   support E-Pass' claims asserted in the Underlying Actions, a fact that Defendants either
14   knew or should have known;

15             d)    failed to procure any evidence at any time during the litigation of the
16   Underlying Actions that the '311 Patent method had ever been practiced on any of the
17   accused devices;

18             e)    "simply ignored the evidentiary component necessarily a part of an
19   opposition [to a summary judgment motion], making no argument as to any evidentiary
20   issue of the case, offering only as evidence the 'record' in the case" in opposing summary
21   judgment in the Underlying Actions venued in the Northern District of California;

22             f)    misled E-Pass into believing it had viable, valuable patent claims by
23   misrepresenting to or concealing from E-Pass the true facts showing the opposite, and by
24   assuring E-Pass positive outcomes in the Underlying Actions, in deliberate, reckless or
25   grossly negligent violation of Defendants' duties to E-Pass;

26             g)    pursued a strategy in the Underlying Actions to "delay and obfuscate
27   in an attempt to keep the [Underlying Actions] alive as long as possible to stave off
28   summary judgment " so that Defendants could continue billing E-Pass extraordinary

ROSEN ⋄ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

1 litigation fees and costs, to their own benefit;

2         h)    "engaged in a strategy of unwarranted delay and obstructive conduct"
3 marked by "changing theories of liability;" by motions to compel E-Pass' compliance
4 with discovery rules; and by forfeited opportunities to take "obviously relevant
5 discovery," which conduct was designed to further increase the attorneys' fees and costs
6 payable to them by E-Pass;

7         i)    made litigation decisions during the course of the Underlying Actions,
8 including, but not limited to, venue and delay that consciously disregarded E-Pass'
9 financial resources;

10         j)    appointed and maintained WEISS, a partner of MOSES & SINGER,
11 as the Treasurer and Secretary of E-Pass;

12         k)    failed to disclose and avoid the actual and potential conflicts of
13 interest that foreseeably arose during the parties' relationship;

14         l)    saddled E-Pass with the reputation of a "patent troll;"

15         m)    over-billed E-Pass for fees and costs in excess of $7.6 million, which
16 were unnecessary, avoidable, exaggerated, unwarranted and/or excessive;

17         n)    caused E-Pass to become liable for attorneys' fees incurred by the
18 Underlying Defendants in the 3Com, Visa and PalmOne Actions; and

19         o)    in doing or failing to do all acts described herein, elevated Defendants'
20 own interests and gain over the rights and interests of E-Pass.

21     51.    E-Pass alleges that Defendants', and each of their, breaches of duty as set
22 forth and specifically incorporated herein were intentional and/or reckless and/or grossly
23 negligent and were carried out in violation of California law and with a conscious
24 disregard of E-Pass' interests and well being.

25     52.    As a direct and proximate result of Defendants' deliberate, reckless and/or
26 grossly negligent misconduct and E-Pass' justifiable reliance in the perceived integrity
27 of Defendants', and each of their, conduct, E-Pass continued to maintain and repose its
28 trust in Defendants, and each of them, and paid substantial legal fees and costs to

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

COMPLAINT

1 Defendants during the course of those relationships.

2     53. As a further direct and proximate result of Defendants' deliberate, reckless
3 and/or grossly negligent misconduct and E-Pass' justifiable reliance in the perceived
4 integrity of Defendants', and each of their, conduct, E-Pass has suffered considerable
5 economic damage including, but not limited to: a) the loss of the Microsoft licensing
6 agreement, described herein; b) substantial and avoidable legal fees and costs to MOSES
7 & SINGER, WEISS, SQUIRE SANDERS, DOSKER and Does 1-50; c) the assessment
8 of liability for the attorneys' fees incurred by the defendants in the 3Com Action, the Visa
9 Action and the PalmOne Action in an amount in excess of $2.3 million; d) substantial
10 attorneys' fees and costs incurred to E-Pass' successor counsel in order to mitigate the
11 damages caused by the misconduct of all Defendants; e) such additional economic and
12 consequential damages arising out of the misconduct of all Defendants, according to
13 proof; and f) collectable interest from the first day allowed by law and as prayed for
14 herein.

15     54. The above-described misconduct of all Defendants was oppressive,
16 fraudulent and/or malicious as defined in California *Civil Code* §3294. Each of the
17 Defendants named herein is individually guilty of oppression, fraud and malice in
18 devising the schemes by which Defendants, and each of them, perpetrated, directed and
19 ratified their wrongful conduct. E-Pass is therefore entitled to an award of exemplary
20 damages from each of the Defendants for the sake of example and by way of punishing
21 them.

22

23 **THIRD CAUSE OF ACTION**

24 **Professional Negligence**

25 **(Against MOSES & SINGER, WEISS and DOES 1-50)**

26     55. E-Pass realleges and incorporates by reference as though fully set forth
27 herein, each and every allegation contained in paragraphs 1 through 53 of this Complaint.
28 ///

ROSEN ◇ SABA, LLP<br>468 North Camden Drive, 3rd Floor<br>Beverly Hills, California 90210

18

COMPLAINT

56.    All Defendants owed E-Pass a duty to have a degree of learning and skill ordinarily possessed by an attorney who practices and provides legal services in the same or similar locality and under the same or similar circumstances.

57.    All Defendants owed E-Pass a duty to use the care and skill ordinarily exercised in like cases by reputable members of the legal profession practicing in the same or similar locality under the same or similar circumstances.

58.    All Defendants owed E-Pass the duty to use reasonable diligence and the best judgment in the exercise of skill and the application of learning.

59.    All Defendants owed E-Pass the duty to conduct themselves during the course of Defendants' representation of E-Pass' interests in accordance with the California *Rules of Professional Conduct*, as codified under the California *Business and Professions Code*, and to adhere to the principals of ethics, honesty and integrity in the performance of legal services on E-Pass' behalf.

60.    All Defendants failed to obtain, possess or perform the degree of learning and skill ordinarily possessed by a reputable attorney practicing law in the same or similar locality and under the same or similar circumstances, in violation of California *Rules of Professional Conduct*, Rule 3-110.

61.    All Defendants failed to fulfill their respective duties to conduct themselves during the course of Defendants' representation of E-Pass' interests in accordance with their professional, ethical or fiduciary duties and to adhere to the principals of ethics, honesty and integrity in the performance of legal services on E-Pass' behalf by, among other things,  performing, or omitting, the acts described herein.

62.    As a direct and proximate result of Defendants' reckless and/or negligent acts of misconduct and E-Pass' justifiable reliance in the perceived integrity and ability of  Defendants', and each of their, conduct, E-Pass continued its attorney-client relationship with Defendants, and each of them, paying substantial amounts of avoidable legal fees and costs to Defendants during the course of that relationship.

///

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

COMPLAINT

63.     As a further direct and proximate result of Defendants' conduct and E-Pass' justifiable reliance in the perceived integrity of Defendants', and each of their, conduct, E-Pass has suffered considerable economic damage, including, but not limited to: a) the loss of the Microsoft licensing agreement, described herein; b) substantial and avoidable legal fees and costs to MOSES & SINGER, WEISS, SQUIRE SANDERS, DOSKER and Does 1-50; c) the assessment of liability for the attorneys' fees incurred by the defendants in the 3Com Action, the Visa Action and the PalmOne Action in an amount in excess of $2.3 million; d) substantial attorneys' fees and costs incurred to E-Pass' successor counsel in order to mitigate the damages caused by the misconduct of all Defendants; e) such additional economic and consequential damages arising out of the misconduct of all Defendants, according to proof; and f) collectable interest from the first day allowed by law and as prayed for herein.

## **DEMAND FOR JURY TRIAL**

64.     Plaintiff E-PASS TECHNOLOGIES, INC. hereby requests a trial by jury.

WHEREFORE, Plaintiff E-PASS TECHNOLOGIES, INC. prays for judgment against Defendants, and each of them, as follows:

1.     For general damages in an amount in excess of the minimum jurisdictional limits of this Court, according to proof;

2.     For compensatory damages, including the repayment of more than $7.6 million in purported legal fees and costs wrongfully paid by E-Pass to Defendants as a result of Defendants', and each of their, actionable misconduct, as well as approximately $2.3 million E-Pass is required to pay in attorneys' fees and costs to the Underlying Defendants, according to proof;

3.     For compensatory damages, including attorneys' fees and costs paid to successor counsel to mitigate the harm caused by Defendants' misconduct;

///

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

COMPLAINT

4.     For compensatory damages, including all other sources of economic loss, expense and damage incurred by E-Pass as a result of Defendants', and each of their, actionable misconduct, according to proof;

5.     For punitive damages on the Second Cause of Action, where the entitlement to such damages is alleged, proved and recoverable, as against each Defendant named therein and in an amount sufficient to punish each of those Defendants and make an example of them;

6.     For interest on the sum of damages awarded, including prejudgment interest, at the legal rate, from and after the first day allowed by law;

7.     For reasonable attorney's fees incurred in the prosecution of each cause of action herein, where such recovery is supported by law;

8.     For costs of suit incurred herein; and

9.     For such other and further relief as the Court deems just and proper.


DATED:  December 18, 2009                        ROSEN ◇ SABA, LLP


                                  By: _____
                                      JAMES R. ROSEN
                                      ADELA CARRASCO
                                      Attorneys for Plaintiff
                                      E-PASS TECHNOLOGIES, INC.

ROSEN ◇ SABA, LLP
468 North Camden Drive, 3rd Floor
Beverly Hills, California 90210

21

COMPLAINT

# EXHIBIT "A"

1    Richard D. Hoffman - (State Bar No. 76799)
     Isabelle L. Ord - (State Bar No. 198224)
2    Sarah M. Wells - (State Bar No. 238417)
     NIXON PEABODY LLP
3    One Embarcadero Center, 18th Floor
     San Francisco, California 94111-3600
4    Telephone: (415) 984-8200
     Facsimile: (415) 984-8300
5

6    Attorneys for Defendants,
     MOSES & SINGER, LLP,
7    a New York Limited Partnership and
     STEPHEN N. WEISS, ESQ., an individual
8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 IN AND FOR THE COUNTY OF SAN FRANCISCO

11

12   E-PASS TECHNOLOGIES, INC., a Delaware         Case No. CGC-09-484009
     Corporation,
13
                          Plaintiff,              **NOTICE OF ORDER SUSTAINING**
14                                                **DEFENDANTS STEPHEN WEISS AND**
                                                  **MOSES & SINGER, LLP'S DEMURRER**
15         vs.                                    **TO SECOND AMENDED COMPLAINT**
                                                  **FOR LACK OF SUBJECT MATTER**
16   MOSES & SINGER, LLP, A NEW YORK              **JURISDICTION**
     LIMITED PARTNERSHIP; STEPHEN N.
17   WEISS, ESQ., an individual; SQUIRE
     SANDERS & DEMPSEY, LLP, an Ohio Limited
18   Partnership; MARK C. DOSKER, ESQ.; and
     DOES 1 through 50, inclusive,                Trial Date: None Set
19
                          Defendant.
20

21

22

23

24

25

26

27

28

                                    -1-

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

3      **PLEASE TAKE NOTICE** that on October 1, 2009 the Court entered an Order Sustaining

4   the Demurrer of Defendants Moses & Singer LLP and Stephen N. Weiss to the Second Amended

5   Complaint for Lack of Subject Matter Jurisdiction.  A true and correct copy of the Court's final Order

6   is attached hereto as Exhibit "A."

7

8

9   DATED:  October 6, 2009

Respectfully submitted,

10                                                      NIXON PEABODY LLP

11                                                      By:

12                                                      SARAH M. WELLS
                                                        Attorneys for Defendants,
13                                                      MOSES & SINGER, LLP,
                                                        a New York Limited Partnership and
14                                                      STEPHEN N. WEISS, ESQ., an individual

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT "A"

1   Richard D. Hoffman - (State Bar No. 76799)
    Sarah M. Wells - (State Bar No. 238417)
2   Isabelle L. Ord - (State Bar No. 198224)
    NIXON PEABODY LLP
3   One Embarcadero Center, 18th Floor
    San Francisco, California 94111-3600
4   Telephone:  (415) 984-8200
    Facsimile:   (415) 984-8300

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

OCT - 1 2009

GORDON PARK-LI, Clerk
BY: _____ AUDREY HUIE
                      Deputy Clerk

6   Attorneys for Defendants,
    MOSES & SINGER, LLP,
7   a New York Limited Partnership and
    STEPHEN N. WEISS, ESQ., an individual

8

9         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          IN AND FOR THE COUNTY OF SAN FRANCISCO

11

12  E-PASS TECHNOLOGIES, INC., a Delaware
    Corporation,
13
                  Plaintiff,
14
      vs.
15
    MOSES & SINGER, LLP, A NEW YORK
16  LIMITED PARTNERSHIP; STEPHEN N.
    WEISS, ESQ., an individual; SQUIRE
17  SANDERS & DEMPSEY, LLP, an Ohio Limited
    Partnership; MARK C. DOSKER, ESQ.; and
18  DOES 1 through 50, inclusive,
19                  Defendant.

Case No. CGC-09-484009

[PROPOSED] ORDER SUSTAINING
DEFENDANTS STEPHEN WEISS AND
MOSES & SINGER, LLP'S DEMURRER
TO SECOND AMENDED COMPLAINT
FOR LACK OF SUBJECT MATTER
JURISDICTION

Date:        September 14, 2009
Time:       9:30 a.m.
Dept.:      301
Judge:     The Honorable Peter Busch

Trial Date:  None Set

-1-

1    Defendants Moses & Singer, LLP and Stephen N. Weiss, Esq.'s ("Defendants") Demurrer to

2    Second Amended Complaint for Lack of Subject Matter Jurisdiction came before this Court on

3    September 14, 2009 at 9:30 a.m. in Department 301.  Richard D. Hoffman of Nixon Peabody LLP

4    appeared for Defendants.  Adela Carrasco of Rosen Saba LLP appeared for Plaintiff.

5        The Court having read and considered this Demurrer, the memoranda of points and authorities

6    filed by the parties, and the arguments of counsel, and good cause appearing therefore,

7    **IT IS HEREBY ORDERED THAT:**

8        "Defendant Moses & Singer, LLP and Stephen Weiss' demurrer to 2nd Amended Complaint

9    is sustained with 10 days leave to amend if Plaintiff wishes to limit its complaint to the non-patent

10   related claims."

11       As the prevailing party, Moses & Singer shall give notice under California Rule of Court

12   3.1312.

13

14   **IT IS SO ORDERED**

15
     Dated: ___OCT - 1 2009___, ~~2009~~          PETER J. BUSCH
16                                          _____
                                            Judge of the Superior Court
17

18   Approved as to Form.

19
     Dated: ___9/23___, 2009          ROSEN & SABA LLP
20

21                                    By: _____
22                                        Adela Carrasco, Esq.
                                          ROSEN & SABA LLP
23                                        Attorneys for Plaintiff
                                          E-Pass Technologies, Inc.
24

25

26

27

28

-2-

[PROPOSED] ORDER SUSTAINING DEFENDANTS'
DEMURRER TO SECOND AMENDED COMPLAINT
CASE NO.: CGC-09-484009                                    12705879.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT A

28

[PROPOSED] ORDER SUSTAINING DEFENDANTS'
DEMURRER TO SECOND AMENDED COMPLAINT
CASE NO.: CGC-09-484009

12705879.1

1 | Case Number:      _CGC09484009_

2 | Case Title:       E-PASS TECHNOLOGIES, INC. VS. MOSES & SINGER, LLP et al

3 | Court Date:       Sep-14-2009 09:30 AM

4 | Calendar Matter:  DEMURRER TO 2ND AMENDED COMPLAINT

5 | Rulings:          On calendar for Monday, September 14, 2009, Line 2, DEFENDANT
     |                   MOSES & SINGER, L L P AND STEPHEN WEISS' DEMURRER TO 2ND
6 |                   AMENDED COMPLAINT IS SUSTAINED WITH 10 DAYS LEAVE TO AMEND IF
     |                   PLAINTIFF WISHES TO LIMIT ITS COMPLAINT TO THE NON-PATENT
7 |                   RELATED CLAIMS. =301/PJB

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

[PROPOSED] ORDER SUSTAINING DEFENDANTS'
DEMURRER TO SECOND AMENDED COMPLAINT
CASE NO.: CGC-09-484009

# PROOF OF SERVICE

**CASE NAME:** *E-Pass Technologies, Inc., a Delaware Corporation v.*
*Moses & Singer, LLP, a New York Limited Partnership, et al.*
**COURT:** San Francisco Superior Court
**CASE NO:** CGC-09-484009
**NP NO.:** 025145-550390

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

**NOTICE OF ORDER SUSTAINING DEFENDANTS STEPHEN WEISS AND MOSES & SINGER, LLP'S DEMURRER TO SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

**X :** By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

____: By E-Mail Transmission — I caused each such document to be transmitted via e-mail transmission from San Francisco, California, to addresses listed on the attached Service List.

____: By Personal Service — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

____: By Overnight Courier — I caused each such envelope to be given to an overnight mail service at San Francisco, CA, to be hand delivered to the office of the addressee on the next business day.

____: By Facsimile — From facsimile number 415-984-8300, I caused each such document to be transmitted by facsimile machine, to the parties and numbers listed below, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration.

**Addressee(s)**

**Please see attached Service List.**

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 7, 2009, at San Francisco, California.

*Carolyn Ernser*
Carolyn Ernser

---

PROOF OF SERVICE - Case No.: CGC-09-484009                                                          12607864.1

**SERVICE LIST**
*E-Pass Technologies, Inc., a Delaware Corporation v.*
*Moses & Singer, LLP, a New York Limited Partnership, et al.*
**San Francisco Superior Court**
**Case No. CGC-09-484009**

| | |
|---|---|
| James R. Rosen, Esq.<br>ROSEN & SABA LLP<br>468 North Camden Drive<br>Beverly Hills, CA 90210<br><br>Attorneys for Plaintiff,<br>E-Pass Technologies, Inc. | Telephone: (310) 285-1727<br>Facsimile:  (310) 295-1728<br>Email:      jrosen@rosensaba.com |
| Elliot R. Peters, Esq.<br>Wendy J. Thurm, Esq.<br>Daniel K. Nazer, Esq.<br>KEKER & VAN NEST, LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br><br>Attorneys for Defendants,<br>Squire, Sanders & Dempsey, LLP and Mark C. Dosker | Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188<br>Email:      epeters@kvn.com<br>                wthurm@kvn.com<br>                dnazer@kvn.com |

# EXHIBIT "B"

Westlaw.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

☞

United States Court of Appeals,
Federal Circuit.
**E-PASS TECHNOLOGIES, INC.,** Plaintiff-Appellant,
v.
3COM CORPORATION (also known as 3Com,
Inc.), Palm, Inc., Palmone, Inc. and Handspring,
Inc., Defendants-Appellees,
and
Visa International Service Association and Visa
U.S.A., Inc., Defendants-Appellees,
and
PalmSource, Inc., Defendant-Appellee.
**Nos. 2006-1356, 2006-1357, 2006-1358.**

Jan. 12, 2007.
Rehearing En Banc Denied February 21, 2007.

**Background:** Assignee of patent for electronic
multi-function card brought suit against alleged infringer. Alleged infringer asserted counterclaims of
noninfringement and invalidity. After construing
patent claims, 177 F.Supp.2d 1033, the district
court, 222 F.Supp.2d 1157, granted summary judgment of noninfringement, and assignee appealed.
The Court of Appeals, 343 F.3d 1364, vacated and
remanded. On remand, the United States District
Court for the Northern District of California, D.
Lowell Jensen, Senior Judge, entered final summary judgment of non-infringement. Assignee appealed.

**Holdings:** The Court of Appeals, Linn, Circuit
Judge, held that:
(1) district court had authority on remand to entertain motion for summary judgment;
(2) claim construction of term "card" embraced attributes of being able to be "carried about" and of
not having protruding buttons, keyboards, antennae,
indented display screens, or hinged covers;
(3) any error by district court on remand, in treating
words of claim construction performed by Court of

Appeal as additional claim limitations, was harmless; and
(4) evidence that competitors taught their customers
each step of claimed method in isolation did not
prove that customers actually performed claimed
patented method.

Affirmed.

West Headnotes

**[1] Patents 291 ☞324.5**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.5 k. Scope and Extent of Review in General. Most Cited Cases
A district court's patent claim construction is subject to de novo review.

**[2] Federal Courts 170B ☞916.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)8 Subsequent Appeals
            170Bk916 In General
               170Bk916.1 k. In General. Most
Cited Cases
De novo review applied to a district court's interpretation on remand of the prior mandate of Court
of Appeals.

**[3] Patents 291 ☞324.60**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.60 k. Determination and Disposition of Cause. Most Cited Cases
District court had authority on remand to entertain
motion for summary judgment, after Court of Ap-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
(Cite as: 473 F.3d 1213)

Page 2

peals vacated judgment of district court on basis that its decision rested upon erroneous grounds, in infringement action over patent directed toward system for simplifying use of various cards, such as credit cards, check cards, and identity cards, where Court of Appeals indicated that proper claim construction might support judgment in favor of either party, depending on evidence and argument submitted to district court on remand and considered by district court in first instance. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[4] Federal Courts 170B ⬅⟶949**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(L) Determination and Disposition of Cause
         170Bk949 k. Mandate and Effect of Decision in Lower Court. Most Cited Cases
      (Formerly 170Bk949.1)
Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.

**[5] Patents 291 ⬅⟶327(13)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k327 Operation and Effect of Decision
            291k327(13) k. Matters Concluded. Most Cited Cases
Prior decision of Court of Appeals did not constitute law of the case as to parties and accused devices that were not yet part of patent infringement litigation when that decision issued.

**[6] Patents 291 ⬅⟶101(2)**

291 Patents
   291IV Applications and Proceedings Thereon
     291k101 Claims
        291k101(2) k. Construction in General. Most Cited Cases

Claim construction of term "card," in patent directed toward electronic multi-function card, although not precise restriction on size or portability, embraced attributes of being able to be "carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers.

**[7] Patents 291 ⬅⟶327(13)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k327 Operation and Effect of Decision
            291k327(13) k. Matters Concluded. Most Cited Cases
A patent claim construction articulated by a prior panel decision of the Court of Appeals ordinarily remains the law of the case unless it is in conflict with a subsequent decision by the Court sitting en banc or by the Supreme Court.

**[8] Patents 291 ⬅⟶157(1)**

291 Patents
   291IX Construction and Operation of Letters Patent
      291IX(A) In General
         291k157 General Rules of Construction
            291k157(1) k. In General. Most Cited Cases
Any articulated definition of a patent claim term ultimately must relate to the infringement questions that it is intended to answer.

**[9] Patents 291 ⬅⟶324.56**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.56 k. Harmless Error. Most Cited Cases
Any error by district court on remand was harmless, in treating words of claim construction performed by Court of Appeal as additional claim limitations,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

Page 3

in infringement action over patent directed toward system for simplifying use of various cards, such as credit cards, check cards, and identity cards, where district court did not improperly depart from claim construction of "card" as articulated in opinion of Court of Appeals.

**[10] Patents 291 ☜237**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k233 Patents for Machines or Manufactures
                291k237 k. Substitution of Equivalents. Most Cited Cases
Under the all elements rule, the doctrine of equivalents must be applied to individual elements of the patent claim, not to the invention as a whole.

**[11] Patents 291 ☜312(6)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(6) k. Particular Matters, Sufficiency as To. Most Cited Cases
Evidence that competitors' manuals taught their customers each step of claimed method in isolation, regarding patent on payment technology for personal digital devices, did not prove that customers actually performed claimed patented method, through accused general-purpose computing devices that could be used for variety of purposes and in variety of ways, where manual excerpts did not teach all steps of claimed method together, much less in required order, and patent assignee otherwise did not introduce evidence of even one customer who practiced steps of claimed method in required order.

**Patents 291 ☜328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction,

and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
5,276,311. Not Infringed.
**\*1215** Stephen N. Weiss, Moses & Singer LLP, of New York, NY, argued for plantiff-appellant **E-Pass Technologies,** Inc. With him on the brief was Gregory J. Fleesler.

Edward H. Sikorski, DLA Piper Rudnick Gray Cary U.S. LLP, of San Diego, CA, argued for defendants-appellees 3Com Corporation (also known as 3Com, Inc.), et al. With him on the brief was John Allcock. Also on the brief were M. Elizabeth Day, Vincent S. Lam, and Sal Lim, of Palo Alto, CA.

William J. Bohler, Townsend and Townsend and Crew LLP, of Palo Alto, CA, for defendants-appellees Visa International Services Associates, et al. With him on the brief were Madison C. Jellins and Julie J. Han.

Mark D. Rowland, Fish & Neave IP Group of Ropes & Gray LLP, of Palo Alto, CA, argued for defendant-appellee PalmSource, Inc. With him on the brief were James T. Canfield and Andrew T. Oliver.

Before MICHEL, Chief Judge, LINN and PROST, Circuit Judges.

LINN, Circuit Judge.

**E-Pass Technologies,** Inc. ("E-Pass") appeals from a final summary judgment of non-infringement by the United States District Court for the Northern District of California, in which the court held that none of the defendants directly or indirectly infringed E-Pass's U.S. Patent No. 5,276,311 ("the '311 patent"). *E-Pass Techs., Inc. v. 3Com Corp.,* Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D.Cal. Mar. 17, 2006) ("*SJ Order* "). Because the district court correctly determined that no reasonable jury could have found any of the defendants liable on the basis of the evidence presented, sum-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
(Cite as: 473 F.3d 1213)

mary judgment was proper, and we affirm.

**\*1216 I. BACKGROUND**

A. Introduction and Prior Appeal

As we discussed in a prior appeal in this case,

E-Pass is the assignee of the '311 patent, entitled "Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like." The object of the invention is to provide a method and device for substituting a single electronic multi-function card for multiple credit cards.... To address problems associated with carrying multiple cards, "the user needs, and is required to carry about, [only] a single card."

*E-Pass Techs. v. 3Com Corp.,* 343 F.3d 1364, 1365 (Fed.Cir.2004) (" *E-Pass I* ") (quoting '311 patent, col. 1, ll. 64-66). Claim 1 of the '311 patent, the only independent claim asserted in this litigation, reads as follows:
A method for enabling a user of an electronic multi-function card to select data from a plurality of data sources such as credit cards, check cards, customer cards, identity cards, documents, keys, access information and master keys comprising the steps of:

transferring a data set from each of the plurality of data sources to the multi-function card;

storing said transferred data set from each of the plurality of data sources in the multi-function card;

assigning a secret code to activate the multi-function card;

entering said secret code into the multi-function card to activate the same;

selecting with said activated multi-function card a select one of said data sets; and

displaying on the multi-function card in at least one predetermined display area the data of said selected data set.

'311 patent, col. 10, l. 54-col. 11, l. 3.

On February 28, 2000, E-Pass filed a complaint for patent infringement against 3Com Corporation and Palm, Inc. (collectively, "3Com"). In it, E-Pass accused 3Com of inducing consumers to practice the steps of the patented method on its Palm VII and Palm VIIx personal digital assistant ("PDA") products. Following a claim construction that construed "electronic multi-function card" to be "[a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards," *E-Pass Techs. v. 3Com Inc.,* 177 F.Supp.2d 1033, 1037 (N.D.Cal.2001), the district court granted 3Com's motion for summary judgment of noninfringement both literally and under the doctrine of equivalents, *E-Pass Techs. v. 3Com Corp.,* 222 F.Supp.2d 1157, 1165 (N.D.Cal.2002).

E-Pass appealed. On appeal, we held that the district court had erred by "requiring the dimensions of a standard credit card." *E-Pass I,* 343 F.3d at 1371. We observed that "the ordinary meaning of the word 'card' here, as used in the phrase 'electronic multi-function card,' is the proper construction," and we vacated and remanded to the district court to address the issue of infringement under the proper construction. *Id.* at 1370-71. Notably, we emphasized that "it may be or may not be that the accused Palm Pilot devices literally infringe" under that construction. *Id.* at 1371.

B. Events After Remand

After we remanded the action against 3Com, E-Pass filed two new infringement **\*1217** actions in the district court. It filed the first new action, Case No. 03-CV-4747, on October 22, 2003, against Visa

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

Page 5

U.S.A., Inc., and Visa International Service Association (collectively, "Visa"). In that action, E-Pass alleged that Visa had infringed the '311 patent by using a Palm V PDA in two demonstrations in 2001. E-Pass filed the second new action, Case No. 04-CV-0528, against PalmSource, Inc., palmOne, Inc., and Handspring, Inc., on February 9, 2004. In the second new action, it made claims of direct, induced, and contributory infringement of the '311 patent based on three new PDA product lines-the Tungsten, Zire, and Treo lines-that had been introduced since the filing of the initial action.

On March 17, 2006, the district court granted summary judgment of noninfringement as to all defendants. *SJ Order.* It rested its finding of noninfringement on two independent grounds. First, it held that even under a broader construction of "card," none of the accused devices could infringe the "electronic multi-function card" limitation. *Id.,* slip op. at 25-34. Second, it held that E-Pass had failed to adduce sufficient evidence to support a finding that any of the defendants or their customers had practiced all of the steps of the claimed method. *Id.,* slip op. at 17-25. Having demonstrated no instances of direct infringement, E-Pass could not prove liability for induced or contributory infringement.

E-Pass appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

[1][2] We review without deference all of the issues here on appeal: the propriety of the district court's grant of summary judgment, *see E-Pass I,* 343 F.3d at 1367; the district court's claim construction, *see id.;* and the district court's interpretation of this court's mandate in *E-Pass I, see Tronzo v. Biomet, Inc.,* 236 F.3d 1342, 1346 (Fed.Cir.2001). Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *See*Fed.R.Civ.P. 56(c). A genuine issue exists if the evidence is such that a reasonable

jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[3] On appeal, E-Pass challenges both grounds upon which the district court rested its judgment of noninfringement. First, it argues that the district court violated this court's mandate in *E-Pass I* when it granted summary judgment of noninfringement based on the "electronic multi-function card" limitation. It further argues that even without consideration of the law of the case, summary judgment as to that limitation was improper either as a matter of literal infringement or under the doctrine of equivalents. Second, it argues that the district court ignored circumstantial evidence that the defendants or their customers practiced the steps of the claimed method. Therefore, it argues, summary judgment as to the step limitations was improper.

To prevail, E-Pass must convince us to overturn the district court's rulings as to both issues. We consider each of its arguments in turn.

### A. The "Electronic Multi-Function Card" Limitation

#### 1. Law of the Case

[4] "Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." *Gindes v. United States,* 740 F.2d 947, 949 (Fed.Cir.1984) (quoting **\*1218**Schwartz v. NMS Indus., Inc.,* 575 F.2d 553, 554 (5th Cir.1978)). E-Pass argues that the district court disobeyed the mandate of this court by entering summary judgment in favor of the defendants as to the subject of the prior appeal, the "electronic multi-function card" limitation of claim 1 of the '311 patent. It further argues that the district court disobeyed our mandate when it elaborated upon our claim construction in *E-Pass I* in light of the teachings of this court's en banc decision in *Phillips v.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
(Cite as: 473 F.3d 1213)

Page 6

*AWH Corp.,* 415 F.3d 1303 (Fed.Cir.2005) (en banc). We disagree as to each of these contentions.

### a. Summary Judgment

E-Pass's first argument rests in substantial part on our statement in *E-Pass I* that "issues of material fact remain in dispute as to both literal and doctrine of equivalents infringement under the proper construction" of the term "card." *E-Pass I,* 343 F.3d at 1365. That statement, however, must be read in context. As the very same sentence announced, we vacated the grant of summary judgment and remanded to the district court for further proceedings. *Id.* By vacating, we signaled that, although the district court's prior decision rested upon erroneous grounds, a proper claim construction might support a judgment (summary or otherwise) in favor of either party, depending on the evidence and argument submitted to the district court on remand and considered by the district court in the first instance. *Cf. Communities for Equity v. Mich. High Sch. Athletic Ass'n,* 459 F.3d 676, 680 (6th Cir.2006) (noting that when the Supreme Court grants a writ of certiorari, vacates, and remands, it "does not indicate, nor even suggest, that the lower court's decision was erroneous").

The balance of our opinion in *E-Pass I* supports this interpretation. We discussed in detail the claim construction of the term "card" and the district court's error in construing "card" to mean a card with the precise dimensions of a standard credit card. *E-Pass I,* 343 F.3d at 1367-71. At the conclusion of this discussion, we emphasized that "under the correct construction of 'card' in this context ... it may or may not be that the accused Palm Pilot devices literally infringe." *Id.* at 1371. Indeed, we could not have intended to foreclose a summary judgment of noninfringement because the record did not yet contain the evidence that the parties would put forward in support of their infringement and noninfringement contentions under the proper construction.

[5] Accordingly, the district court correctly concluded that it had the authority to entertain the defendants' motions for summary judgment on remand. *SJ Order,* slip op. at 11, 12; *see also Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1220 (Fed.Cir.2006) ("Issues not decided by the court in a prior proceeding are not covered by the law-of-the-case doctrine."). As the district court observed, we did not in *E-Pass I* "inten [d] ... to preclude [the district court] from hearing a complete summary judgment motion as to the Palm VII on remand." [FN1] *SJ Order,* slip op. at 12. As we discuss next, the district court on remand properly undertook a thorough and thoughtful analysis of the infringement issues, and in so doing, it *1219 followed our claim construction in *E-Pass I.*

> FN1. Of course, the decision in *E-Pass I* does not constitute law of the case as to parties and accused devices that were not yet part of the litigation when that decision issued. *See Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 586 F.2d 917, 920 (2d Cir.1978) (noting that "because the present case involves a different defendant ... the earlier decision ... is n[ot] 'law of the case' ").

### b. Claim Construction

[6] In *E-Pass I,* we addressed the question of whether the district court had improperly added a dimensional limitation to the claim. *See* 343 F.3d at 1368-69. We concluded that a dimensional limitation was not warranted and overturned a claim construction that improperly limited the claim to encompass only devices having exact credit card dimensions. *Id.* at 1368. We went on to hold that "the ordinary meaning of the word 'card' ..., as used in the phrase 'electronic multi-function card,' is the proper construction." *Id.* at 1370-71. From this, we articulated a definition of "card"-namely, a "flat rectangular piece of stiff material"-derived from several general-purpose dictionaries. *See id.* at 1367-68.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

Page 7

[7] Following our decision in *E-Pass I* and prior to the district court's ruling on remand, our court, sitting en banc, decided *Phillips*. 415 F.3d at 1303. In its brief, Visa argues that the district court was "at liberty to reconstrue 'card' " because *Phillips*"supercedes the *3Com* panel decision." Visa Br. at 19-20. This is an overstatement. A claim construction articulated by a prior panel decision of this court ordinarily remains the law of the case unless it is in conflict with a subsequent decision by this court sitting en banc or by the Supreme Court. *See Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1274-75 (Fed.Cir.2005) (declining to revisit earlier ruling where intervening en banc decision was not in direct conflict, and where Supreme Court analysis of the same issue controlled); *see also United States v. Moran*, 393 F.3d 1, 7 (1st Cir.2004) ("[A] legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled...."). Here, we see no conflict between the guidance provided in *Phillips* and the claim construction we articulated in *E-Pass I*. As we discuss below, *see infra* Part II.A.2, the district court correctly applied our construction as the governing definition of "card."

[8] Nonetheless, any articulated definition of a claim term ultimately must relate to the infringement questions that it is intended to answer. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed.Cir.2006) ("[T]he legal function of giving meaning to claim terms always takes place in the context of a specific accused infringing device or process."). The definition of "card" that we articulated in *E-Pass I* described the properties of a "card" relevant to the accused devices, and it thereby sufficed to determine the question of infringement. Thus, the district court's observation that not every "flat rectangular piece of stiff material" is a "card," *see SJ Order,* slip op. at 26, was not strictly necessary to its holding.

Even so, the district court's observation was correct.

For example, no reasonable jury, if properly instructed, would conclude that a 4'x8'x 1/2 " piece of plywood or a plate glass window infringes the "card" limitation of ' 311 patent claim 1. *See id.* The specification of the '311 patent makes it clear that a "card," as used in the patent's claims, is something a user will "carry about." *See, e.g.,* '311 patent, col. 1, l. 44. Although not a precise restriction on size or portability, the attributes of being able to be "carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers are characteristics that a complete claim construction of "card" can be expected to embrace.

*1220 Moreover, we reiterated in *Phillips* the paramount importance to claim construction of the language of the claims themselves. *See Phillips*, 415 F.3d at 1312; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 ("[W]e look to the words of the claims themselves ... to define the scope of the patented invention."). This case hinges on the construction of a term that not only bears one of its ordinary meanings, but is a straightforward name for an everyday object. Most members of a jury are likely to have at least one "card" in the sense of the '311 patent in their pockets, wallets, or purses. The district court implicitly recognized this observation when it boiled the infringement inquiry down to a "straightforward question-using the plain meaning of the word 'card,' can any of the accused devices be considered to be a 'card'?" *SJ Order,* slip op. at 33.

2. Literal Infringement

[9] Answering this question of infringement brings us, as it brought the district court, back to an application of the claim construction in *E-Pass I*. As the district court correctly observed, the accused devices are neither flat nor rectangular:

They have buttons, joysticks and keyboards which project above the surface. They have screens which sit below the surface. Some have indented

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

Page 8

spaces holding a stylus which can be used on the device. They have projecting antennae. The Treo cell phone has a full QWERTY keyboard and a flip cover which sits at a 150 degree angle to the surface of the phone when it is open.

....

... A review of the accused devices ... shows that none of them meet the definition [of rectangular]. Corners and edges are fully rounded. The sides of the devices are generally curved, some convex, some concave, rather than straight. They have built-in or flip-up antennae which completely alter the straight line sides of a rectangle. Some have USB connectors which have the same ef- fect.

*SJ Order,* slip op. at 31-32. Likewise, the accused devices are not "piece[s] of stiff material," *see E-Pass I,* 343 F.3d at 1371, but rather "are all elaborate mixes of multiple pieces and multiple materials,"*SJ Order,* slip op. at 32. Accordingly, the district court properly concluded that no reasonable jury could find that the accused devices are "cards."

E-Pass argues that in performing its infringement analysis, the district court improperly treated the words of our claim construction as additional claim limitations. E-Pass is correct that "[c]laim interpretation is the process of giving proper meaning to the claim language," *Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed.Cir.1997), and that the terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation. Here, however, any error was harmless. Although the district court may have carried the process of claim construction unnecessarily too far, it did not improperly depart from the claim construction of "card" as articulated by *E-Pass I.*

Accordingly, we affirm the district court's grant of summary judgment of noninfringement as to the "electronic multi-function card" limitation.

### 3. The Doctrine of Equivalents

The above discussion does not resolve the question of whether the accused devices might meet the "card" limitation of claim 1 under the doctrine of equivalents. The district court held that "[i]nasmuch as the patent method must be performed on a *1221 card, a performance on something that is not a card cannot be considered to be a performance in the same way as that required by the patent, and cannot constitute infringement by the doctrine of equivalents." *Id.,* slip op. at 36. However, this conclusion is too summary.

[10] Under the "all elements" rule, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). As we recently explained in *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* the "all elements rule" may foreclose resort to the doctrine of equivalents where "the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency." 469 F.3d 1005, 1018-19 (Fed.Cir.2006).

E-Pass's theory of equivalence is that no reasonable jury could conclude that the differences between the accused products and the "electronic multi-function card" of the '311 patent are substantial. Mot. for Summ. J. of Infringement Against PalmOne, Inc., *E-Pass, Inc. v. 3Com, Inc.,* Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D.Cal. Aug. 26, 2005) (Dckt. No. 464). This is the proper inquiry. To hold that performance of the claimed method on something not a card is not "a performance in the same way as that required by the patent,"*SJ Order,* slip op. at 36, is to beg the question of whether the accused devices-which, taken as a whole, are alleged to meet a single limitation of the claimed method-are insubstantially different from a "card."

We need not decide whether the district court's

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
(Cite as: 473 F.3d 1213)

judgment as to the doctrine of equivalents can be sustained on other grounds, nor indeed whether the alleged equivalence of the accused devices to cards is amenable to summary judgment. As we discuss next, we agree with the district court that E-Pass has failed to meet its burden of proof on the question of whether anyone has practiced the steps of the claimed method. This, without more, warrants affirmance.

### B. The Steps of the Claimed Method

[11] The district court held, simply, that "E-Pass has submitted *no* evidence that the patented method has ever been practiced on any Palm VII device. The same circumstance is true as to the Tungsten, Zire and Treo devices-there is no evidence that the patented method has ever been practiced on any of these devices." *SJ Order,* slip op. at 17. E-Pass argues that this summary conclusion improperly ignores circumstantial evidence of direct infringement that supports its claim of inducement of infringement as to all of these devices. We disagree; we have no reason to believe that the district court ignored any of this evidence, all of which was before it. *Cf. Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 906 (Fed.Cir.1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Even when all the evidence that E-Pass cites is accounted for, its claim cannot survive summary judgment.[FN2]

> FN2. E-Pass does not raise in its opening brief any arguments against the district court's finding that there is no evidence of infringement during the two demonstrations that E-Pass described in its complaint against Visa. *See SJ Order,* slip op. at 17-25. Accordingly, and because we see no reason why doing so would be unfair, we exercise our discretion and deem this issue to have been waived. *See Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 800 (Fed.Cir.1990) ("[A]n issue not raised by an appellant in its opening brief ... is

waived."); *id.* (noting that the rule "may as a matter of discretion not be adhered to where circumstances dictate that it would result in basically unfair procedure").

**\*1222** E-Pass's difficulty is twofold. Procedurally, it is hornbook law that to survive the defendants' motions for summary judgment, E-Pass must "make a showing sufficient to establish the existence of [each] element essential to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Substantively, because the language of most of the steps of its method claim refer to the completed results of the prior step, E-Pass must show that all of those steps were performed in order. *E.g.,* '311 patent, claim 1 ("transferring a data set ...; storing *said transferred* data set"); *see Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.,* 152 F.3d 1368, 1376 (Fed.Cir.1998) (holding that "the sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise").

The documents that E-Pass cites on appeal are not sufficient to meet its burden under *Celotex.* First, it cites a chart of documents produced by Visa, showing that Visa was interested in PDA-based payment technology. However, this chart does not demonstrate that Visa actually performed or induced anyone to perform all of the steps of the claimed method, much less that it did so in the necessary order and in the United States. Second, it cites to a Visa document describing plans for a contactless payment demonstration in Cartes, France, in 2004. This, too, fails to demonstrate that the steps of the method were actually performed, much less that they were performed in the United States. Likewise, its citations to business analyses of proposed contactless payment protocols fail to show that any such protocol was ever actually deployed or that, if deployed, it would infringe.

E-Pass's final piece of evidence, to which it devotes the bulk of its argument, is a set of excerpts from the product manuals for various of the accused

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1213
473 F.3d 1213, 81 U.S.P.Q.2d 1385
**(Cite as: 473 F.3d 1213)**

devices. These, it argues, establish infringement under *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed.Cir.1986). In *Moleculon,* we considered a claim of induced infringement against the distributor of a Rubik's Cube-like puzzle. *Id.* at 1272. The patented method-a protocol for solving such a puzzle-could only be infringed by a user, not the manufacturer, of the puzzle, just like the method at issue here. We held that "evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle" was sufficient to support a finding that a puzzle distributor had induced infringement of the claimed method. *Id.*

In contrast, the evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order. Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method. Indeed, the very same record evidence upon which E-Pass attempts to rely also shows that the accused PDAs are general-purpose computing devices that can be used for a variety of purposes and in a variety of ways. In comparison, the device at issue in *Moleculon* was intended to be used in only one way-to practice the infringing method-and that method was explicitly taught by the proffered instructions. *Id.* If, as E-Pass argues, it is "unfathomable"*1223 that no user in possession of one of the accused devices and its manual has practiced the accused method, *see* E-Pass Repl. Br. at 16, E-Pass should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user. Having failed to meet that burden, E-Pass has no basis to overturn the district court's decision.

### III. CONCLUSION

For the foregoing reasons, we conclude that the dis-

trict court properly granted summary judgment in favor of the defendants. Accordingly, the judgment is

*AFFIRMED.*

C.A.Fed. (Cal.),2007.
E-Pass Technologies, Inc. v. 3Com Corp
473 F.3d 1213, 81 U.S.P.Q.2d 1385

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT "C"


Analysis
As of: Jan 30, 2008

**E-PASS TECHNOLOGIES, INC., Plaintiff, v. 3COM CORP. AND PALM, INC.,
Defendant. E-PASS TECHNOLOGIES, INC., Plaintiff, v. VISA INTERNATIONAL
SERVICE ASSOCIATION, and VISA U.S.A., INC., Defendant. E-PASS TECH-
NOLOGIES, INC., Plaintiff, v. PALMONE, INC., PALMSOURCE, INC. AND
HANDSPRING, INC., Defendants.**

**No. C-00-2255-DLJ, No. C-03-4747 DLJ, No. C-04-0528 DLJ, Related Cases**

**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 89642*

**November 14, 2007, Decided
November 14, 2007, Filed**

**PRIOR HISTORY:** *E-Pass Techs., Inc. v. 3com Corp., 2006 U.S. Dist. LEXIS 95914 (N.D. Cal., Mar. 17, 2006)*

**COUNSEL:** [*1] For E-Pass Technologies, Inc., Plaintiff (4:00-cv-02255-DLJ): Joseph Anthony Meckes, Mark C. Dosker, LEAD ATTORNEYS, Daniel T. Balmat, Squire Sanders & Dempsey LLP, San Francisco, CA; Stephen Norman Weiss, LEAD ATTORNEY, Gregory J. Fleesler, Moses & Singer LLP, New York, NY; Michael J. Pospis, Moses & Singer LLP, New York, NY.

For 3COM, INC., Palm, Inc., Defendants: Edward H. Sikorski, John Allcock, LEAD ATTORNEYS, DLA Piper US LLP, San Diego, CA; M. Elizabeth Day, LEAD ATTORNEY, DLA Piper US LLP, East Palo Alto, CA.

For Palm, Inc., 3COM, INC., Counter-claimants: M. Elizabeth Day, DLA Piper US LLP, East Palo Alto, CA.

For E-Pass Technologies, Inc., Counter-defendant (4:00-cv-02255-DLJ): Stephen Norman Weiss, LEAD ATTORNEY, Gregory J. Fleesler, Moses & Singer LLP, New York, NY; Michael J. Pospis, Moses & Singer LLP, New York, NY.

For E-Pass Technologies, Inc., a Delaware corporation, Plaintiff (4:03-cv-04747-DLJ): Joseph Anthony Meckes, Mark C. Dosker, LEAD ATTORNEYS, Daniel T. Balmat, Squire Sanders & Dempsey LLP, San Francisco, CA; Stephen Norman Weiss, LEAD ATTORNEY,

Gregory J. Fleesler, Moses & Singer LLP, New York, NY.

For Visa International Service Association, a Delaware corporation, [*2] VISA U.S.A., Inc., a Delaware corporation, Defendants: Madison C. Jellins, Townsend and Townsend and Crew LLP, Palo Alto, CA.

For E-Pass Technologies, Inc., a Delaware corporation, Plaintiff (4:04-cv-00528-DLJ): Joseph Anthony Meckes, Mark C. Dosker, LEAD ATTORNEYS, Daniel T. Balmat, Squire Sanders & Dempsey LLP, San Francisco, CA; Stephen Norman Weiss, Gregory J. Fleesler, LEAD ATTORNEYS, Moses & Singer LLP, New York, NY.

For palmOne, Inc., as a successor-in-interest to Handspring, Inc., Handspring, Inc., Defendants: John Allcock, LEAD ATTORNEY, Edward Sikorski, DLA Piper US LLP, San Diego, CA; M. Elizabeth Day, Sal Lim, DLA Piper US LLP, East Palo Alto, CA.

For PalmSource, Inc., Defendant: Mark Daniel Rowland, LEAD ATTORNEY, Andrew T. Oliver, Ropes & Gray LLP, Palo Alto, CA.

For PalmSource, Inc., Counter-claimant: Andrew T. Oliver, Ropes & Gray LLP, Palo Alto, CA.

For Handspring, Inc., palmOne, Inc., as a successor-in-interest to Handspring, Inc., Counter-claimants: John Allcock, LEAD ATTORNEY, Edward Sikorski, DLA

Piper US LLP, San Diego, CA; M. Elizabeth Day, Sal Lim, DLA Piper US LLP, East Palo Alto, CA.

**JUDGES:** D. Lowell Jensen, United States District Judge.

**OPINION BY:** D. Lowell Jensen

**OPINION**

ORDER

In April 2006, [*3] the defendants filed motions for attorneys' fees. On November 21, 2006, the Court granted the Motions for Attorneys' Fees in the following cases: E-Pass v. PalmOne, cases C-00-2255 and C04-0528; E-Pass v. Visa USA and Visa International Service Association, case C-03-4747; and E-Pass v. PalmSource, case C-04-0528;. The Court held that each party was entitled to an award of attorney fees and was to submit to the Court an accounting detailing their expenses. E-Pass would then have an opportunity to respond. The parties submitted their statements. Subsequently, the Federal Circuit entered an Order upholding this Court's granting of summary judgment against E-Pass and denying E-Pass's appeal. This action led plaintiffs to file additional briefing with the Court on the issue of the scope of their entitlement to fees. The Court now resolves all outstanding fee related issues.

I. Background

The background of the underlying action is set out in detail in this Court's Order of November 21, 2006. On April 3, 2006 all defendants filed motions to recover reasonable attorneys fees and costs under *35 U.S.C. § 285*. The Visa entities also sought sanctions under *28 U.S.C. § 1927*, arguing that E-Pass [*4] had unreasonably and vexatiously multiplied the proceedings. The Visa entities sought these sanctions both against E-Pass and also against its counsel. In its Order of November 21, 2006 the Court found that each of the following cases was exceptional under *35 USC § 285*: E-Pass v. Visa USA (Case 03-4747); E-Pass v. Visa International (Case 03-4747); E-Pass v. PalmSource (Case 04-0528); and E-Pass v. PalmOne, (Cases 00-2255 and 04-0528).

In the same Order, the Court decided, in the exercise of its discretion under *35 USC § 285* to award Visa USA all of its fees and costs incurred in Case 03-47447. See Order of November 21, 2006 at 45:11-19. In E-Pass v. Visa International, Case 03-4747, the Court granted the motion for attorney fees under *35 USC § 285*, but only as to expenses solely incurred for defense of infringement claims based on the Palm VII, the Zire, the Tungsten and the Treo products. In the Visa International case the Court deferred a decision on attorney fees for all other

purposes until the conclusion of the Federal Circuit appeal.

Similarly, the Court granted the motion for attorney fees under *35 USC § 285* in E-Pass v. PalmOne, but only as to expenses incurred after remand [*5] of case 00-2255 from the Federal Circuit, and only as to expenses solely incurred for defense of infringement claims based on the Palm VII, the Zire, the Tungsten and the Treo products. At that point the Court deferred decision on attorney fees for all other purposes until the conclusion of the Federal Circuit appeal. Finally, the Court granted the Motion for Attorney Fees in E-Pass v. PalmSource (Case 04-0528).

The Federal Circuit heard oral argument on E-Pass' appeal on December 4, 2006 and rendered a decision on January 12, 2007. The Federal Circuit affirmed this Court's granting of summary judgment in all respects. See *E-Pass Technologies, Inc. V. 3Com Corp, et. al., 473 F.3d 1213 (Fed. Cir. 2007)*. On January 26, 2007 E-Pass petitioned for a rehearing and a rehearing *en banc*. The Federal Circuit denied both requests on February 21, 2007 and issued its mandate on February 26, 2007. Subsequent to the Federal Circuit's orders, the parties filed renewed motions for attorney's fees seeking fees on those issues which this Court had deferred ruling upon pending the Federal Circuit appeal. E-Pass filed responsive pleadings to the renewed motions. Therefore the issues which this Court had [*6] deferred until resolution of the appeal are also now before the Court.

II. Legal Standard

Defendants have brought their request for attorney fees pursuant to *Federal Rule of Civil Procedure 54(d)(2)(B)*; *Civil Local Rule 54-6*, and *35 U.S.C. § 285*. *35 U.S.C. § 285* provides: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The purpose of the statute is to "compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Automated Business Cos. v. NEC Am., Inc., 202 F.3d 1353, 1355 (Fed. Cir. 2000)* quoting *Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983)*. The party seeking attorney fees must prove by clear and convincing evidence that the case is "exceptional." *Monster Cable Prods. v. Quest Group, 2005 U.S. Dist. Lexis 23466, *10 (N.D. Cal. 2005)*.

The Court must engage in a two part test to determine whether to award a party attorney fees under *§ 285*. The court must first make a factual determination as to whether the case is "exceptional." If the Court decides that it is an "exceptional" case, then it may use its discretion to determine whether or not an award of attorney

fees [*7] is appropriate. See *Interspiro v. Figgie Int'l, 18 F.3d 927, 933 (Fed. Cir. 1994)*.

III. Discussion

A. The Visa Defendants

1. Visa USA

As noted above, the Court is required first to determine as a matter of fact whether the case was "exceptional." *Interspiro v. Figgie Int'l, 18 F.3d 927, 933*. This Court has concluded that the case against Visa USA is "exceptional" within the meaning of *35 U.S.C. § 285*.

This Court had awarded Visa USA all of its fees and costs. The Visa entities combined seek a total of $ 1,112,935.50 in attorney fees and $ 28,714.90 in costs. According to the declaration of Julie Han in support of the fee request, the Townsend law firm represented both Visa USA and Visa International in the suit. Both Visa USA and Visa International share equally in the fees and expenses incurred on the action. "Each party pays 50% of the fees and costs billed by Townsend." Han Decl. of January 8, 2007 at P 2.

While the Court awarded all of its fees to Visa USA, E-Pass still requests that the Court scrutinize Visa USA's fee request arguing that "Visa U.S.A.'s defense focused on establishing that it did not attend the Palm V presentations at issue." See E-Pass Response of February 27, 2007 [*8] at 3:1-2. Since E-Pass steadfastly refused throughout the litigation to clarify its contentions, the Court will not limit Visa USA's fee request. There is no question that Visa USA was required to address much more throughout the litigation than merely its presence at the demonstrations. The Court, therefore, awards Visa USA $ 556,467.75 in attorney fees and $ 14,357.45 in costs, subject to the reductions discussed below.

2. Visa International

As to Visa International, the Court ultimately concluded that E-Pass had engaged in vexatious or unjustified litigation and that the suit against Visa International was frivolous, warranting a determination that the litigation was "exceptional" under § 285. See *Amsted Indus., Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 376 (Fed.Cir.1994)*. This Court had left open the total scope of the award of fees and costs to Visa International pending the Federal Circuit's determination. As noted above, the original fee award covered only fees related "solely incurred for defense of infringement claims based on the Palm VII, the Zire, the Tungsten and the Treo products." [*9] The Court deferred deciding at that point any award of fees relating to the Palm V.

On appeal, the Federal Circuit concurred with this Court's analysis that E-Pass had failed entirely to present evidence of infringement. The Federal Circuit referred to E-Pass's position as "fatally flawed," and noted that "[e]ven when all of the evidence that E-Pass cites to is accounted for, its claim cannot survive summary judgment." Similarly, the Federal Circuit rejected E-Pass's argument under the doctrine of equivalents finding E-Pass's efforts to demonstrate infringement under that doctrine to be "totally defective."

As the basis for their renewed request for fees, Visa International argues that as E-Pass never clearly defined the scope of its infringement contentions, that the Visa entities were forced to litigate throughout this case "not only the infringement charges with respect to the two demonstrations, but also those with respect to other unspecified activities." See Visa Accounting at 2:13-22. Visa asserts it should therefore be entitled to recoup all of its fees, not just those for the CES and in-house demonstration.

For ease of Court review, the Visa entities have broken the fees and [*10] costs down into time periods. Again, as noted above, each of the fee and costs figures below represents the total amount incurred by Visa USA and Visa International, which the Visa entities argue should be split in half for each.

The first time period is October 2003 until April 12, 2005. This period covers the period from the filing of the Complaint against Visa until the ruling on the original motion to dismiss. As noted above. In its order on Visa's motion to dismiss, the Court found the E-Pass's allegations "minimalist" and "conclusory" but sufficient to survive a motion to dismiss. Visa seeks a total of $ 122,631 in fees and costs of $ 5,111.20 for this time period.

The second time frame for which the Visa entities seek fees is from the April 12, 2004 Order on the Motion to Dismiss until the June 8, 2004 Order on Status Conference. During this April to June time period, the Visa entities were preparing answers, counterclaims and preparing for the Joint Case Management Conference. The total of fees for this time period were $ 51,703 and costs equaling $ 284.43.

The third time period is from June 8, 2004 until the October 29, 2004 Summary Judgment motion hearing. During this time period, [*11] Visa argues that it was responding to discovery requests and preparing and filing a motion for summary judgment. The fees associated with this time period are $ 180,211 and costs equaling $ 6,733.66.

The fourth time period is from the October 29, 2004 Summary Judgment hearing until the February 25, 2005

2007 U.S. Dist. LEXIS 89642, *

Claim Construction Order. During this time period, Visa conducted claim construction proceedings including making disclosures, and filing their claim construction brief as well as preparing for and attending the claim construction hearing. The total of fees for these activities was $ 130,175 and costs of $ 5,123.94.

The fifth time period is February through May 2005. During this time period the Visa entities were responding to further discovery requests and also filing supplemental summary judgment motions. As E-Pass argued at the summary judgment hearing that the Court should not rule on the motions as E-Pass had not had sufficient opportunity to take discovery. The Court granted E-Pass' request. The total of fees incurred by the Visa entities during this time frame was $ 213,065.50 and an additional $ 2,809.29 in costs.

The sixth time period, was from May 2005 until August 31, 2006. [*12] During these months the Visa entities were gathering responsive discovery materials and filing for a protective order regarding access by its counsel, Stephen Weiss, to the materials. The Magistrate Judge ordered a hearing on the issues encompassed in the protective order. Ultimately, the Magistrate Judge denied Visa's request for a protective order. In August 2005 the Visa entities filed additional motions for summary judgment. In March of 2006, the Court granted these motions for summary judgment. Total fees requested for this time period are $ 213,065.50 and $ 2,809.29 in fees.

E-Pass raises numerous objections to the Court granting the Visa entities fees request. E-Pass first argues that the Visa entities have requested "all" fees and not "reasonable" attorney fees as authorized under *35 U.S.C. § 285*. E-Pass argues that the fees requested are not reasonable because: (1) they request fees for work done in conjunction with the Palm V, which the Court excluded from recovery; (2) they request fees for unrelated proceedings such as motions to disqualify plaintiff's counsel, seeking protective orders, reviewing briefs from an ancillary law suit, searching for expert witnesses, and preparing [*13] for appeal; (3) that the amount requested must be reduced as it contains requests for hours which are excessive and/or redundant; (4) that the request impermissibly seeks Expert-Related Fees; and (5) that Visa has asked for impermissible overhead costs. E-Pass also asserts that since the hours requested cover topics beyond those permitted to be recovered by Visa International under this Court's November 11, 2006 Order, that the fee request is really in the nature of an impermissible motion for reconsideration. Finally, E-Pass takes issue with the fact that the Visa entities have simply split the fees down the middle for the separate legal entities: Visa USA and Visa International. Visa seeks to have the Court enter a fees Order against both E-Pass and its counsel jointly. The Court will now review each of these contentions.

(A) Fees for the Palm V?

As noted above, E-Pass asserts that the Visa fee request covers work performed regarding the Palm V, which was outside the scope of the Court's November 21, 2006 Order. While this argument had merit prior to the issuance of the Federal Court Order on the appeal, the November 21, 2006 Order made it clear that the issue of whether Visa could [*14] seek fees for the Palm V could be revisited upon issuance of the Federal Circuit Order.

In its Order, the Federal Circuit not only affirmed this Court's finding of summary judgment, but it concluded that E-Pass's arguments were "fatally flawed" and, more specifically, that E-Pass had presented no evidence to support its claims. E-Pass's choice of litigation strategy forms the basis for the Court's sanction award. The Federal Circuit's Order serves only to affirm this Court's finding that sanctions are warranted, and are warranted on all aspects of the litigation, including claims based on the Palm V.

(B) Fees for "Collateral" Proceedings

E-Pass argues the Visa defendants' billing records reveal that Visa spent time on matters which were collateral to the case, such as seeking to disqualify E-Pass' counsel, reviewing briefs in related litigation, and seeking protective orders regarding documents. The Court concurs that these matters are peripheral to the core of the case and grants E-Pass' request to strike $ 150,416.09 in fees as outlined in the Weiss Declaration of February 21, 2007. (Half of this amount is to be subtracted from the award to Visa International and half from Visa USA.)

Similarly, [*15] the fee request includes entries for work related to the appeal. As fees for work on the appeal are outside the jurisdiction of this Court, this amount, $ 114,988.64 should also be stricken.

While the case was on appeal, Visa filed with the Federal Circuit a motion for sanctions under *Rule 38* based on the argument that the appeal was frivolous. The Federal Circuit denied the motion. E-Pass now asserts because the Federal Circuit did not award Visa sanctions for the appeal, this Court cannot award further sanctions. This argument has no basis in fact or law. This Court still has authority under *28 U.S.C. § 1927* to determine whether sanctions are appropriate.

E-Pass also argues that Visa's Renewed Request for sanctions is an impermissible request for reconsideration. In so arguing, E-Pass ignores the language of the November 2006 Order. In its Order of November 2006, this Court specifically reserved the issue of whether additional sanctions might be imposed upon completion of the appeal, so E-Pass has been on notice of the Court's position on additional sanctions and Visa's renewed request was contemplated by that Order.

(C) Reasonable Fees

E-pass argues to the Court that Visa's fees are [*16] excessive and redundant and should be reduced. As support for the proposition they cite to *Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)* Hensley does stand for the proposition that the district court should exclude from this initial fee calculation hours that were not "reasonably expended . . .Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *Id. at 434.* In Hensley, however, the Supreme Court looked at the issue of the reasonableness of the hours requested as part of its analysis about the level of victory achieved by the prevailing party. Here, as defendants prevailed in their entirety, the proscriptions of *Hensley* do not apply.

The Weiss Declaration identifies fees it contends to be excessive. The Court disagrees and finds that the identified items are not shown to be excessive. Based on that finding, any further consideration by the Court as to the requested deductions would require the Court to [*17] engage in an unwarranted level of second-guessing.

(D) Expert-Related Fees

E-Pass requests reductions based on its argument that Visa impermissibly seeks fees related to expert witnesses. E-Pass cites to *Amsted Industries Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 379 (Fed. Cir. 1994)* as support. In *Amsted,* a patent case, the district court granted Amsted's motion for enhanced damages and attorney fees under *35 U.S.C. §§284, 285.* The fee request, which was granted in full, included expert witness fees of $ 46,453.61. On appeal, the Federal Circuit held that recovery of expert witness fees was outside the purview of the statute. Visa is not seeking reimbursement for expert witness fees. As E-Pass recognizes, the fees requested are for attorney efforts related to the potential need for experts. While E-Pass claims that these efforts were premature, again the Court will not second-guess reasonable attorney conduct of a litigation strategy for the case.

(E) Overhead Costs

E-Pass seeks to have the Court strike $ 616.35 in fees attributable to librarians and other overhead-related time. *Howes v. Medical Components, Inc., 761 F.Supp. 1193 (E.D.PA. 1990),* cited by E-Pass, does in fact stand [*18] for the proposition that in a patent case, charges for overhead, such as expenses for secretarial time, word processing equipment, and library services should not be allowed. See also *PPG Industries, Inc. v. Celanese Polymer Specialties Co., 658 F.Supp. 555, 559 (W.D.Ky.1987); Trend Products Co. v. Metro Industries Inc., 10 U.S.P.Q.2d 1539 (C.D.Cal.1989).* Thus, the Court disallows the overhead charges requested by Visa in the amount of $ 616.35 as set out in the Weiss Declaration.

(F) Award Against Counsel

Visa urges the Court to make both E-Pass and its counsel jointly and severally liable for any fee award. This fee request is based on Visa's assertion that as of March 2007 E-Pass had not paid the Visa entities the costs taxed by the Clerk of Court in the fall of 2006. Neither had E-Pass paid the costs awarded to Visa by the Federal Circuit. As support for its argument that sanctions are appropriate against both E-Pass and its counsel, Visa cites *28 U.S.C. § 1927 (2207),* which provides in pertinent part that "[a]ny attorney . . .who so multiplies the proceedings in any case unreasonably and vexatiously .. ." may have sanctions imposed against him. Visa looks to *Phonometrics, Inc. v. Westin Hotel Co, 350 F.3d 1242 (Fed. Cir. 2003)* [*19] as the basis for this Court being able to award sanctions jointly against E-Pass and its counsel.

In *Phonometrics,* after the District court entered judgment in favor of Westin, Westin requested attorney fees and costs pursuant to both *35 U.S.C. § 285* and *28 U.S.C. § 1927.* The District court found that Phonometrics' continued maintenance of their action after the Federal Circuit had issued an opinion in a related matter clearly invalidating their position, was "vexatious, supported an 'inference of bad faith' and 'resulted in unjustified multiplication of proceedings." The District court imposed liability in *Phonometrics* for all attorney fees and costs incurred by Westin pursuant to *35 U.S.C. § 285* and on Phonometrics' counsel pursuant to *28 U.S.C. §1927.* The District Court also held that Phonometrics never articulated a viable infringement theory. This finding was upheld on appeal. The court further found that Phonometrics "continued to litigate this case knowing that its claim could not meet the standard for infringement" therefore violating *section 1927.* See *Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991)* (affirming an award of fees and costs pursuant to *28 U.S.C. § 1927,* noting [*20] "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest"). The award of fees against counsel was also based in part on the long history of the case and of related cases all in front of the same judge. The District Court held that each case which had been resolved in a way which undercut Phonometrics case "presented Phonometrics and its counsel not merely the opportunity, but the obligation, to

reconsider the viability of Phonometrics' claims in light of the evidence, and to refrain from further prosecution. Phonometrics never chose the latter course, even when that opportunity was specifically presented." Id.

In many ways the Phonometrics case is similar to the case at bar, but it is not exactly on point. Both this Court and the Federal Circuit have found that despite ample opportunity, E-Pass presented no evidence of infringement. See also Byrnes v. Lockheed-Martin, Inc., where the fact that plaintiff had lack of evidence to file a defamation claim becomes clear at plaintiff's deposition, but plaintiff's counsel specifically refused to dismiss the claim after receiving defendants' warning [*21] letter regarding sanctions.

Additionally, like Phonometrics, E-Pass has throughout the litigation morphed its contentions to fit whatever argument it thought would allow it to survive to the next proceeding.

Despite these similarities, the E-Pass cases still does not rise to the level of egregious conduct found in Phonometrics. Absent the blatant and sustained abuse of the court process which occurred in that case, this Court does not see the joint award of fees requested here as sound policy. Moreover, other cases on the issue of joint sanctions suggest that the Court proceed very cautiously in this regard. Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1386 (9th Cir. 1988). In Toth, appellants did not fully comply with the magistrate's discovery orders. By the date of the hearing on the motion to dismiss appellants had yet to comply with the magistrate's discovery orders. The court granted appellants two extensions of time within which to comply with the outstanding orders. By the time of the third hearing appellants still had not fully complied with the district court's orders and therefore the Court dismissed the case and imposed sanctions jointly against Thornally and Toth. [*22] On appeal the Ninth Circuit found the joint award to be an abuse of discretion to the extent that such expenses were not "incurred as a result of plaintiff's and plaintiff's counsel's disobedience of ... Court[ ] orders." In contrast, counsel for E-Pass did not disobey any specific order of the Court. Inability to reach agreement with opposing counsel did give rise to numerous motions both before the Magistrate Judge and before this Court, but none of those motions resulted in sanctions for non-compliance. Given the record as a whole, the Court finds that while counsel for E-Pass made tactical decisions which had the effect of prolonging the proceedings, those actions were not so egregious as to warrant a joint award of attorney fees.

B. The Palm Defendants' Motion for Attorney Fees

1. PalmSource

In its Order of November 21, 2006 the Court found that the cases involving palmOne and PalmSource had "a litigation history of questionable pre-filing investigation and a discovery strategy of unwarranted delay and obstruction, which supported a finding that they are 'exceptional'."

In its Order of November 21, 2006, this Court found that E- Pass's allegations of inducing infringement against PalmSource [*23] had changed over time. After undergoing many permutations, E-Pass's ultimate infringement contentions reverted back to the overly spare format which the Court had found unacceptable in two prior rounds of motions for inadequate disclosure under the Court's local rules for patent cases.

As the Court noted in its March 17, 2006 Order, "there is no evidence that the patented method has ever been practiced on any one the [accused] devices." All of the above, left PalmSource arguing that it should never have been a party to this case, and that as a party, PalmSource was "unnecessarily abused" by E-Pass. See August 11, 2006 Hearing Transcript at 28:14-18.

On January 5, 2007 PalmSource submitted an accounting of expenses incurred. This accounting requested fees and expenses in the amount of $ 1,026,333.50 in fees and $ 32,432.57 in costs related to the resolution of the case including expenses for bringing the motion for attorney fees but did not include costs related the appeal of the case. See PalmSource Accounting dated January 5, 2007 at p.2.

E-Pass makes many of the same arguments against PalmSource that it made against Visa and which are discussed in greater detail above.

(A) Fees for "Collateral" [*24] Proceedings

E-Pass argues that the PalmSource defendants' billing records reveal that PalmSource spent time on matters which were collateral to the case, such as seeking to disqualify E-Pass' counsel and reviewing briefs in related litigation. Unlike the Court's Order in regard to Visa and to the other Palm defendants which was limited on the topics about which those defendants could seek fees, the Order did not contain similar limitations for PalmSource. Nonetheless, the Court finds that these matters where peripheral to the core of the litigation and excludes from recovery fees in the amount of $ 86,521.50 for these ancillary matters.

(B) Reasonable Fees

E-pass argues to the Court that PalmSource's fees are excessive and redundant and should be reduced. As support for the proposition they cite to Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) As discussed above, Hensley [*25] is not directly

Case3:09-cv-05967-EMC   Document1   Filed12/21/09   Page50 of 66

Page 7
2007 U.S. Dist. LEXIS 89642, *

on point. Again, while the Weiss Declaration identifies fees it terms as excessive, the Court finds that the identified items are not so excessive as to require reduction, and for the Court to make the requested deductions would require the Court to engage in a level of second-guessing which is not warranted.

(C) Expert-Related Fees

E-Pass requests reductions based on its argument that PalmSource impermissibly seeks fees related to expert witnesses. *Amsted Industries Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 379 (Fed. Cir. 1994).* Similar to Visa, PalmSource is not seeking reimbursement for expert witness fees. As E-Pass notes, the fees requested are for attorney efforts related to the potential need for experts. While E-Pass claims that these efforts were premature, again the Court will not second guess attorney efforts to conduct the litigation strategy for the case.

(D) Fees for Overhead

E-Pass seeks to have the Court strike $ 234.18 in fees attributable to librarians and other overhead-related time. *Howes v. Medical Components, Inc., 761 F.Supp. 1193 (E.D.PA. 1990),* cited by E-Pass, does in fact stand for the proposition that in a patent case, charges for overhead, [*26] such as expenses for secretarial time, word processing equipment, and library services should not be allowed. *See also PPG Industries, Inc. v. Celanese Polymer Specialties Co., 658 F.Supp. 555, 559 (W.D.Ky.1987); Trend Products Co. v. Metro Industries Inc., 10 U.S.P.Q.2d 1539 (C.D.Cal.1989).* Thus, the Court disallows the overhead charges requested by PalmSource in the amount of $ 234.18 as set out in the Weiss Declaration at Exhibit G.

2. The Other Palm Defendants

The Palm defendants (3Com, Palm and palmOne) argued that E-Pass's allegations against them were frivolous from the outset and also that E-Pass vexatiously prolonged the litigation, together rising to the level of abusive conduct.

The Court found that E-Pass's litigation tactics were similarly abusive to the other Palm defendants as they had been to PalmSource. Throughout the litigation, defendants were forced to expend resources merely to attempt to have E-Pass clearly define its claims. In addition to changing theories of liability, E-Pass altered the scope of allegedly infringing devices as the case progressed, despite representations by plaintiff counsel that it would not do so.

Accordingly on November 21, 2006 the Court granted [*27] the Palm defendants Motion for Attorney Fees and ordered the Palm defendants to submit an accounting detailing the expenses they incurred in defen-

dant the suit. As per the Order, the submission only included expenses incurred after the remand of Case C00-2255.

On January 5, 2007, the Palm defendants submitted a filing requesting a total of $ 592,737.50 in attorney fees. This amount was broken down into four separate requests. First, the Palm defendants state that they incurred $ 425,016.50 in legal fees in their defense of E-Pass's infringement claims based upon the Palm VII, Zire, Tungsten and Treo products. Second, the Palm defendants seek $ 17,351.50 in legal fees in their defense of E-Pass's infringement claims based upon the LifeDrive, which product E-Pass belatedly and improperly attempted to inject into the litigation. Third, the Palm defendants state that as a "proximate result of E-Pass' infringement claims, the Palm defendants developed both invalidity and enforceability defenses regarding the *'311 patent.* The Palm defendants seek an additional $ 118,819.50 in legal fees regarding these defenses. The Palm defendants concede that the Court did not grant these fees in its prior [*28] Order, but argue that these fees were a "natural result" of E-Pass' infringement claims.

Finally, the Palm defendants request $ 31,550.00 in legal fees relating to their motion for attorneys' fees and for the work preparing the Bill of Costs. The Palm defendants again assert that they should be awarded these fees, since "but for E-Pass' infringement claims" they would not have been incurred.

On January 22, 2007, the Palm defendants submitted a supplemental submission. In this pleading, the Palm defendants request and additional $ 147,312. This amount represents the legal fees expended responding to E-Pass' appeal to the Federal Circuit of the Order granting summary judgment in favor of defendants.

E-Pass responds to the Palm defendants' submission as follows: first, E-Pass alleges that the fees sought by the Palm defendants exceed those authorized by the November 21, 2006 Order. As noted above, the Court's Order held that fees were awarded to the Palm defendants only as to expenses incurred after remand of case 00-2255 from the Federal Circuit and a to expenses solely incurred for defense of infringement claims based on the Palm VII, the Zire, the Tungsten and the Treo products. E-Pass [*29] contends that a "close analysis of the Palm Defendants' Accounting reveals that they seek fees that are inconsistent with the Court's Order and settled case law."

(A) Reasonable Fees

Like its argument against Visa, E-Pass renews its argument that Palm's requested hours are unreasonable. In this instance, E-Pass points to no specific instances as

unreasonable and the Court has no evidence in front of it to suggest that this is the case.

(B) Fees for the Palm V

E-Pass specifically argues that the Palm defendants seek fees which include both permissible products which were the subject of the fee award (the Palm VII, the Zire, Tungsten and Treo products) but also for the Palm V. E-Pass asserts that some portion of these fees attributable to the Palm V must be reduced. However, as more fully discussed above, based on the Federal Circuit's findings, this Court finds that inclusion of fees related to the Palm V is appropriate.

(C) Fees for the LifeDrive

While this Court did not previously state that fees should be recoverable based on the LifeDrive product, Palm reminds the Court that it found that E-Pass's attempts to belatedly inject this product into the case to be completely inappropriate. [*30] E-Pass had never listed the LifeDrive in its complaint or its infringement contentions. Nor did it seek leave of Court to amend these contentions. As the Court held in its November 21, 2006 Order, E- Pass' Motion for Summary Judgment on the LifeDrive was totally without merit. The Court's failure to include the LifeDrive as a permissible product for reimbursement of legal fees was an oversight. The same findings of extraordinariness which apply to the Tungsten, and Treo apply with greater force to the LifeDrive which was added to the litigation by E-Pass in violation of all procedural requirements. Therefore, the Court grants in whole, Palm's request for $ 17,351.50 in legal fees related to defense of infringement claims based on the LifeDrive.

(D) Fees Related to Invalidity and Unenforceability

The Palm defendants seek reimbursement of $ 118,819.50 for preparation of submissions on the issues of invalidity and unenforceability. While these arguments are not explicitly authorized by the Court's Order, Palm argues that the were a proximate result of E-Pass' infringement claims.

E-Pass counters that both the amount of these fees is extraordinary and that it should be denied as outside the [*31] scope of the Court's November 2006 Order. The Court never reached the merits of the invalidity and enforceability arguments. Nevertheless, these defenses are part and parcel of the defenses which must be assessed by defense counsel in every claim of patent infringement. The Court sees no reason to exclude the fees simply because the claim was resolved on another ground.

(E) Fees for "Collateral" Matters

E-Pass argues the Palm defendants' billing records also reveal that Palm spent time on matters which were

collateral to the case, such as seeking to disqualify E-Pass' counsel, and reviewing briefs in related litigation. The Court concurs that these matters are peripheral to the core of the case and grants E-Pass' request to strike $ 26,241.50 in fees as outlined in the Weiss Declaration of February 21, 2007.

(F) Expert-Related Fees

E-Pass requests reductions based on its argument that Palm also impermissibly seeks fees related to expert witnesses. As discussed above, Palm is not seeking reimbursement for expert witness fees, rather for fees related to attorney efforts to find and set parameters for potential experts. While E-Pass claims that these efforts were premature, again the Court [*32] will not second guess attorney efforts to plan out the litigation strategy for the case.

ACCORDINGLY:

The Court, therefore, awards:

(1) Visa USA $ 423,457.21 in attorney fees and $ 14,357.45 in costs;

(2) Visa International $ 423,457.21 in attorney fees and $ 14,357.45 in costs;

3) PalmSource $ 907,145.32 in fees and $ 32,432.57 in costs;

(4) the Palm Defendants (3Com, Palm and palmOne)$ 566,496.00 in fees.

IT IS SO ORDERED

Dated: November 14, 2007

/s/ D. Lowell Jensen

D. Lowell Jensen

United States District Judge

# EXHIBIT "D"

Westlaw.

316 Fed.Appx. 994                                                                        Page 1
316 Fed.Appx. 994, 2009 WL 738841 (C.A.Fed. (Cal.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 316 Fed.Appx. 994, 2009 WL 738841 (C.A.Fed. (Cal.)))**

**H**
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Federal Circuit Rule
32.1 and Federal Circuit Local Rule 32.1. (Find
CTAF Rule 32.1)

United States Court of Appeals,
Federal Circuit.
**E-PASS TECHNOLOGIES**, INC., Plaintiff-Ap-
pellant,
v.
**3COM CORPORATION** (also known as 3COM,
Inc.), Palm, Inc., Palmone, Inc. and Handspring,
Inc., Defendants-Appellees,
and
Visa International Service Association and Visa
U.S.A., Inc., Defendants-Appellees,
and
Access Systems Americas, Inc. (formerly Palm-
source, Inc.), Defendant-Appellee.
**Nos. 2008-1144, 2008-1145, 2008-1146,
2008-1470, 2008-1471, 2008-1472.**

March 20, 2009.

Appealed from United States District Court for the
Northern District of California, Nos. 00-CV-2255,
03-CV-4747 and 04-CV-0528,D. Lowell Jensen,
Senior Judge.
Daniel M. Cislo, Cislo & Thomas, LLP, of Santa
Monica, CA, argued for plaintiff-appellant. With
him on the brief were Kelly W. Cunningham and
Mark D. Nielsen.

Edward H. Sikorski, DLA Piper U.S. LLP, of San
Diego, CA, argued for defendants-appellees 3Com
Corporation, et al. With him on the brief were Vin-
cent S. Lam; and M. Elizabeth Day, of East Palo
Alto, CA.

*995 Madison C. Jellins, Alston and Bird LLP, of
Palo Alto, CA, argued for defendants-appellees
Visa International Service Association, et al. With
her on the brief was Julie J. Han, Townsend and
Townsend and Crew LLP, of Palo Alto, CA.

Andrew T. Oliver, Townsend and Townsend and
Crew, of Palo Alto, CA, argued for defendant-ap-
pellee Access Systems Americas, Inc. With him on
the brief was Mark D. Rowland, Ropes & Gray
LLP, of Palo Alto, CA.

Before BRYSON, LINN, and PROST, Circuit
Judges.

**Judgment**

PER CURIAM.

**1 This CAUSE having been heard and con-
sidered, it is

ORDERED and ADJUDGED:

AFFIRMED. *See*Fed. Cir. R. 36.

C.A.Fed. (Cal.),2009.
E-Pass Technologies, Inc. v. 3Com Corp.
316 Fed.Appx. 994, 2009 WL 738841 (C.A.Fed.
(Cal.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
(Cite as: 559 F.3d 1374)

Page 1

**H**

United States Court of Appeals,
Federal Circuit.
**E-PASS TECHNOLOGIES**, INC., Plaintiff-Appellant,
v.
3COM CORPORATION (also known as 3Com,
Inc.), Palm, Inc., palmOne, Inc. and HandSpring,
Inc., Defendants-Appellees,
and
Visa International Service Association and Visa
U.S.A., Inc., Defendants-Appellees,
and
Access Systems Americas, Inc. (formerly Palm-
Source, Inc.), Defendant-Appellee.
**Nos. 2008-1144, 2008-1145, 2008-1146,
2008-1470, 2008-1471, 2008-1472.**

March 20, 2009.

**Background:** Assignee filed action against competitors alleging infringement. The United States District Court for the Northern District of California, D. Lowell Jensen, Senior District Judge, granted summary judgment of noninfringement and awarded exceptional case attorney fees to competitors. Assignee appealed. Competitor filed motion for sanctions.

**Holdings:** The Court of Appeals, Linn, Circuit Judge, held that:
(1) appeal was frivolous
(2) joint and several sanction against assignee and its attorneys, equal to amount of fees that competitor incurred in defending appeal, including filing of motion for sanctions, was warranted.

Motion granted.

Bryson, Circuit Judge, filed dissenting opinion.

West Headnotes

**[1] Federal Civil Procedure 170A** ⬅︎➡2839

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2837 Grounds
            170Ak2839 k. Frivolousness in General. Most Cited Cases
An appeal is "frivolous as filed," justifying sanctions, when an appellant grounds his appeal on arguments or issues that are beyond the reasonable contemplation of fair-minded people, and no basis for reversal in law or fact can be or is even arguably shown. F.R.A.P.Rule 38, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⬅︎➡2839

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2837 Grounds
            170Ak2839 k. Frivolousness in General. Most Cited Cases
An appeal is "frivolous as argued," justifying sanctions, when an appellant has not dealt fairly with the court or has significantly misrepresented the law or facts. F.R.A.P.Rule 38, 28 U.S.C.A.

**[3] Patents 291** ⬅︎➡325.15

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k325 Costs
            291k325.15 k. On Appeal or Error. Most Cited Cases
Appeal of summary judgment of patent noninfringement to competitor was frivolous, warranting award of sanctions against assignee, where assignee could not cogently identify any reversible error made by district court and assignee, after having engaged in repeated litigation misconduct before district court, which included, in particular, shifting legal theories, made multiple misrepresentations to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
**(Cite as: 559 F.3d 1374)**

Page 2

Court of Appeals in record and as to legal standard for exceptionality. F.R.A.P.Rule 38, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⟶2846**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(F) On Appeal
            170Ak2846 k. Persons Liable; Attorneys and Pro Se Litigants. Most Cited Cases
In determining appropriate sanction, an appellate court considers the attorney who wrote and signed the appellate briefs to be equally responsible with the party the attorney represents since a conclusion of frivolity rests not only on the filing of the appeal but also on the frivolous nature of the advocacy in support of it. F.R.A.P.Rule 38, 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟶2846**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(F) On Appeal
            170Ak2846 k. Persons Liable; Attorneys and Pro Se Litigants. Most Cited Cases

**Federal Civil Procedure 170A ⟶2847**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(F) On Appeal
            170Ak2847 k. Type and Amount of Sanction. Most Cited Cases
Joint and several sanction against appellant assignee and its attorneys, equal to amount of fees that appellee competitor incurred in defending appeal, including filing of motion for sanctions, was warranted due to assignee's frivolous appeal. F.R.A.P.Rule 38, 28 U.S.C.A.; 35 U.S.C.A. § 285.

**Patents 291 ⟶328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most

Cited Cases
5,276,311. Not Infringed.
**\*1375** Daniel M. Cislo, Cislo & Thomas, LLP, of Santa Monica, CA, argued for plaintiff-appellant. With him on the brief were Kelly W. Cunningham and Mark D. Nielsen.

Edward H. Sikorski, DLA Piper U.S. LLP, of San Diego, CA, argued for defendants-appellees 3Com Corporation, et al. With him on the brief were Vincent S. Lam; and M. Elizabeth Day, of East Palo Alto, CA.

Madison C. Jellins, Alston and Bird LLP, of Palo Alto, CA, argued for defendants-appellees Visa International Service Association, et al. With her on the brief was Julie J. Han, Townsend and Townsend and Crew LLP, of Palo Alto, CA.

Andrew T. Oliver, Townsend and Townsend and Crew LLP, of Palo Alto, CA, argued for defendant-appellee Access Systems Americas, Inc. With him on the brief was Mark D. Rowland, Ropes & Gray LLP, of Palo Alto, CA.

Before BRYSON, LINN, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge BRYSON.

**\*1376** LINN, Circuit Judge.

On the merits in this appeal, **E-Pass Technologies, Inc.** ("E-Pass") challenges two final determinations of the U.S. District Court for the Northern District of California (i) concluding that three related cases filed by E-Pass were exceptional under 35 U.S.C. § 285 and (ii) awarding attorneys' fees. *E-Pass Techs., Inc. v. 3Com Corp.,* Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D.Cal. Nov. 21, 2006) ("*Decision*"); *E-Pass Techs., Inc. v. 3Com Corp.,* Nos. 00-CV-2255, 03-CV-4747,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
**(Cite as: 559 F.3d 1374)**

04-CV-0528, 2007 WL 4170514 (N.D.Cal. Nov. 14, 2007). We affirm those rulings today in a separate Judgment under Federal Circuit Rule 36. This opinion addresses Access Systems Americas, Inc.'s (formerly known as PalmSource, Inc.) ("PalmSource") motion for sanctions, in which it argues that E-Pass's appeal is frivolous as it pertains to PalmSource. We agree. Consequently, we grant the motion, but award a different sanction than the one requested.

## I. BACKGROUND

E-Pass is the assignee of U.S. Patent No. 5,276,311 ("the '311 patent"), which is directed to a "method and device for simplifying the use of a plurality of credit cards, or the like." This litigation commenced in February 2000, when E-Pass filed suit against 3Com Corporation and Palm, Inc. (collectively, "the Palm Defendants"),[FN1] alleging infringement of the '311 patent. During the course of the litigation, the district court construed the term "electronic multi-function card" and granted summary judgment of non-infringement based on that construction. E-Pass appealed. We reversed the district court's grant of summary judgment, substituted a construction for the "electronic multi-function card" limitation, and remanded for further proceedings in light of the new construction. *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1365 (Fed.Cir.2003) ("*E-Pass I*").

> FN1. The Palm Defendants also include palmOne, Inc. and HandSpring, Inc., which were later sued in the action involving PalmSource.

E-Pass filed two new related suits in the same court following *E-Pass I*. In October 2003, it filed suit against Visa International and Visa U.S.A. for infringement of the '311 patent. In February 2004, it also filed suit against PalmSource for infringement of the '311 patent. The district court grouped these cases together as related, and subsequently granted summary judgment of non-infringement for all de-

fendants. E-Pass again appealed the district court's grant of summary judgment. This time we affirmed, agreeing with the district court that E-Pass failed to provide evidence showing that any defendant practiced all the steps of the claimed method. *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221 (Fed.Cir.2007) ("*E-Pass II*").

Following entry of judgment but prior to *E-Pass II*, the district court, on the defendants-appellees' motions, deemed each of the three actions exceptional under 35 U.S.C. § 285 and awarded attorneys' fees. Although the district court analyzed separately why each of the three actions filed and maintained by E-Pass was exceptional, its ultimate rationale centered on the adequacy of E-Pass's pre-filing investigations and its repeated misconduct throughout the litigation. E-Pass's appeal on the merits challenged the district court's exceptionality findings and awards of attorneys' fees. PalmSource argues that E-Pass's appeal is frivolous as it relates to Palm-Source based on E-Pass's failure to identify a reversible error of the district *1377 court and its repeated misrepresentations to this court.

## II. DISCUSSION

[1][2] "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R.App. P. 38. An appeal can be "frivolous as filed" and/or "frivolous as argued." An appeal is frivolous as filed "when an appellant grounds his appeal on arguments or issues that are beyond the reasonable contemplation of fair-minded people, and no basis for reversal in law or fact can be or is even arguably shown." *Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed.Cir.2001) (internal quotations omitted). An appeal is frivolous as argued "when an appellant has not dealt fairly with the court, [or] has significantly misrepresented the law or facts." *Id.*

[3] We consider this appeal, as it relates to Palm-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 5 of 9

559 F.3d 1374                                                                      Page 4
559 F.3d 1374, 90 U.S.P.Q.2d 1168
(Cite as: 559 F.3d 1374)

Source, frivolous. Although there is a host of reasons that collectively support our reaching this conclusion, we focus our discussion on two. First, E-Pass "fail[s] to explain how the trial court erred or to present cogent or clear arguments for reversal." *See id.* at 1345; *see also Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1256 (Fed.Cir.1990) (sanctioning party that failed to point to any basis for reversal in the lower court's decision). Second, E-Pass has made significant misrepresentations of the record and the law to the court. *See Abbs,* 237 F.3d at 1345; *see also Romala Corp. v. United States,* 927 F.2d 1219, 1224 (Fed.Cir.1991) (sanctioning party for, among other things, distorting the lower court's decision). We address each in turn.

We begin by noting E-Pass's failure to clearly or cogently identify a ground for reversal of the district court's decision as to PalmSource. The district court found, after concluding that there was no evidence to support E-Pass's case against the Palm Defendants, *see Decision* at 40-41, that E-Pass's case against PalmSource was even weaker:

The direct case against the Palm OS software[ FN2] has the same failures [as the case against Palm Defendants]. Any notion that Palm OS'[s] role as an enabler provides indirect evidence as to its indirect infringement is an even greater failure as it has never been suggested that Palm OS software somehow enables the instruction materials for the PalmOne devices.

> FN2. Palm OS is software owned by PalmSource and licensed for use in the Palm handheld devices alleged to infringe the '311 patent.

*Id.* at 41. After summarizing the litigation record, the district court found that "[t]he nonexistence of any direct infringement evidence to be presented at the time of summary judgment leads inexorably to the conclusion that there was no such evidence known to [E-Pass] at the time these cases were

filed." *Id.* at 44. The district court also found, as it did with respect to each of the cases on appeal, that E-Pass engaged in litigation misconduct. Among other things, the district court found E-Pass guilty of misconduct in the case against PalmSource based on its ever-changing allegations of infringement, *id.* at 29, its refusal to supplement infringement contentions, *id.* at 30-31, and its opposition to summary judgment on the basis of lack of discovery and its subsequent failure to take the discovery it had requested and received, *id.* at 32; *see also id.* at 40 ("Reviewing the entire history of the litigation, it is clear to this Court that E-Pass's strategy was to delay and obfuscate in an *1378 attempt to keep the case alive as long as possible and to stave off summary judgment."). The totality of these circumstances-i.e., the inadequacy of E-Pass's pre-filing investigation and misconduct during the ensuing litigation-led the district court to find the action against PalmSource exceptional and award attorneys' fees.

Despite appealing the district court's exceptionality determination as to PalmSource, E-Pass virtually ignores PalmSource on appeal. Its brief focuses almost entirely on the other defendants-appellees, and in particular, whether the district court erred in finding that infringement did not occur by virtue of two events-i.e., the January 2001 CES demonstration and the March 2001 Visa in-house demonstration-both of which occurred before PalmSource existed, and neither of which were asserted in E-Pass's brief to apply to PalmSource.[FN3] Indeed, E-Pass's brief leaves the inescapable conclusion that its strategy is to impugn PalmSource by association. It repeatedly makes generalized accusations against the "Defendants" or "Appellees" without acknowledging, as the district court correctly did, that the infringement allegations against these parties were different. Moreover, nowhere does E-Pass specifically challenge any finding of the district court relating to litigation misconduct in the case against PalmSource. Notably, even after PalmSource put E-Pass on notice of the alleged frivolousness of E-Pass's appeal by requesting sanctions

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
(Cite as: 559 F.3d 1374)

in its brief, E-Pass still failed to clearly or cogently explain in its reply brief why the district court's findings in the PalmSource litigation were clearly erroneous or an abuse of discretion. The dissent finds that E-Pass raised at least one reasonable ground for appeal against PalmSource-the award of fees for periods prior to litigation misconduct. With all due respect to our colleague in dissent, we view the record differently. E-Pass failed to challenge any of the district court's factual findings, and identified no other basis for finding an abuse of discretion in calculating fees. Those findings included the conclusion that E-Pass's case against PalmSource had "a litigation history of questionable pre-filing investigation," *Decision* at 45, which supports an award of fees from the beginning of the case.

> FN3. In response to PalmSource's motion for sanctions, E-Pass argued, for the first time, that "the 2001 CES demonstration relates to PalmSource since PalmSource admits that, upon its formation in 2001, it obtained from Palm 'substantially all' of the liabilities related to Palm's then-existing operating system and software business." E-Pass's Resp. to PalmSource's Mot. for Sanctions at 5. It is not entirely clear how this helps E-Pass, nor why if it was so important, E-Pass failed to raise it in its briefs. Because E-Pass failed to raise it in its opening brief, we deem the issue waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed.Cir.2006) ("[A]rguments not raised in the opening brief are waived.").

We next note E-Pass's multiple misrepresentations to the court. The first significant misrepresentation relates to the record. As we discussed above, the district court's determination that the case against PalmSource was exceptional was based in part upon its finding that there was at least "a serious question" as to E-Pass's pre-filing investigation. *See Decision* at 40-41; *see also id.* at 44 ("The non-existence of any direct infringement evidence to be

presented at the time of summary judgment leads inexorably to the conclusion that there was no such evidence known to [E-Pass] at the time these cases were filed."). Nevertheless, in its opening brief E-Pass boldly contended that "[t]he District Court specifically found that E-Pass's pre-filing investigation was sufficient to avoid making the case exceptional."*1379 E-Pass's Opening Br. at 19; *see also id.* at 25, 29 (repeating this assertion). This particular statement appears in the "Statement of Facts" section in a discussion that does not distinguish between any of the defendants-appellees, but collectively refers to them all as the "Defendants." Notwithstanding E-Pass's representations to the contrary, the district court did not, in fact, find that E-Pass's pre-filing investigation was sufficient as to PalmSource-or for that matter, the Palm Defendants, or even Visa U.S.A. Rather, the district court found, *solely with respect to Visa International* (one of seven defendants-appellees), in a section of the decision entitled "Visa International," that "[w]hile E-Pass['s] minimalist pre-filing investigation in and of itself, may not make the case exceptional, when combined with its litigation misconduct, this case becomes one which is meritorious of an award of attorney fees." *Decision* at 26.

This misrepresentation of the district court's decision-exacerbated by repetition-speaks for itself. It is worth observing, however, that not only does E-Pass attempt to paint the district court's finding as applying to all defendants-appellees when it clearly does not, it also mischaracterizes the finding itself. The district court did not, as E-Pass argues, "specifically f[i]nd" that E-Pass's pre-filing investigation was sufficient as to *any* defendant-appellee, including Visa International. Rather, the district court merely found that whether or not the "minimalist pre-filing investigation" conducted was sufficient, any question as to its sufficiency was overcome by E-Pass's numerous acts of litigation misconduct.

Another misrepresentation relates to the legal standard for exceptionality identified by E-Pass. In

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
(Cite as: 559 F.3d 1374)

its opening brief, E-Pass argued that the cases it filed against the defendants-appellees were not exceptional because its claims of infringement were "at least reasonably disputable." *E.g.,* E-Pass's Opening Br. at 29. In its reply brief, however, E-Pass went further, arguing that the cases were not exceptional because it did not bring the litigation in bad faith and the litigation was not objectively baseless. In support of its argument, E-Pass stated unequivocally that "[t]he standard for an exceptional case finding is whether the case was brought in subjective bad faith *and* the litigation was objectively baseless." E-Pass's Reply Br. at 29 (citing *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1322 (Fed.Cir.2006)); *see also id.* at 30 ("Therefore, any shift in legal theory itself does not make this case exceptional since it was not done in subjective bad faith nor was it objectively baseless."). This is not the law. *Serio-US Industries,* cited by E-Pass for this erroneous proposition, actually begins with an important condition: "*Absent misconduct in the litigation or in securing the patent,* a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." 459 F.3d at 1322 (emphasis added). E-Pass made this same misrepresentation earlier, in its opening brief, by citing *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,* 393 F.3d 1378, 1384 (Fed.Cir.2005), for the proposition that an infringement action is not exceptional so long as the infringement "can reasonably be disputed." E-Pass's Opening Br. at 28. However, E-Pass omits *Brooks'* recitation of the same condition stated in *Serio-US Industries,* of "[a]bsent misconduct in conduct of the litigation." *Brooks,* 393 F.3d at 1381.

E-Pass's omission of this condition might be of lesser consequence if litigation misconduct were not at issue in this case. But litigation misconduct is a central issue-the district court specifically concluded that E-Pass had engaged in repeated *1380 litigation misconduct, including, in particular, its shifting legal theories. *See, e.g., Decision* at 29

("E-Pass's allegations of inducing infringement against PalmSource have also changed over time."); *id.* at 33 ("Throughout the litigation, defendants were forced to expend resources merely to attempt to have E-Pass clearly define its claims."). It is difficult to view E-Pass's omission of the critical portion of the legal standard applicable to it as anything other than an attempt to mislead the court. Like E-Pass's misrepresentation of the district court's findings, this selective citation of the law is exacerbated by repetition.

For all of the reasons set forth above, taken collectively, we conclude that E-Pass's appeal as to PalmSource is frivolous. Assuming for the sake of argument that E-Pass did make a non-frivolous (yet ultimately unmeritorious) argument, it would not change our determination that the appeal as a whole is frivolous. "We have held that even the presence of a few non-frivolous arguments does not prevent an appeal as a whole from being deemed frivolous." *Romala,* 927 F.2d at 1224 (citing *In re Perry,* 918 F.2d 931, 934-35 (Fed.Cir.1990) ("When an appeal is a 'complete loser,' most of which is 'patently groundless,' sanctions should be imposed under Rule 38.")). The tactics employed by E-Pass in this appeal, including both the misrepresentations made and the failure to cogently identify any reversible error of the district court, far outweigh any non-frivolous argument that may be lurking in its briefs.

[4][5] Consequently, we grant PalmSource's motion for sanctions, although not the amount requested by PalmSource.[FN4] Rather, we impose a sanction equal to the amount of fees PalmSource incurred in defending this appeal, including the filing of the motion for sanctions. Accordingly, PalmSource is directed to file with this court a claim for reasonable attorneys' fees incurred in the defense of this appeal, including the motion for sanctions, together with supporting documentation, within fifteen (15) days of the date of this opinion. E-Pass shall have five (5) days from the date PalmSource files its submission with the court to file any objection thereto. "[S]ince our conclusion of frivolity rests

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

not only on the filing of the appeal but also on the frivolous nature of the advocacy in support of it, we consider the attorney who wrote and signed the briefs to be equally responsible." *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 948 F.2d 1573, 1582 (Fed.Cir.1991). As a result, we hold E-Pass's counsel jointly and severally liable for the sanctions.

> FN4. PalmSource requests "an amount equal to the amount that E-Pass has paid its attorneys since the date upon which PalmSource's judgment would have become final and unappealable absent this appeal."PalmSource's Motion for Sanctions at 3-4. Whatever the motivation might have been for PalmSource to make such an unusual request, we see no valid reason here to award a sanction based on fees paid to opposing counsel. *See State Indus., Inc. v. Mor-Flo Indus., Inc.,* 948 F.2d 1573, 1581 (Fed.Cir.1991) (noting amount of sanction under Rule 38 is within our discretion).

### III. CONCLUSION

PalmSource's motion for sanctions is *GRANTED,* and a sanction of PalmSource's reasonable attorneys' fees is awarded against E-Pass and its counsel, jointly and severally.

BRYSON, Circuit Judge, dissenting.
While I do not take issue with most of the majority's criticisms of the appellant's presentation in this court, I would not impose sanctions. It is true that E-Pass did not do a good job of identifying those *1381 issues on appeal that apply to Palmsource or explaining why particular issues apply to Palmsource despite its seeming lack of involvement in the underlying transactions. However, there is at least one issue as to which E-Pass specifically named Palmsource and as to which it is reasonable for E-Pass to pursue an appeal against Palmsource. That is the issue of whether the district court abused its discretion in awarding fees for periods pri-

or to the alleged misconduct by E-Pass on which the fee award was based. On page 37 of its opening brief, E-Pass asserted that "[t]he District Court's award of PalmSource's and the Visa Defendants' attorneys' fees starting from the inception of their respective cases was unreasonable and an abuse of discretion." Instead of that fee award, E-Pass argued (page 38), "[t]he District Court should have apportioned the fees and awarded only those fees incurred after E-Pass should have dropped the suit, presumably once E-Pass failed to uncover instances of direct infringement." I disagree with the majority to the extent that it charges that E-Pass failed to identify any reasonable ground for appeal as to Palmsource. As the above-quoted passage indicates, E-Pass identified one such ground. Although we ultimately rejected that argument on the merits, I do not regard it as so frivolous that it warrants the imposition of sanctions.

As to the misrepresentations in E-Pass's brief, I agree that certain statements in the brief strayed beyond the limits of fair advocacy and into the realm of falsehood. In particular, the district court's comment, with respect to Visa International, that "E-Pass' minimalist pre-filing investigation in and of itself, may not make this case exceptional" cannot fairly be characterized as a finding by the court that, as E-Pass puts it, "E-Pass's pre-filing investigation was sufficient to avoid making the case exceptional." The mischaracterization is particularly problematic because, even though the district court's statement applied only to Visa International, E-Pass at one point included its characterization of the district court's statement in a passage that references both Palmsource and the Visa defendants.

The other instances of misleading conduct pointed out by the majority are not as serious. The majority faults E-Pass for providing the court with a truncated version of the standard to be used in determining whether a district court may sanction a party by imposing attorney fees. It is true that at page 29 of its reply brief E-Pass used a shorthand version of the standard that omitted an important condition.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

559 F.3d 1374
559 F.3d 1374, 90 U.S.P.Q.2d 1168
**(Cite as: 559 F.3d 1374)**

Page 8

But earlier in the same reply brief (page 15) E-Pass cited the same authority, and in that reference it set forth the standard with the condition expressly included. It plainly would have been preferable to include the condition in both places, but the inclusion of the condition in connection with the first reference to the cited authority mitigates the effect of omitting it in the later reference.

The majority asserts that E-Pass made the same mistake on page 28 of its opening brief when it argued that "[s]o long as the infringement 'can reasonably be disputed,' the infringement action is not exceptional in terms of section 285." That proposition was included in a portion of E-Pass's opening brief that was directed to the question whether litigation was brought in bad faith, and E-Pass cited a case that addressed that issue. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005). In the portion of that case cited by E-Pass, we stated: "Bringing an infringement action does not become unreasonable in terms of [section] 285 if the infringement can reasonably be disputed." *Id.* at 1384. Although it is true that the *Brooks Furniture* case articulated the complete *1382 exceptional case standard-including the "[a]bsent misconduct in the litigation" condition-a few pages before the passage quoted by E-Pass, I do not consider E-Pass's citation to *Brooks Furniture* in the context of the issue being discussed at that point in the brief to be misleading. That is particularly so inasmuch as E-Pass's opening brief elsewhere (pages 24 and 37) acknowledged that litigation misconduct is a proper basis for an exceptional case determination and cited another one of our cases, *Beckman Instruments, Inc. v. LKB Produktor AB,* 892 F.2d 1547 (Fed.Cir.1989), for that proposition.

As I see it, then, the question for us is whether sanctions should be imposed because of an unduly aggressive characterization of a comment by the district court, a failure to provide the full text of an applicable legal test on the second occasion that the test was set forth, and a failure to explain whether only one issue on appeal was applicable to Palmsource, or if more than one issue was applicable to Palmsource, what the legal basis for PalmSource's liability would be. Accepting that in those regards E-Pass's briefs on appeal fell short of the standards we expect of counsel in this court, I nonetheless conclude that the shortfall is not so egregious as to call for the imposition of sanctions.

C.A.Fed. (Cal.),2009.
E-Pass Technologies, Inc. v. 3Com Corp.
559 F.3d 1374, 90 U.S.P.Q.2d 1168

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT "E"

Westlaw.

231 Fed.Appx. 950                                                                  Page 1
231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.)))**

**H**
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Federal Circuit Rule
32.1 and Federal Circuit Local Rule 32.1. (Find
CTAF Rule 32.1)

United States Court of Appeals,
Federal Circuit.
**E-PASS TECHNOLOGIES, INC., Plaintiff-Appellant,**
v.
MICROSOFT CORPORATION, Defendant-Appellee,
and
Compaq Computer Corporation (now known as
Hewlett-Packard Company), Defendant-Appellee.
**No. 2006-1604.**

May 2, 2007.

**Background:** Assignee of a patent for an electronic
multi-function card filed infringement action. Alleged infringers filed counterclaims of invalidity
and affirmative defenses of inequitable conduct.
The United States District Court for the Southern
District of Texas, Kenneth M. Hoyt, J., granted
summary judgment in favor of alleged infringers.
Assignee of patent appealed.

**Holding:** The Court of Appeals, Bryson, Circuit
Judge, held that patent claim was properly construed to mean that claimed method verified the
"use" of card.
Affirmed.

West Headnotes

**Patents 291 ☞101(2)**

291 Patents

291IV Applications and Proceedings Thereon
291k101 Claims
291k101(2) k. Construction in General.
Most Cited Cases
Patent claim for electronic multi-function card,
which stored a personal signature of the user to
verify use of said card, was properly construed to
mean that claimed method verified the "use" of
card, rather than only verifying the identity of the
user; throughout the patent, whenever the signature
was not necessarily stored on the card, the patent
specifically indicated that the claimed method verified the use of the card.

**Patents 291 ☞328(2)**

291 Patents
291XIII Decisions on the Validity, Construction,
and Infringement of Particular Patents
291k328 Patents Enumerated
291k328(2) k. Original Utility. Most
Cited Cases
5,276,311. Not Infringed.

**\*951** Appealed from: United States District Court
for the Southern District of Texas, Judge Kenneth
M. Hoyt.Stephen N. Weiss, Moses & Singer LLP,
of New York, New York, argued for plaintiff-appellant. With him on the brief were Gregory J.
Fleesler, Michael J. Pospis, and Amanda J. Schaffer.

George F. Pappas, Covington & Burling LLP, of
Washington, DC, argued for defendant-appellee,
Microsoft Corporation. With him on the brief were
Richard L. Rainey and Andrea G. Reister. Of counsel, on the brief was Isabella E. Fu, Microsoft Corporation, of Redmond, Washington.

Stanley J. Panikowski, DLA Piper U.S. LLP, of San
Diego, California, argued for defendant-appellee,
Hewlett-Packard Company. With him on the brief
were John Allcock, Edward H. Sikorski, and Brian
M. Fogarty.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

231 Fed.Appx. 950                                                         Page 2
231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.)))

Before LOURIE, SCHALL, and BRYSON, Circuit
Judges.

BRYSON, Circuit Judge.

**\*\*1** E-Pass brought this patent infringement action
in the United States District Court for the Southern
District of Texas, No. 4:02-00439, alleging that
both Microsoft Corporation and Hewlett-Packard
Company are liable for infringement of U.S. Patent
No. 5,276,311 ("the '311 patent"). The district court
granted summary judgment to both defendants,
finding that neither defendant directly or indirectly
infringed the '311 patent. E-Pass appeals, challen-
ging the district court's claim construction. We *af-
firm*.

I

The '311 patent is entitled "Method and Device for
Simplifying the Use of a Plurality of Credit Cards,
or the Like." It is directed to providing a method
and device for storing information from various
sources, such as credit cards, on one multi-function
card. According to the specification, the invention
"provid[es] the advantage of considerable simplific-
ation for the individual user and enormous advant-
ages as regards safety against forgery and, gener-
ally, abusive use." '311 patent, col. 2, ll. 38-41.
Claim 1 of the patent reads as follows:

A method for enabling a user of an electronic multi-
function card to select data from a plurality of
data sources such as credit cards, check cards,
customer cards, identity cards, documents, keys,
access information and master keys comprising
the steps of:

transferring a data set from each of the plurality of
data sources to the multi-function card;

storing said transferred data set from each of the
plurality of data sources in the multi-function card;

**\*952** assigning a secret code to activate the multi-
function card;

entering said secret code into the multi-function
card to activate the same;

selecting with said activated multi-function card a
select one of said data sets; and

displaying on the multi-function card in at least one
predetermined display area the data of said selec-
ted data set.

Claim 19, the only claim now asserted, is depend-
ent on claim 1 and further requires the step of
"storing a personal signature of the user on a cent-
ral computer of the party issuing the data source
and comparing the personal signature produced by
the user with said stored personal signature to veri-
fy use of said card."

E-Pass asserts infringement of claim 19 by certain
Personal Digital Assistants ("PDAs") sold by Hew-
lett-Packard as well as the Microsoft software that
allegedly enables the PDA to perform the method
of claim 19. Specifically, E-Pass asserts that claim
19 is infringed when a PDA is used to access data
in an account on a central server that verifies a per-
sonal signature for entry into the user's account. E-
Pass alleges that the PDA satisfies the "card" limit-
ation in the claims. E-Pass has made the same as-
sertion in other cases that have come before this
court. *E-Pass Techs. v. 3Com,* 473 F.3d 1213
(Fed.Cir.2007); *E-Pass Techs. v. 3Com,* 343 F.3d
1364 (Fed.Cir.2003).

The district court granted summary judgment of
noninfringement to Hewlett-Packard and Microsoft
based on its construction of one of the claim limita-
tions. Claim 19 requires a comparison of the per-
sonal signature of the user with a remotely stored
signature to "verify use of said card." After ex-
amining the language of the claims and the spe-
cification, the district court construed that require-
ment to mean that the signatures must be compared
for the purpose of verifying that it is the user's card

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

231 Fed.Appx. 950                                                                                              Page 3
231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.)))

that is being used when the personal data is being accessed. The court further found that the third-party servers that interact with Hewlett-Packard's PDAs when the accused actions are being performed do not differentiate among the devices that are being used to access the data. The servers verify only the user's identity, not whether the user is accessing the data on a PDA, a laptop, or some other device. Accordingly, the district court held that E-Pass could not show infringement of claim 19 by either Hewlett-Packard or Microsoft.

II

**2** On appeal, E-Pass argues that the district court misconstrued the requirements of claim 19 when it found that the claim required the entity that compares signatures to verify the use of the card. Instead, according to E-Pass, the signature comparison is meant to verify the identity of the user, and the "verify use of said card" limitation of claim 19 should be treated as completely independent of whether the card is being used.

The plain language of the claim supports the district court's construction, not E-Pass's. The phrase "verify use of said card" indicates that the signature comparison is performed so as to verify that the card is being used. Sometimes claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed.Cir.2005). This is such a case.

E-Pass argues that the signature comparison is meant to verify "the user's use of the [card]," and not the use of the card itself. In other words, E-Pass argues that it is the use to which the card is being put that is verified in claim 19, and that since *953 the function of the card is to display the user's data at the request of the user, verification of that use involves verification of the user's identity. The problem with that argument is that to "verify use of said card" does not mean the same thing as to verify the identity of the user. To hold otherwise would be to

rewrite the claim.

E-Pass also argues that verification through signatures personal to the user indicates that it is the identity of the user that is verified in the method step of claim 19. While it is true that verification of personal signatures effectively verifies the user's identity, that does not mean the claim does not require the use of the card to be verified as well. Indeed, both the patent claims and the specification indicate that claim 19 includes the card verification requirement.

The other claims of the patent indicate that verifying "use of the card" means something other than simply verifying signatures, which is all claim 19 would require under E-Pass's construction. Claims 2, 3, 7, 8, and 9 discuss "verifying the personal signature[s]" or "verifying said stored signature" by comparing a live signature with a stored signature. In contrast, claim 10 refers to "verifying proper use of said card" by comparing signatures while claim 19 refers to "verify[ing] use of said card." The difference in text between claims 2, 3, 7, 8, and 9 on the one hand, and claims 10 and 19 on the other, suggests that claims 10 and 19 should be construed to require verification that the card is being used. The only difference between those two groups of claims appears to be that the first group of claims requires the stored signature to be stored on the card. Accordingly, verifying the signatures in those claims necessarily verifies the use of the card and the identity of the user simultaneously; without the card there would be no stored signature against which the live signature could be compared. Claims 10 and 19, on the other hand, do not require the signature to be stored on the card. Verification of signatures alone would not necessarily verify the use and presence of the card, as required by those claims, although it would still verify the user's identity.[FN1] Accordingly, a terminology change would be required if and only if the patentee wanted to ensure that the use of the card was verified. Claims 10 and 19 contain such a terminology change, confirming the district court's construction of claim 19.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

231 Fed.Appx. 950                                                                    Page 4
231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.)))**

FN1. Claim 10 reads as follows: "The method of claim 1, including the further step of verifying proper use of said card by comparing the personal signature of the user with a stored signature." Claim 10 is indifferent regarding where the signature is stored; it therefore appears to include the embodiment recited in claim 19, in which the signature is stored with a third party.

**\*3** The specification provides further evidence that the language of claim 19 requires verification that the card itself is used, and not just verification of the identity of the user. As the district court noted, every embodiment in the specification requires that the card be used to complete the desired transaction. The patent describes three embodiments related to signatures: one in which the signature is stored on the card and verified by hand; one in which the signature is stored on a remote server and electronically or mechanically verified; and one in which the signature is stored on the card and electronically or mechanically verified. '311 patent, col. 5, ll. 11-14; col. 9, ll. 26-31; col. 9, ll. 48-50. In the first and third embodiments, the card must be present at the time of use to enable the signature comparison, and verification of the signatures necessarily verifies both the user and the use of the card. The description of the **\*954** second embodiment, the embodiment captured by claim 19, also requires the card to be present before the signatures can be verified. As described in the specification, the card itself, in conjunction with a customized point-of-sale terminal, is used to "call up" the central database and retrieve the signature. Since the card is needed to retrieve the signature, comparing the signatures will verify both the use of the card and the identity of the user.

Additionally, in the description of the second embodiment-the only embodiment in which it might be possible to verify signatures without verifying the use of the card-the patent specifically indicates that the described process "verify [s] the inserted card." '311 patent, col. 9, ll. 30-31. Again, the card

is verified in that case because the only way to retrieve the signature stored by the third party is by using the card in the customized point-of-sale terminal. That singular description bolsters the pattern evidenced by the differences between those claims that "verify the card" and those that "verify the signatures." Throughout the patent, whenever the signature is not necessarily stored on the card the patent specifically indicates that the claimed method verifies the use of the card.

A requirement that the presence of the card be verified also makes sense in the context of the specification's description of the invention. One of the objects of the invention is "safety against forgery and, generally, abusive use." '311 patent, col. 2, ll. 38-41. Ensuring that the card is physically present and being used to access the user's data provides an extra measure of fraud prevention.

Since both the claims and the specification would lead a person of skill in the art to conclude that the language of claim 19 requires the party comparing the signatures to verify the use of the card itself, and not just the identity of the user, we hold that the district court correctly construed the disputed claim term. We therefore affirm the court's judgment.

C.A.Fed. (Tex.),2007.
E-Pass Technologies, Inc. v. Microsoft Corp.
231 Fed.Appx. 950, 2007 WL 1295988 (C.A.Fed. (Tex.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.