James R. Rosen (SBN 119438)
   jrosen@rosensaba.com
Adela Carrasco (SBN 139636)
   acarrasco@rosensaba.com
ROSEN SABA, LLP
468 North Camden Drive
Beverly Hills, CA  90210
Telephone (310) 285-1727
Fax:  (310) 285-1728

Attorneys for Plaintiff
E-PASS TECHNOLOGIES, INC.

Richard D. Hoffman (SBN 76799)
   rhoffman@duanemorris.com
Robert M. Fineman (SBN 188211)
   rfineman@duanemorris.com
DUANE MORRIS LLP
One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone:  (415) 957-3000
Fax:  (415) 957-3001

Attorneys for Defendants,
MOSES & SINGER, LLP and
STEPHEN N. WEISS, ESQ.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| E-PASS TECHNOLOGIES, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>        v.<br><br>MOSES & SINGER, LLP, a New York Limited Partnership; STEPHEN N. WEISS, ESQ., an Individual; and Does 1 through 50, Inclusive,<br><br>             Defendants. | Case No. 3:09-cv-05967-EMC<br><br>**UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**  ;ORDER RESETTING CMC<br><br>Date:  March 30, 2011<br>Time: 2:30 p.m.<br><br>Hon. Magistrate Judge Edward M. Chen |

**TO THE HONORABLE COURT, IN COMPLIANCE WITH LOCAL RULE 16, THE PARTIES SUBMIT THE FOLLOWING UPDATED JOINT REPORT**:

Plaintiff E-Pass Technologies, Inc. ("Plaintiff" or "E-Pass") and Defendants Moses & Singer, LLP and Stephen N. Weiss (collectively, "Defendants") hereby submit their Updated Joint Case Management Conference Statement, in compliance with Local Rule 16. The Case Management Conference is scheduled to occur on March 30, 2011, at 2:30 p.m. before the Honorable Magistrate Judge Edward M. Chen.

As discussed further in Section I.A. below, considering the current procedural status of the state court action in which third-party Squire Sanders has until May 24, 2011 to file a Petition for Certiorari with the U.S. Supreme Court, Defendants believe that a continuance of the March 30, 2011 Case Management Conference in this matter until the next available date after May 24, 2011 would be appropriate and in the interests of judicial economy. Through the Parties' meet and confer discussions in preparation for this CMC, Plaintiff's counsel has agreed  not to oppose this request for continuance. The Parties intend to attempt to address and resolve outstanding discovery issues prior to any continued Case Management Conference and also pursue third-party discovery in the interim.

I.     **JOINT CASE MANAGEMENT STATEMENT (LOCAL RULE 16-9)**

A.     **Jurisdiction and Service**

Plaintiff contends this Court has jurisdiction over E-Pass' state law claims for breach of fiduciary duty, professional negligence and negligent misrepresentation. On or about  September 14, 2009, in the case entitled *E-Pass*

*Technologies, Inc. v. Moses & Singer, LLP, et al.*, San Francisco Superior Court Case No. 09484009 (the "Superior Court Action"), the San Francisco Superior Court dismissed E-Pass' state-law complaint against certain defendants therein, including the same Defendants sued herein and sustained Defendants MOSES & SINGER's and WEISS' second successive demurrer to E-Pass' Second Amended Complaint, holding that the resolution of E-Pass' claims set forth herein depends upon the determination of substantial issue(s) of federal patent law, and that this Court has subject matter jurisdiction over E-Pass' stated claims, pursuant to 28 U.S.C. § 1338.  A true and correct copy of the San Francisco Superior Court's Order, dated October 1, 2009, reflecting its September 14, 2009, ruling in the Superior Court Action, is attached hereto as **Exhibit "A."**

On November 5, 2010, the California Court of Appeal, First District, Division 3, reversed and remanded the trial court's dismissal of E-Pass' state law action.  A true and correct copy of the Court of Appeal's opinion in E-Pass Technologies, Inc. v. Squire, Sanders & Dempsey, LLP, et al., Action number A127025, is attached hereto as **Exhibit "B."**

On February 23, 2011, the California Supreme Court denied Petitioners Squire, Sanders & Dempsey, LLP's and Mark C. Dosker, Esq.'s Petition for Review (docketed as Case No. S188972).  On March 16, 2011, the Court of Appeal issued its Remittitur in action number A127025.

Pursuant to Rule 13 of the Rules of the United States Supreme Court, Petitioners have ninety (90) days from the California Supreme Court's denial of the Petition for Review to file a Petition for Certiorari to the United States Supreme Court.  Therefore, third party Petitioners Squire, Sanders & Dempsey, LLP and Mark C. Dosker, Esq. have until approximately May 24, 2011, to file

such Petition for Certiorari.[1]

Nonetheless, Plaintiff also contends that this Court has personal jurisdiction over Defendants for all purposes, in that Defendants gained *pro hac vice* admission to this Court to implement a misdirected litigation strategy.

Defendants disagree with the assertion that this Court has subject matter jurisdiction over this action. In this regard, on November 5, 2010, Plaintiffs obtained a reversal of the dismissal of its virtually identical state court complaint with the California Court of Appeal holding that Plaintiffs' claims did not raise a substantial issue of federal patent law and the action was not subject to section 1338 jurisdiction. The Court of Appeal decision is final as to Defendants Moses & Singer and Stephen Weiss in that neither petitioned for review of the decision by the California Supreme Court.

Defendants agree that if this Court had subject matter jurisdiction, personal jurisdiction would exist for Plaintiff's claims arising from Defendants' representation of Plaintiff in three actions prosecuted in the Northern District of California, identified as the 3Com Action, the Visa Action and the PalmOne Action (collectively, the "California Actions"). Defendants do not agree that personal jurisdiction exists for claims which may exist arising from the prosecution of the Texas Action or for claims arising from non-litigation advice provided by Defendants in New York (the "New York Advice"). Defendants contend that this Court is not the proper venue for Plaintiff's claims arising from the New York Advice, and that this forum is not a convenient forum for Defendants. Rather, Defendants contend this entire action should have been brought in New York which is the place where Defendants are located and from

---

[1]/ Plaintiff's counsel called and inquired of Petitioners' lead counsel whether Petitioners had determined whether or not to petition the U.S. Supreme Court for certiorari. Plaintiff's counsel was informed that Petitioners had not yet made such determination.

which they practiced law during their various representations of Plaintiff.

All parties have been served.

**B.**     **Brief Statement of the Factual and Legal Basis of the Claims and Defenses**

**1.**     **Plaintiff's Statement**

This action is brought by E-Pass against its former counsel, Defendants Moses & Singer, LLP and Stephen N. Weiss, for professional negligence, breach of fiduciary duties and negligent misrepresentation.    Defendants represented E-Pass in a series of patent litigation actions venued in the United States District Court for the Northern District of California and the United States District Court for the Southern District of Texas.[2]    E-Pass alleges that Defendants' conduct fell below the standard of care, and Defendants breached their fiduciary duties to Plaintiff, by, among other things, negligently misrepresenting and/or failing to disclose to E-Pass that no legitimate foundational evidence existed to support E-Pass' claims for patent infringement against the underlying defendants, and by recommending E-Pass to vigorously pursue the Underlying Actions.

As a result of Defendants' actions, summary judgment was entered against Plaintiff, on the ground that Defendants had failed to present any evidence of actual infringement.   E-Pass incurred at least $7.6 million in fees to Defendants and was found liable for the attorneys' fees and costs of the

---

[2]/ E-Pass was the plaintiff in related civil actions entitled *E-Pass Technologies, Inc. v. 3COM Corporation, et al.,* U.S. District Court for the Northern District of California, Case No. 00-CV-2255 (the "3Com Action"); *E-Pass Technologies, Inc. v. Visa International Service Association, et al.,* U.S. District Court for the Northern District of California, Case No. 03-CV-4747 (the "Visa Action"); *E-Pass Technologies, Inc. v. PalmOne, et al.,* U.S. District Court for the Northern District of California, Case No. 04-CV-0528 (the "PalmOne Action"), as well as *E-Pass Technologies, Inc. v. Microsoft Corporation, et al.,* U.S. District Court for the Southern District of Texas Case No. Civ A.H. 02 0439 (the "Microsoft Action") (collectively, the "Underlying Actions").

1  underlying defendants in the approximate amount of $2.3 million.

2  Plaintiff further contends that Defendants further breached their fiduciary

3  duties to Plaintiffs by, among other things, advising Plaintiff to forego licensing

4  opportunities for its patent, including a million dollar licensing agreement with

5  Microsoft Corporation, and to instead focus on expensive, unmeritorious patent

6  infringement litigation. Defendants' actions have caused E-Pass to be

7  negatively viewed as a "patent troll," thereby damaging E-Pass' ability to

8  effectively market the '311 patent. Defendants further preferred their own

9  financial interests over the interests of Plaintiff by, among other things,

10  appointing Defendant Stephen N. Weiss, Esq. as the secretary and treasurer of

11  E-Pass in the face of an apparent conflict of interest.

12  ## 2.   **Defendants' Statement**

13  Defendants disagree with Plaintiff's characterization of this action.

14  Defendants note that the California Court of Appeal has determined that the

15  state court has jurisdiction of Plaintiff's claims and the claims do not raise a

16  substantial issue of federal patent law and the action as pled by Plaintiff is not

17  subject to section 1338 jurisdiction. If Plaintiff seeks to continue to prosecute

18  this federal court action, Defendants anticipate moving to dismiss and/or asking

19  the Court to issue an order to show cause why it should not dismiss the action

20  for lack of subject matter jurisdiction. If the action is not dismissed, Defendants

21  anticipate seeking to amend their answer to, inter alia, assert additional

22  affirmative defenses which have arisen as a result of the California Court of

23  Appeal decision.

24  With respect to the claims asserted in the complaint in this action,

25  Defendants deny that Defendants made any negligent misrepresentations,

26  breached any fiduciary duties, or were professionally negligent in any way in

27  connection with any of their representations of Plaintiff (the 3Com Action, the

28

Visa Action, the PalmOne Action, the Texas Action, or the New York Advice). As set forth in Defendants' Response/Answer to Complaint, Defendants allege Affirmative Defenses, including: (1) lack of personal jurisdiction over Defendants for claims arising from the New York Advice, (2) improper venue for claims arising from the New York Advice, (3) lack of subject matter jurisdiction for claims that do not arise under the patent laws of the United States under 28 U.S.C. § 1338(a), (4) the statute of limitations and laches, (5) lack of damages, (6) lack of standing/not the real party in interest, (7) comparative or contributory negligence, (8) failure to mitigate damages, (9) waiver and consent, (10) estoppel, and (11) fault of others, among other things.

## C.   **Legal Issues/Disputed Points of Law**

(1)     Defendants contend that this Court does not have subject matter jurisdiction over Plaintiff's claims and based upon representations Plaintiff has made in this Court and in the state court proceedings, believes that Plaintiff agrees with this contention.

Plaintiff does not understand Defendants' reference to representations its counsel purportedly made to this Court, and, in any event, disputes Defendants' new position on jurisdiction, a curious about-face from its previous stance. Regardless, at a bare minimum, this Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332 (diversity) and Plaintiff has the right to maintain its claims against these Defendants before this Court.  Defendants' contention that this Court should dismiss Plaintiff's present action, especially until the appeal(s) relating to Plaintiff's state court action has been exhausted, is without merit and designed only to thwart Plaintiff's prosecution of its claims.

(2)     Defendants contend Plaintiff's claims are barred, in whole or part, by the applicable statutes of limitations.  Plaintiff disputes this defense and also contends a Tolling Agreement applies.

(3)     Defendants contend this Court will be required to resolve choice of law issues regarding claims arising from events in California, Texas, and New York.  Plaintiff disputes that this Court will need to resolve questions of law relating to either of those other states' substantive laws.

(4)     Defendants contend that this Court is not the proper venue for Plaintiff's claims arising from the New York Advice, and that this forum is not a convenient forum for Defendants.  Rather, Defendants contend this entire action should have been brought in the Southern District of New York, which is the place where Defendants are located and from which they practiced law during their various representations of Plaintiff.

Plaintiff disputes Defendants' contentions and asserts that the Northern District is the proper venue for this action.  Pending further discovery, Plaintiff contends that Defendants' acts and strategies were all designed, implemented and performed, *pro hac vice*, such that Plaintiff suffered enormous damages in this District. Additionally, the plurality of third-party witnesses reside here.

**D.     <u>Motions</u>**

(1)     Defendants anticipate filing a motion to dismiss this action on the grounds that this Court lacks subject matter jurisdiction or alternatively will ask the Court to issue an order to show cause as to why the action should not be dismissed.

(2)     If the action is not dismissed, Defendants anticipate filing a motion to amend its answer to assert, inter alia, additional defenses arising by reason of the state court appellate proceedings (Defendants would first seek a stipulation from Plaintiff and would only file a motion if Plaintiff was unwilling to so stipulate.)

(3)     Defendants filed a motion for an extension of time to file their responsive pleading until after hearing on the Motion to Stay Action.  The Court

denied an extension until after hearing on the Motion to Stay Action, but granted an extension of time to respond to the Complaint.  Defendants have filed an Answer to the Complaint.

(4)     Defendants reserve the right to assert that venue is improper in this Court for all claims arising from representation of Plaintiff in connection with the New York Advice and that this forum is not convenient to Defendants because this entire action should have been filed in the Southern District of New York where Defendants are located and where they practiced law during their representation of Plaintiff.

(5)     Defendants filed a Motion to Stay this action because of the pendency of the appeal of the virtually identical state court action which had been dismissed by the San Francisco Superior Court. Oral argument on the appeal occurred on October 13, 2010, and a decision was rendered on November 5, 2010, reversing the judgments of the San Francisco Superior Court.  The Court did not issue an order with respect to the Motion and did not stay the action. The Court did order that limited written discovery should continue pending the Case Management Conference set for March 30, 2011.

(6)     Plaintiff intends to file a motion to conduct punitive damages discovery.

(7)     The Parties anticipate filing Motions for Summary Judgment and/or Summary Adjudication.

(8)     Plaintiff also anticipates filing as many as three (3) discovery motions.  First, Plaintiff also anticipates filing a motion to compel Defendants' further responses to Plaintiff's First Set of Requests for Production of Documents, and on terms consistent with the October 19, 2010, telephonic recommendations of the Court's Law Clerk, Shao-Bai Wu.  Second, Plaintiff anticipates filing a motion to compel further responses to Plaintiff's First Set of

Requests for Admission propounded upon Defendants.  Third, Plaintiff believes that, ultimately, it will be required to file a motion seeking an Order to compel Defendants' production of documents now being withheld from production on grounds of privilege.  Generally, the documents sought involve a series of internal communications exchanged among Defendants' partners during Defendants' representation of Plaintiff in the Underlying Actions, before Plaintiff claimed any breach of duty or negligence by Defendants, and for which Defendants billed Plaintiff.

(9)    In addition, Plaintiff specifically reserves its right to insist upon complete and continuing compliance with the terms of this Court's Protective Order, issued December 16, 2010, upon the stipulation of all parties and defendants in the Underlying Actions, authorizing Plaintiff to image Defendants' electronic files in the Underlying Actions.[3]

(10)    Defendants are in the process of meeting and conferring with Plaintiff regarding their deficient discovery responses and incomplete production of documents.  Defendants are hopeful that Plaintiff will agree to supplement its responses and production of documents informally, but Defendants will seek assistance from the Court and bring formal discovery motions if necessary.

**E.    Amendment of Pleadings**

Defendants anticipate seeking to amend their answer if this action is not dismissed.  Limited discovery has taken place, and the parties reserve their respective rights to amend their pleadings as is appropriate.

---

[3] / On December 16, 2010, this Court issued its Order providing that the terms of the August 2, 2002, and August 16, 2005, Protective Orders issued in the underlying actions are adopted in this instant action.  This Court further ordered that all confidential documents subject to the August 2, 2002, and August 16, 2005, Protective Orders previously withheld from production be produced for Plaintiff's review.

**F.**     **Evidence Preservation**

The parties agree to preserve all relevant evidence in their possession, custody, and/or control under this Court's Standing Order for Civil Practice, including the preservation of electronically stored information and associated metadata.

**G.**     **Disclosures**

Under the Court's Amended Scheduling Order, Initial Disclosures under Federal Rule of Civil Procedure 26 occurred on April 14, 2010.

**H.**     **Discovery Taken to Date**

At the initial Case Management Conference, the Court ordered limited discovery to written discovery as Plaintiff's appeal of the trial court's dismissal of Plaintiff's state court action was still pending.  Thereafter, the parties agreed to conduct informal discovery so as to save the time and expense associated with formal written discovery.

Plaintiff was unable to obtain the complete documents from Defendants during the informal process, and on July 16, 2010, served upon Defendants its First Request for Production of Documents and Things ("RFP").   After requesting and receiving a brief extension, Defendants served their Responses to the RFP on August 26, 2010.  On October 19, 2010, the parties engaged in a teleconference with the Court's Law Clerk, Shao-Bai Wu, regarding Defendants' deficiencies in their production of documents.  With the help of Ms. Wu, the parties agreed that on November 1, 2010, Defendants would make available for Plaintiff's inspection the "hard copy" of Defendants' files of the underlying actions.  Defendants stated that the complete "hard copy" portion of the subject files and the responsive documents consisted of approximately 260 banker's boxes of documents.

Plaintiff reviewed Defendants' original case file in Defendants' counsel's

San Francisco office from November 8 through November 17, 2010.  However, only 250 banker's boxes of documents were produced for inspection. Defendants claim that the 250 banker's boxes of documents contain the totality of Defendants' case files in the underlying actions.  Following this Court's December 16, 2010, Protective Order, on January 19, 20 and 21, 2011, Plaintiff reviewed documents that, subject to the underlying Protective Orders, were previously withheld from Defendants' production.  The review also took place at the San Francisco offices of Defendants' counsel.

On December 1, 2010, Defendants' counsel stated in writing that Defendants will produce additional invoice documents consisting of "backup invoices relating to expenses for Stephen Weiss, miscellaneous invoices which [Defendants] are seeking to confirm relate to this representation (about 10 pages) and some additional vendor invoices which [Defendants] are still seeking to locate (believed to be less than 50 documents)."  The additional documents have not yet been produced, nor is it clear that all back-up documentation, i.e., invoices for services rendered on behalf of E-Pass at Defendants' behest by consultants, experts, Squire Sanders & Dempsey, LLP (E-Pass' California local counsel), Lipstet & Hirsch (E-Pass' Texas local counsel), etc., have been produced to Plaintiff.

Nonetheless, Defendants have produced approximately 207,713 pages of Electronically Stored Information ("ESI") and scans of hard copy documents. Plaintiff has thus far produced approximately 18,916 pages of ESI and scans of hard copy documents to Defendants.  In addition, Plaintiff has produced to Defendants a complete index of all pleadings in the Underlying Actions in Plaintiff's possession and made those documents available for inspection and copying by Defendants, along with the hard copy files of the Underlying Actions inherited from Squire Sanders & Dempsey.

At its November 10, 2010, Case Management Conference, Defendants were also ordered to confirm, with an appropriately executed verification, that they have produced all invoices generated by Moses & Singer for work performed on behalf of E-Pass and/or its principal, Hardy Hennige.  Defendants have not yet provided Plaintiff this Court-ordered verification regarding their invoices.

Defendants contend as follows:  Defendants assert that they have produced all invoices and related backup currently in their possession, custody, or control after conducting a diligent search for such information.  Defendants reserve the right to supplement their production with additional responsive information to the extent that any is located.  Defendants further state that after the initial Case Management Conference Plaintiff's counsel agreed to produce not only Plaintiff's documents as required by Rule 26 but also all documents of Plaintiff's principal, Hardy Hennige, and Plaintiff's primary investor, Peter Reiser.  At that time, Plaintiff had not produced any documents except 652 pages of Moses & Singer invoices.  Plaintiff's counsel stated that they were not inclined to produce Plaintiff's documents or other documents until they were satisfied that they were being provided all of Defendants' documents.

Plaintiff replies to Defendants' above assertions as follows:  First, Plaintiff made no agreement with respect to the documents or deposition of Peter Reisser, who loaned money to E-Pass, as counsel for E-Pass does not presently represent Mr. Reisser.  Second, at Defendants' request, Plaintiff produced invoices in its possession, provided to Defendants a detailed index of all paper pleadings it has in its possession, and served a privilege log as to any privileged information appearing in the indexed documents.  Plaintiff offered to provide copies of any indexed pleadings in Plaintiff's possession.  Defendants did not request copies of any pleadings indexed by Plaintiff.

Finally, Plaintiff was compelled to resort to a formal Request for Production in July and an informal letter request to the Court because Plaintiff was unable to obtain documents in a timely and/or organized manner.  Rather, Defendants produced to E-Pass in a "rolling," piece-meal fashion, literally tens of thousands of pleadings, e-mails, and correspondence in a random, haphazard, often duplicate and non-sequential manner, including well over 6,000 totally blank (yet still Bates-stamped) unidentified pages.  If Defendants were truly dissatisfied with Plaintiff's informal discovery efforts over the last six (6) months, they, too, were free to propound formal discovery requests or complain to the Court, as did Plaintiff.  But Defendants did neither, probably because they already have all relevant documents in their possession.

On November 9, 2010 Defendants served formal requests for the production of documents because Plaintiff refused to informally produce any additional documents beyond 652 pages of invoices in its possession.  Plaintiff's response to the document production was due on December 13, 2010, but as a courtesy, Defendants agreed to Plaintiff's request for a two week extension of time to respond on the condition that Plaintiff's would serve their responses and produce responsive documents on December 27.  Plaintiff did not object to this condition with respect to the timing of the production.  Plaintiff did not produce documents on December 27 and instead proposed producing its documents in January.  On January 7 Plaintiff advised that the documents would not be ready for review until January 12.  Defendants patiently waited for Plaintiff to produce responsive documents and completed their review of the limited documents produced by Plaintiff January 12.

Plaintiff's production of documents was incomplete and failed to comply with Federal Rules of Civil Procedure 34 in at least the following areas: First, Plaintiffs asserted numerous boilerplate objections to the requests for

production, including that the requested documents were subject to attorney client and other privileges.    Second, Plaintiff's repeatedly objected to Defendants' document requests, in part, on grounds that it would will only produce "all relevant, non-privileged documents in its possession, custody and/or control, if any . . to the extent such documents have not been previously produced by or to Defendants."   Moreover, E-Pass has improperly refused to produce responsive documents in its possession, custody, or control on the alleged basis that "all documents are already in Defendants' possession."   E-Pass must be required, just as it demanded from Defendants, to produce its entire files containing responsive documents for Defendants' review regardless of whether E-Pass believes that a version of the same document is also contained in Defendants' files.   E-Pass has provided no basis for its limited document production and has not responded to Defendants' initial meet and confer letter on this important issue.

Third, Plaintiff's initial production failed to include any form of electronically stored information.   Until January 19, 2011 Plaintiffs had not produced a single page of ESI, despite this Court's December 16, 2010 Order providing that the parties will produce electronically stored documents in an electronic format.   Indeed, months ago the parties contemplated the need for electronic production of electronically-stored information during initial case management discussions and agreed to acceptable formats.   To date, E-Pass has provided no indication that it has made any effort to exhaustively search for and produce relevant ESI and must be required to comply with Rule 34 requirements regarding the production of ESI.   Fourth, based upon Defendants' review of the 29 boxes of documents produced by Plaintiff, many of which were only half-full at most, Plaintiffs are clearly withholding from production even certain documents which E-Pass previously identified in its April 14 Rule

26 Initial Disclosures and other informal discovery dating back to July 2010, including documents from E-Pass described in the "Supplemental Hartmut Hennige and/or Peter Reiser Paper Pleadings" list prepared and reviewed by E-Pass' counsel.  Additionally, E-Pass has produced no documents identified in its Initial Disclosure pertaining to E-Pass' corporate records or formation.  Instead, the majority of the document production from E-Pass appears to be limited to files that originated from the law offices of Squire Sanders.  Defendants sent an initial meet and confer letter to Plaintiffs prior to their review on January 12 identifying many of these problems and requesting Plaintiff to produce its complete files and revise its responses to Defendants' document requests accordingly.  Plaintiffs have yet to respond to this meet and confer.  Plaintiff has had many months to search for responsive documents and ESI and has failed to do so or has improperly withheld the information it has obtained.  Defendants will attempt to resolve these disputes and others with Plaintiffs informally, but anticipate that motion practice may be necessary to compel Plaintiff's compliance with Rule 34.  Defendants will seek to have E-Pass confirm in writing that it has completed its production of documents in compliance with the Standing Orders of this Court or, if Plaintiff claims it has not yet completed its search for and production of responsive documents, Plaintiff must provide a deadline for the completion of its production.

Plaintiff responds as follows:  It is inappropriate for Defendants to use this Updated Joint Case Management Conference Report to discuss their perceived deficiencies in Plaintiff's response to Defendants First Request for production of Documents.  Defendants' only meet and confer letter was sent before its counsel inspected and copied the responsive documents and files that Plaintiff produced.  Presumably, certain issues raised therein are now moot.  Even so, relevant unprivileged documents in Plaintiff's possession were

produced on an agreed-upon date, which was scheduled with the consent, input and agreement of Defendants' counsel for a date and time after the holidays. Moreover, Plaintiff subsequently delivered to Defendants a disk containing approximately 18,000 electronically stored documents comprised primarily of emails.   Nor is there any truth to the contention that Plaintiff is withholding any of the documents listed in the "Supplemental Hartmut Hennige and/or Peter Reiser Paper Pleadings" previously provided to Defendants by E-Pass. That list was comprised by Plaintiff, at Defendants' request, for the sole purpose of permitting Defendants to choose which, if any, of the documents described therein would be copied.   Defendants have never made any indication which of the listed documents it desired to copy.

### I.      Class Action

Not applicable because this case is not a class action.

### J.      Related Cases

Plaintiff refers to and incorporates by this reference its Notice of Related Cases, filed on December 21, 2009, which is attached hereto as **Exhibit "C."**

### K.      Relief Sought

Plaintiff seeks the following relief:  As a result of Defendants' alleged professional   negligence,   breach   of   fiduciary   duties   and   negligent misrepresentations to Plaintiff, Plaintiff seeks the recovery of the attorneys' fees and costs paid to Defendants and its local counsel, in connection with the Underlying Actions, estimated to be at least $7.6 million (subject to confirmation), plus $2.3 million in attorneys' fees and costs incurred by the underlying defendants and for which E-Pass was held liable as a consequence of the District Court's finding that the Underlying Actions were frivolous. Plaintiff also seeks pre-judgment interest on the amounts sought.  Plaintiff also seeks the recovery of business losses attributable to Defendants' actions.

Plaintiff shall seek punitive damages if evidence adduced proves that Defendants' breaches of fiduciary duties were willful or that the imposition of such damages is appropriate.  Plaintiff reserves its right to seek all damages to which it is entitled, according to proof.

Defendants seek the following relief:  Defendants deny any liability to Plaintiff, deny that Plaintiff has been damaged by Defendants in any way, and deny that Plaintiff is entitled to recover from Defendants on any of its claims. Defendants request that Plaintiff shall take nothing by way of its Complaint and seek judgment against Plaintiff on each and every claim.  Defendants specifically deny that punitive damages are warranted or appropriate.

## L.   Settlement and ADR

The parties discussed the possibility of settlement.  The parties stipulated to private mediation, but agree that key discovery must be taken before conducting the mediation.  This Court's April 2, 2010 Order required the parties to complete private mediation no later than October 31, 2010. However, compliance with this Order was excused by the Court at its November 10, 2010, continued Case Management Conference.

Because of slow document discovery, the parties still are not adequately prepared to conduct a meaningful private mediation.  The parties agree to revisit the issue of private mediation once documents have been exchanged and analyzed and other key discovery has been completed.

## M.   Consent to Magistrate for All Purposes

The parties have consented to Magistrate Judge Edward Chen for all purposes, including trial and the entry of judgment.

## N.   Other References

As of the date of the parties' planning meeting, this case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on

Multidistrict Litigation.  However, the parties reserve their rights with respect to later determinations on these issues.

### O.  Narrowing of Issues

As of the date of the parties' planning meeting, it is not clear which issues, if any, can be narrowed.

At present, Plaintiff does not request that any issues, claims or defenses be bifurcated, but reserves its right to request bifurcation in the future.

Defendants contend that certain aspects of Plaintiff's claims, including the affirmative defense of the statute of limitations, should be tried first and/or bifurcated for trial, and reserve their rights to request this and other similar relief.

### P.  Expedited Schedule

Plaintiff originally hoped that this matter could be handled on an expedited schedule.  However, given the current state of discovery, and the production of approximately 300,000 documents to date, this seems unlikely. Nevertheless, assuming the prompt and efficient completion of discovery going forward, Plaintiff still asserts this matter may be tried within a reasonable time.

Defendants contend that due to the uncertainty as to whether this Court has jurisdiction of this matter, the nature and volume of the discovery required, including potentially discovery that must be taken in Europe (and/or Asia) and a large number of documents to be reviewed and produced, the failure of Plaintiff to produce much of the documents within its custody and control,  the number and complexity of the issues, and the pending motion to stay, this matter cannot be handled on an expedited schedule.

### Q.  Scheduling

The Court had previously asked the parties to tentatively reserve the month of August 2011 for possible trial. However, no trial date has been set

1   pending a final determination as to the California state courts' jurisdiction over

2   E-Pass' claims.

3       **R.    Trial**

4       Plaintiff requests trial by jury.

5       Plaintiff's trial estimate is 10-17 court days.

6       Defendants' trial estimate is 18 to 21 court days.

7       **S.    Disclosure of Non-Party Interested Entities or Persons**

8       Plaintiff filed its Certification of Interested Entities or Persons on

9   December 21, 2009 ("Certification").  Plaintiff attaches hereto as **Exhibit "D"**

10  and incorporates by reference its Certification.    Defendants filed their

11  Certification on February 2, 2010.  Defendants attach hereto as **Exhibit "E"** and

12  incorporate by reference their Certification.

13                                  Respectfully submitted,

14

15  Dated:  March 23, 2011               ROSEN SABA, LLP

16

17                          By:   /s_____

                                  James R. Rosen
18                                Adela Carrasco
                                  Attorneys for Plaintiffs
19                                E-PASS TECHNOLOGIES,INC.

20

21  Dated: March 23, 2011                DUANE MORRIS LLP

22

23                          By:   /s_____

                                  Richard D. Hoffman
24                                Robert Fineman
                                  Attorneys for Defendants
25                                MOSES & SINGER, LLP and
                                  STEPHEN N. WEISS, ESQ.
26

27

28

## DECLARATION OF JAMES R. ROSEN

I, James R. Rosen, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court. I am a partner of Rosen Saba, LLP, counsel of record for Plaintiff E-Pass Technologies, Inc.  I make this declaration in support of the Updated Joint Case Management Conference Statement.

2.      I attest that concurrence in the filing of the document has been obtained from Robert Fineman, Esq., which shall serve in lieu of his signature on the document.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 23rd day of March, 2011 at Beverly Hills, California.



_____/s/_____
James R. Rosen

IT IS SO ORDERED that the case management conference is reset from 3/30/11 to 6/22/11 at 1:30 p.m.  An updated joint CMC statement shall be filed by 6/15/11.  The tentative trial date of August 1, 2011 is hereby vacated.  Court will set new trial date at the 6/22/11 conference.



_____
Edward M. Chen
U.S. Magistrate Judge
Dated: f 3/25/11

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA            )
                               )       ss
COUNTY OF LOS ANGELES          )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 468 North Camden Drive, Third Floor, Beverly Hills, California 90210.

On **March 23, 2011,** I served the foregoing document described as: **UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**, on the interested parties in this action by placing a true copy thereof addressed as follows:

| | |
|---|---|
| Richard D. Hoffman, Esq.<br>Robert Fineman, Esq.<br>DUANE MORRIS LLP<br>One Market Plaza, Suite 2200<br>San Francisco, CA 94105 | ATTORNEYS FOR DEFENDANTS MOSES & SINGER, LLP AND STEPHEN N. WEISS, ESQ.<br>Telephone:  (415) 957-3000<br>Facsimile:   (415) 957-3001<br>E-Mail:<br>rhoffman@duanemorris.com<br>rfineman@duanemorris.com |

[X]      By electronic transmission to all parties at the recipients at the electronic address above by using the Court's CM/ECF electronic filing system.

[X] FEDERAL      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I also declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **March 23, 2011**, at Beverly Hills, California.


_____/s_____
James R. Rosen