IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-PASS TECHNOLOGIES, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>MOSES & SINGER, LLP, et al.,<br><br>    Defendants.<br>_____/ | No. C09-5967 EMC (JSC)<br><br>**ORDER RE MOTION TO COMPEL (Dkt. No. 88) AND JULY 8, 2011 LETTER BRIEF** |

Before the Court are Plaintiff's Motion to Compel filed May 25, 2011 and the parties' July 8, 2011 joint letter brief outlining the dispute remaining following a further meet and confer between the parties. Having considered the parties' written submissions, the Court GRANTS Plaintiff's Motion to Compel in part and DENIES it in part.

**FACTUAL & PROCEDURAL BACKGROUND**

This case arises out of a dispute between Plaintiff E-Pass Technologies, Inc. ("E-Pass") and its former legal counsel, Defendants Moses & Singer, LLP ("Moses & Singer") and Stephen Weiss (a partner at Moses & Singer). Plaintiff sues Defendants for professional negligence, breach of fiduciary duty and negligent misrepresentation arising out of Defendants' representation of E-Pass as the plaintiff in multiple patent infringement actions filed in the United States District Court for the Northern District of California and the United States District Court for the Southern District of Texas. Plaintiff alleges that as a result of Defendants' "below standard of care" representation the courts granted summary judgment

against Plaintiff and held Plaintiff liable for fees and costs in the approximate amount of $2.3 million.

Plaintiff served thirty-five (35) requests for the production of documents on Defendants. Defendants served timely objections to Plaintiff's request asserting attorney-client and work product privilege, but representing that they would produce all relevant, non-privileged documents. Following a meet and confer, Defendants produced two privilege logs identifying approximately 87 withheld documents responsive to the request for the production of documents. These documents date from as early as 2002 through July 2009 and are generally described as "email communication with counsel." See, e.g., Exhibits A & B attached to July 8, 2011 filing.

Plaintiff subsequently filed a motion to compel production of these withheld documents on the ground that the documents are not privileged because 1) Defendants represented Plaintiff through 2008, 2) the communications are between counsel and other staff who represented Plaintiff during the relevant time period, 3) Defendants billed Plaintiff for some of the withheld communications, and 4) an undisclosed conflict of interest had developed between counsel and Plaintiff at the time they were made. Defendants opposed the motion, maintaining their claim of privilege. The parties subsequently requested that the motion to compel be taken off calendar to allow the parties to meet and confer regarding the dispute. The Court granted the parties request and referred any further discovery disputes to the undersigned judge.

On July 8, 2011, the parties submitted a joint letter brief indicating that the parties were unable to resolve the dispute, but that they had agreed to have the dispute resolved through this Court's in camera inspection of the withheld documents.

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." See Fed. R. Civ. P. 26(b)(1). Parties withholding documents on a claim of privilege must provide a privilege log describing the documents or communications in sufficient detail to enable the demanding party to assess the applicability of the privilege or protection. See Fed. R. Civ. P. 26(b)(5).

2

Here, Defendants provided privilege logs identifying the communications at issue and asserting both attorney-client and work product privilege. In this diversity action, California law governs claims of attorney-client privilege and federal common law governs disposition of work product privilege. See Kaufman & Broad Monterey Bay v. Travelers Property Cas. Co. of America, No. 10–02856, 2011 WL 2181692, at *5 (N.D. Cal. Jun. 2, 2011).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (internal quotations omitted). Further, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." Id. Under California law "[t]he attorney-client privilege, set forth at [California] Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.'" Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009) (quoting Cal. Evid. Code § 954). A "confidential communication" between the attorney and the client is "information transmitted between a client and his or her lawyer in the course of that relationship." Cal. Evid. Code § 952.

In contrast, the work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2004). "[T]he work product doctrine only attaches to documents prepared in anticipation of litigation or for use in trial." Hickman v. Taylor, 329 U.S. 495, 511-12 (1947).

The question here is whether and to what extent these privileges apply to communications within a law firm regarding potential claims against the firm arising from its representation of an outside client. In Thelan Reid & Priest LLP v. Marland, No. 06-2071, 2007 WL 578989 (N.D. Cal. Feb. 21, 2007), the court considered whether an intra-firm communication relating to the firm's representation of a client could be withheld from the client as privileged. The court observed that "[a] rule requiring disclosure of all communications relating to a client would dissuade attorneys from referring ethical problems to other lawyers, thereby undermining conformity with ethical obligations." Id. at *7.

3

Nonetheless, the court concluded that where there was a potential conflict of interest between the firm and its client the firm had to produce any communications 1) discussing claims that the client might have against the firm, 2) discussing known errors in the firm's representation of the client, and 3) discussing any known conflicts between the firm and the client. See id. at *8. As another court held: "a law firm's communication with in house counsel is not protected by the attorney client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communication." In re Sunrise Securities Litigation, 130 F.R.D. 560, 597 (E.D. Pa. 1989). "[W]here conflicting duties exist, the law firm's right to claim privilege must give way to the interest in protecting current clients who may be harmed by the conflict." In re SonicBlue, Inc., No. 03–51775, 2008 WL 170562, at *9 (N.D. Cal. Bkrtcy. Jan. 18, 2008) (internal citations omitted).

The above analysis applies equally to a claim of privilege under the work product doctrine:

> Like the attorney-client privilege, protection afforded by the work-product doctrine is not absolute. Clearly, lawyers cannot cloak themselves in its mantle when their mental impressions and opinions are directly at issue. The doctrine does not apply where a client, as opposed to some other party, seeks discovery of the lawyer's mental impressions. It cannot shield a lawyer's papers from discovery in a conflict of interest context anymore than can the attorney-client privilege.

Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, PC, 212 F.R.D. 283, 286 (E.D. Pa. 2002) (internal citations omitted); see also Thelan v. Marland, No. 06-2071, 2007 WL 578989, at *8 (N.D. Cal. 2007) (stating that the same analysis applies to work product privilege as to attorney client privilege in cases where a conflict arises).

## DISCUSSION

The Court has reviewed each of the communications at issue. The communications fall into the following four categories: 1) communications that took place while Moses & Singer and E-Pass were in an attorney-client relationship, 2) communications for which Moses & Singer billed E-Pass, 3) communications which post-date the attorney-client

4

relationship, and 4) otherwise non-privileged communications.

## A. Communications During the Attorney-Client Relationship

It is undisputed that Moses & Singer represented E-Pass in on-going litigation through at least some time after November 14, 2007, the date the district court decided the pending attorneys' fees motion. See E-Pass Technologies, Inc. v. 3Com Corp., Nos. 00-2255, 03-4747, 04-0528, 2007 WL 4170514 (N.D. Cal. Nov. 14, 2007). The Court finds that the relationship was terminated, at the latest, on May 8, 2008. By that date E-Pass had retained new counsel to represent it on appeal on the attorneys' fees order, and its new counsel had sent Moses & Singer a proposed agreement to toll any claims that E-Pass might have against Moses & Singer arising out of the firm's "former[]" representation of E-Pass. Notably, under California law the statute of limitations for legal malpractice is automatically tolled *until* the termination of the attorney-client relationship, see Truong v. Glasser, 181 Cal.App.4th 102, 115-17 (2009).; thus, there was no reason for E-Pass to even propose a tolling agreement unless it believed that its attorney-client relationship with Defendants had ended.

The majority of the communications that took place during the attorney-client relationship, that is, before May 8, 2008, relate to the attorneys' fees motion brought against both E-Pass and Moses & Singer. Moses & Singer cannot credibly dispute that it owed a fiduciary duty to E-Pass during the time it represented E-Pass on this attorneys' fees motion.[1] Rather, it is making the unprecedented argument that notwithstanding its fiduciary duty, at the same time it was representing E-Pass on the motion it could engage in intra-firm communications relating to how to protect itself from liability on the motion and then withhold those communications from E-Pass. Moses & Singer's interests were in conflict with those of E-Pass to the extent its interests were not fully aligned with E-Pass. See In re Sunrise Securities Litigation, 130 F.R.D. 560, 595 (E.D. Pa. 1989) (stating that "when a law firm seeks legal advice from its in house counsel, the law firm's representation of itself

---

[1] Defendants' argument that the June 2007 email from Peter Reisser "the primary financial backer of E-Pass" threatened adverse action against Moses & Singer and somehow calls the attorney-client relationship into question is unpersuasive. Moses & Singer continued to represent E-Pass following this communication and there is no indication that Moses & Singer advised E-Pass of a conflict between Moses & Singer and E-Pass (as opposed to Reisser) and the need for E-Pass (as opposed to Reisser) to retain new counsel.

5

(through in house counsel) might be directly adverse to, or materially limit, the law firm's representation of another client, thus creating a prohibited conflict of interest"). If it intended to separately--and confidentiality--represent itself on the fees motion it had a duty to disclose this conflict and obtain E-Pass's consent to continued representation. Because it failed to do so, it cannot claim that internal communications discussing or implicating such a conflict are privileged. See Thelan v. Marland, No. 06-2071, 2007 WL 578989, at *8 (N.D. Cal. Feb. 21, 2007). Accordingly, Moses & Singer must produce the following communications which took place during the attorney-client relationship and which relate to the pending motion for attorneys' fees: Exhibit B, Documents 3-22.

There are five other communications at issue that took place during this period, but they need not be produced because they are not relevant to this action: Exhibit A, Nos. 1-3 (conflict checks) and Exhibit B, Nos. 1-2 (previously produced in redacted form, redacted information not relevant to underlying action).

**B.     Billed-For Post-May 8, 2008 Communications**

Moses & Singer has withheld communications for which it billed E-Pass. These communications fall into two categories: those that took place while the attorney-client relationship was still in effect (Documents 6-20), and those that took place following termination of the attorney-client relationship, Documents 46-50. The first category is discussed above and must be produced regardless of whether E-Pass was billed for them.

The second category presents a close and novel question. The communications in Documents 46-50 took place after the termination of the attorney-client relationship and would be privileged except for the fact that at least one of the Moses & Singer attorneys party to the communications billed E-Pass for reviewing the communications. The Court notes that it seems fundamentally unfair to bill a client (or, more precisely, former client) for work and then assert a claim of privilege against that same client with respect to disclosure of the billed-for work. Moses & Singer was free to engage in internal communications regarding E-Pass during this time, but it should have set up a separate billing code for those communications and not continued to bill them to E-Pass. However, neither party has offered any authority addressing whether Moses & Singer's conduct in this regard results in

6

de facto disclosure of the communications and thus a waiver. The Court has independently researched the issue and has not found any decisions considering a similar situation.

It is, however, unnecessary to reach this issue. Based on the Court's review of Documents 46-50 and the First Amended Complaint, the Court finds that they are not relevant to E-Pass's claims for professional negligence, breach of fiduciary duty and negligent misrepresentation with respect to Moses & Singer's representation of E-Pass through 2007. Accordingly, the Court finds that Moses & Singer is not required to produce Documents 46-50.

**C.     Post May 8, 2008 Communications**

As discussed above, the attorney-client relationship ended May 8, 2008 at the latest. Communications between Moses & Singer attorneys after this date, even those which discuss E-Pass, are protected by the attorney-client privilege. Thus, the communications in Exhibit A, Documents 4-5 and Exhibit B, Documents 23-45, 52-64, 66-70, 72-82 post-date the termination of the relationship are privileged and need not be disclosed.

**D.     Communications Involving Third Parties**

As discussed above, the attorney-client privilege only protects communications between a client and attorney – here, internal communications between Moses & Singer attorneys. Moses & Singer asserts privilege with respect to four communications (Documents 51, 65, 68 and 71) which consist of emails from E-Pass's new counsel (Cislo) to Moses & Singer attorneys that were forwarded to various other attorneys at Moses & Singer. Communications between Moses & Singer and a third party are not subject to a claim of privilege. See, e.g., United States v. ChevronTexaco Corp., 241 F.Supp.2d 1065, 1070 (N.D. Cal. 2002) ("stating that the privilege protects communications between a client and attorney, but "the privilege does not extend to communications between either the client or its attorney and a third party"). Nor is the identity of the individuals at Moses & Singers to whom the emails were forwarded privileged; the privilege log identifies to whom the emails were sent.

The Court can find no basis for Moses & Singer's claim that emails from a third party to Moses & Singer which were forwarded to other Moses & Singer attorneys are privileged. Accordingly, Documents 51, 65, and 71 are not privileged and must be disclosed. Similarly,

Document 68 is a redacted email from which Moses & Singer has redacted the portion of the email forwarding the email to other staff. This information is also not privileged. Moses & Singer shall produce an unredacted version of Document 68.

Accordingly, for the reasons discussed above, Defendants must provide Plaintiff with copies of the following documents: Exhibit B, Documents 3-22, 51, 65, 68, and 71.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED IN PART. (Dkt. No. 88). Within 14 days from the filing date of this Order, Defendants shall provide Plaintiff with copies of the nonprivileged communications as set forth in this Order.

**IT IS SO ORDERED.**

Dated: August 26, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE