UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-PASS TECHNOLOGIES,<br><br>    Plaintiff,<br><br>    v.<br><br>MOSES & SINGER, LLP, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-5967 EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**(Docket Nos. 116, 117)** |

       Plaintiff E-Pass Technologies, Inc. filed suit against its former attorneys, Defendants Moses & Singer, LLP, and Stephen N. Weiss, Esq., asserting claims for negligent misrepresentation, breach of fiduciary duty, and professional negligence. In its First Amended Complaint ("FAC"), Plaintiff also includes allegations touching directly on federal patent law, alleging that defendants misunderstood Plaintiff's '311 Patent and failed "to properly construe the validity, construction or effect of Federal patent law to the '311 Patent." FAC ¶ 9. An action is currently pending in state court between the same parties, with Plaintiff asserting only state law bases for its claims against Defendants.

       Pending before the Court are Defendants' Motion to Strike portions of Plaintiff's FAC on the grounds of judicial estoppel and Full Faith and Credit, Docket No. 116, and their Motion to Dismiss Plaintiff's FAC on the grounds of lack of subject matter jurisdiction and the *Colorado River* doctrine, Docket No. 117. The Court held a hearing on this matter on October 24, 2011. After considering the parties' submissions and oral argument, and for the reasons set forth below, the Court hereby **DENIES** Defendants' motions to dismiss and strike Plaintiff's FAC.

# I. FACTUAL & PROCEDURAL BACKGROUND

## A. State Court Lawsuit

E-Pass initiated the state court litigation in January 2009. Docket No. 20 (Ord Decl., Ex. A) (docket sheet for state court litigation). In the state court action, the operative complaint is the second amended complaint, which Plaintiff filed August 3, 2009, alleging causes of action for negligent misrepresentation, breach of fiduciary duty and negligence based on defendants' representation of E–Pass in the federal patent litigation. E-Pass alleges in the state action that "Defendants pursued, and continued to pursue, a litigation that, in the exercise of reasonable care, they should not have advised E-Pass to pursue." Mot. for Leave to Amend at 3. More specifically, E-Pass alleges the following.

In February 2000, E-Pass obtained ownership of the '311 patent. At about the same time, E-Pass hired Moses & Singer, a law firm, to represent it in, *e.g.*, seeking license and business opportunities with respect to the '311 patent. Mr. Weiss is a partner in the Moses law firm and was the primary attorney working on E-Pass's matters.

Defendants advised E-Pass to forego licensing and business opportunities with respect to the patent and instead recommended focusing on suing entities that Defendants believed were infringing on the patent. Defendants failed to disclose that, by engaging in this strategy, E-Pass would become saddled with a reputation in the patent community as a "patent troll."

Following Defendants' advice, E-Pass agreed to file a patent infringement lawsuit against 3Com in February 2000. Prior to filing the lawsuit, Defendants failed to conduct a proper investigation to determine whether the lawsuit had a legal and/or factual basis. In August 2002, the federal trial court in the 3Com case granted 3Com's motion for summary judgment. Subsequently, that decision was reversed by the Federal Circuit, and the case was remanded. This gave E-Pass the opportunity to conduct further investigation and discovery to support its case.

Instead of focusing on the 3Com case, however, Defendants recommended filing more patent infringement lawsuits, and, accordingly, an action was initiated against Visa in October 203 and another against PalmOne in February 2004. A lawsuit was also filed against Microsoft.

In March 2005, 3Com, Visa, and PalmOne filed motions for summary judgment. Defendants

failed to obtain (whether through discovery or other informal avenues) any new evidence to oppose the motions. In March 2006, the federal trial court granted summary judgment to 3Com, Visa, and PalmOne. The court held, *inter alia*, that "E-Pass failed to adduce any evidence to support a finding that any defendant or its customers practiced all of the steps of the claimed '311 Patent method." Subsequently, the trial court granted 3Com, Visa, and PalmOne's motion for attorneys' fees, explaining, *inter alia*, that E-Pass had conducted a "'minimalist pre-filing investigation,'" that E-Pass had failed to provide any evidence in support of its case, and that E-Pass had thereby engaged in vexatious or unjustified litigation. After the trial court's summary judgment decision was affirmed by the Federal Circuit in January 2007, the trial court awarded fees and costs to 3Com, Visa, and Palm in an amount exceeding $2.3 million. The fee decision was also affirmed by the Federal Circuit.

Thus, after seven years of litigation, E-Pass had paid Defendants millions of dollars in fees and costs, failed to obtain any benefit as a result of Defendants' work, had been saddled with the reputation of being a patent troll (and therefore had no ability to market the '311 patent), and forced to pay the fees and costs of 3Com, Visa, and PalmOne. E-Pass also failed to prevail in its lawsuit against Microsoft.

Thereafter, E-Pass brought the state suit against its former lawyers. In October 2009, the state trial court rejected Plaintiff's claim that there are no issues of patent law in the state action and granted Defendants' demurrer based on lack of subject matter jurisdiction. The state trial court concluded there was no subject matter jurisdiction because the claims required resolution of substantial questions of patent law, and as such raised questions within the exclusive jurisdiction of the federal court.

On appeal to the California Court of Appeal, Plaintiff argued that the trial court erred in concluding that its claims raised substantial issues of patent law, and represented that E-Pass will not challenge the claim construction theory in the state action. Mot. for Leave to Amend at 6. Specifically,

> At oral argument, counsel for E-Pass expressly disavowed any challenge to the claim construction proffered and argued by defendant attorneys in the federal litigation. Counsel confirmed that E–Pass does

3

> not allege any negligence with respect to the manner in which defendant attorneys defined the scope of the patent. Rather, E-Pass alleges that the defendant attorneys knew or should have known that they did not have sufficient evidence to support the claims being asserted.

*E-Pass Technologies, Inc. v. Moses & Singer, LLP*, 189 Cal. App. 4th 1140, 1148 (2010). On the basis of Plaintiff's representations, the Court of Appeal reversed the trial court's decision on November 5, 2010, and held that claims did not raise substantial issues of patent law and thus the state court had jurisdiction to hear Plaintiff's claims. *Id.* at 1142. The Court of Appeal noted that it "base[d] [its] decision upholding state court jurisdiction on the limited scope of E–Pass's allegations, as acknowledged in its briefs and at oral argument. On remand E–Pass will be bound by the narrow construction proffered in this court." *Id*. at 1148 n.4.

B.  Federal Court Lawsuit

In December 2009, after the Superior Court's ruling but before the Court of Appeal decision, E-Pass initiated this federal lawsuit. E-Pass pled the same claims in the federal lawsuit as in the state lawsuit based on the same underlying facts. Based on these allegations, E-Pass asserts claims for (1) negligent misrepresentation, (2) breach of fiduciary duty, and (3) professional negligence (*i.e.*, legal malpractice). With respect the first claim, E-Pass alleges, *inter alia*, that Defendants negligently misrepresented that "they could prove infringement of the '311 Patent, and that there was sufficient evidence to support E-Pass'[s] claims asserted in the Underlying Actions [against 3Com, Visa, PalmOne, and Microsoft]." Compl. ¶ 42; FAC ¶ 44. With respect to the second claim, E-Pass alleges, *inter alia*, that Defendants breached their fiduciary duty to E-Pass by "misle[ading] [it] into believing it had viable, valuable patent claims by misrepresenting to or concealing from E-Pass the true facts showing the opposite, and by assuring E-Pass positive outcomes in the Underlying Actions." Compl. ¶ 50(f); FAC ¶ 53(g). E-Pass seems to include, *inter alia*, the above allegations as part of its third claim for professional negligence (*i.e.*, legal malpractice). The original complaint in this Court alleges jurisdiction based only on 28 U.S.C. § 1338. Compl. ¶ 7.

At a June 22, 2011 Case Management Conference ("CMC") following the California Court of Appeal's decision, Defendants argued that this Court may not have subject matter jurisdiction over this action in light of the California Court of Appeal opinion in the corollary state action. *See*

*E-Pass v. Moses & Singer*, 189 Cal. App. 4th 1140 (2010). In response, Plaintiff asserted diversity as an alternative ground for jurisdiction. The Court gave Plaintiff an opportunity to file an FAC within twenty days. Docket No. 98. After the hearing, Plaintiff asserts that it discovered "minor modifications" it needed to make in order to properly allege original jurisdiction under § 1338. Mot. for Leave to Amend at 2. Specifically, Plaintiff asserts that, during discovery in the federal action, it discovered the basis for a federal theory of liability regarding the patent misconstruction. Mot. for Leave to Amend at 5-6. Plaintiff has also admitted that it views the state court decision upholding jurisdiction as unduly restrictive, and thus would now prefer to litigate in federal court. *See* Joint CMC, Docket No. 96, at 2-3.

Accordingly, Plaintiff's FAC now alleges harm arising, *inter alia*, from Defendants' "misunderstanding of the '311 Patent and Defendants' failure to properly construe the validity, construction, or effect of Federal patent law to the '311 Patent. *See* FAC ¶ 9. The federal action includes all theories of liability against Moses & Singer in the state action, plus these additional allegations that are not included in (indeed expressly excluded from) the state action. Mot. for Leave to Amend at 4. The FAC alleges federal jurisdiction based on both patent law and diversity. FAC ¶¶ 8-9. Plaintiff avers that it will dismiss the state action against Moses & Singer and Weiss once this Court rules that it has jurisdiction under either of its alternative theories. Mot. for Leave to Amend at 5. Plaintiff will then maintain the state action only against the Squire, Sanders & Dempsey defendants, who cannot be joined in the federal suit due to statute of limitations problems. Mot. for Leave to Amend at 6.

## II. DISCUSSION

Defendants assert a number of theories for dismissing, staying, or striking Plaintiff's FAC. They argue that the Court should strike Plaintiff's new allegations in the FAC (those asserting Defendants misunderstood and misconstrued the patent) based on judicial estoppel and the Full Faith and Credit Act. *See* Docket No. 116. In addition, they argue that the Court should dismiss the FAC for lack of subject matter jurisdiction and dismiss or stay the action under the *Colorado River* doctrine. *See* Docket No. 117.

A. <u>Legal Standard</u>

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), overruled on other grounds, 510 U.S. 517 (1994). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Id*. (citation and internal quotation marks omitted). When ruling on a motion to strike, a court views the pleading under attack in the light most favorable to the nonmoving party. See *RDF Media Ltd. v. Fox Broad Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Courts generally disfavor motions to strike because striking is such a drastic remedy. *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (stating that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted'").

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).

Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to

1  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or
2  unreasonable
3  inferences.").

B.  <u>Judicial Estoppel</u>

Defendants contend that Plaintiff expressly represented to the state court that it was not pursuing any federally-based claims against Defendants. As the Court of Appeal noted, "At oral argument, counsel for E-Pass expressly disavowed any challenge to the claim construction proffered and argued by defendant attorneys in the federal litigation. Counsel confirmed that E-Pass does not allege any negligence with respect to the manner in which defendant attorneys defined the scope of the patent." *E-Pass Technologies, Inc. v. Moses & Singer, LLP*, 189 Cal. App. 4th 1140, 1148 (2010). On the basis of these statements, the state Court of Appeal allowed Plaintiff to proceed in state court finding there was no exclusive federal jurisdiction over the claims as asserted and limited the lawsuit to what the state court concluded were narrow claims that raised no substantial issue of patent law. *Id*. at 1148 n.4 ("We base our decision upholding state court jurisdiction on the limited scope of E-Pass's allegations, as acknowledged in its briefs and at oral argument. On remand E-Pass will be bound by the narrow construction proffered in this court.").

In the aftermath of the state court's decision, Plaintiff represented at this Court's CMC on June 15, 2011 that it would remain in federal court because it viewed the state court decision as too restrictive. Hoffman Decl. ¶ 3. Plaintiff's FAC thus raises as substantive patent law allegations for the first time, claims that Defendants "misunderst[ood] [] the '311 Patent and [] fail[ed] to properly construe the validity, construction or effect of Federal patent law to the '311 Patent." FAC ¶¶ 9, 65(c).

Defendants argue that Plaintiff should be judicially estopped from making such assertions because it "had unequivocally and expressly stated to two state courts that its claims do not encompass substantial issues of federal patent law meriting federal question jurisdiction." Mot. to Strike at 4. Plaintiff argues in response that its current position is not "clearly inconsistent" with its position in state court. Plaintiff contends that it never argued in state court that Defendants understood the '311 patent or properly construed it; rather, it merely excluded those allegations from

7

its state court claims. Opp. to Mot. to Strike at 5. Because Plaintiff has always included federal patent jurisdiction as its basis for jurisdiction in the federal action, Plaintiff argues that there can be no question that its state court statements were not inconsistent with its actions in this Court and do not bind it here. Opp. to Mot. to Strike at 2-3.

"Federal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998). A district court has discretion in deciding whether judicial estoppel is applicable. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion") (quotations omitted); *Estate of Shapiro v. United States*, 634 F.3d 1055, 1057 (9th Cir. 2011) (noting that a district court's application of judicial estoppel is reviewed for abuse of discretion). Its general purpose is to protect the integrity of the judicial process and to "prevent[] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000). Thus, the doctrine typically applies when a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (holding that judicial estoppel barred New Hampshire from asserting a position about a river boundary contrary to a position it had taken in an earlier litigation that had culminated in a consent decree). *See also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) ("Accordingly, because Spectrum obtained a favorable decision in the district court as a result of its assertions that the alleged infringement first arose in 1999, we find that Spectrum is estopped from claiming before this court that the 2001 label formed the basis of Sunset's claim.").

Courts have used three criteria to determine when judicial estoppel is appropriate: (1) when a party's later position is clearly inconsistent with its original position; (2) when the party has successfully persuaded the court of the earlier position; and (3) when allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party. *See United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008); *see also New Hampshire*, 532 U.S. at 750-51 (2001); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249

(2010). These factors, however, are not "inflexible prerequisites" or "an exhaustive formula." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). "Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

1. Jurisdiction and Estoppel

In the instant case, the Court notes as a preliminary matter that it is unclear whether judicial estoppel should be applied to inconsistent statements that bear on a court's jurisdiction. Wright and Miller have noted that "[b]road interests of public policy may limit the reach of judicial estoppel." 18B C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 4477 (2d ed. 2011). These public policy interests include jurisdictional concerns. *Id.* In *Int'l Union of Operating Engineers v. County of Plumas*, 559 F.3d 1041 (9th Cir. 2009), for example, the Ninth Circuit allowed a party who had originally removed to federal court on the basis of federal subject matter jurisdiction to challenge that jurisdiction on appeal. The Court reasoned that even though the party had taken inconsistent positions, its concerns regarding jurisdiction trumped any equitable concerns. *Id.* at 1044. The Court concluded that the party "may be guilty of chutzpah, but we must consider the merits of its argument anyway." *Id.*

While it seems obvious that estoppel cannot create federal jurisdiction that otherwise does not exist, similar logic applies in the inverse situation, when a party that had earlier claimed no need for federal jurisdiction is now asserting a basis for such jurisdiction. "The interests of the courts in protecting themselves and opposing parties against inconsistency may yield to such interests as the desire to protect against deciding a case when federal subject-matter jurisdiction does not exist, [or] *to exercise federal subject-matter jurisdiction when it does exist*." Fed. Prac. & Proc. Juris. § 4477 (emphasis added). Courts have recognized the federal courts' general duty to exercise jurisdiction where it is present. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1967) (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"); *see also Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 981-982 (8th Cir. 2009) ("Even if the parties wasted judicial resources up to this point and misled the courts on this issue in the process, we may not forge ahead on blind principle without jurisdiction to do so."); *Whiting v. Krassner*, 391 F.3d 540, 543-544 (3d Cir. 2004) ("[C]ourts have generally refused to

resort to principles of judicial estoppel to prevent a party from 'switching sides' on the issue of jurisdiction."), *certiorari denied*, 545 U.S. 1131; *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) ("'[P]rinciples of estoppel do not apply' to questions of subject matter jurisdiction.") (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *In re Southwestern Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976) ("Whatever the scope of the [judicial estoppel] doctrine may be, so far as we have been able to discover it has never been employed to prevent a party from taking advantage of a federal forum when he otherwise meets the statutory requirements of federal jurisdiction. . . . Judicial estoppel principles cannot conclusively establish jurisdictional facts."), *affirmed as modified by* 542 F.2d 297 (en banc), *reversed on other grounds*, 430 U.S. 723 (1977); *But see Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir. 1999) (indicating that judicial estoppel may be invoked to prevent claims of lack of jurisdiction); *Gamblin v. Miss. Farm Bureau Mut. Ins. Co.*, No. 3:07CV698 HTW-LRA, 2010 U.S. Dist. LEXIS 42572 (S.D. Miss. Apr. 30, 2010) (applying judicial estoppel to bar plaintiffs sought from bringing suit in federal court under §§ 1981 and 1982 after their state court action was dismissed because previously, plaintiffs had successfully achieved remand of their state action by expressly disavowing any claims under federal law). This duty to exercise jurisdiction applies with particular force where, as here, federal jurisdiction is exclusive.

Similar to the case at bar, in *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363 (Fed. Cir. 2006), the plaintiff had previously successfully argued for remand of a breach of contract claim on the basis that there was no substantial issue of patent law. *Id*. at 1361 ("Dr. Bonzel moved to remand that federal action to the Minnesota state court, stating that he was not charging infringement or seeking a declaration of patent rights, but was solely seeking enforcement of a contract and remedy for its breach."). Then, when that state court action was dismissed on *forum non conveniens* grounds, Dr. Bonzel brought a subsequent suit in federal court claiming federal patent jurisdiction under § 1338 and asserting new support for such jurisdiction. *Id*. at 1361-62. The Federal Circuit declined to apply judicial estoppel to Dr. Bonzel's assertion of § 1338 jurisdiction, noting that it was questionable whether estoppel could even apply to jurisdictional questions. While the court went on to conclude that there were no substantial issues of patent law present in that case, it nonetheless did

1  not apply estoppel to bar Dr. Bonzel from raising new justifications for patent jurisdiction
2  notwithstanding his earlier inconsistent statements. *Id*. at 1363.

3        Similar to Dr. Bonzel, Plaintiff in this case first asserted that federal jurisdiction was not
4  proper as its claims raised no substantial issue of patent law, convinced a court to adopt that
5  reasoning, and later reversed itself to assert new, contradictory grounds for federal patent
6  jurisdiction. Thus, *Bonzel* and the other cases described above cast doubt on whether the Court
7  should exercise its discretion to preclude Plaintiff from asserting new justifications for federal
8  jurisdiction, especially where exclusive federal jurisdiction is at issue.

9        2.    <u>Judicial Estoppel Factors</u>

10       Even assuming that principles of judicial estoppel apply to the instant case, the Court finds
11 that judicial estoppel does not bar Plaintiff's conduct in particular because the state court did not rely
12 on Plaintiff's assertions in a way that would later "create the perception that either the first or the
13 second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Rather, the state
14 court simply applied the facts and allegations before it to determine whether it had jurisdiction to
15 hear Plaintiff's claims.

16       In the instant case, while the state court relied on Plaintiff's assertions that it was not
17 contesting Defendants' understanding or construction of the patent in state court, *E-Pass*, 189 Cal.
18 App. 4th at 1148 n.4, it could not have relied on any assertion (implied or express) that Plaintiff
19 would not make such claim in federal court. As Defendants conceded at oral argument hearing, the
20 California Court of Appeal made no reference to and apparently was not aware of the federal
21 complaint. Indeed, had Plaintiff been more transparent and alerted the state court that it might allege
22 broader claims in the federal action, its candor would not have changed the state court's analysis
23 because the state court was deciding its jurisdiction based on the state court pleadings. In short, the
24 state court did not rely on any statement contradicting Plaintiff's position in this Court. *See Sivak v.*
25 *Hardison*, --- F.3d ----, 2011 WL 3907111, at *25 n.2 (9th Cir. Sept. 7, 2011) ("Absent the district
26 court's reliance on Sivak's concession, Sivak is not bound by his prior assertions.") (citations
27 omitted).

28       Furthermore, for the same reason, Plaintiff's arguments to this Court do not imply that the

state court erred in its decision, a requirement for judicial estoppel. *See Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249 (2010) (declining to apply judicial estoppel in part because the somewhat inconsistent positions would not result in inconsistent court decisions); *Cf. Gamblin*, 2010 U.S. Dist. LEXIS 42572 at *18 (applying judicial estoppel where plaintiffs included statement in their complaint that "these plaintiffs expressly waive and hereby disavow any claim for any relief whatsoever under any federal laws or any federal question concerning the allegations in this Complaint, whether said allegations are pled or not"); *Matek v. Murat*, 638 F. Supp. 775, 782-83 (C.D. Cal. 1986) (holding judicial estoppel would apply where "plaintiffs ha[d] on several occasions made it abundantly clear that they are not urging any claim under RICO" in that court); *Wade v. Woodings-Verona Tool Works, Inc.*, 469 F. Supp. 465, 467 (W.D. Pa. 1979) (holding judicial estoppel would apply to a plaintiff's statement in motion for summary judgment of defendant's counterclaim for patent invalidity that there was no case or controversy regarding the patent's validity because it was not claiming, and never would claim, patent infringement).

This case is thus distinct from others in which courts have applied judicial estoppel. For example, in *Patriot Cinemas, Inc. v. General Cinemas Corp.*, the parties had been engaged in protracted jurisdictional battles over whether plaintiff's state antitrust claim was merely a disguised federal claim.[1] 834 F.2d 208, 214 (1st Cir. 1987), *cited with approval by Helfand*, 105 F.3d at 535. After the federal district court had denied remand and dismissed the action, determining that the state court antitrust claim was no more than a disguised federal claim,[2] Plaintiff appealed the federal decision and also filed a complaint in state court. The state court complaint omitted the antitrust claim entirely. Defendant then requested that the state court stay the action until the First Circuit considered whether Plaintiff's antitrust claim was necessarily a federal claim. In response, Plaintiff

---

[1] Antitrust claims, like patent claims, are subject to exclusive federal jurisdiction. *See Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985).

[2] The court dismissed the federal action for lack of subject matter jurisdiction rather than simply denying remand under the then-applicable doctrine of derivative jurisdiction. *Patriot Cinemas*, 834 F.2d at 209. "According to that doctrine, 'a federal district court does not have removal jurisdiction over a claim that the state court lacked subject matter jurisdiction to decide in the first place.'" *Id.* at 210 (quoting *Pueblo International, Inc. v. Reichard De Cardona*, 725 F.2d 823, 828 (1st Cir. 1984)). Thus, under the facts of the case, there was no federal antitrust action remaining.

1  "represented [to the state court] that it would not pursue a separate claim based on state antitrust law
2  regardless of the outcome of its pending federal appeal." *Id*. at 211.  Ostensibly relying on that
3  statement, the state court denied the motion for a stay.  Plaintiff then attempted to retreat from this
4  position in the federal appeal, noting that it may want to pursue the antitrust claim *in state court*
5  after all, should the court reverse the district court's decision.  The First Circuit precluded Plaintiff
6  from doing so, holding "that the doctrine of judicial estoppel bars Patriot from changing the position
7  it previously took in the superior court that it does not intend to proceed on the state antitrust claim
8  'at all.'" *Id*. at 214.

9  Similarly, in *Gamblin*, on which Defendants heavily rely, the court barred the plaintiffs from
10 asserting the very claims they had previously disavowed in the same court.  2010 U.S. Dist. LEXIS
11 42572 at *4.  These plaintiffs had previously achieved federal court remand of their action by
12 expressly disavowing any claims under federal law; they later sought to bring suit in federal court
13 under §§ 1981 and 1982 (after their state court action was dismissed).  Because the federal court had
14 relied on plaintiff's disavowal of federal claims in remanding the action to state court in the first
15 place, the court concluded that they were judicially estopped from bringing those claims in a new
16 federal action.  *Id*. at *18-20.

17 In contrast to the case at bar, *Patriot Cinemas* and *Gamblin* involved situations in which the
18 plaintiff attempted to retreat from an earlier position that it would not bring particular claim(s) in a
19 certain court.  In short, the first court relied on the earlier representation from which the plaintiff
20 later retreated.  As noted above, such reliance, an essential element of judicial estoppel (*see Patriot
21 Cinemas*, 834 F.2d at 213-14; *Gamblin*, 2010 U.S. Dist. LEXIS 42572 at *17-18), is lacking here.

22 Moreover, while the Court is sympathetic to Defendants' allegations of forum shopping,
23 Defendants fail to explain in any detail how Plaintiff "would derive an unfair advantage or impose
24 an unfair detriment on the opposing party if not estopped."  *New Hampshire*, 532 U.S. at 743.
25 Although they have expended time and resources litigating these issues in two fora, the litigation in
26 both courts is still in the early stages.  There is no substantial issue of prejudice to Defendants'
27 ability to respond to Plaintiff's broader allegations in this Court.  In addition, the "advantage"
28 Plaintiff has acquired in being in federal court is no greater than what it would have achieved had it

13

capitulated to Defendants' position from the outset that this case belonged in federal court. Indeed, Defendants now find themselves in the forum they initially requested. Thus, unlike some cases cited by Defendants, here the inconsistency itself has not unfairly benefitted Plaintiff. *Cf. United Nat'l Ins. Co.*, 555 F.3d at 779-80 (applying judicial estoppel where insured had won previous case by asserting the infringement occurred in 1999 and sought to argue in new action that infringement did not occur until 2001).

Thus, the Court concludes that Plaintiff is not judicially estopped from asserting allegations based on federal patent law contained in the FAC in this action. The Court thus DENIES Defendants' motion to strike on the basis of judicial estoppel.

C. Full Faith & Credit

Defendants next argue that the Court should strike Plaintiff's new allegations in the FAC regarding Defendants' alleged misunderstanding or misconstruction of the patent based on the Full Faith and Credit Act, due to the state court's decision that Plaintiff's claims against Defendants do not raise any substantial issue of federal patent law. Mot. to Strike at 5; FAC ¶¶ 9, 47, 53(a), 65. The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996).

The state court decision has no preclusive effect over Plaintiff's FAC. The Supreme Court has held that there is no *per se* rule barring federal claims based on the same set of facts as previous state law claims where the federal claims could not have been brought in state court. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985). As the Ninth Circuit has concluded, "Under California preclusion law, in order for *res judicata* to apply to claims not raised in previous proceedings, the court rendering the prior judgment must have had jurisdiction to hear such claims." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985). Thus, a prior state court suit cannot preclude a subsequent action based on exclusive federal jurisdiction. *Id.* at 1436 ("Because California preclusion law includes the requirement of prior jurisdictional competency, . . . we find that Eichman is not precluded from bringing a federal action when the state court had no jurisdiction to hear Eichman's federal claims.") (internal citation omitted).

14

Furthermore, the state court did not adjudicate the substantive question whether Defendants committed negligence or malpractice in failing to construe the '311 patent properly. The state court merely held it had jurisdiction over the Plaintiff's claim as alleged in that court. That question is separate and distinct from the question whether this Court has federal jurisdiction based on the FAC herein.

Accordingly, the Court DENIES Defendants' motion to strike on the basis of Full Faith and Credit.

D.  Subject Matter Jurisdiction

Defendants next argue that the Court should dismiss this action for lack of subject matter jurisdiction. However, in the instant case, Defendants have no valid argument for lack of jurisdiction, as they concede the existence of diversity jurisdiction. *See* Mot. to Dismiss Reply at 2 ("Defendants do not contest the existence of diversity jurisdiction among the parties in this matter."). In addition, because the Court has determined that neither judicial estoppel nor Full Faith and Credit prevents Plaintiff from asserting new allegations under federal patent law, the Court also has federal question jurisdiction due to Plaintiff's allegations in the FAC that Defendants misunderstood and misconstrued the '311 patent in the underlying federal actions. *See Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1268 (Fed. Cir. 2007). Moreover, Defendants do not contest that Plaintiff's new allegations (if permitted) would invoke exclusive federal jurisdiction. Thus, there is no basis for the Court to dismiss the action for lack of jurisdiction.

E.  *Colorado River*

Finally, Defendants argue that the Court should dismiss or stay this action under the *Colorado River* doctrine. "The *Colorado River* doctrine allows a district court to stay or dismiss a federal suit 'due to the presence of a concurrent state proceeding for reasons of wise judicial administration.'" *Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir. 1989).

> *Colorado River* and subsequent cases lay out the following factors, that, although not exclusive, are relevant to whether it is appropriate to stay proceedings:
>
> (1)  whether the state court first assumed jurisdiction over property;

15

   (2) inconvenience of the federal forum;

   (3) the desirability of avoiding piecemeal litigation;

   (4) the order in which jurisdiction was obtained by the concurrent forums;

   (5) whether federal law or state law provides the rule of decision on the merits;

   (6) whether the state court proceedings are inadequate to protect the federal litigant's rights;

   (7) whether exercising jurisdiction would promote forum shopping.

The factors relevant to a given case are subjected to a flexible balancing test, in which one factor may be accorded substantially more weight than another depending on the circumstances of the case, and "with the balance heavily weighted in favor of the exercise of jurisdiction."

*Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002).

  However, the doctrine applies only "to claims under the concurrent jurisdiction of the federal and state courts. '[A] district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the wise judicial administration exception.'" *Minucci*, 868 F.2d at 1115 (holding that, because plaintiff's "copyright claim is within the exclusive jurisdiction of the federal courts, the *Colorado River* doctrine is inapplicable"); *see also Intel Corp. v. Advanced Micro Devices*, 12 F.3d 908, 913 n.7 (9th Cir. 1993) (noting that, while "[t]he Supreme Court has yet to address the question of the applicability of the *Colorado River* doctrine to cases involving claims subject to exclusive federal jurisdiction . . . , . . . the circuit courts, and the Ninth Circuit in particular, have uniformly held that a district court may not grant a stay in this context"). In the instant case, because the Court has permitted Plaintiffs to maintain their new allegations asserting patent jurisdiction under 28 U.S.C. § 1338(a), it has exclusive federal jurisdiction over the case at bar. Hence, the *Colorado River* doctrine would appear inapplicable.

  In any event, E-Pass agrees if federal jurisdiction obtains over the FAC and the claims are otherwise not barred, it will dismiss the state claims against the Defendants herein. This would obviate any stay. Accordingly, the Court DENIES Defendants' motion to dismiss or stay the action

16

based on that doctrine.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss and motion to strike Plaintiff's FAC.

This order disposes of Docket Nos. 116 and 117.

IT IS SO ORDERED.

Dated: November 4, 2011

_____
EDWARD M. CHEN
United States District Judge