**Volume 1**

                           **Pages 1 – 28**

               **UNITED STATES DISTRICT COURT**

             **NORTHERN DISTRICT OF CALIFORNIA**

        **BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE**

**E-PASS TECHNOLOGIES, INC.,**          )
                                        )
          **Plaintiff,**                )
                                        )
  **VS.**                               ) **NO. C 09-5967 EMC**
                                        )
**MOSES & SINGER, LLP, et al.,**        )
                                        )  **San Francisco, California**
          **Defendants.**               )  **Monday**
                                        )  **October 24, 2011**
_____)  **3:04 p.m.**


                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**          **ROSEN SABA, LLP**
                            **468 North Camden Drive**
                            **Third Floor**
                            **Beverly Hills, California   90210**
                       **BY:  RYAN D. SABA, ESQ.**




**For Defendants:**         **DUANE MORRIS LLP**
                            **Spear Tower**
                            **One Market Plaza, Suite 2200**
                            **San Francisco, California   94105-1127**
                       **BY:  ROBERT M. FINEMAN, ESQ.**
                            **RICHARD D. HOFFMAN, ESQ.**


**Reported by:**            **BELLE BALL, CSR #8785, RMR, CRR**
                            **Official Reporter, U.S. District Court**

**MONDAY, OCTOBER 24, 2011**                                    **3:04 P.M.**

P R O C E E D I N G S

THE CLERK:  Civil 09--5967, E-Pass Technologies Incorporated versus Moses & Singer L.L.P., et al.

MR. HOFFMAN:  Good afternoon, Your Honor.  Richard Hoffman for Defendants.

MR. FINEMAN:  Good afternoon, Your Honor.  Robert Fineman for Defendants.

MR. SABA:  Good morning, Your Honor.  Ryan Saba for the Plaintiff, E-Pass Technologies.

THE COURT:  Great, thank you.  Good morning.

This case gets more and more interesting as we go along here.  Here's what it all boils down to.

Let me ask the Defendants, is there any reason -- legal reason -- why E-Pass -- putting aside any abstention doctrines, is there any legal reason why E-Pass could not have brought two claims, not identical, in two different courts? The narrow claim in state court, and the broader claim in federal court?

For instance, if they had brought the First Amended Complaint, filed it here instead of the original complaint, they could have -- they could have legally done that, couldn't they?

MR. FINEMAN:  Your Honor, I think that's correct. They legally could have done that.

But I think, having said that, where this case has been puts us in a situation which is a bit different from that, whereas E-Pass in this case did bring the action initially in state court, went through the whole process of the appeal, made all the representations to the Court.

So we're now, I think, in a context where pursuant to our motion to strike, under principles of judicial estoppel and full faith and credit, E-Pass is in a very different situation with its claims in this federal case.

**THE COURT:**  All right.  Let me ask, starting -- looking at the judicial estoppel question, if E-Pass had been more -- I don't want to use the word -- forthright or transparent in arguing before the Superior Court, and then before the Court of -- California Court of Appeal, and said, "Look, in our case in state court we are not contesting claim construction, we are not making any argument about Defendant not fully understanding the claim; it's really about what we've alleged.  The narrow claim of inadequate investigation, et cetera.  However, footnote, you should be aware we have another claim in federal court which is going to be broader. We're not necessarily, you know, saying we're giving up the failure to properly construe the patent claim, et cetera, et cetera."

Had they said that, the Court of Appeals still would have ruled the way they would have, right?  I mean, the only

issue before them is not what they might do in this other forum, but what we have before us, is this a state or federal claim.

And as stated before us, presumably, what they would have thought, that the allegations are narrow enough that it states a garden-variety negligence, malpractice type of claim, that doesn't raise a substantial patent or federal question.

So, that's what I'm asking.  Had they been more transparent and admitted that they might do something in the federal forum, how would that have changed what the California Court of Appeal would have done?

**MR. FINEMAN:**  As you likely have seen, Your Honor, from the Court of Appeal's decision, they took AmeriPride for their word in their representations.

And where AmeriPride, as the Court of Appeal found, expressly disavowed its claim construction theories based upon its own interpretation of the wording of the complaint before the Court of Appeal, that court I think likely would have acted no differently with knowledge of the federal case, had that been presented to the court.

The issue, though, is still one where I believe because Ameri -- I'm sorry, because E-Pass's complaint in the federal court has wordings and allegations which were virtually identical to that which was in the state court action, E-Pass has now made these representations interpreting its own words,

which would have some binding or preclusive effect on the scope of the claim in the federal court.

**THE COURT:**  Well, I don't have any -- I don't disagree with you that there's been a noticeable change in course.  And it's not -- even though they alleged a 1338 basis for federal jurisdiction before, the factual basis has been substantially broad.  And, I'm with you there.

My question is, my understanding is that one of the bases for judicial estoppel, the doctrine of judicial estoppel, is that there has to be some reliance by the earlier court that it got misled by this representation that later then was changed.

And, if a party can bring two different claims in two different courts, and if the Court of Appeal decision here was ultimately based on what was represented to be in that case, not necessarily what was in the federal case, I don't see how any, quote, "misrepresentation" about what they plan to do in the federal case would have -- could have been relied upon by the California Court of Appeal.  It still had to adjudicate whatever issue had been framed before it in that forum.

So, it seems like a fundamental underpinning of judicial estoppel doctrine doesn't seem to apply here.

**MR. FINEMAN:**  Well, I think, Your Honor, with respect to that aspect of judicial estoppel and the reliance element, here, again, the -- taking what the Court of Appeal had

presented to it and E-Pass's representations to the Court of Appeal, and I guess to sort of go through the process, as you seem to be suggesting, that the Court of Appeal at the time did not have knowledge that E-Pass had a virtually identical complaint filed in the federal court.

You know, the -- the end result here is really E-Pass, who is asserting one position on the same allegations in state court, and trying to now twist or contort that or expand or reverse it in the federal court.  So, the reliance of the state court arguably couldn't exist without knowledge of the -- of the federal case.

But, nevertheless, I think under judicial estoppel, that the core is really that the Plaintiff is taking a position in one case, the state case, and then trying to take a fundamentally different or inconsistent position in a separate case, whether that's state or, obviously, in this case, in federal court.

And that's really, I think, the core of the requirement.

**THE COURT:**  Well, I've looked at the cases that you've cited, *united National*, and the *Gamblin* case on which you place a fair amount of reliance.  And they all seem to involve a situation where the court -- the first court, earlier court, got misled.  I mean, a ruling or a judgment or something happened that was predicated on a representation that later a

party tried to change.

In the *Gamblin* case, as I understand it, they represented in order to get remand back to state court, that "We're not bringing -- we're foregoing federal claims, send us back to state court, it's purely a state-law action case." And, and I guess -- you know, so there was a remand there. And, and then later they changed their -- there was obvious reliance.

And, I think the same thing in these other cases, where, you know, you win the case based on a representation that an infringement arose in 1999, and you come back, say, "Oh, actually, it didn't arise until 2001."  There's a clear misleading and -- and reliance interest by the first court. And that's what makes estoppel so powerful in those cases.

Is there any case that you can cite where there has not been some irrevocable commitment by the first court, based on a misrepresentation, or one position, and then it was changed?  I.e., a reliance interest?

**MR. FINEMAN:**  Your Honor, I think that from the -- the decisions that were cited in our briefing, you note the *Gamblin* case.

The other decisions, I believe, are situations where there's nothing in those cases which suggest, in the context in which we're in, a representation to one court, and then inconsistent representation to another court -- not back to the

same court, but to a different one -- would preclude judicial estoppel from applying.

I mean, I understand your point, looking at those cases that we cited, and the reliance from the one court looking at it, having plaintiff in that case say one thing, and then come back and change position entirely for purposes of trying to establish different jurisdiction.

But, I think in *Gamblin*, in the -- excuse me, Your Honor -- the *Hall* and the *United National*, though, were also situations where judicial estoppel is applied with, I believe, a representation in one court, and then a different representation in a different court.

THE COURT:  Which case?

MR. FINEMAN:  I believe, *United National*.

THE COURT:  Oh.  But, there was reliance by that first court on the representation about the infringement date being 1999 or something, as I recall.

MR. FINEMAN:  That's correct, Your Honor.

THE COURT:  And so, there was a -- what's the strongest part of the record?

Where would you say comes the closest to a representation made to the Court of Appeal that they -- that E-Pass was waiving for all purposes the broader patent claim?

Is there a particular quote?

MR. FINEMAN:  Well, in part, Your Honor, the -- the

quoted portion from the Court of Appeal decision at -- one second -- at 189 Cal.App. 4th, 1140, 1148.

**THE COURT:** 1148?

**MR. FINEMAN:** Where the -- to quote from the court at oral argument (As read):

> "Counsel for E-Pass expressly disavowed any
> challenge to the claim construction proffered
> and argued by defendant attorneys in federal
> litigation. Counsel confirmed that E-Pass
> does not allege any negligence with respect
> to the manner in which defendant attorneys
> defined the scope of the patent. Rather,
> E-Pass alleges that defendant attorneys knew
> or should have known they did not have
> sufficient evidence to support the claims
> being asserted."

Then with a footnote, with the Court acknowledging the narrow interpretation it gave.

Also, Your Honor, as you may recall, we cited -- included by reference the prior opposition we had filed to E-Pass's motion to amend -- or for leave to amend. And we had included portions of the transcript from the hearing at the Court of Appeal argument.

And, there are a number of references there where E-Pass very clearly asserts the limitations of its claim and

interpretation of its own claims.

THE COURT:  Right.

MR. FINEMAN:  And --

THE COURT:  And they will say, "in that court."  Is there any wording there that they suggested that they were waiving it for all purposes?

MR. FINEMAN:  Well, I think, Your Honor, there's -- as you have noted, in that court, they did not raise the issue that they had filed a separate federal action on virtually identical allegations and pleadings.

So, again, the statements made to the Court of Appeal in that case were on the complaint before that court, but still, nevertheless, allegations in claims virtually identical to what was pending in federal court at that time.

So, it is correct that they did not say: "Well, here we have this other case, and we're saying that this is, you know, our interpretation."  They never took a position: "This is what we're saying in the state case, but we've got a different federal case where we're doing something differently."

It was more: "This is what our position is, this is how we interpret the wording of our own complaint, and the meaning we give to these words."  And the Court of Appeal then accepting that.

THE COURT:  Let me ask your opponent.

Mr. Saba, isn't one of the purposes of judicial estoppel not to allow sort of forum shopping, and waiting to get a result in one area, and then sort of changing course to get a different result in a subsequent proceeding?

MR. SABA:  Absolutely.  That is a fundamental principle of judicial estoppel.

However, as we've all discussed, this action was actually filed before any of those representations were made in the Court of Appeal.

It is our understanding of the way forum shopping works is if we would have waited for the Court of Appeal's decision, then filed this case, that would be more forum shopping.  That would be more like *Gamblin*.  That would be more like some of these other cases that are cited.

But, that's no what happened here.  We filed this action long before any of these representations were made to the Court of Appeal.

THE COURT:  But, on a different set of factual allegations.  Same cause of action, but a different scope of factual allegations.

MR. SABA:  Well, it's our position that we've always maintained a federal question jurisdiction in this courtroom. It's always been based on 1338.  Our jurisdiction in this courtroom, in Paragraph 7 of the original complaint, said this Court has jurisdiction based upon 1338.

Now, our First Amended Complaint only added a clarification as to why there's federal -- federal question in this courtroom.  It wasn't like we filed a complaint before, saying there was diversity, and then we came back with a First Amended Complaint, and added a 1338 jurisdiction claim.

THE COURT:  Well, but the new what you call clarification is significant.  I mean, it's significant enough that you are opposing this motion.  I mean, you would -- if it was just a matter of clarifying something, it wouldn't be a big deal.

This -- you are alleging a whole different of course of conduct that constitutes the alleged negligence here.  I.e., misconstruing the patent.  Not just failure to -- prelitigation investigation.

MR. SABA:  That's correct, Your Honor.

THE COURT:  So it's quite -- so, my question is why weren't those allegations made earlier?

Why were they made only after the Court of Appeal then said to you, after you won the appeal, "By the way, don't try anything any broader because this is it"?

MR. SABA:  There are two mutually exclusive reasons.

One which wasn't briefed very well in this motion, which is since the time we entered into this Court of Appeal and First Amended Complaint phase, is we've done significant discovery.  And a lot of these facts have come to light since

that significant discovery has taken place.

However, probably more broadly is that I think that once we realize that we have the right to be in this court, we should be able to fully adjudicate all of our available claims. There's no reason to limit our claims in this court, because we have a right to adjudicate all of these claims in this court.

Under the federal liberal pleading standards, we said there is -- you know, there is federal diversity -- excuse me -- there is federal question jurisdiction in this Court, so, we should have the right to assert any and all claims.

And since discovery now bore out that these claims do exist, we certainly want the right to prosecute these claims.

**THE COURT:**  What did you learn in discovery?

**MR. SABA:**  Well, we learned a lot, Your Honor.  We discovered -- well, a lot of the stuff's under a protective order.

But generally, we learned that Mr. Weiss had significant internal memos from his own personnel, discussing that his construction of the claim was wrong.  We learned that there was warning e-mails that the federal complaint did not meet Rule 11 standards, before it was filed.  And, there was even an argument between counsel who would sign the complaint, because the facts weren't borne out.

There's issues that there wasn't significant investigation done prior to it.  Not just -- not to the --

prior to the filing of the claim.  Not because there wasn't investigation, but also because the construction of the claim was faulty.

There was a lot of factual discovery that we uncovered that we didn't realize existed because we didn't have access to those documents prior to filing of the complaint, because they were alleged attorney/client privilege, or internal --

**THE COURT:**  Are you saying there were documents that were uncovered to suggests there was a construction-of-the-claim problem, --

**MR. SABA:**  Oh, yes.

**THE COURT:**  -- not just a preinvestigation of facts?

**MR. SABA:**  Oh, yes.  It's clear to us that -- from the internal memos and the legal research and the obtaining of certain documents, that Mr. Weiss completely did not understand the application of federal law to this particular patent.  And he was prosecuting legal issues that had no merit -- in fact, they were in contravention to the Ninth Circuit law.  And, he received warning letters from opposing counsel, telling him he was making errors.

Yet he chose to ignore those, and proceed forward, which was ultimately one of the reasons why the underlying courts granted summary judgment.

**THE COURT:**  Some of this discovery regarding the

claim construction were not known when you filed the original complaint in this -- in the federal court?

MR. SABA: Not to our German corporation clients, Your Honor, no. Or our office. I should clarify.

THE COURT: Let me go back to your opponent here for a second.

The other question I have is what's -- this is somewhat ironic on a number of fronts, but you are now in the forum you wanted to be in the first place, because you are the ones that tried to contest lack of jurisdiction in the state court, suggesting that federal court was the proper forum in the first place. And so, now, you're here.

What's -- again, what's the unfair advantage, what's the injury, what's the reliance? I understand you would have preferred, now that you get the narrowing construction in state court, you'd like that with the narrower bounds. But in terms of forum, choice of forum, aren't you where you wanted to be in the first place?

MR. FINEMAN: Well, Your Honor, the -- it's correct. In the initial state case, the Defendants filed demurrers based upon exclusive federal jurisdiction, saying the allegations were believed to invoke exclusive federal jurisdiction.

We now know our interpretation or Defendants' interpretation of that was wrong. It's been proven wrong both by E-Pass's own representations as to what their claims meant,

and the decision from the state court.

As far as this action goes, and the -- the unfairness we believe to Defendants in this case by letting it proceed on the broader allegations versus state court, we still have a situation in this case where there is -- there is, as of today, a pending state case and this federal case, with Defendants in both actions.

It's a very high probability that -- although we get statements and claims from Plaintiffs for some time now that they're going to dismiss, they're going to dismiss, that has not happened yet.

There's a real reality in this case, in the federal case, that should it continue, we're going to be forced to relitigate the same issues in both courts, where in the state court, these issues have already been interpreted, resolved, with clear direction from the state Court of Appeal as to how to address them.

So I think there is a real -- there's potential prejudice to the Plaintiffs, in forcing them to litigate these identical issues in two separate jurisdictions or two separate venues.  There is resource issues.  There are a number of things --

            **THE COURT:**  All right.

            **MR. FINEMAN:**  -- in play.

            **THE COURT:**  Let me go back to Mr. Saba.

What is going to -- if I were to -- if I were to deny the motion to strike, and deny the motion to dismiss, and allow the federal action to proceed because there is federal jurisdiction on the unstricken allegations here, what's going to happen?

You've got some defendants that can't be brought into this case.  What's going to happen?  And why shouldn't abstention -- how are we going to minimize the burden on the Defendants?

**MR. SABA:**  Assuming an answer is filed within an appropriate time, 10, 20 days, whatever that amount of time is, the only procedural bar that's at least been brought to my attention at this time is that Defendants are now claiming that the tolling agreement that was executed between the parties may not be valid, so that they are going to challenge this complaint -- that it's untimely filed -- outside of the tolling agreement with the statute of limitations.

It is my expectation to take that issue by the bull -- take the bull by its horns, and I will meet and confer and have that legal issue adjudicated on a Rule 56 summary judgment motion immediately to strike any such affirmative defense, to find out as a matter of law that the tolling agreement is valid.

If this Court grants our motion for summary adjudication that the tolling agreement is valid as a matter of

law, I do not foresee any procedural issues that would exist that would divest our client of jurisdiction in this court.  At that time, we would dismiss the state action against Moses & Singer and Stephen Weiss.

We have not done anything in that state court.  Not conducted discovery, not taken depositions.  And so, really, I don't want to be a defendant in a future lawsuit by dismissing a state action, if it turns out, for example, that the Defendants' argument about statute of limitations is valid, and in this case, were to be dismissed.

So, once that final legal issue -- unless there's another legal issue that I'm not aware of, once that final legal issue is adjudicated, which I imagine can be done within 60 days because it's a straight legal issue, there's no bar for us dismissing the state case.

**THE COURT:**  And then, what's left in the state courts?

**MR. SABA:**  Just our case against Squire Sanders.  And the reason why that is in state court is for two reasons.  One, there is no claim construction theory against Squire Sanders.

All of those -- those are just a straight negligence claim against Squire Sanders, which could have been adjudicated in this case, but there -- there was no tolling agreement with Squire Sanders, so that would have been time-barred in this courthouse.  So --

**THE COURT:** And so, won't that adjudication overlap with the adjudication of the non-claim construction facts here?

**MR. SABA:** Well, if you were to ask Squire Sanders their opinion, their lawyer will jump up and down and say their liability is wholly separate from Moses & Singer's liability because they were just local counsel, and that they were not the decisionmakers, and acted only as a conduit to effectuate filing of documents.

They -- any wrongful acts that they would have had would have to have been what we are asserting are affirmative -- and I suppose conditional -- negligence by that law firm. But, it is a separate case against a separate law firm, for their separate wrongful acts and/or conciliatory acceptance of Squire Sanders' wrongful acts.

But certainly, in this case, discovery has proceeded forward -- the ball has been moved significantly farther in this case, because it's been pending for over a year longer than the state court case.

So, what we would be left with is a state court case against Squire Sanders and Mark Dosker, and we'd be left with a federal court case against Moses Singer and Stephen Weiss. There would be no crossover defendants in either case.

**THE COURT:** What's the issue with respect to the tolling question? There was a tolling agreement?

**MR. SABA:** Yes, there was a tolling agreement. We

think it's perfectly valid, and binding, and enforceable.

**THE COURT:**  Between whom?

**MR. SABA:**  Between our client and Moses & Singer and Stephen Weiss.

**THE COURT:**  Yeah.

**MR. SABA:**  During informal conversations -- I will let Defendants explain their reasoning.

But recently, this issue has arisen that they are intending to challenge the validity of that tolling agreement.

Just so there's no doubt or issue, like I said, it would be my intention to bring a motion for summary judgment immediately just to knock out that issue, so that won't be lingering over this entire litigation.

**THE COURT:**  Why don't you tell me a little bit about your understanding of this tolling agreement.  Not that we're going to resolve that question today, but I wanted to --

**MR. HOFFMAN:**  Yes, Your Honor.  Richard Hoffman.

The tolling agreement was entered in, I think, August of 2008, with an effective date of May 2008.  It's to be interpreted under New York law.

It addresses the -- the issue arises -- once the state court action was filed in January, 2009, it's our position the tolling agreement ended.  And they timely filed an action in state court.

Then, if they dismiss the state court action, which

may or may not occur, with respect to -- and even if they don't, if the federal action proceeds, it's our position that the statute of limitations expired, because the tolling agreement terminated once the state court action was commenced. That was the purpose of the tolling agreement.

The parties agree not to -- to toll the statute of limitations to a date certain. But when an event occurs, such as the filing of the complaint, the reason for the tolling agreement terminates.

THE COURT: There's a written agreement?

MR. HOFFMAN: Yes, there is.

THE COURT: But it doesn't, apparently, exactly state its termination date?

MR. HOFFMAN: Well, it has a termination date of December, 2009. But, the contemplation is nothing happens until 2009.

THE COURT: Uh-huh.

MR. HOFFMAN: Here, once the state court action is commenced, the reason for the tolling agreement ends, the agreement is concluded, the parties have met their responsibilities. And, that's the basis for the issue concerning the tolling agreement.

It was raised in our initial -- it's been raised in every case management conference statement that's been submitted to this Court. It's raised as an affirmative defense

in the initial pleading.  So, it's not something that has just come to the forefront recently.

THE COURT:  All right.  So, it does sound like that's something that might be addressable through summary adjudication, partial summary adjudication?

MR. HOFFMAN:  It certainly may be.  It's going to -- it may require some discovery as to parties' intent.

It's going to be interpreted -- not to make in case any more confusing, but it calls for it to be interpreted under New York law.

THE COURT:  Okay.  You guys ought to start a federal courts class, or advanced civil procedure law.  Everything you guys come up with -- I can see a relation back -- is there a relation back issue, a statute of limitation, as well?

Is that coming around the corner?

MR. SABA:  There are certainly some other issues to address.

THE CLERK:  Yeah, I imagine.  All right.  Well, I will take this matter under sub- -- I will also say with respect to full faith and credit -- I'll give you a chance to say something on that -- I see two problems with that argument, among others.

One is that there's not been an adjudication of -- the adjudication in state court was: Based on that complaint, here's what the jurisdictional resolution is.

It did not adjudicate whether there was or, in fact, other problems or other things. That's an estoppel type question.

But if you're talking about full faith and credit to the judgment, we have to look at the judgment that was entered, if there was a judgment. There's another question about finality.

But, assuming there was something equivalent to a final judgment embodied in the Court of Appeal decision, that judgment was very narrow. It basically said in a state court -- state jurisdiction, not federal jurisdiction, based on the scope of this complaint. It didn't say, one way or the other, on the merits, that there was no other wrongdoing or allegation or anything else.

Even more fundamentally, there's a fair amount of law that full faith and credit doesn't have the same force when you're talking about exclusive federal jurisdiction.

In fact, there's a fair amount of law that says full-faith-and-credit kind of argument and res judicata and all that doesn't -- may not even apply, we have exclusive federal jurisdiction, because that then undermines the intent of Congress about federal courts being the exclusive judicator of certain issues.

So, those are just two of the issues that I see that are problematic. I'll let you respond to that, since we're

here.

MR. FINEMAN:  Sure, Your Honor.  Well, in, I guess, reverse order, with respect to the exclusive federal jurisdiction argument, it's -- I mean, of course the premise behind the motion to strike and the -- the raising of the issue of full faith and credit assumes that there isn't exclusive federal jurisdiction here.

And therefore, it would apply that there's not a finding, if those allegations are stricken as a result of either judicial estoppel or because of the arguments we have raised.

So that, I think, is the way to address full faith and credit, at least whether or not it could apply.  That there has to be first, of course, a determination of exclusive federal jurisdiction.  Which, there -- there is not.

THE COURT:  Chicken or an egg problem.

MR. FINEMAN:  It is, somewhat.  Certainly.

With respect to just the application here, again, I think, looking at that -- the decision from the state Court of Appeal, and what's before it, and the Court's own determinations as far as what it finds with -- again, in that context, it was on a demurrer.

The -- the issue of course was, there, whether or not the allegations in E-Pass's own complaint were with -- entirely within state law provisions, or whether or not exclusive

federal jurisdiction existed. E-Pass took the position, interpreting its own words and claims, that it did not.

So I think there, in fact, is a judgment and a ruling determination from the state Court of Appeal that effectively interprets that language that would be subject to full faith and credit.

**THE COURT:** Well, but that language of the complaint therein, based on that complaint as construed and represented by the Plaintiff therein, there is no federal jurisdiction. It is a, quote -- not "quote," but a garden-variety malpractice claim. That it's not an adjudication about what -- the actual facts of the case.

For instance, there wasn't a trial in which there was a determination that the -- there was no negligence with respect to construction, only negligence with respect to, you know, pre- -- prelitigation investigation. Or no negligence, period, on either front. And, I can see where -- that.

But here, it's just -- as you say, all this was, was a demurrer on a complaint. And so, the only thing they could adjudicate is did the complaint state a cause of action that would belong in federal court or not. Not the same as a judgment on the merits of the case.

So, to say that that precludes this court from finding -- or jury or whoever is going to adjudicate this thing -- from finding that yes, in fact, there was negligence

in terms of the claim construction, and understanding the claim, et cetera, I don't see anything in a denial or a grant with respect to the demurrer, that -- that would be a final adjudication on the merits question.

**MR. FINEMAN:**  Right.  True.

I mean, what -- again, what we are really dealing with in the context of this matter is where E-Pass had made the representations disavowing claim construction in the state court, can E-Pass, on virtually identical allegations in this case, proceed with a different theory and a different interpretation of its own words, which is --

**THE COURT:**  Well, that's where it feels much more like an estoppel argument.  And I think I even raised that when we first, kind of, got here months ago.

But, in looking at the doctrines and the requirements, I'll have to look at the case again, but right now I'm seeing a pattern and an articulation that among the requirements, there has to be some earlier ruling that was based on and relied upon the misrepresentation or the changed representation or changed fact, whatever it was, changed position.  And, I have my doubts whether that is this case here.

This case is somewhat unique, I will admit.  So, we have to do a little bit of an extrapolation.

**MR. FINEMAN:**  I think in terms, Your Honor, also just

even the reliance element, again, if you consider the footnote from the page I had cited where the Court -- I think it's Footnote No. 4 -- where the Court is essentially accepting and relying on the representations made by E-Pass there interpreting its complaint, to give it the narrow construction and -- and saying the parties will be bound by that narrow construction on remand.  That's one of --

THE COURT:  Well, and, that -- that language is -- itself, is a form of judicial estoppel, with an exclamation point.  That you will not be able to go back to Superior Court and say, "Oh, by the way, I'm going to file another amended complaint."

That's classic judicial estoppel.  Giving the same court within that jurisdiction, you know, or in that case, in other words, you know, changing the scope after having made one representation to the court to get the result, and then changing that, thereby misleading the first court.

Here, it is not so clear to me that there was a representation about the federal.  Of course, you admit that there wasn't a misrepresentation, because they didn't even say anything about the federal --

MR. FINEMAN:  In terms of representation, itself.  But -- yeah.

THE COURT:  Well -- so, do we have -- if I were to deny -- I will take it under submission, take a second look at

these cases.

But, do we have a case management -- where are we at? I'm trying to --

MR. HOFFMAN:  We have November 7, I think, Your Honor.

THE COURT:  All right.  So, I will have a ruling before then.  And, let's see where we come out.

Obviously, if I grant your motion, that says one thing.  If not, we're back here.  And it sounds like we have got a few more hurdles to address, if we do.

All right?

MR. SABA:  Thank you, Your Honor.

THE COURT:  Great.  Thank you.

MR. SABA:  Have a great night.

THE CLERK:  This court stands in recess.

(Conclusion of Proceedings)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in NO. C 09-5967 EMC, E-Pass Technologies v. Moses & Singer, LLP, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____/s/  Belle Ball_____

Belle Ball, CSR 8785, RMR, CRR

Friday, November 4, 2011