UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

```
------------------------------)
                              )
E-Pass Technologies, Inc.,    )
                              )
              Plaintiff,      )
                              )
     v.                       )     No. C 09-5967 EMC
                              )
Moses & Singer, LLP, et al.,  )
                              )
              Defendants.     )     San Francisco, California
                              )     Friday, April 6, 2012
------------------------------)        (23 pages)
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
For Plaintiff:        Rosen Saba, LLP
                      468 North Camden Drive
                      Third Floor
                      Beverly Hills, California 90210
                  BY: RYAN DONALD SABA

For Defendant:        Duane Morris LLP
 (Moses)              One Market - Spear Tower
                      22nd Floor
                      San Francisco, California 94105
                  BY: RICHARD D. HOFFMAN
                      ROBERT MILLER FINEMAN

For Defendant:        Long & Levit, LLP
 (Weiss)              465 California Street
                      Suite 500
                      San Francisco, California 94104
                  BY: JOSEPH P. McMONIGLE
                      JESSICA RUDIN MacGREGOR
```

Friday, April 6, 2012

(2:20 p.m.)

(In open court)

DEPUTY CLERK:  Calling C 09-5967, E-Pass vs. Moses & Singer.

Counsel, come forward and state your appearances for the record.

MR. HOFFMAN:  Richard Hoffman and Robert Fineman of Duane Morris for defendant Moses & Singer.

THE COURT:  Good afternoon.  Thank you.

MR. McMONIGLE:  Joe McMonigle, Jessica MacGregor on behalf of Stephen Weiss.

THE COURT:  Good afternoon.

MR. SABA:  Ryan Saba of Rosen Saba for plaintiff E-Pass Technologies, Incorporated.

THE COURT:  Thank you, Counsel.

I guess I have trouble understanding why the plain language of the tolling agreement doesn't prevail. It doesn't have any sort of lifting or termination or nullification provision should a lawsuit be filed that the tolling agreement terminates.  It simply says that as to any claim that the claim has against the firm or the firm has against the claimant, etc., etc., you know, may be brought no later than December 31st, 2009.  So at least the plain language of this agreement doesn't appear to

allow for some implicit termination.  Why am I not bound by that plain language?

MR. HOFFMAN:  Well, I think, your Honor, you need to go to the consideration that's given for the tolling agreement.  It is a tolling agreement.  It's clear by the recitals in the agreement that the consideration for the parties entering into the agreement is not to have a lawsuit filed at this time.

THE COURT:  At this time.

MR. HOFFMAN:  At this time.

THE COURT:  And when was this filed -- I forget how many months later.

MR. HOFFMAN:  Five months later.

THE COURT:  Okay.  So one could argue that, well, consideration was made, it wasn't at this time, it didn't happen at the date it -- it happened some months later, and so were able to receive benefit of five months litigation-free.

MR. HOFFMAN:  That same argument would mean the moment that it's signed -- at this time is no longer at this time -- a lawsuit could be filed.  It is clear -- and you know, part of this is the idea that you understand what the intent of the agreement is, because that's what New York laws says you're supposed to do:  Ascertain the parties' intent.  You look at the correspondence from

Mr. Cislo that attached the original -- and that's the May 8th, 2008 letter.  It makes it clear that at time of the agreement, we want to toll the running of the statute of limitations so that we can focus on winning this appeal.  And --

THE COURT:  Well, and the briefs were filed, and as I recall, this thing then, the first case got filed after the briefing was done, or something.

MR. HOFFMAN:  It was filed after the briefing and before the decision was rendered.

THE COURT:  Right.  So one could argue again you got the benefit, because instead of having to litigate this case and having to defend the case, you can concentrate on the briefing.  And of course briefing is the most intensive part of the days before oral argument, if there is an argument, but briefing is the ballgame.  And so you did get that benefit.

MR. HOFFMAN:  Well, the benefit -- and this is the practicality of the situation -- the benefit of any tolling agreement is, you don't have the statute of limitations running.  You have a tolling of the statute of limitations.  From the plaintiff's perspective, you're not under the gun to file any lawsuit, and things may change.

From defendant's perspective, it -- I don't think you can come up with a reason other than you don't want a

lawsuit filed at that time; you're hoping that a lawsuit will never be filed.  There's no reason to enter into a tolling agreement after a lawsuit's filed.  And you know, the horse is out of the barn, whatever you want to say about that.

But you know, I think that's why you have the doctrines of frustration of purpose and -- or frustration of purpose and consideration.  That -- you know, it's clear that the purpose of the tolling agreement is to avoid a lawsuit.  That's clear from both the correspondence with Mr. Cislo and the subsequent correspondence with Squire Sanders.  You know, give us a tolling agreement, please, and we won't file a lawsuit against you, and we might never file a lawsuit; but if you don't give us a tolling agreement, we have to file a lawsuit.

THE COURT:  Well, you also get the benefit of deferring a second suit.  I mean, there could be a series of lawsuits rather than all of them being filed on Day 1, or both of them being filed on Month 5.  You get one at Month 5 and one at Month 11.  Maybe it's not all you expected, but you got something out of it.

MR. HOFFMAN:  Well, I think the -- that's where the doctrines, really, of frustration of purpose and failure of consideration come in.  And I think the way

that they've been explained by the courts and by the treaties is that, you know, where you have -- and it's clear on the face of the agreement, that it does have the words "at this time", but it's clear that the parties enter into an agreement so that a lawsuit isn't going to be filed. And you know, the course of conduct after that point in time makes it clear that that was the parties' understanding and the intent, both the communications between Mr. Cislo with Moses & Singer and Mr. Cislo with Squire Sanders.

THE COURT: But the purpose, of course, under New York law has to be frustrated purpose. It must be so completely the basis of a contract, as the transaction made very little sense. And this is *Crown IT Services vs. Olsen*, a 2004 case.

And I don't know if you could say that here. It did make some sense. You did obtain breathing space for a period, about five months, in order to concentrate on the briefing on appeal. The fact that you didn't get the full benefit, you didn't get the full 12 months or whatever it was, I don't know if that completely undermines the entire agreement. Plus, this was a two-way tolling agreement. It's claimant against the firm and the firm against the claimant, counterclaims, etc., etc. And than you've got the benefit of breathing space and not having filed that.

So it just seems to me that the language is fairly straightforward.  If you all intended something more specific, that once somebody files anything, all bets are off, the clock starts running again, you should have said that.

MR. HOFFMAN:  Well, certainly it could have been crafted differently.  And, you know, if some -- I suspect that if someone thought it through and said, My gosh, maybe I'll get sued twice by these parties, they would have had that.  But I've been practicing for awhile, and I haven't seen this situation come up where someone is sued, a tolling agreement exists -- or even sued once, and then sued again.

THE COURT:  This is an unusual case, I have to admit.

MR. HOFFMAN:  And that's where the doctrine of, do we leave our common experiences at the courthouse door?  Do we bring them into the courthouse and say, parties enter into tolling agreements for a specific reason, and the parties enter into tolling agreements, so that they a lawsuit isn't going to be filed; and once the lawsuit is filed, there is not a reason for the tolling agreement to exist.

THE COURT:  Uh-huh.

MR. HOFFMAN:  And that's -- you know, if that

gets left outside the courtroom, then perhaps we're right, the words mean what the words mean, and "any" means any, and "at this time" means now, not three seconds from now. The --

THE COURT:  Okay, echos the argument I just had, what does it mean, at the time of termination.

MR. HOFFMAN:  Yes, I heard.

THE COURT:  Well, let me ask you, Mr. Saba:  Why isn't there something to this?  Once I filed the suit, what purpose is there left remaining of the tolling agreement?

MR. SABA:  Well, I think this court hit the nail on the head.  This is a way to tolling agreement -- even though he mass-filed a lawsuit, January of 2009, the tolling agreement was still tolling the time for the defendants to file their lawsuit against E-Pass.  There were still consideration, the tolling agreement was still arguably effective.  They could have filed a claim against E-Pass all the way up until December 31st, 2009.

THE COURT:  Was there a threat of a claim?

MR. SABA:  Sure.  They were claiming that they pay fees.  So they still received the consideration and the benefit of their bargain because they have the opportunity to file something, have such a claim.  They chose not to.  Which is why we're here arguing this issue.

But had they elected to file such a claim, I think we would be, you know, speaking out both sides of our mouths if we were saying it was good on one end and not on the other.

THE COURT: Okay. Well, you were, my -- in my take, short take on this thing is that first, going over the plain language in this, the plain language doesn't contain any qualifiers or implicit or explicit sort of termination clauses. It would seem to apply unless you were to prevail on the frustration purpose or the failure of consideration doctrines, and it doesn't seem to me there's failure to consider. There's multiple considerations, not the least of which was the last point, was that there was a waiver of tolling of time going back the other way, as well as the time that was reported that there was some breathing space, you know, provided by this.

And then frustration of purpose, that's a pretty high bar for me. You have to completely undermine the contract, in the --

MR. HOFFMAN: I recognize it is, your Honor. I think the classic frustration of purpose case, at least the ones I've seen treaties talk about, is the individual who signs up with a golf course to have playing privileges at the golf course, has a couple months of playing

privileges at the golf course, signed up for a five-year tour, and the golf course runs down.  It isn't there anymore.  The purpose -- there was consideration at the beginning; everybody agrees that there was consideration. There was even the benefit received:  As your Honor pointed out here, you have five months of no lawsuit against you.  Be happy.  But you've got -- you know, what was the purpose of the agreement?  The purpose of the agreement was to not have a lawsuit filed.  And the purpose in the other case was to have to have golf privileges.  It's frustrated; it's not there.  And the courts have -- those have been the routine cases that the courts have said were not going to be bound by this very clear agreement that says, You're going to pay us then $1,000 a year for five years.

THE COURT:  All right.  I'll give you the last word.  Tell me about the golf course, since we're in the middle of a Masters right now.

MR. SABA:  That is true.  Apparently I don't want to sign up for that golf club.

Your Honor, I think this goes back to say this is a two-way street.  The purpose was so both sides could file lawsuits against each other, and -- at a later time. Here we have a situation where we both parties were getting a benefit of the bargain throughout the duration

of the agreement.

We don't believe that we get to parole evidence, but even if we did look at parole evidence for any particular reason whatsoever, there was an original termination clause in the original agreement. And that termination clause was taken out by the defendants. So they elected to choose the language in this agreement, and it was their election to choose an agreement that only terminated upon a date certain, which was December 31st, 2009.

THE COURT: All right. I'm taking the matter under submission. I appreciate your thoughts.

MR. McMONIGLE: Thank you.

MR. SABA: Thank you, your Honor.

MR. HOFFMAN: Thank you.

MR. FINEMAN: Thank you.

MR. SABA: We're also here for a case management conference too. If there's anything else to discuss...

MR. HOFFMAN: It was a status conference.

THE COURT: Did you file a --

MR. HOFFMAN: We did file a case management conference statement, I think last Saturday.

THE COURT: Why don't you tell me what -- assuming that my tentative views remain my final views, and that the tolling agreement remains in effect and

therefore there's not a timing issue going forward, where are we with respect to -- I always ask the question -- with respect to ADR and discovery at this point?

MR. HOFFMAN:  We do have now new counsel for Mr. Weiss, who's not been present at any of the previous conferences here.  Some discovery's been taken.  We have had discussions as to how to go about taking some discovery that's going to be needed to be conducted in Germany, and how that would go with the dates the Court has set and other trial calendars of the various counsel.

I believe that we will be able to work those out and stipulate rather than coming back to the Court, or an extension of some discovery cutoff dates.

THE COURT:  Right now your discovery cutoff date is August, right?

MR. HOFFMAN:  August 24th, I believe.

THE COURT:  So long as pretrial conference is not moved, or any summary judgment dates are not moved, I don't have a problem of your compressing that or running that into what would otherwise be the expert discovery time period.  You're welcome to stipulate to changes in that regard.

Remind me whether there are any further other ADR thoughts.

MR. HOFFMAN:  We conducted a full day of

mediation in front of a private mediator, David Rotman, back in September of 2011. That was not successful. We have -- Mr. Rotman's continued to be engaged in talking to the parties, and we do not have something formal set up at this point in time as far as further discussions.

THE COURT: All right. So that's an option you're leaving open, depending on where things go, what discovery reveals, or --

MR. HOFFMAN: I think, from defendant's perspective, the ability to discuss the settlement remains open and an option.

THE COURT: Okay.

MR. SABA: We certainly concur, your Honor. All counsel have been very professional and cooperative throughout this discovery process and litigation. And certainly the communications regarding settlement have been ongoing and free-flowing.

THE COURT: Good. Then we should set a -- well, let's see. What are we anticipating with respect to any further motions at this point?

MR. HOFFMAN: Other than discovery motions that may be before the magistrate?

THE COURT: Yeah. You're not anticipating anything further until we get to the pretrial stage and the in limine?

MR. McMONIGLE:  Joe McMonigle, your Honor, on behalf of Stephen Weiss.  Good afternoon.

THE COURT:  Good afternoon.

MR. McMONIGLE:  I do think, your Honor, we probably have anticipated motions that relate to issues of law that are within the case -- that within the case are appropriate for you to decide, that relate to the Markman hearing and invalidity and infringement.  So I think those are probably on the -- you know, in the future.

THE COURT:  Do we anticipate then that there will be a full-fledged case, a patent case within the malpractice case?

MR. McMONIGLE:  I believe so, your Honor, yes.

MR. HOFFMAN:  Yes.

THE COURT:  Do you share that view?

MR. SABA:  I do not, your Honor.  We believe that our -- this strategy, the malpractice here, and the fraud, frankly, arose from the fact that what Mr. Weiss knew at the outset.  And at the time of the outset of the engagement, what Mr. Weiss's knowledge was and what his ability to cross keep this case was, it's not what he learned through the process of the litigation.  So we certainly would like to brief this issue.

This is the first we've heard that defendants -- well, not the first we've heard.  This is the first open

discussion we've had in court on this issue.  So certainly we'll go back and meet and confer with them in the pretrial process and discuss this.  But we certainly think that there can be a way to streamline issues.  That can be done at trial.

THE COURT:  Well, what I'd like to do is have you, if you haven't discussed this, now is the time to discuss this.  We're not going to wait until the pretrial conference to figure out, right in the middle of trial involving a Markman hearing or anything else.  We need to figure this out earlier.  And it may depend on exactly what your -- the nature of your allegations are, the -- whether or not the substance and the merits of the claim construction, the merits of the claimed infringement case, are truly relevant or not.

So maybe what we should do is schedule a come-back here not too long from now and figure out where we're going.

MR. SABA:  We can do that, sure.

MR. HOFFMAN:  If I can remind your Honor:  If you'll recall a little bit of the history of this case, there was one point that had nothing to do with patent infringement, it was just, You didn't conduct an adequate pretrial investigation.  We had numerous hearings concluding in, No, we're talking about the actual

litigation of the case.  And if you're talking about the litigation of the case, you are going to have to get involved with the case within the case.  So that's the genesis of what was then the first amended complaint and now is the second amended complaint.

THE COURT:  Well, I know there have been so much shifting sands, to borrow a phrase from the earlier manifestation in this case, but now is the time to solidify those, and that's something you're going to consider, because the more you allege that there are misjudgements with respect to estimates of the strength of the case or failure to do certain things in the case, the more likely the case within a case may arise.

On the other hand, if you kind of state the original set of allegations, maybe it's not.

But we need to figure that out, because --

MR. SABA:  That's fair, your Honor.  And there's been extensive appellate decisions on those decisions, those independent judgment decisions, as well, that will provide us more guidance which may also eliminate the need, because we would say that there is some sort of collateral estoppel on those issues as well, because the Court's already ruled on whether or not certain judgment decisions were correct or not.

MR. McMONIGLE:  And there's very clear case law

that any rulings involving parties does not bind the attorneys for the parties.  That collateral estoppel does not apply in that circumstance.  So the -- that, I think, is pretty clear in the legal cases.

And really, the shifting sands here kind of involves say that, you know, is the -- was it negligence in handling the claim?  Or was it negligence -- was it, you know, the fact that the firm and Mr. Weiss prosecuted a case that didn't have merit from the beginning?

And so whatever way that goes, it's going to be necessarily involved:  A case within a case.  The standard might be whether or not the case had merit, as opposed to, you know, whether or not there was negligence in prosecuting the case and actually trying the case.  We may have a heightened standard, but at the very -- you know, whatever way that goes, it's going to involve some evaluation of the case.  And you know, we're happy to meet with counsel and see if we can work out some kind of framework, and I'm certain we'll have to be back to you to begin to formulate this.

It's a pretty tricky area, I must admit.  But I think either route we take, I think we're going to end up with a patent case.

THE COURT:  Well, it's interesting.  This case is not simply, as I remember, not a case of, You took a case

that should have been a winning case and screwed it up and therefore were deprived of a victory and benefits. As I recall, the case was -- part of it is -- was, I got bad advice; we got bad advice. We were told, instead of going the transaction route and licensing the patent, you led us down this other road, and had we known all the facts, we might have just licensed this thing and never gone down. So in a way, I could see one theory of the case where it kind of doesn't matter whether -- ultimately -- whether you have -- you would have won or lost if in fact the theory is: Ill advice or incomplete advice such that had the advice been more complete, the option of nonlitigation would have been sought.

MR. McMONIGLE: But that litigation advice -- you know, those two pieces, licensing versus, you know, litigation, the litigation part of it is -- it was without merit. And so you took us down that path. And that takes us to the case --

THE COURT: It might, or it could also be there are risks -- there are risks that you didn't tell me about. I'm not making your case for you, but it may be. I'm just saying, in a typical malpractice case, Yes, it is about whether you win or lose. Because that's going to be a causative element, ultimately.

Here, it's not quite the same model.

MR. McMONIGLE:  Well, it is.  Then you get into the but-for causation standard that you have to substitute something in.

THE COURT:  Than the substitute was --

MR. McMONIGLE:  Something has to substitute in, to make the call as to whether or not it was a meritorious case.  And the courts have been pretty clear -- the Supreme Court has been pretty clear that that substitution is the trial within the trial.  I know you're not going to sign off on this today, but I just wanted to highlight the issues.

THE COURT:  It's almost an allegation, the Supreme Court's recent decision, bad advice with respect to plea bargain.  They could have engaged in a plea bargain here and gone down the road with a trial and litigation --

MR. McMONIGLE:  And if that's the case in a malpractice, we have to determine, you know, innocence before there's a malpractice case.

THE COURT:  Not necessarily.  Not necessarily.  I think the courts suggest that you have to look at what the nature of the information afforded to the defendant was, and whether the offer that's conveyed, etc., etc -- it may not necessarily turn on what -- ultimately, what happened -- well, we know what happened in trial.  The

person didn't take the plea bargain and got convicted. That wasn't the issue. The issue is whether they would have taken the nonlitigation -- I'm just throwing this out here.

MR. McMONIGLE: I would suggest that in that circumstance you still have the trial within the trial, whether or not that defendant was innocent or not, and if that defendant was not innocent, then the law provides that you can't assert the malpractice case.

THE COURT: That's why I suggest to you that -- it may be hard to avoid merits in this thing, and to avoid the trial within a trial. And so that's something you need to think about. And I'd like to talk about it.

What I'd like to do is come back together, and if -- after you've had a chance to think about it, and meet and confer and see if we can schedule what the trial's going to look like, you know, before we go down this road too far, because if we really are talking about claims construction and all that, we're going to have to build in a schedule for that outside the trial schedule.

MR. HOFFMAN: I think you hit the nail on the head there. And it's not only important because we are about to embark on further discovery -- and the scope of that discovery may depend upon, again, what the scope of the lawsuit is. So if we could set that the next status

conference as soon as possible, because I think --

THE COURT:  What are you proposing?

MR. HOFFMAN:  Within the next -- by the beginning of May?  Within four weeks?

THE COURT:  Yep.

DEPUTY CLERK:  May 8th at 10:30?  It's a Tuesday.

MR. SABA:  The only problem with May, your Honor, is Mr. Rosen and I are scheduled to be in a trial in the Central District that starts May 7th.  That case obviously may settle.

But I need to schedule a hearing for sure.  Maybe if we could push it back to something like May 22nd, that would give us a little breathing room.  The trial starts, and --

THE COURT:  Well then, that leaves about three months to complete discovery.  There's some discovery you'll have to do anyway.  What we're talking about is the discovery with respect to the patent merits question.

MR. SABA:  As far as I understand, there's no depositions currently on schedule in between now and, say, the end of May.  That would only be relevant if there was a case within a case sort of analysis versus the allegations that are set forth in the complaint.

MR. HOFFMAN:  Was that a Tuesday?

DEPUTY CLERK:  That's a -- specially set on the

8th.  We can do it April 27th.

MR. HOFFMAN:  The -- I could do it -- I'm not available the 27th.  I can do it that -- any other time that week, if that fits the Court's schedule.  I don't suspect it's going to be a long conference.  It's just -- it's more, I think, to prod the counsel into -- on both sides -- meeting and conferring and making a decision.

MR. SABA:  I agree, there's a benefit for the hearing.  I just want to make sure we could be here.

THE COURT:  What about -- what's the day before, Betty?

DEPUTY CLERK:  April 26.

THE COURT:  You can specially set it.

DEPUTY CLERK:  We can specially set it.

MR. HOFFMAN:  That's fine.

MR. SABA:  April 26 is okay.

THE COURT:  10:30?

DEPUTY CLERK:  Yes, your Honor.

THE COURT:  10:30, April 26, status conference devoted to this question.

MR. HOFFMAN:  Would you like a status conference statement?

THE COURT:  I would like a statement that summarizes rises -- I don't need a repeat or anything, just what you all have decided and talked about and your

thoughts so far.

MR. HOFFMAN:  Can that be filed --

THE COURT:  A couple of days before.

MR. SABA:  Did I write down 10:30 or 10:00?

DEPUTY CLERK:  10:30.

MR. SABA:  Thank you.

THE COURT:  Thank you.

MR. McMONIGLE:  Thank you.

(Adjourned)

oOo

CERTIFICATE OF REPORTER

     I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into written form.

_____

Connie Kuhl, RMR, CRR
Tuesday April 10, 2012

Connie Kuhl, Realtime Official Reporter
USDC – CAND 415-431-2020