PAGES 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

E-PASS TECHNOLOGIES, INC., A          )
DELAWARE CORPORATION,                 )
                                      )
            PLAINTIFF,                )
                                      )
  VS.                                 ) NO. C  09-5967 EMC
                                      )
MOSES & SINGER, LLP, A NEW YORK       )
LIMITED PARTNERSHIP; STEPHEN N.       )
WEISS, ESQ., AN INDIVIDUAL; AND       )
DOES 1 THROUGH 50, INCLUSIVE,         )
                                      )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.               )  THURSDAY
                                      )  APRIL 26, 2012
_____)  10:30 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**
**ROSEN SABA, LLP**
468 NORTH CAMDEN DRIVE
THIRD FLOOR
BEVERLY HILLS, CALIFORNIA 90210

**BY:   JAMES R. ROSEN, ESQUIRE**

    **RYAN D. SABA, ESQUIRE**

**FURTHER APPEARANCES NEXT PAGE.**

*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
        *OFFICIAL REPORTER - US DISTRICT COURT*

**FURTHER APPEARANCES:**

**FOR THE DEFENDANT MOSES & SINGER, LLP:**

**DUANE MORRIS**

SPEAR TOWER

ONE MARKET PLAZA, SUITE 2200

SAN FRANCISCO, CALIFORNIA 94105-1127

**BY:   RICHARD D. HOFFMAN, ESQUIRE**

     **ROBERT M. FINEMAN, ESQUIRE**


**FOR DEFENDANT STEPHEN N. WEISS:**

**LONG & LEVIT, LLP**

465 CALIFORNIA STREET, 5TH FLOOR

SAN FRANCISCO, CALIFORNIA 94104

397-6392

**BY:   JOSEPH P. MCMONIGLE, ESQUIRE**

**APRIL 26, 2012**                                    **10:3 O'CLOCK  A.M.**


                        **P R O C E E D I N G S**

          **THE CLERK:**  NOW CALLING CASE C09-5967, E-PASS

TECHNOLOGIES VERSUS MOSES & SINGER.

          COUNSEL, PLEASE COME TO THE PODIUM AND STATE YOUR

NAME FOR THE RECORD.

          **MR. ROSEN:**  GOOD MORNING, YOUR HONOR.  I'M JIM ROSEN

ON THE BEHALF OF ROSEN SABA AND THE PLAINTIFF E-PASS

TECHNOLOGIES, INC.

          **THE COURT:**  ALL RIGHT, MR. ROSEN.

          **MR. HOFFMAN:**  GOOD MORNING, RICHARD HOFFMANN, DUANE

MORRIS, ON BEHALF OF DEFENDANT MOSES & SINGER.

          **THE COURT:**  ALL RIGHT.  GOOD MORNING, MR. HOFFMAN.

          **MR. MCMONIGLE:**  GOOD MORNING, YOUR HONOR.  JOE

MCMONIGLE ON BEHALF OF STEPHEN WEISS.

          **THE COURT:**  OKAY.  THANK YOU, MR. MCMONIGLE.

          I WAS GOING TO ASK THE PLAINTIFF A BASIC QUESTION.

WHAT ARE YOU ALLEGING?  ARE YOU ALLEGING THAT THIS CASE SHOULD

NEVER HAVE BEEN BROUGHT?  IT WAS ILL-ADVISED TO BRING THESE

CASE, UNDERLYING CASE; SHOULD HAVE JUST OPTED FOR THE LICENSING

SCHEME BECAUSE THE CASE DID NOT HAVE A REASONABLE CHANCE OF

SUCCESS?  OR ARE YOU ALLEGING THAT THE CASE WAS MISHANDLED, AND

HAD IT NOT BEEN MISHANDLED YOU WOULD HAVE WON, YOUR PLAINTIFF

WOULD HAVE WON?

**MR. ROSEN:** NOT THE LATTER, YOUR HONOR.

**THE COURT:** OKAY. SO YOUR TAKE IS THAT THIS WAS A WEAK CASE TO START WITH, AND HAD YOU KNOWN THE TRUTH YOUR CLIENT WOULDN'T HAVE GONE ON DOWN THIS EIGHT OR NINE MILLION, WHATEVER MILLION DOLLAR, ROAD OF LITIGATION?

**MR. ROSEN:** AT THE RISK OF BEING HYPERBOLIC, YOUR HONOR, I THINK THAT THERE WAS NO CASE.

**THE COURT:** OKAY. SO WHEN I LOOK AT THE COMPLAINT, THOUGH, THE COMPLAINT -- AT LEAST SECOND-AMENDED COMPLAINT AS DRAFTED -- HAS SOME THINGS IN HERE THAT ARE BROADER. YOU ALLEGE MALPRACTICE OR NEGLIGENCE. THEY PURSUED FAULTY AND CARELESS STRATEGIES DURING THE INVESTIGATION DISCOVERY AND PROSECUTION, CRITICIZE CERTAIN THINGS THEY DID.

SO I'M NOT CLEAR WHAT THAT HAS TO DO -- THEY SHOULDN'T HAVE BROUGHT IT IN THE FIRST PLACE. ISN'T THE FOCUS ON THE ADVICE THEY GAVE AND WHAT INFORMATION THEY HAD AT THE TIME THEY GAVE THAT ADVICE, AS OPPOSED TO WHAT THEY DID LATER IN THE COURSE OF LITIGATION?

**MR. ROSEN:** NOT ENTIRELY, YOUR HONOR. AT THE BEGINNING, YES, THE ADVICE WAS FAULTY. AND IT WAS FAULTY FROM THE BEGINNING.

OUR SECOND-AMENDED COMPLAINT ALLEGES THAT THERE WAS A DEFICIENT PREFILING INVESTIGATION. THAT THERE WAS NO EVIDENCE AT THE BEGINNING TO WARRANT THE ORIGINAL FILING. THAT THE HANDLING, EVEN FROM THE BEGINNING FROM THE ORGANIZATION OF

E-PASS SO THAT THE COMPLAINT COULD BE FILED WAS RACKED WITH CONFLICT OF INTEREST IN THAT MR. WEISS HAD HIMSELF APPOINTED BOTH AS SECRETARY AND THE TREASURER OF E-PASS, WHICH AS WE KNOW MADE PROBLEMS FOR E-PASS IN THE LITIGATION OF THE ACTION LATER.

BUT AS PLAINTIFFS' LAWYERS, YOUR HONOR, WE ALSO KNOW THAT THERE IS A SIGNIFICANT PORTION OF THE PLAINTIFF'S BAR THAT WOULD FILE A LAWSUIT WHEN THERE IS SMOKE RATHER THAN FIRE, OR THE SMELL OF SOMETHING WRONG, WITH THE IDEA THAT DISCOVERY WILL UNEARTH ACTUAL EVIDENCE THAT WOULD BE NECESSARY TO SUPPORT THE CLAIM.

AND IN THIS CASE, DEFENDANTS MISHANDLED THE ACTION FROM THE FILING AND AFTERWARD WHICH IS WHY WE SAY THEY PURSUED NEGLIGENT AND FLAWED STRATEGIES. THEY TOOK NO DEPOSITIONS IN THE NORTHERN DISTRICT CASE. THEY --

**THE COURT:**  WELL, THAT'S WHY I ASKED.  SO IF THEY HAD TAKEN DEPOSITIONS AND FILED A BETTER OPPOSITION SUMMARY JUDGMENT MOTION, SO WHAT?  YOU WOULD HAVE WON?

**MR. ROSEN:**  WE'LL NEVER KNOW, YOUR HONOR.

**THE COURT:**  WELL, BUT IS THAT PART OF YOUR CASE? THAT'S WHY I ASKED YOU.  I MEAN, ARE YOU SAYING, THEN, THAT THIS IS PART OF -- THAT COMPONENT OF THIS CASE IS A TRADITIONAL MALPRACTICE CASE BY NOT TAKING DEPOSITIONS, BY NOT FILING THE NECESSARY SUFFICIENT EVIDENTIARY SHOWING ON SUMMARY JUDGMENT, BY NOT HIRING THE RIGHT EXPERT, BY NOT CONSTRUING THE PATENT PROPERLY, ET CETERA, ET CETERA?  THEY DIDN'T MAKE THE ARGUMENTS

BEFORE THE FEDERAL CIRCUIT DISTRICT COURT.  AND THAT'S WHAT I'M ASKING, THAT SOME OF WHAT YOU'RE ALLEGING SOUNDS LIKE A TRADITIONAL MALPRACTICE CASE.

MR. ROSEN:  IT SOUNDS LIKE THAT, YOUR HONOR.  AND WE BELIEVE -- ASK YOUR HONOR TO BELIEVE WHEN WE SAY WE HAVE LOOKED HIGH AND LOW FOR ANOTHER CASE THAT DOESN'T FOLLOW THE TRADITIONAL MODEL, WHICH IS WE WOULD HAVE HAD A BETTER LITIGATION RESULT HAD THE DEFENDANTS NOT MALPRACTICED IN THIS CASE.

AND WE THINK, FRANKLY, THAT THE FIRST DISTRICT COURT OF APPEALS, THEY GOT IT RIGHT ON AT LEAST THEIR HALF OF THE CASE, WHICH IS THAT THERE WAS NEVER ANY EVIDENCE. AND EVIDENCE WAS NEVER PRESENTED, AND THEY COULD NOT HAVE WON THAT CASE.

THE COURT:  SO IS IT YOUR POSITION THAT EVEN HAD THEY TAKEN SOME DEPOSITIONS IT WAS STILL AN ILL-ADVISED COURSE OF ACTION, AND YOU WOULD HAVE LOST THIS CASE, ANYWAY, THEREFORE NOT A GOOD IDEA?

MR. ROSEN:  CERTAINLY WOULD HAVE LOST IT ON THE WAY THEY CONSTRUED THE CLAIM.

THE COURT:  WELL, OKAY. NOW, WE'RE GETTING INTO THE CASE.  YOU'RE SAYING THEY SHOULD HAVE CONSTRUED IT ANOTHER WAY, SHOULD HAVE MADE A DIFFERENT ARGUMENT BEFORE THE DISTRICT COURT IN THE FEDERAL CIRCUIT?

MR. ROSEN:  YOUR HONOR, I DON'T THINK THAT ANY OF THE OFFENDING DEVICES WOULD CONSTITUTE A CARD AS IT WAS CONTEMPLATED

BY THE '311 PATENT.

**THE COURT:** OKAY. SO THIS CASE WAS DOOMED FROM THE OUTSET?

**MR. ROSEN:** OUR BELIEF IS YES.

**THE COURT:** EVEN IF THEY TRIED AS THEY MIGHT AND YOU HAD BETTER QUALITY LAWYERING, ONCE IT GOT STARTED, YOU BROUGHT IN THE BEST IP FIRM, MADE THE BEST ARGUMENTS THEY COULD HAVE ON CONSTRUCTION, THE PLAIN LANGUAGE OF '311 YOU LIKELY WOULD HAVE LOST. THIS WOULD HAVE BEEN AN ILL-ADVISED CASE, AGAIN, TO EVEN GONE DOWN THAT ROAD; IS THAT RIGHT?

**MR. ROSEN:** YOUR HONOR, COULD THEY HAVE SURVIVED SUMMARY JUDGMENT? PERHAPS.

COULD THEY OF IDENTIFIED A SINGLE ACTUAL INFRINGER OF THE PATENT TO GET PAST THAT ONE HURDLE? THEY PROBABLY COULD HAVE IF IT WAS POSSIBLE TO HAPPEN, IF THEY COULD HAVE FOUND SOMEONE.

THE DEFENDANTS TESTIFIED THAT THEY WERE AWARE OF PEOPLE THAT COULD ACTUALLY INFRINGE THE METHOD OF THE PATENT. BUT NONE OF THEM WERE EVER PRESENTED IN THE DISTRICT COURT.

**THE COURT:** OKAY. I UNDERSTAND THAT. BUT NOW ARE YOU SAYING THAT THEY COULD HAVE BEEN AND SHOULD HAVE BEEN PRESENTED IN THE DISTRICT COURT AND HAD THE PATENT BEEN CONSTRUED PROPERLY AND EVIDENCE OF DIRECT INFRINGEMENT COULD HAVE BEEN FOUND -- COULD HAVE BEEN FOUND THAT YOU ACTUALLY COULD HAVE -- YOUR CLIENT COULD HAVE WON THIS CASE?

**MR. ROSEN:** CLIENT COULD NOT HAVE WON THE CASE, YOUR HONOR.

**THE COURT:** OKAY. SO --

**MR. ROSEN:** BUT THEY COULD HAVE GOTTEN PAST SUMMARY JUDGMENT. THEY COULD HAVE GOTTEN TO A SETTLEMENT CONFERENCE. I MEAN, A LOT OF THINGS COULD HAVE HAPPENED. THEY COULD HAVE GOTTEN A LICENSING DEAL OUT OF IT, WHICH AS FARFETCHED AS IT SOUNDS, YOUR HONOR, I THINK IS WHAT WAS IN MR. WEISS' MIND WHEN HE FILED THE ORIGINAL CLAIM.

**THE COURT:** SO YOU'RE SAYING HAD THIS CASE BEEN HANDLED BETTER, THERE COULD HAVE BEEN A BETTER LITIGATION OUTCOME. IS THAT WHAT YOU'RE SAYING? IS THAT PART OF THE CLAIM IN THIS CASE?

**MR. ROSEN:** HAD THIS CASE BE HANDLED BETTER, YOUR HONOR, IT WOULD HAVE BEEN LICENSED. IT WOULD HAVE BEEN EXPLOITED AND MONETIZED FOR WHAT IT WAS.

**THE COURT:** NO, I'M SAYING IF THE LITIGATION HAD BEEN HANDLED BETTER.

**MR. ROSEN:** I DON'T THINK THIS CASE IN THE END RESULT WOULD HAVE BEEN A WINNING CASE UNDER ANY CIRCUMSTANCE.

**THE COURT:** SO ARE YOU CONCEDING, THEN, THAT EVEN HAD THIS CASE BEEN LITIGATED BETTER ONCE THE DECISION WAS MADE TO LITIGATE AND NOT LICENSE, THAT A BETTER OUTCOME WOULD NOT HAVE BEEN OBTAINED WITH BETTER COUNSEL?

**MR. ROSEN:** CORRECT, YOUR HONOR.

**THE COURT:**  OKAY. SO IT REALLY IS FOCUSED ON SHOULDN'T HAVE BROUGHT THIS CASE IN THE FIRST NAMES.

**MR. ROSEN:**  NEVER.

**THE COURT:**  IN THAT CASE, THEN, LET ME ASK YOU FART OF WHAT YOUR CLAIM IS THAT THEY FAILED TO DISCLOSE IN YOUR COMPLAINT TO E-PASS THAT THERE WAS NO LEGITIMATE EVIDENCE TO SUPPORT E-PASS' CLAIM ASSERTED IN THE UNDERLYING ACTION, THE FACT THE DEFENDANT EITHER KNEW, WHICH WOULD -- IF THAT'S THE CASE WOULD FOCUS ON WHAT PREINVESTIGATION THEY HAD, WHAT INFORMATION THEY HAD WHEN THEY MADE REPRESENTATIONS TO YOUR CLIENTS, OR SHOULD HAVE KNOWN.

NOW, ONCE YOU DO THE "SHOULD HAVE KNOWN," DOES NOT THAT -- DOESN'T THAT OPEN IT UP TO OBJECTIVELY WHAT WAS IN THE UNIVERSE?  WHETHER THEY KNEW IT OR NOT, IF THERE WAS -- SO, FOR INSTANCE, LET'S SAY THEY DIDN'T DO PREFILE INVESTIGATION, AND THEY MADE REPRESENTATIONS, YOU KNOW, TO YOU.

BUT, IN FACT, THERE WAS GOOD EVIDENCE OUT.  THERE HAD THEY DONE THEIR DUE DILIGENCE THEY COULD HAVE FOUND IT. OR MAYBE HAD THEY DONE DUE DILIGENCE THEY WOULD HAVE FOUND THERE WAS NO SUCH EVIDENCE OUT THERE.

DOES THAT NOT OPEN THE DOOR, IF YOU START TALKING ABOUT WHAT THE TRUE FACTS REALLY WERE, FOR WHAT THEY SHOULD HAVE KNOWN?  DOES THAT NOT OPEN THE DOOR IN THIS CASE TO A BIT OF THE EVALUATION OF THE MERITS OF THIS CASE, WHAT COULD HAVE BEEN, WHAT THE REAL FACTS ARE?

AND YOU USE THE WORD "TRUE FACTS. MISLED E-PASS INTO BELIEVING THEY HAD A VIABLE PATENT CLAIM BY CONCEALING THE TRUE FACTS, WHICH SHOW THE OPPOSITE."

IN OTHER WORDS, YOU HAVE TO SHOW IT WAS NOT A VIABLE PATENT CLAIM, ALMOST THE REVERSE. IN THIS TRIAL WOULD YOU BE SHOWING THERE WAS NEVER ANY CLAIM FOR THIS? WOULD THEY HAVE THE RIGHT TO SAY:

"ACTUALLY, YOU KNOW, THERE WAS A DECENT CLAIM, AND HERE'S WHY. X, Y, Z. ACTUALLY, HERE'S SO AND SO WITNESS. HERE'S SOME DOCUMENTS. YOU KNOW, HAD THE FEDERAL COURT NOT WRONGLY DISMISSED THIS CASE," OR WHATEVER, YOU KNOW?

IT REALLY WASN'T -- SO I GUESS WHAT I'M ASKING THERE'S TWO WAYS TO APPROACH THIS CASE FROM YOUR SORT OF:

"WHAT YOU KNEW AND WHAT YOU REPRESENTED VERSUS WHAT YOU SHOULD HAVE KNOWN OR WHAT THE REAL WORLD WAS THAT YOU DIDN'T REPRESENT."

I MEAN, IS YOUR CASE JUST GOING TO FOCUS ON WHAT THEY KNEW AND WHAT THEY REPRESENTED IN LIGHT OF WHAT THEY KNEW?

**MR. ROSEN:** WHAT THEY KNEW, WHAT THEY SHOULD HAVE KNOWN, ALL OF THOSE THINGS WOULD HAVE LED THEM TO THE BELIEF THAT INITIATING SUCH HIGH-PRICED, LONG, WINDING LITIGATION WOULD NOT HAVE BEEN IN THE CLIENT'S BEST INTEREST; THAT NO REASONABLE ATTORNEY WOULD HAVE ACCEPTED THE TASK OF FILING INFRINGEMENT LITIGATION AGAINST PALM, AGAINST 3COM, AGAINST VISA, AGAINST

MICROSOFT, AGAINST COMPAQ, AGAINST ANY OF THEM.

**THE COURT:**  WHEN YOU SAY:

"DEFENDANTS MISUNDERSTOOD THE '311 PATENT AND MISCONSTRUED THE VALIDITY CONSTRUCTION, IN EFFECT, FEDERAL PATENT LAW TO THE '311 PATENT," DOES THAT NOT REQUIRE THEN SOME INQUIRY INTO THE MERITS OF THE PROPER CONSTRUCTION AS COMPARED TO HOW THE DEFENDANTS CONSTRUED IT?

**MR. ROSEN:**  YOUR HONOR, WE -- IN THE STATE APPELLATE COURT, WE DISCLAIMED CONSTRUCTION ISSUES AND WERE GRANTED JURISDICTION IN THE STATE COURT ON THE SECOND PRONG OF JUDGE JENSEN'S ORIGINAL SUMMARY JUDGMENT ORDER, WHICH WAS THAT THERE WAS NO EVIDENCE OF ACTUAL INFRINGEMENT SUCH THAT THE CASE FAILED ON THAT BASIS.

**THE COURT:**  ALL RIGHT.  THEN, ARE YOU WITHDRAWING THIS CLAIM?  THEN, WHY ALLEGE THE DEFENDANTS' MISUNDERSTOOD THE PATENT AND MISCONSTRUED IT IF THAT'S REALLY NOT THE ISSUE? YOU'RE SAYING THERE WAS NO EVIDENCE.

**MR. ROSEN:**  IN THE STATE CASE, THAT'S WHAT OUR CASE IS.

**THE COURT:**  OKAY.  BUT WHAT ABOUT HERE?

**MR. ROSEN:**  HERE JUDGE JENSEN ALSO FOUND THAT A CARD IS NOT A TRIO.  A CARD DOESN'T HAVE A STYLIST. A CARD DOESN'T HAVE AN ANTENNA. A CARD ISN'T MORE THAN A THICK CARD SHEET OF CARDBOARD.  IT'S NONE OF THOSE THINGS.  AND YET, DEFENDANTS CONTINUED TO BEAT THEIR HEADS AGAINST THE WALL OR RATHER BEAT

OUR CLIENTS' HEADS AGAINST THE WALL IN ORDER TO FORCE THAT FLAT SCREW INTO A ROUND HOLE.

**THE COURT:** ALL RIGHT.  YOU MAY DISCLAIM IT, BUT WHY CAN'T THEY, IN DEFENSE, IF YOU ARE GOING TO PUT THIS AT ISSUE COME BACK AND SAY:

"WELL, WAIT A MINUTE.  JUDGE JENSEN WAS JUST WRONG HERE.  THIS WAS A REASONABLE CONSTRUCTION THAT WE HAD ADVANCED. WE HAPPENED TO LOSE ON IT.  MAYBE IT'S PLAIN MEANING.  MAYBE NOT. BUT HERE'S WHY OUR CONSTRUCTION WAS REASONABLE, AND, IN FACT, SHOULD HAVE PREVAILED?  AND, UNFORTUNATELY, IT DIDN'T."

WHY ISN'T THAT A VALID DEFENSE?  AND IF IT IS, DOESN'T THAT RAISE EITHER FOR THE JURY OR FOR THE COURT OR FOR SOMEBODY SOMETHING THAT KIND OF LOOKS LIKE A PATENT CONSTRUCTION OR HALF OF A PATENT CONSTRUCTION?

**MR. ROSEN:**  IT DOES, YOUR HONOR.

**THE COURT:**  SO WE MAY HAVE SOME ELEMENTS OF THE CASE WITHIN THE CASE.  WE CAN'T TOTALLY AVOID IT.

**MR. ROSEN:**  WELL, BECAUSE YOUR HONOR THIS WAS DECIDED ON SUMMARY JUDGMENT AND AS A MATTER OF LAW THE COURT FOUND THAT THEIR CONSTRUCTION WAS INCORRECT, WE THINK THAT THE CASE WITHIN A CASE IS REALLY EXPERT VERSUS EXPERT, IF THAT'S WHAT THE COURT LIMITS THE PRESENTATION OF EVIDENCE TO, AND PROBABLY GOES TO THE COURT RATHER THAN THE JURY.

**THE COURT:**  WELL, ISN'T THE ISSUE MORE PRECISELY

PERHAPS, LIKE ON THIS CLAIM CONSTRUCTION, NOT WHAT IS THE ABSOLUTE TRUTH, HOW THIS CASE OR CLAIM SHOULD BE CONSTRUED, BUT WHETHER OR NOT, ONE:  THERE WAS A REASONABLE POSSIBILITY OF PREVAILING UNDER SOME CLAIM CONSTRUCTION THEORY; AND, TWO:  DID THEY -- IF YOU ARE GOING TO CHALLENGE THE WAY THEY HANDLED THE CASE, DID THEY HANDLE THE CASE WELL?  BUT MAYBE THE FIRST QUESTION, IT'S MORE OF NOT WHAT THE CLAIM CONSTRUCTION WAS, BUT WAS THERE A REASONABLE CHANCE OF WINNING ON A REASONABLE CLAIM CONSTRUCTION THEORY?

BECAUSE IF THERE WASN'T, THEN YOUR POINT IS: SHOULDN'T HAVE BROUGHT THIS CASE IN THE FIRST PLACE. BUT IF THERE WAS A REASONABLE CHANCE OF WINNING BASED ON A REASONABLE CONSTRUCTION OF '311, THEN THEIR DEFENSE IS GOING TO BE:

"WELL, WE HAD A REASONABLE SHOT. SOMETIMES YOU WIN. SOMETIMES YOU LOSE."

BUT IF THAT'S THE CASE, IT SEEMS LIKE THAT'S THE ISSUE. THAT'S HOW I'M SEEING IT RIGHT NOW THAT WE DIDN'T HAVE TO NECESSARILY CONSTRUE THIS AS IF THIS WERE, YOU KNOW, A STRAIGHT CLAIMS CONSTRUCTION.  BUT WE WOULD HAVE TO HEAR EVIDENCE FROM EXPERTS OR WHATEVER ABOUT WHY THIS WAS A REASONABLE APPROACH, EVEN IF YOU DIDN'T WIN.

**MR. ROSEN:**  WE'VE ALWAYS BEEN UNDER THE BELIEF, YOUR HONOR, THAT PATENT EXPERTS WILL HAVE TO TESTIFY IN THIS ACTION.

**THE COURT:**  WELL, LET ME ASK YOU THIS:  AM I MISSING SOMETHING?  I MEAN, YOU'RE NOT SUGGESTING THAT WE ACTUALLY HAVE

TO GO THROUGH CLAIMS CONSTRUCTION PROCESS, PER SE, ARE YOU?

     **MR. MCMONIGLE:**  WELL, I DON'T KNOW WHERE TO START.

     I'M GOING TO TRY TO START, YOUR HONOR.  AND I GUESS THAT, YOU KNOW, THE STANDARD THAT WE'RE OPERATING UNDER HERE, I MUST ADMIT WE'RE TRYING TO FIGURE THAT OUT.  AND WE ACTUALLY POSITED THIS, YOU KNOW.  WE'RE REALLY TALKING ABOUT A PROBABLE CAUSE STANDARD, BECAUSE WHAT WE'RE TRYING TO MATCH UP IS PLAINTIFF'S THEORY IS THERE WAS NO MERIT TO THE CASE. IT SHOULD NOT HAVE BEEN FILED.

     AND I MUST -- YOU KNOW, I MUST ADMIT IS THAT A RULE 11 STANDARD?  OR IS IT A PROBABLE CAUSE STANDARD?

     YOU KNOW, WE'RE NOT QUITE CLEAR AS TO WHAT IT IS. BUT WE'RE TRYING TO MATCH UP THAT THEORY BECAUSE THAT'S THE ESSENTIAL THEORY THAT THE PLAINTIFFS ARE PRESENTING.

     AND OUR DEFENSE IS, AT LEAST IN PART, IS THAT THERE WAS A PATENT AND THERE WAS INFRINGEMENT.  AND WE SHOULD BE ABLE TO PRESENT THAT. SO THERE HAS TO BE SOME FORM OF CLAIMS CONSTRUCTION WITHIN THAT BECAUSE YOU CAN'T BYPASS IT.  AND THAT'S, I THINK, WHAT THE CASE LAW PROVIDES.

     **THE COURT:**  BUT YOU NEED TO SHOW THERE WAS A VIABLE CASE.

     **MR. MCMONIGLE:**  YES.  AND IN DOING THAT THERE HAS TO BE SOME CLAIM CONSTRUCTION, BECAUSE I DO BELIEVE THE TRIAL WITHIN A TRIAL IS MANDATED HERE.  AND IT'S IRONIC THAT THE LEADING CASE ON THE TRIAL WITHIN A TRIAL IS AN ACCOUNTING

MALPRACTICE CASE, BUT THAT'S THE MACO FORDS (PHONETIC) CASE IS THE ONE THAT SETS OUT THE COMPLETE HISTORY OF THE TRIAL WITHIN THE TRIAL.

AND A CASE NEAR AND DEAR TO MR. ROSEN'S HEART, THE BLANKS CASE APPLIES IT TO THE LEGAL MAL. AND I WILL AT THIS POINT STATE THAT FOR CERTAIN, YOU KNOW, THE GUTTIEREZ LINE OF CASES THE GUTTIEREZ CASE IS NOT PROPER PRECEDENT FOR STEPPING AWAY FROM THE TRIAL WITHIN THE TRIAL, BECAUSE GUTTIEREZ SIMPLY INVOLVED A SETTLEMENT, A LITIGATION, A SETTLEMENT AND THEN MONIES THAT THE PLAINTIFF'S LAWYER HAD, AND THE CLAIM WAS MISAPPROPRIATED THOSE MONIES.

SO NO ALLEGATION THAT THE LITIGATION WAS HANDLED IMPROPERLY.  NO ALLEGATION THAT THE SETTLEMENT WASN'T ADEQUATE. JUST THE ISSUE OF WHAT THE PLAINTIFF'S LAWYER DID WITH THE MONEY, SO --

THE COURT:  WELL, LET ME ASK YOU --

MR. MCMONIGLE:  -- SO I THINK WE'VE GOT A TRIAL WITHIN THE TRIAL.

THE COURT:  WELL, HOLD ON. THIS IS NOT A CASE -- IT'S NOW BEEN DISAVOWED THAT THERE'S A CLAIM THAT A BETTER LITIGATION OUTCOME WOULD HAVE OCCURRED, WHICH IS YOUR TRADITIONAL MODEL, YOU'RE TRADITIONAL PARADIGM.  AND, THEREFORE, OBVIOUSLY YOU HAVE TO SHOW THAT, YEAH, YOU WOULD HAVE ONE HAD YOU NOT SCREWED UP. THAT'S NOT THE CLAIM HERE.  THE CLAIM IS THAT THERE WAS NO PROBABLE CAUSE IN THE FIRST PLACE.

**MR. MCMONIGLE:** RIGHT.  IT'S A LITTLE DIFFERENT.

**THE COURT:** SO WHAT IF, YOU KNOW, THE ALLEGATION WERE SIMPLY:

"THEY DIDN'T CONDUCT ANY PREFILING INVESTIGATION.  THEY DIDN'T HIRE ANY EXPERT TO BOTHER CONSTRUING THE PATENT.  THEY DIDN'T TAKE ANY OF THE STEPS THAT YOU WOULD EXPECT OF REASONABLE DILIGENCE THAT A PATENT LAWYER OR LITIGATION LAWYER WOULD DO.  BUT THEY JUST TOLD US 'FORGET THE MILLION DOLLAR LICENSE.  LET'S GO WITH THE LITIGATION.'"

IF THAT'S ALL YOU KNEW, WOULDN'T THEY HAVE A CLAIM WITHOUT HAVING TO GET INTO:

"WELL, IN THE END, WHAT DOES THE PATENT REALLY MEAN?  WHAT DID THE EVIDENCE REALLY SHOW?"

IF THEY SHOW THERE WAS NO INVESTIGATION WHATSOEVER, NOT EVEN TO SATISFY RULE 11, WOULDN'T THEY HAVE A CLAIM?

**MR. MCMONIGLE:** WELL, YES, THEY WOULD.  BUT, THEN -- BUT, THEN WHAT WE'RE TALKING ABOUT IS THE METHOD OF PROVING THAT.  AND CAN YOU PROVE IT BY, WHICH IS THEIR POSITION AT THIS POINT: CAN THEY PROVE IT BY DECISIONS BELOW?  CAN THEY PROVE IT BY THE COURT OF APPEAL DECISION?  CAN THEY PROVE IT BY EXPERTS? THAT'S THE MANNER IN WHICH THEY ARE PROCEEDING.

**THE COURT:** AND THE ANSWER IS?

**MR. MCMONIGLE:** THE ANSWER IS --

**THE COURT:** WHAT IS IT?  PROVE WHAT?  IF IT'S PROVING

MALPRACTICE --

**MR. MCMONIGLE:** PROVING THAT THE CASES, ACCORDING TO THEM, DIDN'T HAVE ANY MERIT AND SHOULDN'T HAVE BEEN FILED. CAN THEY PROVE THAT BY POINTING TO THE DECISIONS AT THE DISTRICT COURT LEVEL?

CAN THEY PROVE THAT BY POINTING TO THE COURT OF APPEAL DECISIONS AND STATEMENTS MADE IN THE COURT OF APPEAL DECISION? CAN THEY PROVE THAT WHAT YOU JUST HEARD BY EXPERT TESTIMONY? AND THE CASE LAW SAYS NO WITH REGARD TO THAT.

AND ONE OF THE THINGS THAT'S AWKWARD ABOUT THIS HEARING IS, YOUR HONOR -- AND I'M NOT PLACING ANY FAULT, BUT WE GOT THEIR BRIEF AT MIDNIGHT ON MONDAY, AND THEY RESPONDED TO OUR PIECE, BUT WE DIDN'T RESPOND TO THEIRS. SO THERE'S A COUPLE OF CASES THAT I WOULD LIKE TO BRING TO YOUR ATTENTION.

**THE COURT:** WELL, LET ME TELL YOU WHERE I'M PROBABLY GOING TO BE HEADED, I THINK. TO FLESH THIS OUT IN FINAL ANALYSIS, I NEED TO SEE SOMETHING MUCH MORE SPECIFIC. I NEED AN OFFER OF PROOF. AND I'M GOING TO AT THE END OF THIS, PROBABLY ASK YOU TO SUBMIT AN OFFER OF PROOF THAT'S VERY SPECIFIC SO I CAN SEE EXACTLY WHAT YOUR CLAIMS ARE, BECAUSE JUST IN OUR COLLOQUY HERE I'M STILL NOT A HUNDRED PERCENT CLEAR EXACTLY WHAT YOUR CLAIMS ARE AND WHAT YOUR POSITION IS ON VARIOUS THINGS.

AND THEN, I WANT TO SEE CONVERSELY WHAT YOUR RESPONSE IS. THAT THEN I CAN LOOK AT IT AND SAY:

"WELL, YEAH, IN LIGHT OF THE CLAIMS THEY ARE

GIVING AND PERHAPS SOME ISSUES THEY ARE CONCEDING THEY ARE NOT GOING TO ASSERT WE MAY HAVE TO GET INTO THIS ISSUE, BUT NOT THIS ISSUE.  OR IN LIGHT OF YOUR POSITION I THINK IT'S GOING TO HAVE TO BE QUITE FACT SPECIFIC.

SO YOUR POSITION ABOUT WAS THERE PROBABLE CAUSE IN THE FIRST PLACE, YOU KNOW, THAT MIGHT BE ENLIGHTENED AND DETERMINED BY WHAT DID YOU KNOW.  NOT WHAT YOU COULD HAVE KNOWN, BUT WHAT DID YOU KNOW AT THE TIME?

ON THE OTHER HAND, IF THEIR CLAIM IS BROADER IN THAT REGARDLESS OF WHAT THEY KNEW AT THE TIME THIS CASE SHOULD NEVER HAVE BEEN BROUGHT.  THAT'S WHY I ASKED YOU THE SHOULD HAVE KNOWN; THAT EVEN IF THEY HAD DONE A PREINVESTIGATION AND DONE OTHER WORK AND EXERCISED DILIGENCE AND NOT COMMITTED MALPRACTICE, AT THE VERY OUTSET THEY WOULD HAVE KNOW.

THEN, THE INQUIRY IS A LITTLE BROADER IN TERMS OF WHAT ARE THE UNIVERSE OF FACTS THAT ARE RELATED.  AND THE BROADER YOUR ALLEGATIONS, THE BROADER YOUR DEFENSE.

I SUSPECT THE MORE WE GET INTO THE PARTS OF THE CASE WITHIN THE CASE, BUT WE MAY NOT NEED TO GET WHOLLY INTO THE CASE WITHIN THE CASE, BECAUSE UNDER OF THE CASE THE QUESTION MAY NOT BE:  HOW SHOULD WE CONSTRUE THIS PATENT?

IT MAY BE:  WAS THERE A REASONABLE CHANCE THAT YOU COULD HAVE PREVAILED ON SOME LIKELY CONSTRUCTION OF THE PATENT? AND THAT MAY BE -- EVEN THOUGH THAT'S NOT THE ONE ULTIMATELY RULED ON, IF THERE'S A REASONABLE SHOT -- AND THERE, I MIGHT

HAVE TO HEAR -- YOU KNOW, WHETHER IT'S A JURY OR COURT -- I MAY HAVE TO HEAR EXPERT EVIDENCE.

**MR. MCMONIGLE:** AND, YOUR HONOR, THAT'S ONE -- I THINK YOU ARE GOING TO WHERE WHAT WAS GOING TO BE OUR ULTIMATE SUGGESTION THAT IS THIS NEEDS ANOTHER ROUND IN TERMS OF LOOKING AT IT.

AND WHAT WE WILL ALSO PRESENT IS THE ANSWER ISN'T A DEFAULT TO EXPERTS GETTING UP ON THE STAND AND SAYING:

"I THINK IT WAS A MERITORIOUS CASE. NO, I DON'T THINK IT WAS A MERITORIOUS CASE," BECAUSE THAT'S -- YOU KNOW, THAT'S THE PROBLEM WITH THE LOOKBACK IN LEGAL MALPRACTICE IS THAT, YOU KNOW, IT CREATES A -- YOU KNOW, THE CHANCE THAT THERE IS SPECULATION IN A LOOKBACK. AND SO THAT'S WHY THE TRIAL WITHIN THE TRIAL -- AT LEAST SOME FORM OF IT -- HAS BEEN SUBSTITUTED IN TO AVOID THAT.

AND THE CASE LAW IS PRETTY CLEAR. THE ANSWER IS MR. ROSEN DOESN'T GO GET THE BEST EXPERT. WE DON'T GET THE BEST EXPERT. AND THEY BATTLE HERE AND, YOU KNOW, WHAT DO WE HAVE WITH THAT BATTLE?

THE CASE LAW IS PRETTY CLEAR THAT THE UNDERLYING CASE, WHATEVER FORM THAT TAKES -- AND WE THINK THERE'S SOME FORM HERE -- HAS TO BE A TRIAL WITHIN THE TRIAL AND NOT EXPERTS TALKING ABOUT WHAT IT SHOULD HAVE BEEN, SHOULD OR SHOULDN'T HAVE BEEN. SO -- AND WE'D LIKE THE OPPORTUNITY TO PRESENT --

**THE COURT:** WELL, I MEAN, WE WILL HAVE TO SEE. I'M

NOT SURE, BECAUSE THIS IS, AGAIN, IF THEY ARE ESCHEWING THE TRADITIONAL WE-WOULD-HAVE-WON-BUT-FOR-THE-NEGLIGENCE-AT-TRIAL THEORY, AND MORE THAT WE-SHOULDN'T-HAVE-BROUGHT-IT-IN-THE-FIRST-PLACE, AND YOU SAY:

"NO, WE HAD PROBABLE CAUSE," THEN EITHER REALLY -- THE QUESTION IS: WAS IT GOOD JUDGMENT?  WAS IT REASONABLE JUDGMENT AT THE TIME BASED ON EITHER WHAT YOU KNEW OR WHAT YOU SHOULD HAVE KNOWN, ET CETERA, ET CETERA?

THAT'S DIFFERENT THAN SAYING:

"WELL, WHAT ARE THE ACTUAL FACTS?  WHAT IS THE ACTUAL CONSTRUCTION?  WHAT ARE THE ACTUAL" -- YOU KNOW, IT IS FORECASTING. WHAT YOU KNEW AND SHOULD HAVE KNOWN, WAS IT BAD ADVICE TO TAKE THIS ROUTE RATHER THAN THIS ROUTE?

**MR. HOFFMAN:**  YOUR HONOR, IF I CAN JUST CHIME IN, I APPRECIATE THE CONCEPT AND THINGS.  IT'S A GREAT CONCEPT TO HAVE THE OFFER OF PROOF AND THE RESPONSE.

WE DO HAVE JUST THE COMPLICATING FACTOR, AND MAYBE THE OFFER OF PROOF WILL ADDRESS THIS.  THAT WE HAVE TWO SETS OF UNDERLYING CASES.  WE HAVE THE CALIFORNIA CASE.  WE HAVE THE TEXAS CASE.  WE HAVE THE CLAIM CONSTRUCTION IN EACH CASE THAT IS DIFFERENT. HOW THAT'S GOING TO COMPLICATE THINGS FOR A JURY IS SOMETHING THAT WE'RE ALL GOING TO HAVE TO DEAL WITH.

BUT, YOU KNOW, THAT'S AN ISSUE THAT AS LONG AS THERE IS THE ASSERTION THAT THERE WAS -- THERE WERE ACTS, ERRORS OR OMISSIONS IN CONNECTION WITH THE CLAIM CONSTRUCTION, WHICH IS

ABSOLUTELY PART OF THE CASE BEFORE THIS COURT, THAT'S WHY WE HAD THE NUMEROUS HEARINGS AS TO WHETHER WAS THIS DIFFERENT THAN STATE COURT OR NOT, WE'RE GOING TO HAVE TO ADDRESS THOSE.

THE COURT:  WELL, THAT'S WHY I WANT TO SEE THIS OFFER OF PROOF, BECAUSE I CAN IMAGINE A PLAINTIFF'S CASE -- AND I THOUGHT THIS IS WHERE YOU WERE GOING -- SAYING:  NO MATTER HOW YOU COULD HAVE REASONABLY CONSTRUED THIS PATENT, WHETHER WE DID IT IN TEXAS, THE WAY IT CAME OUT IN CALIFORNIA OR A THIRD WAY, NO WAY YOU WOULD HAVE WON THIS CASE BECAUSE OF X, Y, Z.  EITHER THE PLAIN LANGUAGE, YOU KNOW, GIVEN THE VARIOUS ALTERNATIVES, VIABLE CONSTRUCTIONS, YOU STILL WOULD HAVE LOST UNDER EACH ONE OF THOSE, IN WHICH CASE IT WOULDN'T MATTER EXACTLY HOW WE CONSTRUE IT IF THEIR THEORY IS YOU CAN TAKE ONE OF FIVE DIFFERENT CONSTRUCTIONS, REASONABLE CONSTRUCTIONS, THIS CASE SHOULD NOT HAVE BEEN BROUGHT IN THE FIRST PLACE BECAUSE WE DIDN'T HAVE A SNOW BALL'S CHANCE TO PREVAIL.

MR. MCMONIGLE:  BUT THAT'S DICTATED BY THEIR CASE. OUR DEFENSE MAY VERY WELL BE UNDER THIS CONSTRUCTION THERE WAS A SHOT.

THE COURT:  WELL, THEN, YOU'LL HAVE TO PROVE THAT THAT WAS A REASONABLE CONSTRUCTION, NOT THAT THAT IS HOW I WOULD CONSTRUE IT AS THE COURT OR YOU, THE JURY.  BUT TO ANYBODY WHO IS A LITIGATOR WOULD LOOK AT THIS AND SAY:

"YEP, WE GOT A REAL CHANCE.  WE HAVE A 20 PERCENT CHANCE, 50 PERCENT CHANCE."

AND THAT'S WHY IT DOES UNFORTUNATELY SOUND LIKE SOME EXPERT TESTIMONY.

**MR. MCMONIGLE:** BUT THAT'S AN ISSUE -- BUT ISN'T THAT SOMETHING THAT IN THE NORMAL COURSE OF EVENTS WOULD BE PRESENTED TO YOU AND YOU'D MAKE THE CALL AND NOT THE JURY? SO --

**THE COURT:** WELL, IF I HAD TO CONSTRUE -- IF I HAD TO CONSTRUE THE PATENT IT WOULD BE MY CALL. THE QUESTION OF: WAS THERE A REASONABLE CONSTRUCTION AVAILABLE SUCH THAT YOU COULD HAVE PREVAILED, THAT SOUNDS -- I DON'T KNOW.

TO ME, MY GUT REACTION, THAT SOUNDS LIKE A FACT-BASED QUESTION, JUST LIKE ASSESSING: WHAT ARE THE CHANCES OF WINNING? AND AT THE END OF THE DAY THE JURY IS GOING TO HAVE ASSESS: WHAT WERE THE CHANCES OF WINNING THIS CASE TIMES HOW MUCH, YOU KNOW, VALUE, HOW MUCH DAMAGES COULD HAVE BEEN GOTTEN VERSUS WHAT WAS THE ECONOMIC BENEFIT OF GOING THE OTHER WAY?

YOU KNOW, SORT OF ONE IN THE HAND A MILLION BUCKS FROM MICROSOFT VERSUS 20 PERCENT CHANCE OF MAKING TEN MILLION. WHATEVER IT IS, THE JURY IS GOING TO HAVE TO MAKE THAT JUDGMENT: WHETHER THE ADVICE GIVEN WAS WITHIN THE REALM OF COMPETENCY WE WOULD EXPECT OF AN ATTORNEY.

SEEMS LIKE THAT ULTIMATE QUESTION IS THE JURY QUESTION. AND WRAPPED INTO THAT THEY WILL TO HAVE ASSESS VARIOUS THINGS LIKE WHAT THE RISKS ARE, WHAT THE LITIGATION RISKS WERE, BECAUSE THE JURY MAY HAVE A COMPLETELY DIFFERENT OUTCOME IF THEY THINK:

"YEAH, THERE WAS AN 80 PERCENT CHANCE THEY COULD HAVE WON, BUT UNFORTUNATELY THINGS DIDN'T TURN OUT VERY WELL.  THEY HAD BAD JUDGES AND WHATEVER.

OR THEY HAD A 20 PERCENT CHANCE OF WINNING IN THE FIRST PLACE, SHOULDN'T HAVE --

**MR. MCMONIGLE:**  WELL, YOUR HONOR, I WOULD SUGGEST THAT YOU -- THAT WE BE ALLOWED TO ADDRESS THAT, BECAUSE I DO THINK IT'S -- IT'S AN ISSUE OF LAW FOR THE COURT OR FUNDAMENTALLY WITHIN A CASE, HAD IT PROCEEDED PROPERLY, THAT WOULD HAVE BEEN A JUDGE CALL AS TO HOW TO CONSTRUE.

**THE COURT:**  NOT HOW TO CONSTRUE, BUT WHETHER THE CONSTRUCTION YOU SAY YOU COULD HAVE WON ON IS WITHIN THE RANGE OF REASONABLE CONSTRUCTION ALTERNATIVES. BECAUSE, YOU KNOW, YOU CAN CONSTRUE LANGUAGE ONE OR FOUR OR FIVE DIFFERENT WAYS IN A TYPICAL PATENT CASE.

AND IT MAY NOT BE MALPRACTICE TO SAY:

"YOU KNOW, WE MIGHT -- WE GOT A REASONABLE CHANCE AS WELL AS ANY OTHER CONSTRUCTION."

AND THAT'S NOT MAL -- EVEN IF YOU LOSE, THAT'S NOT MALPRACTICE. BUT THAT CAN BE DETERMINED WITHOUT SAYING:

"WELL, HERE'S HOW I, IF I WERE THE TRIAL JUDGE IN THAT CASE, WOULD HAVE CONSTRUED THE PATENT."

NOW, IT MAY BE THAT HOW IT WAS ACTUALLY CONSTRUED MAY BE ONE PIECE OF EVIDENCE THAT DETERMINATOR WOULD HAVE TO LOOK AT.  I'M NOT SURE HOW MUCH WEIGHT TO GIVE TO THAT.  BUT -- WELL,

I MEAN, WE'LL CROSS THAT BRIDGE.

BUT IT DOES SEEM TO ME THAT, AGAIN, THE ISSUE IF WE GET TO THIS PLACE, IS NOT HOW I WOULD HAVE CONSTRUED THE PATENT DE NOVO.  IT'S A QUESTION OF WHETHER THERE WAS A REASONABLE CONSTRUCTION THAT WOULD HAVE OPENED THE DOOR TO VICTORY?

**MR. ROSEN:**  IF I MAY, YOUR HONOR?

**THE COURT:**  YEAH.

**MR. ROSEN:**  WHEN I FIRST SAW THIS CASE, AND LOOKING AT MALPRACTICE AS A TRADITIONAL MODEL, I WAS OVERJOYED. DEFENDANTS HAD REPRESENTED TO OUR CLIENTS THAT THE DAMAGE RANGE WAS BETWEEN $450 MILLION AND $680 MILLION DOLLARS.  AND I WOULD HAVE DEARLY LOVED TO HAVE BROUGHT YOU THIS CASE.  BUT THE FACTS AS WE FOUND THEM WAS THAT THERE WAS NEVER EVER A CASE, AND THE CASE WAS -- "ILLUSIVE" WOULD BE CALLING IT -- WOULD BE KIND. WE NEVER THOUGHT IT HAD A CHANCE.

IN PREPARING THE BRIEF THAT WE PREPARED FOR YOU FOR TODAY'S HEARING, YOUR HONOR, WE RESPONDED TO DEFENDANTS WHO ARGUED THAT THEY SHOULD HAVE THE CHANCE TO LITIGATE VALIDITY OF THE PATENT, WHICH WAS NEVER VALIDITY IN THE UNDERLYING ACTIONS AND INFRINGEMENT.

BUT WHAT WE TRIED TO SAY IN OUR LATE SUBMISSION WAS THAT WE WILL LET THEM ARGUE WHATEVER THEY WANT ON THE VALIDITY OF THE PATENT.  IT'S AN EXTREMELY HIGH THRESHOLD BURDEN THAT THEY HAVE TO MAKE. AND IF THEY WANT TO ARGUE IN THIS REALM THAT THE PATENT WAS NOT VALID, WE WILL SIT BACK AND WATCH THEM DO IT.

I CAN'T IMAGINE THAT THEY WOULD, BUT WE DON'T OPPOSE THEM LITIGATING THAT ISSUE:  THE VALIDITY OF THE PATENT.

AS FAR AS INFRINGEMENT GOES, THERE WAS NO INFRINGEMENT PRESENTED TO THE COURT IN AT LEAST THE NORTHERN DISTRICT.

AND SO I'M NOT SURE WHAT THEY SHOULD BE ALLOWED TO DO IN DEFENSE IN THE LITIGATION OF THE MALPRACTICE CASE. NORMALLY, IN THE TRADITIONAL MODEL YOU WOULD SAY:

"WELL, THEY PRODUCED EVIDENCE, SUFFICIENT EVIDENCE OF INFRINGEMENT THAT THE COURT SHOULD HAVE GIVEN THEM AT LEAST A PASS THROUGH THE SUMMARY JUDGMENT ROUND."

BUT THE COURT NOTED, AND THE COURT OF APPEAL CONFIRMED, THAT THE DEFENDANTS DID NOT PRESENT ANY EVIDENCE OF INFRINGEMENT ON BEHALF OF E-PASS.

SO TO GIVE THEM AN OPPORTUNITY NOW TO SAY:

"WELL, THERE WAS ALL THIS INFRINGEMENT.  AND, LOOK, IT WAS A GOOD CASE," YOU KNOW, IT'S A DOUBLE-EDGED SWORD THAT THEY SHOULD COME IN WITH EVIDENCE OF INFRINGEMENT NOW, MAYBE SEVEN YEARS AFTER THE FACT OR MORE IS A LITTLE STRANGE, AND I WOULD LIKE TO BE ON THE OTHER END OF THAT --

**THE COURT:**  WELL, THERE'S A PARADOX THAT OCCURS TO ME.  SO TAKE THE INVALIDITY QUESTION.  I'M NOT SURE WHICH SIDE, IF YOU DO WANT TO RAISE VALIDITY OR INVALIDITY, WHICH SIDE YOU

CAME DOWN ON.  I THOUGHT I READ PART OF THE BRIEF AS SAYING:

"WELL, IF THEY WANT TO PREVAIL TO SHOW THAT THE LICENSING PATH WOULD HAVE BEEN FRUITFUL, WE GET TO SHOW IT WAS INVALID AND THEY WOULDN'T HAVE GOTTEN ANYTHING FOR THE LICENSE."

WELL, IF YOU SHOW IT WAS INVALID THAT ALSO SAYS:  WHY DID YOU BRING THIS CASE?  WHY DIDN'T YOU TELL THEM THAT IN THE FIRST PLACE?  YOU SHOULD HAVE TOLD THEM YOU HAD INVALID.  WHY GO DOWN THE LITIGATION PATH?  I'M NOT SURE YOU CAN HAVE IT BOTH WAYS.

ON THE OTHER HAND, I'M NOT SURE HE CAN HAVE IT BOTH WAYS.  IT WOULD BE VERY INTERESTING.  SAME THING WITH INFRINGEMENT.  IF YOU SAY:

"WE HAD STRONG -- WE DID HAVE PROBABLE CAUSE. WE SHOULD HAVE PREVAILED."

WELL, IF, IN FACT, IT'S TRUE YOU DIDN'T PRODUCE MUCH ON SUMMARY JUDGMENT, THEN IT'S LIKE:  WELL, IF IT WAS THERE DOESN'T THAT SUGGEST YOU MISHANDLED THE CASE?

I MEAN --

**MR. MCMONIGLE:**  WELL, YES.  BUT THAT ISN'T THE THEORY. I THINK WE'VE HEARD IT ISN'T THE THEORY.  IT ISN'T THE MISHANDLING.

**THE COURT:**  THAT'S WHY I ASKED.

**MR. MCMONIGLE:**  IT'S BACK TO HIM, AND HE SAYS "IT'S WITHOUT MERIT."

IT'S BACK TO US, SAYS:

"WE'RE ENTITLED TO PRESENT IN TERMS OF WHETHER THERE WAS MERIT." SO IT'S A LANE THAT PLAINTIFF HAS TO PICK. AND I FULLY ACKNOWLEDGE THAT, YOU KNOW, THERE'S A LANE FOR US TO PICK WITH REGARD TO VALIDITY AND INVALIDITY, YOUR HONOR.  AND I THINK YOU MAKE A GOOD POINT THERE.

BUT THE STARTING POINT IS PLAINTIFF'S LANE TO PICK, AND THEN WE DEFEND.  AND I DON'T KNOW WHICH IT IS AT THIS POINT I DON'T KNOW WHETHER IT'S TOTALLY WITHOUT MERIT OR IT'S NEGLIGENCE IN THE PROSECUTION OF THE CASE.

**THE COURT:**  THAT'S WHY I'M SUGGESTING.  I'M ALMOST ASKING FOR A TRIAL BRIEF WITH A PROFFER THAT'S VERY SPECIFIC.

BUT WHAT'S YOUR RESPONSE?  I MEAN.  IF YOU --

**MR. ROSEN:**  I'LL PICK MY LANE RIGHT NOW.

**THE COURT:**  OKAY.

**MR. ROSEN:**  THE PATENT WAS VALID.

**THE COURT:**  OKAY.  I'M TALKING ABOUT THE INFRINGEMENT.

**MR. ROSEN:**  THERE WAS NO EVIDENCE OF INFRINGEMENT AS AGAINST THE UNDERLYING DEFENDANTS.

**THE COURT:**  EVEN HAD THEY DONE THE DUE DILIGENCE INVESTIGATION THEY WOULD HAVE FOUND NO SUCH EVIDENCE.

**MR. ROSEN:**  EVEN THE COURT IN REVERSING IT CHIDED THEM:

"JUST PRODUCE ONE ACTUAL INFRINGER.  ONE."

THAT'S ALL THEY HAD TO DO TO MEET THEIR BURDEN. THAT'S ALL THAT THEY WERE REQUIRED TO DO EVEN UNDER THE MODEL JURY INSTRUCTIONS OF THE NORTHERN DISTRICT, ONE ACTUAL INFRINGER.  AND THEY DIDN'T DO IT.

THEY GOT SENT BACK. THEY DIDN'T DO IT AGAIN.  THEY DIDN'T TAKE ANY DEPOSITIONS IN-BETWEEN THE TWO SUMMARY JUDGMENT MOTIONS.  THEY DID NOTHING.

**MR. MCMONIGLE:**  AND, YOUR HONOR, LET'S NOT LOSE SIGHT OF THE "THEY, THEY, THEY, THEY," OKAY?

"THEY" IS NOT US. OKAY?  WE'RE -- WE WERE NOT THE PARTY IN THAT LAWSUIT. AND, YOU KNOW, THERE'S NO COLLATERAL ESTOPPEL.  THERE'S NO JUDICIAL ESTOPPEL BY VIRTUE OF WHAT HAPPENED BEFORE.

SO THAT'S THE RUB HERE.

**THE COURT:**  WE'LL CROSS THAT BRIDGE ABOUT ESTOPPEL OR NOT.

**MR. MCMONIGLE:**  YES.

**THE COURT:**  BUT IT CERTAINLY SOUNDS LIKE ADMISSIBLE EVIDENCE THAT IF A JUDICIAL BODY FOUND THAT THE LAWYER IN A MALPRACTICE CASE DID NOT PRESENT A DEFENSE, SOMEHOW I THINK THAT'S GOING TO COME INTO THE CASE.

**MR. MCMONIGLE:**  IT'S NOT DISPOSITIVE, YOUR HONOR.

**THE COURT:**  WELL, IT MAY NOT BE DISPOSITIVE, BUT I THINK THE JURY IS GOING TO HAVE TO HEAR THAT. THEY WILL WONDER WHAT HAPPENED IN THE CASE.  YOU GOT TO KNOW WHAT HAPPENED.  IT'S

HISTORIC FACT.

**MR. MCMONIGLE:** WELL, BUT I DON'T THINK IT'S WHAT THE COURT OF APPEALS' REASONING IS. I DON'T THINK IT'S WHAT THE DISTRICT COURT'S REASONING IS. I THINK THAT'S PRETTY CLEAR THAT THAT'S HEARSAY AND NOT ADMISSIBLE IN THE SUBSEQUENT CASE.

SO, YOU KNOW, MAYBE IT'S IN SOME OTHER FORM THROUGH, YOU KNOW, CROSS-EXAMINATION OF OUR CLIENT OR THE LIKE. I WOULD ACKNOWLEDGE THERE HAS TO BE A TALE TOLD ABOUT THE LITIGATION, BUT IT'S NOT -- YOU KNOW, IT'S NOT SKIPPING OVER AND ARGUING THAT:

"BY VIRTUE OF THIS RULING, I DON'T HAVE TO PROVE ANYTHING ELSE. I CAN USE THE REASONING OF THIS CASE, AND THAT TAKES CARE OF IT."

THAT ISN'T THE PATH THAT WOULD, YOU KNOW, PRODUCE THE ADMISSIBLE EVIDENCE.

**THE COURT:** WELL, WE'RE GOING TO HAVE QUESTIONS ABOUT ADMISSIBILITY AND COLLATERAL ESTOPPEL AND EVERYTHING ELSE. BUT THE FIRST STEP IS LET'S DEFINE THE SCOPE, AND THEN WE CAN TALK ABOUT WHAT EVIDENCE AS WE GET TOWARDS THE TRIAL.

BASICALLY, I WANT TO SEE WHAT THE PARTIES' POSITIONS ARE AND EXACTLY HOW THIS IS GOING TO PLAY OUT. AND I THINK THAT WILL HELP US DEFINE THE SCOPE. SO I THINK THIS IS AN ITERATIVE PROCESS. AND YOU MAY FIND YOURSELF HAVING TO OPT FOR ONE ROUTE OR ANOTHER.

MAYBE THERE'S ROOM FOR ALTERNATIVE ARGUMENTS LIKE:

"HERE'S OUR POSITION.  BUT THEN, IF THEY COME BACK WITH THIS, WE GOT TO COME BACK WITH THIS," SO I DON'T KNOW.  SO IT MAY TAKE TWO ITERATIONS.  I DON'T KNOW.  BUT I HOPE NOT.

**MR. ROSEN:**  ONE OF THOSE HYBRID ARGUMENTS, YOUR HONOR, I KNOW AT THE BEGINNING OF THIS HEARING YOU ASKED WHETHER OR NOT THE CASE WAS POORLY HANDLED, POORLY LITIGATED BY THE DEFENDANTS, SUCH THAT A DIFFERENT RESULT WAS OBTAINED.

AND, YES, WE DO AGREE AND WILL ALLEGE THAT THE CASE WAS POORLY HANDLED, POORLY LITIGATED. IN ALMOST EVERY ASPECT OF THE CASE. BUT THE RESULT WASN'T THAT PLAINTIFFS COULD HAVE GOTTEN A BETTER RESULT.  THE RESULT WAS THAT THEY SPENT MILLIONS, MILLIONS OF DOLLARS CHASING WILD GEESE, BECAUSE THEY WERE UNDER THE IMPRESSION THAT YOU COULD UNDER AMERICAN JURISPRUDENCE SELL A PALM TRIO, WHICH IS ALMOST AN INCH THICK, AS A CARD EVEN AFTER THE FEDERAL COURT OF APPEAL SAID IT'S A THICK CARDBOARD CARD.

**THE COURT:**  WELL, BUT WAIT A MINUTE.  BUT IF YOU PREVAIL ON THE INITIAL CLAIM THAT THIS BAD ADVICE AT THE VERY FIRST DECISION TREE SHOULD NOT HAVE GONE DOWN THIS ROAD, THERE WASN'T PROBABLE CAUSE, WHATEVER YOU WANT TO CALL IT, REASONABLE CAUSE, SUFFICIENT CAUSE TO BRING THE CASE.

AND I ASSUME IT WILL BE UNDISPUTED THAT YOU SPENT X MILLION DOLLARS IN LITIGATION FEES AND COSTS AND ATTORNEY'S FEES AND ALL THAT.  WHY DO YOU HAVE TO THEN -- IF YOU WON THE FIRST

AND THERE'S AN OBVIOUS CAUSAL RELATIONSHIP THAT POINTED DOWN THE PATH OF ILL-ADVISED LITIGATION COST YOU NINE MILLION DOLLARS, WHY DO YOU HAVE TO SHOW IN DETAIL HOW YOU GOT TO THE NINE MILLION DOLLARS?

WHY DOES A JURY HAVE TO GET CONFUSED ABOUT:

"WELL, IT COULD HAVE BEEN EIGHT MILLION.  WE COULD HAVE GOTTEN AWAY WITH LOSING ONLY $3 MILLION IF THEY HAD NOT DELAYED IN" -- THE FACT IS YOUR CLIENT ENDED UP PAYING, I FORGOT, 8.9 MILLION DOLLARS, WHATEVER IT IS.

**MR. ROSEN:**  A FEW MORE, YOUR HONOR.

**THE COURT:**  WHATEVER IT IS.  SO WHY DO WE NEED TO GET INTO THAT?

**MR. ROSEN:**  BECAUSE OUR FRAUD AND BREACH OF FIDUCIARY DUTY CLAIMS ARE INTERRELATED TO ALL THOSE --

**THE COURT:**  BUT FRAUD AND BREACH OF FIDUCIARY DUTIES AT THE VERY OUTSET, THAT'S, YOU KNOW, SHOULDN'T HAVE BROUGHT THIS CLAIM.  IT WAS BOTH MALPRACTICE.  IT WAS BREACH OF FIDUCIARY DUTY, ET CETERA, ET CETERA.

**MR. ROSEN:**  TRUE, YOUR HONOR.  BUT THEY CONTINUED, IF YOU WANTED TO CALL IT "THIS CHARADE," BY SENDING TO OUR CLIENTS E-MAILS SAYING:

"OUR EXPERT SAYS THAT THE DAMAGE RANGE IS BETWEEN 480 AND $650 MILLION. SEND MORE MONEY."

WELL, WHO WOULDN'T SPEND, IF YOU HAD IT, $10 MILLION IN LITIGATION FEES WHEN YOU'RE PROMISED HALF A BILLION DOLLARS

AT THE END OF THE RAINBOW?  AND THERE WAS --

**THE COURT:**  SO YOU'RE SAYING YOUR CLIENTS COULD HAVE CUT IT OFF.

**MR. ROSEN:**  COULD HAVE CUT IT OFF AT ANY TIME. IT WAS A CONTINUING DUTY BY THE DEFENDANTS TO CUT BAIT.

**THE COURT:**  SO AFTER $3 MILLION, THEY COULD HAVE TURNED AROUND AND SAID:

"YOU KNOW WHAT, GUYS?"

**MR. ROSEN:**  "IT'S NOT GOING FOR YOU."

**THE COURT:**  "THIS IS NOT LOOKING GOOD. LET'S CUT OUR LOSSES."

**MR. ROSEN:**  INSTEAD, THEY SEND AN E-MAIL WHICH BASICALLY SAID:

"THE EXPERT REPORT SAYS 48O TO $650 MILLION."

THIS IS WHERE WE'RE GOING.

**THE COURT:**  WHAT'S WRONG WITH THAT?

**MR. HOFFMAN:**  AGAIN, YOUR HONOR, WHATEVER THEIR CLAIM IS WE'RE GOING TO REACT TO IT.  WE'RE GOING TO DEFEND IT.  WE'RE TRYING TO UNDERSTAND WHAT THE CLAIM IS.

AND YOU GO BACK, AND WE CAN GO BACK TO LAST FALL WHEN WE WERE TALKING ABOUT:

"WHAT IS IT THAT YOU'RE ALLEGING HERE IN FEDERAL COURT THAT IS DIFFERENT THAN WHAT YOU'VE SAID IN STATE COURT?"

AND THEY SAID:

"WELL, WE WANT TO GET INTO THE PATENT ISSUES. WE WANT TO GET INTO ACTUAL LITIGATION CONDUCT."

AND THEY HAVE SAID IN BOTH THEIR CMC STATUS CONFERENCE THAT WAS FILED EARLIER THIS MONTH, THEY HAVE SAID IN THIS DOCUMENT, THE SCOPE OF TRIAL DOCUMENT, THEY HAVE SAID IN THE COMPLAINT THAT THEY ARE CONTENDING THAT THERE WAS MISCONDUCT IN CONNECTION WITH CONSTRUING THE PATENTS, IN CONNECTION WITH VALIDITY OF THE PATENT, IN CONNECTION WITH UNDERSTANDING THE '311 PATENT.

WHAT ARE THEY CLAIMING AND WHAT DAMAGES ARE THEY SEEKING BY REASON OF THAT?  AND YOU KNOW IF THAT GETS ARTICULATED, IF THAT GETS FLESHED OUT, MAYBE WE HAVE THIS DISCUSSION, AS YOUR HONOR INDICATED, AND WE SAY:

"OKAY.  HERE'S WHAT THE CLAIMS ARE. HERE'S WHAT THE ASSERTIONS ARE."

BECAUSE WE DO BELIEVE AND WE DO HAVE EVIDENCE, AND IT WAS PRESENTED TO THE COURT BELOW, THAT THERE WAS EVIDENCE OF INFRINGEMENT.  AND THERE IS FEDERAL LAW THAT SUPPORTS THE PROPOSITION THAT WHAT WAS PRESENTED TO THE COURT BELOW WAS ADEQUATE TO SHOW INFRINGEMENT, AND IT WAS CIRCUMSTANTIAL EVIDENCE.  AND IT WAS THE MELECULON (PHONETIC) CASE.

AND SO THERE IS A DIFFERENT STORY THAT GOES WITH ALL THIS. THERE WAS THE ADVICE TO THE CLIENT AT THE VERY BEGINNING THAT, YOU KNOW:

"THIS IS NOT A SLAM DUNK.  THERE IS A SERIOUS

ISSUE AS TO VALIDITY."

AND, YOU KNOW, SO IT ISN'T JUST SOMEBODY BEING LED DOWN THE PRIMROSE PATH. THERE IS A COMMUNICATION BACK AND FORTH BETWEEN THE CLIENT AND THE ATTORNEY.

AND WE JUST WANT TO KNOW:  IS THAT GOING TO BE PART OF THIS CASE OR NOT?  WHAT ARE YOU CONTENDING, E-PASS, THAT WE HAVE TO DEFEND AGAINST?

**MR. MCMONIGLE:**  I GUESS THERE'S ONE OTHER POINT, YOUR HONOR, AND THAT'S, I THINK, WHERE WE'VE ARRIVED AT THE TRIAL WITHIN THE TRIAL, BECAUSE I THINK WITH LITIGATION MALPRACTICE LEADING UP TO THIS THERE'S ALWAYS BEEN THESE PIECES OF EVIDENCE THAT THE PLAINTIFF'S LAWYER SAYS IS WORTH X.  THE DEFENSE LAWYER SAYS IT'S WORTH NOTHING, YOU KNOW.  COLLOQUY BACK AND FORTH BETWEEN THE ATTORNEYS IN THE UNDERLYING CASE.

AND, YOU KNOW, LOOKING AT THAT FROM AFAR THAT CREATES THE SPECULATION AS TO WHAT THE VALUE OF THE CASE IS, WHAT THE MERITS OF THE CASE IS, HENCE THE SUBSTITUTION OF THE TRIAL WITHIN THE TRIAL THAT YOU DON'T DO THIS BATTLE BY, YOU KNOW, MR. WEISS SAID IT WAS WORTH X AMOUNT OF MONEY, SO THAT'S THE STAMP. SO, YOU KNOW, WE WOULD HAVE A FUNDAMENTAL DISAGREEMENT WITH, YOU KNOW, PUTTING FORTH EVIDENCE LIKE THAT IN THE CASE. SO --

**THE COURT:**  WELL, I DON'T KNOW.  AS I SAY, I THINK I AGREE WITH YOUR GENERAL PROPOSITION THAT THIS IS ALMOST LIKE A PROBABLE CAUSE QUESTION, WHICH IS VERY DIFFERENT.  SO WHEN YOU DETERMINE WHETHER THE POLICE HAD PROBABLE CAUSE TO SEARCH

SOMEBODY'S PLACE, YOU DON'T LOOK TO THE FACT IT DID CONTAIN THE DRUGS AND THE GUN.  YOU LOOK TO WHAT KNOWLEDGE THEY HAD AND WHAT KNOWLEDGE THEY SHOULD HAVE HAD TO SUPPLY THAT.  AND THAT'S A ROUGH ANALOGY HERE.  SO IT'S DIFFERENT FROM SAYING, YOU KNOW -- IT IS DIFFERENT FROM NORMAL PARADIGM.  HOW IT PLAYS OUT WE WILL HAVE TO SEE.

BUT WHAT I WOULD LIKE IS TO SET UP A SCHEDULE FOR YOU TO GIVE YOUR PROFFER AND BY EACH OF THE FIVE CLAIMS.  OF COURSE, THERE MAY BE OVERLAP. YOU KNOW, YOU CAN INCORPORATE BY REFERENCE.  BUT I WANT TO SEE FACT BY FACT, YOU KNOW, WHAT IT IS YOU INTEND TO PRESENT AT TRIAL LIKE YOU WOULD IN A TRIAL BRIEF.

I WANT TO KNOW THE FACTS THAT YOU INTEND TO PROVE WITH SPECIFICITY HOW THAT THEY COMMITTED MALPRACTICE.  I WANT TO KNOW WHAT THEY DID AND SPECIFICALLY WHAT ARE YOU ALLEGING WAS -- WHETHER IT CONSTITUTES THE CONDUCT THAT IS ACTIONABLE HERE.

AND THEN, GIVE YOU SOME TIME FOR YOUR RESPONSE TO SEE WHAT YOUR RESPONSE TO THIS IS. AND THEN, WE CAN LOOK AT IT AND SEE, YOU KNOW, WHAT IT IS THAT WE'RE ACTUALLY GOING TO BE TRYING HERE.

**MR. MCMONIGLE:**  AND, YOUR HONOR, WITHIN THAT THERE'S GOING TO BE SOME GENERAL OUTLINE OF THE PROOF?

**THE COURT:**  OF THE SPECIFIC EVIDENCE?

**MR. MCMONIGLE:**  YES.

**THE COURT:**  I THINK THAT WOULD BE HELPFUL BECAUSE THEN I CAN ALSO THEN TEASE UP -- WE DON'T HAVE TO DECIDE

ADMISSIBILITY QUESTIONS AND ESTOPPEL QUESTIONS.  BUT IT DOES THEN TEE UP THOSE ISSUES. AND YOU HAVE NOW LIVED WITH THIS CASE LONG ENOUGH.  I WOULD THINK YOU WOULD KNOW THAT INFORMATION PRETTY MUCH.

**MR. ROSEN:**  WE KNOW IT, YOUR HONOR. THE ONLY DEPOSITIONS THAT HAVE BEEN TAKEN IN THE CASE SO FAR ARE FOUR REPRESENTATIVES OF DEFENDANTS MOSES & SINGER.  AND, IN FACT, MR. WEISS, THE INDIVIDUAL DEFENDANT, HIS DEPOSITION WAS TAKEN, AS WELL.

WE HAVE SOME OTHER DEPOSITIONS TO TAKE. NONE OF THEM HAVE BEEN CALENDARED. AND WE ARE RUNNING UP AGAINST A DISCOVERY CUTOFF ON AUGUST 24TH.  BUT WE'LL START DOING IT. I THINK WE COULD STILL PUT AN OFFER OF PROOF AS TO ALL OF OUR CLAIMS TOGETHER IF YOUR HONOR WANTED TO HAVE ANOTHER CASE MANAGEMENT CONFERENCE IN, SAY, FOUR WEEKS.  WE ARE COMING DOWN TO A CASE MANAGEMENT CONFERENCE IN FRONT OF THE STATE COURT FOUR WEEKS FROM TOMORROW, AND WE COULD DO THAT.

**THE COURT:**  OKAY.

**MR. ROSEN:**  BUT, YOUR HONOR, JUST SO THAT I UNDERSTAND, WE'LL GO FORWARD AND WE'LL PUT TOGETHER OUR EVIDENCE. AND WE'LL GIVE THEM A ROADMAP TO OUR CASE, AND I HAVE NO PROBLEM DOING THAT SO LONG AS I UNDERSTAND THAT WHAT IS COMING BACK IS A TREASURE MAP THAT POINTS IN ANOTHER DIRECTION.

**THE COURT:**  BOTH WAYS.

**MR. ROSEN:**  CONTRARY EVIDENCE.

**THE COURT:** SPECIFICITY HERE.

**MR. ROSEN:** AND TO THAT END, YOUR HONOR, I WOULD PROPOSE WE START BY SHORTCUTTING SOME OF WHAT IS NECESSARY BY PLAINTIFF WILL OFFER TO STIPULATE TO THE VALIDITY OF THE PATENT AND SO THAT DOESN'T HAVE TO BE AN ISSUE.

**THE COURT:** AND I THINK ANY STIPULATION IS A GOOD PLACE TO START NOW, WHICH I NORMALLY DO IN MY PRETRIAL CONFERENCE, ANYWAY. WHATEVER YOU CAN STIPULATE TO, ANY FACTS, LET'S GET THOSE OUT OF THE WAY. AND ANY THINGS THAT ARE GOING TO BE ISSUES, LIKE VALIDITY, IF YOU DO DECIDE TO GO DOWN THAT ROAD AND STIPULATE TO VALIDITY, SURE. THAT WILL TAKE SOME THINGS OFF THE TABLE.

SO I WANT YOU TO MEET AND CONFER AND SEE WHAT YOU CAN AGREE TO BY STIPULATION, AND PRESENT IN ADDITION TO THAT YOUR PROFFER.

**MR. HOFFMAN:** AND WE'RE MORE THAN PREPARED TO TRY TO STIPULATE TO WHATEVER WE CAN. PART OF THE STIPULATION, FOR EXAMPLE, AS TO VALIDITY IS GOING TO DEPEND UPON WHAT ARE THE CLAIMS BEING ASSERTED? IF SOMEBODY IS SAYING:

"WE COULD HAVE MONETIZED THIS PATENT TO THE TUNE OF $40 MILLION," WHICH IS ONE OF THE CLAIMS THAT'S ASSERTED, THAT'S AT LEAST SOMETHING WE HAVE TO EVALUATE WHETHER TO -- WHETHER THE PATENT AT THE END OF THE DAY, EVEN THOUGH IT WAS REASONABLE TO GO FORWARD, IS A VALID PATENT.

COULD THEY HAVE MONETIZED IT? AND I THINK THOSE ARE

JUST ISSUES THAT CERTAINLY WE'RE GOING -- WE'RE NOT TRYING TO MAKE THIS MORE COMPLICATED. WE'RE NOT TRYING TO GENERATE MORE WORK FOR ANYONE. BUT WE ARE TRYING TO UNDERSTAND WHAT ARE -- WHAT IS THE CLAIM AND WHAT IS IT THAT WE HAVE TO DEFEND?  AND WHAT ARE THE DAMAGES BEING SOUGHT BY REASON OF CERTAIN CONDUCT?

AND I THINK THAT'S HOPEFULLY WHAT THIS PROCESS IS GOING TO HELP US UNDERSTAND.

**THE COURT:**  YEAH.  WELL, SO I AGREE.  SO THE FIRST THING YOU SHOULD DO IS MEET AND CONFER AND SEE WHETHER ACROSS THE TABLE YOU CAN ARTICULATE, YOU KNOW, WHERE YOU ARE GOING AND WHAT YOU CAN STIPULATE TO RATHER THAN, YOU KNOW -- I THINK THAT WILL SAVE SOME TIME.

AND THEN, YOU CAN BASE YOUR WRITTEN FILINGS AFTER YOU HAVE MEET AND CONFERRED AND SEE IF YOU CAN REACH SOME COMMON GROUND AND HAVE AN UNDERSTANDING.  AND YOU CAN AMEND THAT ONCE YOU SEE THEIR PROFFER AND YOU FEEL LIKE SOMETHING MORE NEEDS TO BE ADDED.

BUT THAT'S THE PROCESS I'D LIKE TO DO.  AND I'D LIKE TO HAVE THAT COMPLETED BEFORE WE RECONVENE, WHETHER IT'S FOUR WEEKS OR FIVE WEEKS FROM NOW. I THINK IT SHOULD BE FAIRLY SOON BECAUSE I THINK WE SHOULD RESOLVE THIS.

**MR. ROSEN:**  VERY WELL, YOUR HONOR. BUT JUST SO THAT EVERYONE INVOLVED UNDERSTANDS OUR OFFER OF PROOF WOULD BE TO SHOW THAT EACH DECISION MADE BY THE DEFENDANTS IN THIS ACTION WAS WRONG, WHICH IS TO SAY THEY PRODUCED NO EVIDENCE OF

INFRINGEMENT.   IN THE TEXAS CASE THEY ELECTED TO PROCEED ONLY ON CLAIM NUMBER --

THE COURT:   NO, I UNDERSTAND THAT.   BUT I WANT YOU TO ISOLATE EACH DECISION THEY HAVE MADE THAT YOU ARE GOING TO -- YOU WANT TO BRING INTO THIS CASE, AS WELL AS WHY YOU THINK, YOU KNOW -- I MEAN, WAS IT RELEVANT TO WHICH CLAIM?   YOU KNOW, THAT'S WHAT IS NOT ALWAYS CLEAR TO ME.

SO THE DECISION TO TAKE A DEPOSITION OR NOT TAKE A DEPOSITION, I'M NOT SURE WHERE THAT FITS INTO THIS CASE.   THAT'S WHY BY STRUCTURING IT TO YOUR CLAIMS HOPEFULLY IT WILL BE COHERENT ENOUGH SO IT WILL BE EVIDENT WHY YOU WANT THAT FACT IN.

MR. ROSEN:   IT'S A LITTLE DIFFICULT, YOUR HONOR.   WE ARE IN THE MIDDLE OF TAKING DISCOVERY.   AND SO I HATE TO PROVIDE DEFENDANTS A SCRIPT OF THE QUESTIONS THAT I'LL BE ASKING DEPONENTS.

THE COURT:   I DON'T NEED THE ACTUAL QUESTIONS, BUT I DO NEED TO KNOW WHAT YOU'RE TRYING TO PROVE.

MR. ROSEN:   ALL RIGHT.

THE COURT:   WHICH FACT YOU ARE TRYING TO PROVE.   AND TO THE EXTENT THAT YOU HAVE ALREADY ANTICIPATED EVIDENCE OR YOU'VE GOT DEPOSITION TESTIMONY, I'D LIKE TO KNOW WHO THE SPONSORING WITNESS IS OR SOME DESCRIPTION OF THE BASIS.

I'M NOT GOING TO TIE IT TO THE EVIDENCE YET BECAUSE YOU'RE STILL IN THE MIDDLE OF DEPOS.   BUT I'M NOT GOING TO SAY:

"WELL, YOU DIDN'T IDENTIFY SUCH AND SUCH A DEPONENT FOR THIS FACT."

SO I'M NOT ASKING FOR A WITNESS LIST, PER SEE.  BUT I THINK IT WOULD BE HELPFUL ALSO TO SEE WHAT -- BECAUSE TO THE EXTENT YOU ARE GOING TO RELY ON SOME OF THESE JUDICIAL DOCUMENTS THAT WILL THEN HIGHLIGHT THE QUESTION THAT WE'RE GOING TO HAVE TO FACE ABOUT ADMISSIBILITY, ET CETERA, ET CETERA.

MR. ROSEN:  SOUNDS LIKE A DRAFT TRIAL BRIEF.

THE COURT:  PRETTY MUCH.

MR. ROSEN:  IF YOU LIKE, YOUR HONOR, WE CAN ATTACH TRIAL EXHIBITS, AS WELL.  I'M HAPPY TO.

THE COURT:  YOU DON'T NEED TO GO THAT FAR. IF YOU JUST IDENTIFY -- IT'S LIKE A TRIAL BRIEF.  I DON'T NEED TO SEE THE EXHIBITS.  I DON'T NEED TO SEE THE ACTUAL TESTIMONY.  I JUST WANT TO IDENTIFY THE SOURCE OR SOURCES, BECAUSE, AGAIN, I'M NOT GOING TO BIND YOU TO THAT, BECAUSE YOU'RE NOT THROUGH WITH DISCOVERY YET.

THE NEXT ONE WILL BE A TRIAL BRIEF. THIS IS THE FIRST PHASE OF THE TRIAL BRIEF.  ALL RIGHT?  SO CAN YOU FILE SOMETHING?  MEET AND CONFER AND FILE SOMETHING LIKE IN TWO WEEKS, AND THEN YOU HAVE A WEEK TO RESPOND?

MR. HOFFMAN:  THAT'S FINE, YOUR HONOR.

THE COURT:  I SENSE SOME BLOWBACK HERE.

MR. ROSEN:  MR. SABA STARTS TRIAL IN ANOTHER MATTER ON MONDAY.  AND I'M STARTING IN THE CENTRAL DISTRICT OF

CALIFORNIA ON MAY 8TH IN ANOTHER TRIAL.

**THE COURT:**  WHAT DO YOU SUGGEST?

**MR. ROSEN:**  ARE WE TALKING ABOUT COMING UP SAY ON THE 24TH OF MAY?

**THE CLERK:**  TWENTY-FIFTH.

**MR. ROSEN:**  TWENTY-FIFTH IS THE FRIDAY WE WERE GOING TO BE IN STATE COURT ON THE CMC THERE, BUT IT'S --

**MR. HOFFMAN:**  THAT'S THEN A GOOD DAY SINCE --

**THE COURT:**  IS THAT IN THE MORNING?

**MR. ROSEN:**  1:30 ON THE 25TH.

**THE CLERK:**  WE COULD DO A SPECIAL SETTING ON THE 24TH AND DO IT IN THE MORNING.

**THE COURT:**  DEPENDS WHAT OUR CALENDAR IS LIKE.

YOU HAVE A 1:30 IN THE SUPERIOR COURT?

**MR. ROSEN:**  1:30.

**MR. HOFFMAN:**  THE STATE COURT CMC IS RATHER PERFUNCTORY.

**MR. MCMONIGLE:**  YOUR HONOR, HAVING LIVED WITH THE JUDICIAL PROCESS FROM INSIDE I'M GOING TO BET MORE THAN FIFTY/FIFTY THAT THAT CMC IS GOING TO BE CONTINUED GIVEN THE RESOURCES SO --

**MR. ROSEN:**  IT WAS CONTINUED ONCE.

**MR. MCMONIGLE:**  WELL --

**THE CLERK:**  WE CAN DO IT AT 10:30 ON THE 25TH.

**THE COURT:**  WELL, THAT COMPETES WITH ALL THE OTHERS.

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

WE SHOULD PROBABLY SPECIALLY SET THIS.  THIS IS COMPLICATED ENOUGH.  LET'S SPECIALLY SET IT FOR THE DAY BEFORE.

**THE CLERK:**  TWENTY-FOURTH.

**THE COURT:**  WELL, BUT THAT MEANS I NEED TO GET -- HAVE BOTH SIDES HAVE BRIEFED THIS ISSUE AT LEAST A WEEK IN ADVANCE SO I CAN STUDY IT.

SO HOWEVER YOU WANT TO -- YOU KNOW, I ORIGINALLY WAS THINKING YOU FILE, YOU MEET AND CONFER. PLAINTIFF FILE THEIR PROFFER TWO WEEKS.  YOU FILE THE WEEK AFTER.  AND IF WE CAN GET IT AFTER THAT, AND I CAN LOOK AT IT.

WELL, WE'VE GOT TO SEE WHETHER THEY CAN DO IT IN TWO WEEKS, THEN WE WILL HAVE TO PUT THE WHOLE THING OVER BY --

**MR. ROSEN:**  YOUR HONOR, MR. SABA SUGGESTS THAT IF THIS MATTER IS GOING TO BE CONTINUED IN THE STATE COURT WE DON'T HAVE TO BE TETHERED TO THE CMC IN THE STATE COURT.  AND IF IT WOULD HELP TO GET US PAST THOSE TWO TRIALS WE COULD DO ANOTHER WEEK, AND THEN SHOW UP.

I'M GOING TO BE HERE ANYWAY THE FIRST WEEK OF JUNE ON ANOTHER MATTER, SO I'M HAPPY TO DO IT. I'LL BE IN MEDIATION ON JUNE 5TH IN FRONT OF JUSTICE PINELLI (PHONETIC) SO I COULD DO IT ON THE FOURTH OR THE SIXTH.

**THE CLERK:**  FOURTH OR THE SIXTH?

**MR. ROSEN:**  THAT IS RIGHT.

**THE COURT:**  WHAT ABOUT THE SEVENTH?  HOW ABOUT THE SEVENTH?  HOW ABOUT THE SIXTH?

**THE CLERK:** WE CAN DO IT ON THE EIGHTH.

**MR. ROSEN:** I HAVE AN ALL DAY MEDIATION IN FRONT OF JUSTICE PINELLI.

**THE COURT:** LET'S GO FOR THE 4TH. DO IT LATE IN THE AFTERNOON. IT WOULD HAVE TO BE 4:00 O'CLOCK.

**MR. MCMONIGLE:** YOUR HONOR, SO LONG AS IT'S LATE. I'M ON THE JURY AFC JURY COMMITTEE THAT MEETS ON THE 4TH. BUT THAT'S TEN O'CLOCK. I COULD DO ABOUT 3:00 O'CLOCK.

**THE COURT:** YES, SO 4:00 O'CLOCK.

**MR. MCMONIGLE:** 4:00 O'CLOCK.

**THE COURT:** 4:00 O'CLOCK.

**THE CLERK:** MONDAY, JUNE 4TH AT 4:00 P.M.

**THE COURT:** SO IF YOU CAN WORK OUT, STIPULATE, WHATEVER YOUR BRIEFING, AS LONG AS I GET THE LAST BRIEF SEVEN DAYS IN ADVANCE OF THAT.

**MR. HOFFMAN:** WHICH IS MEMORIAL DAY, I THINK.

**THE CLERK:** WHICH IS MAY 28.

**THE COURT:** OKAY. ALL RIGHT. THEN, I'M ASSUMING YOU'RE NOT GOING TO BE FILING 200 PAGES. I WANT DETAIL BUT --

**THE CLERK:** THAT WOULD MAKE MAY 18 TO FILE THE BRIEFING, AND THEN, MAY 25 FOR --

**MR. HOFFMAN:** THAT IS FINE.

**MR. ROSEN:** IF I HAVE THE WEEKEND, THEN I KNOW I WON'T BE IN TRIAL SATURDAYS AND SUNDAYS.

**THE COURT:** I DON'T KNOW IF WE CAN DO THAT. THERE'S

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

NO -- BECAUSE THEY NEED A WEEK AND I NEED A WEEK.

**MR. ROSEN:** 21ST TO THE 29TH, COULD WE DO THAT? YOU WOULD HAVE SIX DAYS, YOUR HONOR, AND THEY WOULD HAVE EIGHT.

**THE COURT:** OKAY. THAT'S SIX DAYS BEFORE OUR HEARING.

**THE CLERK:** WELL, ACTUALLY, FOUR COURT DAYS. THE HEARING IS ON THE FOURTH.

**THE COURT:** I'D WANT THAT FILED IN THE MORNING WHATEVER YOU DO.

**MR. HOFFMAN:** OKAY. WE'LL TRY TO ACTUALLY FILE IT BEFORE THAT.

**THE COURT:** THAT WOULD BE BETTER. BUT THE LAST MORNING OF THE 29TH, THE 21ST AND THE 29TH.

**MR. HOFFMAN:** VERY WELL.

**MR. ROSEN:** THANK YOU. AND 4:00 P.M. ON THE 4TH.

**THE COURT:** YES. ALL RIGHT?

**MR. HOFFMAN:** THANK YOU, YOUR HONOR.

**MR. MCMONIGLE:** THANK YOU, YOUR HONOR.

**MR. ROSEN:** THANK YOU VERY MUCH, YOUR HONOR.

**THE COURT:** INTERESTING CASE, I DO HAVE TO SAY.

**THE CLERK:** COURT IS ADJOURNED.

(THEREUPON, THIS TRIAL WAS CONCLUDED.)

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

_____

/S/  KATHERINE WYATT