UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-PASS TECHNOLOGIES,<br><br>        Plaintiff,<br><br>    v.<br><br>MOSES & SINGER, LLP, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-09-5967 EMC<br><br>**ORDER RE PARTIES' OFFERS OF PROOF** |

On June 4, 2012, the Court held a status conference with the parties to discuss the scope of Plaintiff's claims against Defendants and the need for, *e.g.*, claims construction hearings or other processes to evaluate the merits of the underlying litigation on which Plaintiff's malpractice and other tort claims are based. Based on the parties' submissions and discussion on the record, Plaintiff appears to make two primary categories of claims. First, Plaintiff raises claims based on Defendants' allegedly negligent (and, perhaps fraudulent) advice regarding the decision to pursue litigation in the first place. Plaintiff asserts that the patent litigation was without merit "from the get-go," and that no reasonable lawyer would have advised Plaintiff to pursue the litigation. Plaintiff's Offer of Proof ("POP"), Docket No. 161, at 1. Second, Plaintiff raises claims based on Defendants' handling of the underlying litigation. Plaintiff asserts not that Defendant should have won the underlying litigation, but that its negligent (and again, perhaps fraudulent) conduct ran up unnecessary fees and costs, that it should have realized sooner that the litigation lacked merit, and

that its conduct was in bad faith because it knew the litigation was meritless and continued to drive up fees anyway.[1]

Plaintiff's two primary categories of claims are sufficiently different that a single trial on all issues has the potential both to confuse the jury and to waste the parties' and the Court's time. Accordingly, the Court is inclined to order a bifurcated trial structure as described further below. If Plaintiff succeeds on the first category of its claims, it would likely negate the need for much of the second category, as Plaintiff will have shown that much, if not all, of the costs imposed from litigation are damages caused by (and thus likely recoverable as a result of) Defendants' negligence, breach of fiduciary duty, and/or other violations related to the decision to pursue litigation in the first place. On the other hand, if Plaintiff does not succeed on the first category of claims, this may narrow the scope of claims it chooses to pursue in the second phase of the case, and may assist the parties in resolving the remainder of their disputes without the need for a full trial on each of those disputes. As noted below, the second category of claims is likely to require numerous "trials within trials" as to the propriety of each litigation decision made by defendants at Plaintiff's expense.

A.  Applicable Standards for Legal Malpractice Claims

In a typical malpractice action, a client alleges that his attorney mishandled an otherwise meritorious case and, because of the lawyer's negligence, the client lost the case. In such a scenario, California law is clear: a client must prove that but for the lawyer's negligence, the client should have prevailed in the underlying action. *See Campbell v. Magana*, 184 Cal.App.2d 751, 754 (1960) (holding "that one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment and collection of same . . . ; [and] that there is no damage in the absence of these latter elements, and the burden of proof rests upon the plaintiff to prove recoverability and collectibility of a plaintiff's claim"); *see also Viner v. Sweet*, 30 Cal.4th 1232, 1244 (2003) ("[A]

---

[1] A potential additional category of claims relates to Plaintiff's allegations that Defendants created a conflict of interest when, *e.g.*, Mr. Weiss appointed himself an officer of E-Pass. The Court reserves judgment as to whether this category should be tried in the first or second phase.

2

plaintiff in a transactional malpractice action must show that but for the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result.").

"*Campbell v. Magana* provides the rationale in support of an admittedly burdensome and complicated [trial-within-a-trial] approach: it avoids 'speculative values as a measure of recovery . . . .'" *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 832 (1997). The standard is an objective one; it asks not what the specific judge or jury would have done in the underlying action, but "what a reasonable judge or fact finder would have done." *Id.* at 840. Thus, the trial-within-a-trial (or case-within-a-case) method is a procedure geared specifically to causation, as it forces the client to demonstrate the attorney's negligence was directly responsible for the client's harm. *See Viner*, 30 Cal. 4th at 1241 n.4 ("Phrases such as 'trial within a trial,' 'case within a case,' 'no deal' scenario, and 'better deal' scenario describe methods of proving causation, not the causation requirement itself or the test for determining whether causation has been established.").

For example, in *Mattco Forge*, the California Court of Appeal applied the legal malpractice standard to an accounting professional malpractice case, in which an accounting firm's allegedly negligent litigation support work caused a client to incur sanctions and lose a lawsuit for damages. The Court of Appeal found the trial court had erred by instructing the jury that "it was '... only to determine if the actions of [Arthur Young] caused [Mattco] to suffer harm ....'" *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 830 (1997). The court found that Arthur Young had correctly "argued to the trial court that the nature of the alleged injury-the loss of a legal claim involving accountant malpractice-called for the adoption of the trial-within-a-trial approach." *Id.* at 831.

The *Mattco* court acknowledged that criticism of the trial-within-a-trial approach has been widespread. For example, commentators have decried its heavy burden of proof that allows lawyers to escape egregious conduct so long as there is a doubt as to how the underlying action would have concluded; others note that "[s]ince few cases go to trial, it has been suggested it is inappropriate to determine malpractice liability by reconstructing a trial that never would have occurred." *Id.* at 833-34 (citations omitted). Nonetheless, the court found, such an approach remains the law in California and elsewhere. *Id.* at 834.

> This is so probably because it is the most effective safeguard yet devised against speculative and conjectural claims in this era of ever expanding litigation. It is a standard of proof designed to limit damages to those actually caused by a professional's malfeasance. Certainly to date, no other approach has been accepted by the courts.

*Id.* In keeping with this need for a reliable method of determining causation, and in fairness to attorneys so that they are not liable every time they fail, attorneys are not bound by any determinations in the underlying action as to the merits of the case. *See Dawson v. Toledano*, 109 Cal.App.4th 387, 390 (2003) (holding that the mere fact that an attorney pursued an appeal that was later adjudged to be frivolous does not per se indicate that the attorney committed malpractice).

Generally, a practitioner's breach and causation are questions of fact for the jury. However, "breach of duty and proximate cause may on occasion be resolved as matters of law, if there can be no reasonable doubt as to whether the attorney's conduct fell below the standard of care or if reasonable minds could not differ as to whether there was causation." *Id.* at 396. In *Dawson*, the court applied the standard but for test to a context more like the instant case and held that the question was whether, but for "Toledano's recommendation to pursue the appeal, the Snow Summit court would not have sanctioned Dawson." *Id.* at 398. "This is indeed the type of factual issue that should be resolved by the trier of fact after a full and fair presentation of the facts." *Id.*

California courts have also disapproved of expert testimony to prove the causation element in these malpractice actions. For example, in *Piscitelli*, the trial court had permitted expert testimony on the question whether the plaintiff would have prevailed in an underlying arbitration. *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 971 (2001). The trial court concluded:

> What they're going to decide is, based upon what's been presented, would he have prevailed at that arbitration. In order to know that, they need the help of an expert since none of us [are] probably qualified to make that determination; clearly not the jurors. So it's no different than, I think, medical malpractice case where the issue is, had the doctor treated the matter differently, would have patient be walking today instead of in a wheelchair? Well, the jury doesn't have to decide-they're not doctors, they can't go in and do it or make those calls but they can hear experts who say, yes, if they had done 'x,' this is what would probably happen, if they'd done 'y,' this is what would probably happen .... Unless I see something contrary, the issue is going to be one that would require expert testimony.

*Id.* at 971-72. The Court of Appeal reversed, finding that admitting expert testimony on the merits of the underlying action invaded the province of the jury "to decide the case not as a particular judge or jury, but independently as the fact finder." *Id.* at 973. The court concluded:

> [I]t was precisely the jury's role to step into the shoes of the arbitrators, consider the facts of Piscitelli's underlying claims and ultimately determine their merits. Here, however, the court improperly shifted the jury's responsibility to decide the issue by permitting Piscitelli's expert to, in essence, testify that arbitrators would have granted Piscitelli monetary relief and cleared his CRD had the matter been presented to them. To entrust that *ultimate determination* to an expert, i.e., to allow the expert to reach the *ultimate question* of whether Piscitelli's underlying arbitration would have been successful, invades the jury's function.

*Id.* at 974 (emphasis added). The court therefore held that expert testimony was not admissible "to tell the jury what a reasonable trier of fact would have done." *Id.* at 973. The court acknowledged, however, that its ruling did not apply to or address cases in which the merits of the underlying case turn on questions of law. *Id.*

In contrast, expert testimony is routinely admitted – and indeed often required – to address the applicable standard of care and whether an attorney breached that standard. For example, in *Dawson*, the question was whether the attorney's advice was deficient in claiming that the client had a viable appeal. The court found that was a question of fact for the jury. *Id.* at 396-97. However, it acknowledged "expert testimony may be required, as is frequently the case, in order to resolve the factual issue of whether the attorney adhered to the standard of care." *Id.* at 397 (citations omitted); *see also Wright v. Williams*, 47 Cal. App. 3d 802, 810 (1975) ("California law holds that expert testimony is admissible to establish the standard or care applicable to a lawyer in the performance of an engagement and whether he has performed to the standard.").

B.  The Parties' Offers of Proof & the Court's Proposed Bifurcation

Plaintiff's factual contentions, while still not entirely clear, indicate that at least some reexamination of the underlying litigation – including an examination of the viable range of the patent's construction and (potentially) validity[2] – may be required in this malpractice action.

---

[2] Plaintiff's offer of proof is still vague as to whether and how validity would become an issue in this case.

5

However, a bifurcated trial structure would minimize and potentially obviate problematic cases-within-a-case.

### 1. Phase One

First, Plaintiff argues that Defendants' misconduct – including fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and professional negligence – caused it to pursue litigation it should not have pursued. Defendants' misconduct – and resulting harm – purportedly occurred at multiple points prior to filing each of the underlying litigation matters, including: (1) an improper pre-filing investigation, which, if done properly, would have shown there was no basis to pursue the litigation; (2) an unsupported claim construction, which, if properly construed and properly disclosed, would have shown there was no support for the claim that any of the underlying defendants had infringed the patent; and (3) a failure to inform Plaintiffs of the above risks/weaknesses, to the extent Defendants were aware of them. Essentially, Plaintiff argues that no reasonable attorneys would have advised E-Pass to pursue the underlying litigation, and that Defendants acted negligently, fraudulently, and in breach of their fiduciary duties by so advising Plaintiff. The crucial point for these "pre-filing" claims is the point of decision for each underlying litigation matter. Thus, the key questions are what Defendants knew or should have known, and what Plaintiff knew or should have known, about the merits of the patent claims at the point each such decision was made.

The Court adjudicate (by trial or otherwise) these claims first, separately from their remaining claims about the manner in which the lawsuits were prosecuted. If Plaintiff succeeds in demonstrating that Defendants were negligent and/or fraudulent in recommending litigation from the outset, then Phase One would likely subsume much of Plaintiff's remaining allegations as to how Defendants allegedly mishandled the litigation once it began, because damages resulting from the latter claims would likely be subsumed by damages relating to the first claims. Thus, taking Phase One separately could streamline the litigation and provide the parties with a faster and more efficient resolution to their disputes.

Phase One would place a premium on what the parties knew at the outset of each litigation matter. Pursuant to Federal Rule of Evidence 403, the Court would likely limit evidence of what

6

occurred after the litigation began to the extent such evidence were offered to show what the parties previously intended. Such after-the-fact evidence is likely to be confusing and prejudicial, yet minimally probative as to the parties' retrospective intent and states of mind at the outset of the litigation. It would likely involve several mini-trials as to whether post-filing conduct was in good faith. To be sure, evidence of events in one litigation matter that took place before suit was filed in one of the other cases might be relevant and probative of the parties' states of mind with respect to the propriety of the later filing. Such evidence may inform whether there was "probable cause" to initiate the subsequent litigation. Thus, to a limited extent, post-filing evidence may be admissible under narrow circumstances, subject to Rule 403.

Phase One will likely require some form of a modified claim construction hearing. Specifically, Plaintiffs allege that "Defendants misunderstood the '311 Patent and misconstrued the validity, construction and effect of Federal patent law to the '311 Patent." POP at 42. As supporting evidence for this contention, they point to, *inter alia*, the patent itself, E-Pass's claim charts, and expert testimony regarding the validity and construction of the patent. *Id.* Similarly, Plaintiffs allege that Defendants pursued faulty strategies without understanding their risks. *Id.* at 27. Defendants seek to counter these claims with, *inter alia*, a claim construction in this action to show their actions were warranted. Defendants' Offer of Proof ("DOP"), Docket No. 163, at 6.

A modified claim construction in the instant case would focus not on determining what the correct claim construction is for the patent, but on what the range of reasonably viable constructions was, and whether Defendants' proposed construction in the underlying litigation was professionally reasonable. As both parties seemed to acknowledge at the hearing, this could well require expert testimony.

In addition to the claim construction, Phase One will require an inquiry into whether Defendants' pre-filing investigations and disclosures were reasonable, and whether their decision to recommend litigation was professionally reasonable.[3] On this issue, contrary to Defendants' argument, expert testimony may be appropriate to determine the relevant standard of care and

---

[3] It will also require evidence geared to show/refute the heightened scienter standards required for Plaintiff's fraud-based claims.

7

whether Defendants met that standard of care. A critical difference between this case and a standard malpractice case is that typically, the merits of the underlying case present an issue of *causation* (whether a reasonable fact-finder would have found in plaintiff's favor absent the attorney's negligence). Thus, as discussed above, a full trial-within-a-trial is required in order to ensure that the attorney's malpractice actually caused a non-speculative harm. The determination of the ultimate question of causation is typically within the standard province of the jury.

Here, in contrast, the merits of the underlying case in Phase One focuses on whether Defendants *breached* their professional duties in advising Plaintiff to pursue litigation. While Defendants are correct that expert testimony to the jury cannot (typically) establish the merits of the underlying patent claims for purposes of *causation*, it can be used to help the jury determine the element of *breach* of duty. California courts have explicitly endorsed the use of expert testimony regarding the standard of care and whether any defendants have adhered to it. *See Lipscomb v. Krause*, 87 Cal. App. 3d 970, 976 (1978) ("Plaintiffs' proof relative to these issues generally requires the testimony of experts as to the standards of care and consequences of breach. '[E]xpert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony.'") (quoting *Lysick v. Walcom*, 258 Cal.App.2d 136, 156 (1968)). Indeed, in a case concerning whether a lawyer improperly withdrew from a case based on his (allegedly) erroneous conclusion that the case lacked merit, the California Supreme Court held that expert testimony was required on the issue of whether the attorney's investigation was adequate because "[t]he extent to which an attorney, in the exercise of due care, will advance funds to hire investigators, depose witnesses, or perform tests on a client is not a matter of common knowledge." *Kirsch v. Duryea*, 21 Cal. 3d 303, 311 (1978). Similarly, the question whether a reasonable lawyer would pursue a case with certain strengths and weaknesses is not something a lay juror could be expected to know, especially when the case involves patent law.

Thus, because the merits of the underlying matters in the instant case pose questions of breach, rather than questions of causation, expert testimony as to the reasonableness of Defendants'

conduct is likely appropriate. This is not to say that experts will be permitted to testify as to the ultimate question (*i.e.*, whether there was a breach) but rather that experts may offer testimony that informs such a determination.

Unlike the breach question, causation does not appear overly complex or novel in Phase One of this case. Causation turns in large part on whether Defendants' alleged negligence (or fraudulent misconduct) caused Plaintiffs to agree to pursue the litigation, or whether, *e.g.*, Plaintiffs chose to litigate despite knowing the weaknesses of their case. Because it is a different causation question from the typical case, the trial-within-a-trial method should not be required for Phase One. *See DiPalma v. Seldman*, 27 Cal.App.4th 1499, 1503, 1508 (1994) ("[W]here the issue presented is not whether the client would prevailed and obtained a judgment, th[e] element" requiring plaintiffs to "prove careful management would have resulted in a favorable judgment and collection of same" . . . "is not at issue.") (citations omitted).

2. Phase Two

Under Phase Two, should Plaintiff not prevail during Phase One (or should Phase One not resolve all of the parties' remaining disputes), Plaintiff could proceed with its claims relating to Defendants' alleged misconduct after litigation began. These include allegations that Defendants, *e.g.*, pursued a flawed litigation strategy and implementation, which allowed Defendants to continue to drive up fees and prolong the litigation despite the fact that there was no support for their litigation positions. Under this category of claims, Plaintiff still does not argue that, had Defendants been more diligent or competent in pursuing or maintaining the litigation, Plaintiff would have actually prevailed in the underlying action. Instead, Plaintiff essentially argues that Defendants made a series of unjustified, professionally negligent and/or fraudulent decisions that needlessly increased Plaintiff's incremental costs.

Because Plaintiff's allegations relating to the post-filing stage of each litigation matter are more numerous, and the breach and causation questions with respect to each allegedly unjustified decision are more complicated, trying the Phase Two claims will likely involve an inquiry more akin to a case-within-a-case for each litigation decision at issue. While Plaintiff will not need to show that it would have prevailed but for Defendants' decisions, it will need to show that each challenged

decision breached Defendants' professional duty. In addition, Plaintiff will need to present evidence of causation related to each of the litigation decisions at issue. In other words, Plaintiff will have to prove incremental damages resulting from specific acts of malpractice, misrepresentations, and/or breaches of fiduciary duty.

C. <u>Conclusion</u>

The parties shall meet and confer and file offers of proof as to Phase One by July 6, 2012; a further CMC is set for July 20, 2012 at 10:30 a.m.

IT IS SO ORDERED.

Dated: June 18, 2012

_____
EDWARD M. CHEN
United States District Judge