PAGES 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

| | |
|---|---|
| E-PASS TECHNOLOGIES, INC., ) ) ) PLAINTIFF, ) ) VS. ) ) MOSES & SINGER, LLP, ) ET AL., ) ) DEFENDANTS. ) _____) | NO. C 09-5967 EMC (JSC) |

SAN FRANCISCO, CALIFORNIA
MONDAY, JUNE 2, 2012

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

FOR PLAINTIFF:          ROSEN SABA, LLP
                        468 NORTH CAMDEN DRIVE
                        THIRD FLOOR
                        BEVERLY HILLS, CA  90210
                   BY:  **RYAN DONALD SABA**
                        **ATTORNEY AT LAW**

FOR DEFENDANT          LONG & LEVIT LLP
STEPHEN N. WEISS:      465 CALIFORNIA STREET
                        5TH FLOOR
                        SAN FRANCISCO, CA  94104
                   BY:  **JESSICA R. MAC GREGOR**
                        **ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:          JAMES YEOMANS, CSR #4039, RPR
                        OFFICIAL REPORTER

COMPUTERIZED TRANSCRIPTION BY ECLIPSE

**APPEARANCES**:    **(CONTINUED)**

FOR DEFENDANT               DUANE MORRIS LLP
MOSES & SINGER:             ONE MARKET, SPEAR TOWER
                           SUITE 2200
                           SAN FRANCISCO, CA   94105
                      BY:  **ROBERT MILLER FINEMAN**
                           **ATTORNEY AT LAW**

MONDAY, JUNE 2, 2012                          1:30 P.M.

(THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)

**THE CLERK:**  CALLING CIVIL ACTION C 09-5967, E-PASS TECHNOLOGIES VERSUS MOSES AND SINGER LLP, ET AL.

COUNSEL, STARTING WITH MS. MAC GREGOR ON THE PHONE COULD YOU PLEASE STATE YOUR APPEARANCE.

**MS. MAC GREGOR:**  JESSICA MAC GREGOR FROM LONG & LEVIT REPRESENTING MR. WEISS, WHO'S NOT A PARTY TO THIS MOTION.

**THE COURT:**  BUT IS A PARTY IN THE CASE?

**MS. MAC GREGOR:**  BUT IS A PARTY IN THE CASE, THAT'S CORRECT.

**MR. FINEMAN:**  GOOD AFTERNOON, YOUR HONOR.

FINEMAN FOR DEFENDANT MOSES & SINGER.

**THE COURT:**  GOOD AFTERNOON.

**MR. SABA:**  GOOD AFTERNOON.

RYAN SABA OF ROSEN SABA ON BEHALF OF PLAINTIFF E-PASS TECHNOLOGIES.

**THE COURT:**  GOOD AFTERNOON.  THANKS, EVERYONE.

SO THIS IS ON FOR ESSENTIALLY PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MS. MAC GREGOR'S CLIENT'S COMPENSATION AGREEMENTS WITH MOSES & SINGER, ALONG WITH SOME REPORTS.

SO LET'S TALK ABOUT THE REPORTS SECOND.  LET'S TALK ABOUT THE COMPENSATION AGREEMENTS FIRST.

AND, I GUESS, MY QUESTION IS TO EITHER MS. MAC GREGOR

OR MR. FINEMAN, WOULD BE WHY IS THE PROTECTIVE ORDER NOT SUFFICIENT TO PROTECT MR. WEISS' -- HE DOES HAVE A PRIVACY INTEREST IN THOSE AGREEMENTS, BUT CLEARLY THEY'RE DIRECTLY RELEVANT TO THE ALLEGATIONS OF THIS CASE.

THE PLAINTIFF'S THEORY, IT'S JUST A THEORY, BUT THEIR THEORY IS BECAUSE OF THE FINANCIAL INCENTIVE THAT HE HAD HE GAVE ADVICE THAT HE WOULDN'T OTHERWISE HAVE GIVEN.

**MR. FINEMAN:** SURE, YOUR HONOR, LET ME ADDRESS THAT. THE POSITION OF THE DEFENDANT MOSES & SINGER IN THIS CASE IS THE AGREEMENT ITSELF IS, OF COURSE, BROADER THAN THE SPECIFIC INFORMATION THAT THE PLAINTIFFS WERE SEARCHING FOR.

THEY'VE ALLUDED TO IN THEIR JOINT STATEMENT THE THIRD AGREEMENT, THEY TALKED ABOUT THRESHOLD AMOUNTS.  THE EMPLOYMENT AGREEMENT ITSELF IS MUCH BROADER AND CONTAINS INFORMATION WHICH HAS NO BEARING ON THOSE ISSUES AT ALL.

SO DEFENDANT'S POSITION WOULD BE A LESS INTRUSIVE MEANS OF GETTING THAT, SUCH AS DIRECTLY SERVING MR. WEISS WITH SPECIFIC DISCOVERY ON THOSE PARTICULAR ISSUES.

**THE COURT:** WHY NOT JUST REDACT THE PRIVATE INFORMATION THAT'S NOT RELEVANT TO THE COMPENSATION?

**MR. FINEMAN:** WELL, A COUPLE OF THINGS.  ONE, WITH RESPECT TO MOSES & SINGER'S POSITION IS WE'VE ASSERTED SO FAR, ONE OF THE CONCERNS OF MOSES & SINGER IS DISCLOSURE OF THIS REPORT WITHOUT MR. WEISS' CONSENT.

SO FROM AN EMPLOYER PERSPECTIVE RIGHT NOW MOSES &

SINGER SOMEWHAT FEELS THAT IT HAS ITS HANDS A BIT TIED WITHOUT THE CONSENT OF EMPLOYEE WITH, AT LEAST, STRAIGHT CASE LAW THAT'S SUGGESTING COULD BE SOME POTENTIAL EXPOSURE LIABILITY FOR DISCLOSING PRIVATE INFORMATION, NOTWITHSTANDING THE EXISTENCE OF PROTECTIVE ORDERS, BUT NONETHELESS DISCLOSING PRIVATE INFORMATION WITHOUT THE CONSENT OF MR. WEISS.

**THE COURT:**  I UNDERSTAND THAT CONCERN, BUT A COURT ORDER, I THINK, WOULD TAKE CARE OF THAT CONCERN.

COURTS ALL THE TIME ORDER PRODUCTION OF PRIVATE INFORMATION, OFTEN EVEN OF EMPLOYEES WHO AREN'T EVEN PARTIES TO THE CASE.

EMPLOYMENT CASES IF OFTEN COMES UP YOU WANT THE PERSONNEL FILE AND THE LIKE.  THIS CASE MR. WEISS IS A PARTY, HIS ATTORNEY IS ON THE PHONE, BUT I UNDERSTAND HIS OBJECTION AND I ACCEPT THAT THE INFORMATION IS PRIVATE.

SO I UNDERSTAND WHY YOU WOULD OBJECT TO THE PRODUCTION IN THE FIRST PLACE.  I THINK, THAT WAS DONE IN GOOD FAITH.  WHY YOU MIGHT WANT A COURT ORDER.

**MR. FINEMAN:**  A LITTLE BIT MORE, YOUR HONOR.  IN TERMS OF ALSO JUST THE REQUEST FOR PRODUCTION ITSELF BEING DIRECTED TO THE ENTIRE EMPLOYMENT CONTRACT, IS AGAIN I THINK BROAD IN SCOPE FROM WHAT HAS BEEN SUBMITTED IN THE JOINT STATEMENT.

WE, AT LEAST, GET SOME VIEW OF WHAT THE PLAINTIFFS ARE TRULY INTERESTED IN.  I GUESS, IT WOULD BE FROM A PRACTICAL PERSPECTIVE HOW MUCH REDACTION WOULD OCCUR.

IF THEY TRULY WANT THIS DOCUMENT FOR THE SAKE OF CONFIRMING A ONE THIRD AGREEMENT THERE WOULD BE A LOT OF REDACTION DONE TO THIS DOCUMENT.  THAT'S REALLY VERY LITTLE WHAT THE EMPLOYMENT CONTRACT IS ITSELF.

**THE COURT:**  OKAY.  MR. SABA?

**MR. SABA:**  SABA.

**THE COURT:**  WHAT IS IT THAT YOU WANT IN THE DOCUMENT?

**MR. SABA:**  I THINK, DEFENSE COUNSEL AND I HAVE DISCUSSED THIS OBVIOUSLY THOROUGHLY.  WE MET AND CONFERRED FOR A VERY LONG TIME.  IF YOU NOTICE THE DATES OF THE OBJECTIONS WERE SERVED A LONG TIME AGO.

WE SPENT A LOT TIME ON THIS.  WE DISCUSSED THE OPTION OF REDACTING PORTIONS OF THE EMPLOYMENT AGREEMENT AS WELL.  THE PROBLEM THAT WE HAVE IS WE ASKED MANY TIMES WHAT ARE THE CATEGORIES OF TOPICS THAT ARE THAT EMPLOYMENT AGREEMENT THAT MIGHT BE SO PRIVATE.

I DON'T KNOW WHAT THE AGREEMENT SAYINGS.  I'M ENVISIONING THE AGREEMENT SAYS YOU WORK FOR US WE PAY YOU X.  I DON'T KNOW WHAT OTHER TYPE OF PRIVATE INFORMATION COULD POSSIBLY BE IN THIS EMPLOYMENT AGREEMENT.

I HAVEN'T BEEN PROVIDED WITH ANY CATEGORIES, WITHOUT SPECIFICS, OF INFORMATION THAT MIGHT BE DEEMED WORTHY OF BEING REDACTED.

THE TWO MORE MOST IMPORTANT THINGS IN THE EMPLOYMENT AGREEMENT THAT WE NEED ARE, NUMBER ONE, WHAT PERCENTAGES OF THE

AMOUNT OF MONEY DID HE EARN.

AND, TWO, WHAT WERE THE THRESHOLD AMOUNTS THAT HE HAD THE MEET EVERY EACH AND EVERY YEAR.  WE ASKED IN THAT DEPOSITION AND HE SPENT A GREAT DEAL OF TIME IN HIS DEPOSITION TALKING ABOUT HIS EMPLOYMENT AGREEMENT.

BUT WHEN ASKED THE SPECIFICS OF THE NUMBERS, FOR EXAMPLE, WHAT WERE THE THRESHOLD AMOUNTS WHICH CHANGED EVERY SINGLE YEAR, HE SAID I DON'T KNOW YOU HAVE TO LOOK AT THE EMPLOYMENT AGREEMENT, I DON'T KNOW.

THAT SAME IS TRUE WITH MR. SUKHIA.  SO WE NEED THE AGREEMENT IN ORDER TO VERIFY THOSE THRESHOLD AMOUNTS.  WE ASSUME SINCE HE TESTIFIED THAT IT'S ONE THIRD THE AGREEMENT WILL ALSO SAY ONE THIRD, BUT ONE OF THE ALLEGATION IN THIS CASE HE HAD ROUTINELY DECEIVED OUR CLIENT THAT IT WAS 15 PERCENT.

SO AT A MINIMUM THOSE ARE TWO THINGS WE NEED TO KNOW, BUT I DON'T KNOW WHAT ELSE COULD BE IN THERE THAT WOULD IMPACT THOSE TWO PORTIONS OF THE EMPLOYMENT AGREEMENT.

I'M NOT SO SURE IT NEEDS TO BE REDACTED.  I CAN'T IMAGINE WHAT ELSE WOULD BE PRIVATE IN GENERIC EMPLOYMENT AGREEMENT.

**THE COURT:**  IT MIGHT SAY SOMETHING ABOUT A CAR OR I'M TRYING TO, YOU KNOW, IT COULD BE THINGS THAT HAVE NOTHING TO DO WITH ANY INCENTIVE THAT HE BROUGHT INTO E-PASS.

FOR EXAMPLE, WE ALL ARE FAMILIAR WITH THE DEWIE AND AGREEMENTS THAT PEOPLE WEREN'T AWARE OF THAT SAID SOMETHING

LIKE WE'LL GUARANTEE YOU -- WELL, I SUPPOSE YOU WANT TO KNOW THAT IF IT A GUARANTEE.

YOU PROBABLY TELL THEM THAT WOULD IMPACT NEGATIVELY ON THEIR CASE, PERHAPS, BUT THERE MIGHT BE SOMETHING.  I COULD ENVISION THAT THERE'S SOMETHING IN A PARTNERSHIP AGREEMENT WHICH IS WHAT YOU'RE -- REALLY IS A PARTNERSHIP AGREEMENT.

**MR. SABA:**  IT'S A DIRECT AGREEMENT WITH THE FIRM AND MR. WEISS VERSUS A GENERIC PARTNERSHIP AGREEMENT THAT ALL THE PARTNERS ENTER INTO.

**THE COURT:**  I SEE IT WAS PARTICULAR.  I THOUGHT I READ SOMEWHERE HE WAS A CONTRACT PARTNER?

**MR. FINEMAN:**  THAT'S CORRECT.  THIS DOCUMENT IS THE BASIS OF THAT CONTRACT.

**THE COURT:**  YES.  I MEAN, I DON'T -- I THINK, WHAT I WOULD DO, I WOULD -- AND I'M HEAR FROM MS. MAC GREGOR, BUT MY VIEW IS THAT I WILL ORDER IT PRODUCED.

DEFENDANT COULD REDACT WHAT THEY BELIEVE DOESN'T HAVE ANYTHING TO DO WITH -- YOU UNDERSTAND WHAT THEIR THEORY IS, I THINK IT'S PRETTY STRAIGHTFORWARD.

YOU CAN LOOK AT IT IF THERE'S A DISPUTE FOR WHATEVER REASON, SEEMS LIKE GET ALONG YOU WORKED HARD AT THIS, THEN SUBMIT IT TO ME IN CAMERA AND I'LL LOOK AT IT AND I'D SAY YES THAT'S FINE REDACT IT OR NOT.

BUT I DO THINK I HAVE A COMPELLING NEED FOR IT.  I THINK, IT'S DIRECTLY RELEVANT TO THEIR THEORY.  WHATEVER THE

VALIDITY OF THAT THEORY IS IT'S RIGHT, IT'S PLED IN THE SECOND AMENDED COMPLAINT.  IT'S RIGHT THERE.

**MR. FINEMAN:**  COULD I MAKE ONE COMMENT WITH RESPECT TO THE THEORY ITSELF?

NOT THAT I DISAGREE WITH IT.  WITH RESPECT TO JUST EVEN THE THEORY IN THE CONTEXT OF THIS EMPLOYMENT AGREEMENT, THERE'S REALLY -- THE THEORY IS NOT A NOVEL CONCEPT IN TERMS OF ANY ATTORNEY, ANY BUSINESS WORKING, IF YOU HAVE AN OPTION AS AN ATTORNEY, YOU'VE GOT A CLIENT WHETHER IT MIGHT BE SMALL AMOUNT VERSUS SOMETHING COULD A LARGER AMOUNT OF IT COMES ALONG, OF COURSE, THE MORE SOMEONE WOULD EXPECT TO WORK ON ANY GIVEN MATTER THE MORE LIKELY THEY ARE TO BE ABLE TO BE COMPENSATED FROM THOSE DEALINGS.

SO TO SAY THAT THERE'S A STRONG RELEVANCE BY HAVING THE CONTRACT ITSELF BETWEEN MR. WEISS AND HIS EMPLOYER AND HOW THAT DRIVES HIS MOTIVATIONS, I DON'T THINK IS REALLY PUSHING THE BALL FORWARD TO SAY, OKAY, WELL, GEE, IF MR. WEISS COULD HAVE LICENSING OPPORTUNITIES ONLY INSTEAD OF HAVING THE ABILITY TO ENGAGE IN LITIGATION HE'S GOING TO MAKE MORE IF HE LITIGATES.

I KNOW THAT'S THEIR THEORY.  THEY THINK THE DOCUMENT ITSELF DISCLOSES FRAUD, FIDUCIARY DUTIES, I DON'T -- I MEAN, THE CONNECTIONS AREN'T THAT.

IF THE POSITION IS TO TRY TO REDACT ONLY WHAT WE'RE NOW HEARING IS WHAT THEY'RE LOOKING FOR WE CAN GO DOWN THAT

ROAD, BUT I THINK THERE'S STILL A FUNDAMENTAL RELEVANCE ISSUE WHICH DOESN'T REALLY COME FROM THE DOCUMENT ITSELF.

**THE COURT:**  ONE OF THEIR ALLEGATIONS IS THAT MR. WEISS TOLD THE PLAINTIFF THAT HE WOULD ONLY RECOVER ABOUT 15 PERCENT VERSUS 33 PERCENT, AND HAD THEY KNOWN HE HAD THAT GREATER FINANCIAL INSENSITIVE THEY WOULDN'T SO MUCH HAVE TRUSTED HIS ADVICE, WHICH SEEMS COMMON SENSE, RIGHT?

LET'S SAY THIS:  IF MR. WEISS WAS AN ASSOCIATE WHO WAS SALARIED YOU WOULD BE ARGUING UP AND DOWN AND ALL AROUND AGAINST THEIR ARGUMENT, WHY WOULD HE HAVE GIVEN THIS ADVISE HE HAD NOTHING PERSONAL IN IT.

SO, I THINK, THE CONVERSE IS TRUE.  JUST AN ARGUMENT. I DON'T KNOW WHAT THE JURY WILL SAY OR WHETHER THEY DO.  I THINK TO HAVE IT IN THE DOCUMENT ITSELF AS OPPOSED TO JUST -- I READ HIS DEPOSITION TESTIMONY, WASN'T PARTICULARLY SPECIFIC, BUT ALSO TO HAVE THAT IT WAS WRITTEN IN A DOCUMENT, THIS WAS A PROMISE THAT WAS THERE, I THINK, HAS THAT MUCH MORE FORCE AS WELL.  AND, I THINK, A PROTECTIVE ORDER IS SUFFICIENT WAY IN THIS CASE.

**MR. FINEMAN:**  IF I COULD MAKE ONE MORE COMMENT.  EVEN ON THE THIRD ISSUE STILL SEEMS THAT MR. WEISS, OF COURSE, AS A PARTY TO THE CASE TESTIFIED ABOUT THE ONE THIRD, TO ME AGAIN IN TERMS OF AT LEAST LAW THAT EXISTS FINDING LESS INTRUSIVE MEANS, PERHAPS, A DIRECTLY WORDED REQUEST FOR ADMISSION WOULD RESOLVE THE ISSUE.  IF THAT'S WHAT IT'S REALLY ABOUT GETTING

CONFIRMATION OF THE ONE THIRD.

**THE COURT:**  WELL, I THINK IT'S MORE THAN THAT.  I DO THINK THAT THE AGREEMENT IS THERE AND I DON'T KNOW HOW THAT'S ANY LESS INTRUSIVE, TO BE HONEST.

IT'S THE SAME INFORMATION.  I DON'T KNOW WHY THE DOCUMENT AS OPPOSED TO A REQUEST FOR ADMISSION IS LESS INTRUSIVE, IF YOUR ABLE TO REDACT THE PRIVATE BUT NOT RELEVANT INFORMATION.

I COULD SEE THAT BEING THE CASE IF YOU HAD TO PRODUCE THE WHOLE DOCUMENT UNREDACTED, BUT I'M GOING TO ORDER THAT IT BE PRODUCED WITH THE NON-RELEVANT INFORMATION REDACTED.

**MR. FINEMAN:**  OKAY.

**THE COURT:**  I APPRECIATE THE ARGUMENT.

MS. MAC GREGOR, LET ME HEAR FROM YOU SINCE IT IS YOUR CLIENTS, ALSO IS A PARTY TO THE AGREEMENT, BUT NOT THE ONLY PARTY TO THE AGREEMENT.

SO WHATEVER PRIVACY INTEREST HE HAS IS MITIGATED SOMEWHAT TO THE EXTENT THAT HE'S SHARED THAT INFORMATION WITH MOSES & SINGER.

**MS. MAC GREGOR:**  WELL, IT'S A CONTRACT BETWEEN MY CLIENT AND MOSES & SINGER, AND I THINK HE HAD AN EXPECTATION THAT IT WAS NOT GOING TO BE PRODUCED TO THIRD-PARTIES.

AND I DON'T WANT TO, YOU KNOW, REPEAT WHAT MR. SIMON WAS SAYING, BUT I DO THINK THAT THERE'S FROM MY PERSPECTIVE AND FROM MR. WEISS' PERSPECTIVE THERE'S A FUNDAMENTAL ISSUE ON THE

RELEVANCE FRONT, WHICH IS, YOU KNOW, THE ARGUMENT THAT PLAINTIFFS IS MAKING IS ONE THAT COULD BE MADE AGAINST ANY FIRM AND ANY LAWYER, ANY PARTNER WHOSE NAMED IN A LAWSUIT.

THAT IS, YOU KNOW, THAT'S BASED ON RECOMMENDING LITIGATION THAT DIDN'T SUCCEED.  OKAY.  AND THAT IS YOU HAD AN INCENTIVE TO SUGGEST LITIGATION BECAUSE THE MORE YOU BILLED THE MORE YOU MAKE.

AND I THINK THAT'S AN ARGUMENT THAT COULD BE LAID AT THE FEET OF ANY ATTORNEY WHO'S ALLEGED TO HAVE COMMITTED MALPRACTICE.

YOU KNOW, MR. WEISS' FINANCIAL INFORMATION AND HIS EMPLOYMENT AGREEMENT WITH MOSES & SINGER SHOULDN'T BE, YOU KNOW, AT THE CENTER OF THIS.  SHOULDN'T BE LAID BARE BECAUSE THERE IS THE VALIDATION THAT COULD BE MADE AGAINST ANY ATTORNEY.

I THINK MR. WEISS DID TESTIFY ABOUT THE THIRD, THE ISSUE ABOUT THE THIRD, I DON'T SEE, YOU KNOW, I THINK -- I DON'T SEE HOW THIS DOCUMENT IS -- I THINK IT WOULD BE SUBJECT TO AN OBJECTION CERTAINLY AT TRIAL, IT WOULD BE CUMULATIVE TO ANY TESTIMONY THAT WOULD BE GIVEN ON THE SUBJECT.

MR. WEISS DOES HAVE A SIGNIFICANT PRIVACY INTEREST JUST ABOUT HIS FINANCIAL MATTERS.  I THINK YOU CAN SEE THAT IT'S, YOU KNOW, THE WAY THAT I'M LOOKING AT IT, IS JUST SEEMS IT'S A LITTLE BIT OF A SLIPPERY SLOPE.

ONCE WE, YOU KNOW, ONCE THERE IS SOME, YOU KNOW,

ENTREE INTO HIS FINANCIAL -- WHAT HIS EARNINGS OR HIS SALARY IS, AND THIS IS KIND OF TALKING A LITTLE BIT ABOUT THIS ELITE DOCUMENT AS WELL, THEN HIS ENTIRE FINANCIAL HISTORY WITH MOSES & SINGER SEEMS TO BECOME AN ISSUE, WHICH REALLY DON'T THINK IT SHOULD BE.

E-PASS HAS THE BASIC INFORMATION IT NEEDS TO MAKE THE ARGUMENT IT WANTS TO MAKE.  E-PASS KNOWS THE FEES AND THE COSTS THAT IT PAYS AND IT PAID TO MOSES & SINGER AND IT KNOWS THE FEATURES OF MR. WEISS' EMPLOYMENT AGREEMENT WITH MOSES & SINGER AS A CONTRACT PARTNER.

AND IT CAN MAKE THE ARGUMENT ABOUT HOW MUCH MR. WEISS STOOD TO GAIN BASED ON THE BILLINGS THAT IT PAID AND TO GET THIS ADDITIONAL INFORMATION AND START REALLY GETTING INTO MR. WEISS PRIVATE INFORMATION I THINK MIGHT BE, IN HIS VIEW, FEELS LIKE A STEP TOO FAR.

**THE COURT:**  WELL, IF WHAT MR. WEISS HAS TESTIFIED TO IS JUST REDUNDANT TO WHAT THEY WOULD GET, THEN I DON'T UNDERSTAND THE ARGUMENT.  WHAT IS THE ADDITIONAL INFORMATION? IF IT'S ADDITIONAL.

**MS. MAC GREGOR:**  I DON'T THINK THERE IS.

**THE COURT:**  GO AHEAD.

**MS. MAC GREGOR:**  WELL, I MEAN, AS MR. FINEMAN SAID, THERE'S A WHOLE CONTRACT THERE AND IT SOUNDS TO ME THE PLAINTIFF IS VERY INTERESTED IN JUST HAVING IN WRITING THAT PORTION OF THE AGREEMENT THAT ADDRESSES THE ONE THIRD.

**THE COURT:** IF IT SAYS ONE THIRD.

**MS. MAC GREGOR:** BUT THERE ARE MANY OTHER PROVISIONS IN THE AGREEMENT.

**THE COURT:** MS. MC GREGOR I SAID THAT THE MOSES & SINGER CAN REDACT THE IRRELEVANT PROVISIONS. SO PUT THAT ASIDE BECAUSE I AGREE.

I THINK, USUALLY WE DON'T DO RELEVANCE REDACTIONS, BUT THERE'S AN EXCEPTION WHEN THE DOCUMENT ITSELF IS PRIVATE AND HAS PRIVATE INFORMATION WHICH NOT OTHERWISE RELEVANT. SO I SAID IT CAN BE REDACTED.

BUT HERE THE ALLEGATION, BY THE WAY, MR. WEISS LIED, JUST SAYING IT'S THE ALLEGATION, TO THE PLAINTIFF, SO WHY CAN'T THE PLAINTIFF CONFIRM THE ACTUAL WRITTEN DOCUMENT?

WHY DO THEY HAVE TO TAKE HIS WORD FOR IT WHEN IT WAS JUST A BALLPARK ANYWAY. IF IT'S JUST CONFIRMING WHAT HE'S ALREADY TESTIFIED TO I DON'T KNOW THERE'S ANY PRIVACY INTEREST ANYWAY BECAUSE HE TESTIFIED TO IT.

**MS. MAC GREGOR:** WELL, I JUST -- I HAD -- HE FEELS VERY STRONGLY ABOUT THIS, IT'S HIS PRIVATE INFORMATION. I DO APPRECIATE THE REDACTION THAT YOU ARE WILLING TO LET THE DEFENDANTS DO, ASSUMING THAT THE ORDER THAT YOU DISCUSSED IS THE ONE THAT WILL BE ENTERED.

**THE COURT:** I UNDERSTAND. I UNDERSTAND MR. WEISS. THIS LAWSUIT MUST BE, YOU KNOW, KEEPING HIM UP AT NIGHT, I UNDERSTAND THAT.

**MS. MAC GREGOR:** PROBABLY GOES WITHOUT SAYING, BUT OF COURSE, HE -- YOU KNOW, HE IS ADAMANT THAT HE DID NOT LIE ABOUT ANYTHING AND THAT HE ACCURATELY TOLD MR. HENNIGE WHO IS E-PASS'S PRINCIPLE, WHAT HIS PERCENTAGE WAS.

**THE COURT:** I UNDERSTAND, BUT I CAN'T MAKE THAT FACTUAL DETERMINATION.

SO WHAT I WOULD PROPOSE IS THAT DEFENDANT MOSES & SINGER PRODUCE ALL EMPLOYMENT SLASH PARTNERSHIP AGREEMENTS, IS WHAT YOU CALL THEM, YOU KNOW WHAT I'M TALKING ABOUT IF I SAY THAT, WITH THE VENDOR WEISS THAT GOVERNED DURING THE RELEVANT TIME FRAME.

DEFENDANT MAY REDACT ANY PRIVATE INFORMATION THAT IS UNRELATED TO ANY COMPENSATION THAT DEFENDANT WEISS WOULD HAVE RECEIVED FROM HIS REPRESENTATION OF E-PASS.

DOES THAT LANGUAGE WORK? EVERYONE UNDERSTANDS WHAT WE'RE DOING.

AFTER THAT'S PRODUCED SHOULD THERE BE ANY DISPUTE, IN GOOD DISPUTE, THAT YOU REALLY THINK THEY'RE HIDING SOMETHING THAT YOU NEED, THEN YOU CAN SUBMIT TO THE COURT IN CAMERA, BUT I DON'T ANTICIPATE THAT.

SO NOW LET'S MOVE ONTO THE E-LIGHT CONTRACT DISTRIBUTION REPORT. SO WHAT EXACTLY IS THE INFORMATION THAT THE PLAINTIFF IS SEEKING HERE?

**MR. SABA:** OKAY. WE TOOK THE DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE MR. SUKHIA IN NEW YORK. AND DURING THIS

DEPOSITION -- HE'S THE PERSON MOST KNOWLEDGEABLE REGARDING THE BILLING PROCESSES AND THE PAYMENT OF ATTORNEYS' FEES TO THE ATTORNEYS WITHIN THE FIRM.

DURING THIS DEPOSITION WE ASKED HIM HOW THE DISTRIBUTIONS WERE PAID TO MR. WEISS AND WHETHER HE TAKES DRAWS OR WHETHER HE GETS PAID ON A MONTHLY BASIS, ET CETERA, AND HERE'S WHAT WE HAVE GATHERED FROM THIS DEPOSITION.

BUT THE PROBLEM WAS SUKHIA CONTINUED TO REFER TO THIS REPORT SAYING, I DON'T HAVE THE REPORT, YOU NEED TO LOOK AT THE REPORT.

BUT WHAT HE TESTIFIED TO IS THAT MR. WEISS AS A CONTRACT PARTNER, WHICH IS DIFFERENT THAN A GENERAL PARTNER, HIS DEAL WAS THAT HE TAKES A DRAW EVERY SINGLE MONTH.  THAT DRAW IS 1/12TH OF WHAT THEY CALL THEIR THRESHOLD AMOUNT.

ONCE HE REACHES HIS THRESHOLD AMOUNT, WHENEVER THAT MAYBE, HE THEN BEGINS TO COLLECT HIS ONE THIRD OR WHATEVER AMOUNT PERCENTAGE IT IS OF BILLINGS THAT COME IN.  AND THAT THRESHOLD AMOUNT CHANGES YEAR IN AND YEAR OUT.

E-PASS WAS, OBVIOUSLY, A VERY SIGNIFICANT CASE. GENERATED $9.5 MILLION IN FEES OF WHICH 8.9 WERE PAID TO THE FIRM.  SO ONE THIRD OF THAT IS A SIGNIFICANT AMOUNT OF MONEY.

IN ADDITION, MR. WEISS HAS ADMITTED THAT HE BILLED AND COLLECTED AN ADDITIONAL $900,000 FROM E-PASS THAT HE DID NOT REPORT TO THE FIRM.

SO WHAT WE'RE LOOKING FOR IN THE ELITE DISTRIBUTION

REPORTS ARE CONFIRMATION, NUMBER ONE, WHAT WERE THE YEAR IN AND YEAR OUT THEY THRESHOLD AMOUNTS, WHAT WAS HE ACTUALLY PAID.

WHAT I'M BEING TOLD FROM THESE REPORTS IT DOESN'T INCLUDE CLIENT NAMES, IT DOESN'T INCLUDE ANY ATTORNEY/CLIENT PRIVILEGE, DOESN'T INCLUDE EVEN A BREAKDOWN OF WHICH CLIENTS ARE ADDED IN THERE.  ALL I'M GOING TO GET ARE RAW NUMBERS.

SO, FOR EXAMPLE, IT WILL SAY IN THE YEAR 2002, I'M MAKING THIS UP, HE RECEIVED $2 MILLION, BUT FROM THERE I'M ABLE, WITH MY FORENSIC OR MY ECONOMISTS WE'RE ABLE TO COMPARE WHAT E-PASS PAID IN 2000, DO OUR MATH AND WE'RE GOING TO BE ABLE TO DETERMINE WHAT OUR CENTRAL ALLEGATION IS, BUT FOR E-PASS HE WASN'T GOING TO HIT HIS THRESHOLD AMOUNT.

HE TURNED AND WORKED IT AND DID ALL THESE MALFEASANCE ALLEGATIONS THAT WE SET FORTH IN OUR SECOND AMENDED COMPLAINT AND IT -- FROM WHAT WE UNDERSTAND THAT IS IT, WE'VE RUN NUMEROUS SEARCHES IN PACER, WE KNOW HOW MANY CASES HE WAS RUNNING.

WE THINK THE ONLY WAY TO DETERMINE THIS AS SUKHIA HAS SAID IS YOU HAVE TO LOOK AT THE REPORT.  HE WASN'T ABLE TO GIVE US THE SPECIFIC NUMBERS.

**MR. FINEMAN:**  COUPLE OF THINGS.  WITH RESPECT -- WELL, NOT QUIBBLING WITH THE AMOUNTS BILLED, AMOUNTS ACTUALLY PAID, BUT DEFENDANTS DISPUTE THOSE AMOUNTS.

BUT WITH RESPECT TO MR. SUKHIA'S ACTUAL TESTIMONY, ONE WAS AS MR. SABA HAD ALLUDED TO OF PMK ON A 30(B)(6) DESIGNEE ON

ISSUES REGARDING BILLING AND COLLECTION.

DOESN'T HAVE TO DO WITH THIS ISSUE OF THRESHOLDS, CONTRACTS, COMPENSATIONS, PARTNERS.  SOME QUESTIONS WERE ASKED OF HIM.  HIS ACTUAL TESTIMONY THAT WAS INCLUDED AS EXHIBIT F TO THE JOINT LETTER GOES THROUGH SOME DISCUSSION ABOUT THIS REPORT WHICH HE MENTIONS.

HE TALKS ABOUT -- THE QUESTION WHAT WOULD BE THE BEST SOURCE, SUKHIA NEVER TESTIFIED THIS WAS AN ONLY SOURCE.  AGAIN, WHEN IT COMES TO ACTUAL COMPENSATION THESE ARE ISSUES WHICH I THINK CAN FAR LESS INTRUSIVE THAN ONE HAVING THIS FIRM GENERATE SOME COMPENSATION REPORT.

THE ELITE -- THE SO-CALLED ELITE DISTRIBUTION REPORT IS, FOR LACK OF A BETTER WORD, SORT OF A GUESS A TERM OF ART.  IT'S ELITE ACCOUNTING SYSTEMS OR SOMETHING A LOT OF LAW FIRMS USE.

THEY WOULD HAVE TO GENERATE THIS REPORT COME UP WITH THESE PARAMETERS AND SO FORTH.  AGAIN, THE REPORT ITSELF HAS NOTHING TO DO WITH THRESHOLD IN THE REPORT ITSELF, HAS NOTHING TO DO WITH ANY COMPENSATION EARNED FROM E-PASS OR ANY OTHER CLIENT, IT'S JUST A LUMP SUM BOTTOM NUMBER OF COMPENSATION FOR MR. WEISS.

**THE COURT:**  BUT YOU DON'T OBJECT TO GIVING HIM THAT NUMBER, JUST GIVING HIM THE REPORT?

**MR. FINEMAN:**  WELL, THE -- I MEAN, WE OBJECT -- MOSES & SINGER OBJECTS TO GIVING THE REPORT.

IN TERMS OF THE ACTUAL COMPENSATION ISSUES, IF E-PASS WERE TO I WOULD EXPECT PREPONDERANCE DISCOVERY TO MOSES & SINGER ON AND TELL US STEVEN WEISS' DRAW OR COMPENSATION FOR X PERIOD OF TIME WE WOULD BE SEEING, ONE, WOULD BE PRIVACY, THE SAME PRIVACY CONCERNS COME INTO PLAY, I WOULD EXPECT WE'D SEE THE SAME CONSENT OBJECTION FROM MR. WEISS TO DISCLOSURE OF HIS PRIVATE COMPENSATION INFORMATION.

**THE COURT:**  BUT I'M NOT TALKING ABOUT -- I'M TALKING ABOUT THEY REQUESTED THIS DISCOVERY, SEEMS TO ME THAT THE QUESTION WHAT THE THRESHOLD IS AND HOW MUCH HE WAS COMPENSATED IS RELEVANT, RIGHT?

YOU WOULD -- IF IT TURNS OUT THAT THE BULK OF HIS COMPENSATION ANY PARTICULAR YEAR WAS DUE TO E-PASS, THAT'S INFORMATION THEY'RE GOING TO USE AS PART OF THEIR ARGUMENT.

HOWEVER, THE JURY MIGHT TAKE IT, IT'S CLEARLY VERY RELEVANT.  SO THE QUESTION IS HOW CAN THEY GET THAT INFORMATION.

YOU'RE OBJECTING TO THE REPORT, AS I UNDERSTAND IT YOU HAVE TO GENERATE THE REPORT.  SO I'M SAYING, OKAY, WHAT'S THE LESS INTRUSIVE OR EASIER WAY.  NOT TO COMPEL, WE'RE GOING TO GO THROUGH ALL OF THIS ALL OVER AGAIN.

THERE'S PRIVACY INTEREST, YES, I THINK THOSE ARE OVERCOME BY THE NEED.  SO WHAT'S THE LEAST INTRUSIVE OR EASIEST WAY TO GET IT?

CAN YOU JUST GIVE IT TO THEM?  HE WANTS TO KNOW EVERY

YEAR WHAT WAS HIS COMPENSATION AND WHAT WAS THE THRESHOLD. JUST GIVE IT TO THEM.

MR. FINEMAN:  WELL, A COUPLE THINGS.

THE COURT:  SO ISSUE A PROTECTIVE ORDER, OF COURSE.

MR. FINEMAN:  SURE.  AGAIN, IN THE CONTEXT OF THE ACTUAL REPORT ITSELF, AGAIN, THE REPORT, AS I UNDERSTAND IT, HAS ZERO TO DO, ZERO REFERENCE TO THRESHOLD.

IT ISN'T, OKAY, THRESHOLD IS X AMOUNT, Y AMOUNT OF REVENUES HAVE BEEN COLLECTED FROM THE WHOLE SPECTRUM OF CLIENTS, THEREFORE, X PERCENTAGE OF THRESHOLD'S BEEN MET, THEREFORE, Z IS THE COMPENSATION LINE THAT COMES OUT.  IT'S NOT THAT REPORT.

IT HAS -- YOU CAN'T CONNECT THE DOTS AS I THINK AS EASILY AS COUNSEL WOULD LIKE TO, AT LEAST, PRESENT IN TRYING TO GET THIS REPORT THROUGH BASICALLY EXPERTS THAT CAN TIE ALL THIS STUFF TOGETHER, JUST NOT THAT SIMPLE.

AGAIN, WITH THE COMPENSATION NUMBERS THEMSELVES, IF WHAT THEY TRULY WANT IS THRESHOLD INFORMATION VERSUS COMPENSATION, ONE, THAT DOESN'T COME FROM THE DOCUMENT, TWO, IT'S NOT SOMETHING THAT'S BEEN REQUESTED IN DISCOVERY.  NOT SO SIMPLE AS JUST HANDING THAT OVER.

THE COURT:  SO, OKAY, WHAT THE REPORT DOES HAVE IS THE COMPENSATION?

MR. FINEMAN:  THAT'S CORRECT.

THE COURT:  AND YOU WANT THAT INFORMATION?

**MR. SABA:** I DO.  I BELIEVE THE EMPLOYMENT CONTRACTS YOU JUST ORDERED WILL HAVE THE THRESHOLD, DO SIMPLE MATH.

**THE COURT:** SO JUST THE COMPENSATION, HE WANTS TO KNOW WHAT MR. WEISS WAS PAID EACH YEAR THAT HE WAS REPRESENTING E-PASS.  YOU SAY THAT NUMBER IS IN THE REPORT, BUT YOU DON'T WANT TO TURNOVER THE REPORT.  CAN YOU JUST TURNOVER THE NUMBER THEN?

**MR. FINEMAN:** MY CLIENT'S POSITION, AT LEAST, ON THAT IS, NO, THEY WON'T, BECAUSE IT CONTAINS PRIVATE INFORMATION AND AGAIN WE'RE FACING A CONSENT ISSUE FROM MR. WEISS.

**THE COURT:** I UNDERSTAND THAT ARGUMENT, BUT LOGISTICALLY YOU COULD DO THAT.  YOU WOULD PREFER TO DO THAT AS OPPOSED TO TURNING OVER THE REPORT ITSELF.

I DON'T WANT -- I'M NOT SAYING YOU'RE CONCEDING ANYTHING, YOU OBJECT COMPLETELY, I UNDERSTAND THAT.  BUT IF THE COURT WERE TO ORDER YOU TO PRODUCE THAT INFORMATION YOU'D RATHER PRODUCE IT IN A LETTER OR SOME OTHER WAY THAT YOU COULD USE IT AT TRIAL AS OPPOSED TO THE REPORT ITSELF.

**MR. FINEMAN:** THAT WOULD BE CORRECT, YOUR HONOR, AS OPPOSED TO PRODUCING THE REPORT.  AGAIN, I THINK, WITH ANY KIND OF COMPENSATION AS MS. MAC GREGOR WAS SUGGESTING ON THE PHONE, IT OPENS UP THE DOOR POTENTIALLY WHAT BECOMES RATHER SLIPPERY SLOPE.

HERE'S THIS ELITE REPORT, THE NEXT THING WE KNOW WE'RE HEARING ABOUT TAX RETURNS, WE'RE HEARING ABOUT SOMETHING ELSE

WITH RESPECT TO MR. WEISS.

**THE COURT:**  THE REASON I'M SMILING, WHEN I WAS A FIRST YEAR TORT STUDENT I HAD DUNCAN KENNEY AS MY PROFESSOR, TAUGHT EVERY CLASS, HE TAUGHT THE SAME THING THE SLIPPERY SLOPE.

THERE WAS AN ARGUMENT YOU COULD MAKE THAT EVERYTHING A RETORT, IS ALSO I CAN STOP THAT SLOPE, DON'T WORRY.  I UNDERSTAND THAT ARGUMENT.  I DON'T THINK WE'RE AT THE BOTTOM OF THAT SLOPE YET.  I'M CERTAINLY -- I FEEL CONFIDENT WE COULD DRAW THE LINE, AND BY THE WAY DISCOVERY ENDS IN AUGUST, RIGHT?

**MR. FINEMAN:**  RIGHT.

**THE COURT:**  FACT DISCOVERY DEADLINE, SO WE'RE RUNNING CLOSE TO THAT TIME AND, YOU KNOW, I DON'T THINK MR. WEISS, ALL HIS FINANCIAL STUFF, BUT THERE'S BASIC INFORMATION, I THINK, HOW MUCH HE PAID EVERY YEAR IS CERTAINLY RELEVANT.

IF HE WAS GETTING, YOU KNOW, I DON'T KNOW HOW MUCH FEES IT WAS, 1.5 MILLION FEES FROM E-PASS, BUT HE'S MAKE $10 MILLION OR SOMETHING, WELL, THEN OBVIOUSLY IT'S LESS PROBATIVE.

BUT IF HE'S MAKING 1.5 MILLION AND 2 MILLION OF THAT IS FROM E-PASS, OBVIOUSLY, MORE PROBATIVE, I THINK, THAT NUMBER IS A VERY IMPORTANT NUMBER FOR THE PLAINTIFF TO HAVE.

BUT I'LL HEAR FROM MS. MAC GREGOR.

**MS. MAC GREGOR:**  WELL, I DON'T THINK YOU'RE GOING TO HEAR, I DON'T THINK, ANYTHING I'M ABOUT TO SAY WILL SURPRISE YOU.

**THE COURT:**  OKAY.

**MS. MAC GREGOR:** YOU KNOW, I THINK, I TALKED ABOUT THIS A LITTLE BIT EARLIER, WHICH IS I AM CONCERNED ABOUT MY CLIENT'S PRIVACY. YOU KNOW, TO GET HIS -- THE FULL AMOUNT OF COMPENSATION FOR THE YEARS IN QUESTION, YOU KNOW, THIS IS -- IT'S JUST VERY HIGHLY PERSONAL INFORMATION.

AND, I THINK, AS I SAID BEFORE, THE ARGUMENT COULD BE MADE, YOU KNOW, ECONOMICS -- INSENSITIVE ARGUMENT COULD BE MADE WITHOUT OPENING UP THE MOST -- SOME OF THE MOST PRIVATE INFORMATION THAT ANY OF US HAVE WHICH IS WHAT WE MAKE AND IN ANY GIVEN YEAR AND --

**THE COURT:** I'M GOING TO STOP YOU THERE BECAUSE WHAT I MAKING IS COMPLETELY PUBLIC INFORMATION, BUT I'M NOT GOING TO -- I UNDERSTAND THE ARGUMENT. I THINK, FOR A PARTNER IN A FIRM I AGREE WITH YOU IT'S VERY PRIVATE INFORMATION.

BUT I ACTUALLY DON'T AGREE THAT IN EVERY LEGAL MALPRACTICE CASE THIS PUTS IT AT ISSUE. I THINK, AS JUDGE CHEN SAID IN HIS RECENT ORDER THIS A DIFFERENT KIND OF ATTORNEY MALPRACTICE CASE.

IT RELATES TO THE, AT LEAST, PHASE ONE, I GUESS, HE'S DECIDED TO PHASE THE CASE, RELATES TO THE INSTIGATION OF THE LAWSUIT TO BEGIN WITH AND, THEREFORE, THE FINANCIAL INCENTIVES WERE THERE.

AND IT'S NOT THE CASE WHERE THE PLAINTIFF HAS TO PROVE IF BUT FOR SOME NEGLIGENCE THE PLAINTIFF WOULD HAVE WON THEIR CASE. SO IT'S A DIFFERENT TYPE OF MALPRACTICE CASE THAN YOU

USUALLY SEE.

AND ALSO IT DEPENDS ON WHO THE ATTORNEY IS.  AS I SAID, AN ASSOCIATE WOULDN'T HAVE THE SAME KIND OF -- OR GOVERNMENT LAWYER OR IF IT WAS SOME SORT OF FIXED, THERE'S ALL SORTS OF DIFFERENT BILLING SET UPS THESE DAYS.

SO I DON'T THINK IT APPLIES THAT BROADLY AT ALL.  I THINK, IN THE SPECIFIC CIRCUMSTANCES OF THIS CASE WHERE MR. WEISS IS A DEFENDANT IT'S DIRECTLY AT ISSUE, BUT I DO THINK IT'S PRIVATE AND, THEREFORE, HAS TO BE PRODUCED SUBJECT TO A PROTECTIVE ORDER.

AGAIN, I APPRECIATE THE ARGUMENT.  I UNDERSTAND WHY YOU WOULD OBJECT AND WHY YOU NEEDED TO COME BEFORE THE COURT TODAY.  THAT MAKES PERFECT SENSE.  BUT SO MR. --

**MS. MAC GREGOR:**  I TRUST YOU WILL STOP THE SLOPE. SLOPE FROM SLIPPING, YOU KNOW.  ONCE THIS VERY PRIVATE INFORMATION BECOMES PUBLIC WITHIN THE CONFINES OF THIS LAWSUIT.

**THE COURT:**  I PROMISE YOU, YOU WILL LOOK AT IT WITH FRESH, FRESH EYES.  DON'T THINK YOU'LL COME BACK ON THIS ISSUE ANYMORE.

SO, MR. FINEMAN, WHAT I WILL DO THEN, I SHOULD HEAR FROM YOU, DO YOU HAVE ANY OBJECTIONS TO BEING GIVEN TO YOU OUTSIDE OF THE REPORT?

**MR. SABA:**  AS LONG AS RECEIVED SOME SORT OF RESPONSE UNDER THE PENALTY OF PERJURY RATHER THAN JUST, I KNOW THERE'S RULE 11 PROTECTIONS, SOMETHING THE JURY -- COULD SHOW IN FRONT

OF A JURY.  I'M NOT SO SURE AN ATTORNEY -- THIS LETTER A JURY NEEDS TO SEE.

THE COURT:  WHAT IF YOU WERE TO GIVE THEM AN INTERROGATORY RESPONSE.  I'M NOT SAYING WHAT'S YOUR NUMBERS AND ALL THAT, WHAT I'M SAYING IS BECAUSE YOU DON'T WANT TO GIVE THE REPORT ITSELF, YOU COULD DO IT IN THE FORM OF AN INTERROGATORY RESPONSE, GIVEN THOSE AMOUNTS OF HIS COMPENSATION.

WHAT WOULD BE IN THAT REPORT, HIS COMPENSATION 2000 TO 2008?

MR. FINEMAN:  I THINK, THAT WOULD BE -- I GUESS, THE STRUCTURE WOULD WORK, INTERROGATORY FORMAT, SURE.

THE COURT:  COULD YOU DO THAT, JUST DO A SUPPLEMENTAL INTERROGATORY REQUEST NUMBER?

MR. SABA:  I CAN DO AN INTERROGATORY REQUEST.  I JUST WANT TO MAKE SURE WE'RE NOT GOING TO GET FOUR PAGES OF OBJECTIONS, THEN COME BACK HERE ON THE SAME MOTION TO COMPEL, SAYING NOW THE QUESTION IS A LITTLE BIT DIFFERENT, NOW YOU'RE GETTING BEYOND WHAT THE JUDGE ORDERED.  I JUST WANT TO KNOW HOW MUCH WAS HE PAID --

THE COURT:  RIGHT.

MR. SABA:  EACH YEAR 2000 THROUGH 2008.  IF I ASK THAT VERY BASIC QUESTION IN AN INTERROGATORY I SHOULD GET PART A 2008, B IS 2001 AND --

THE COURT:  THEY'LL OBJECT AND THEY'LL SAY, NOTWITHSTANDING THOSE OBJECTIONS, BUT THEY'LL MAKE THAT

JAMES YEOMANS - OFFICIAL REPORTER - (415)863-5179

OBJECTION BECAUSE THEY DON'T WANT TO HAVE ARGUED LATER SOMEHOW WAIVED, THEN THEY LIST IT, THAT'S HOW YOU'LL DO IT.

**MR. FINEMAN:**  THAT'S WHAT IT WOULD BE WE'RE OKAY, JUST TO -- THERE WILL BE SOME FORM OF ORDER FORTHCOMING, OF COURSE, ON THE ISSUE.

**THE COURT:**  I'VE GIVE YOU AN ORDER.

**MR. FINEMAN:**  INTERROGATORY FORMAT.  MAYBE I'M NOT FOLLOWING WHAT YOU'RE SUGGESTING.

**THE COURT:**  I'M OFFERING THAT AS A COMPROMISE, BECAUSE YOU OBJECTED TO PRODUCING THE REPORT.  SAID ALL HE'S REALLY SEEKING IS THIS INFORMATION, SO WHAT I'M OFFERING AS A COMPROMISE -- I MEAN, I COULD ORDER THE REPORT.

**MR. FINEMAN:**  NOT ASKING FOR THAT.

**THE COURT:**  BUT MR. SABA NEEDS IT IN SOME WAY THAT'S POTENTIALLY ADMISSIBLE AT TRIAL.  SO I WOULD ORDER, I GUESS, I WOULD ORDER IT IN THE FORM OF AN INTERROGATORY.  ONE QUESTION, NO OBJECTION AS TO NUMBER OR ANYTHING LIKE THAT, RIGHT?

AND SUBJECT -- WITHOUT WAIVING YOUR OBJECTIONS WHICH HAVE BEEN OVERRULED BY THE COURT, BUT SUBJECT TO THE PROTECTIVE ORDER YOU WOULD THEN GIVE THOSE NUMBERS, RIGHT?

IT WOULD BE EACH YEAR AND A NUMBER.

**MR. FINEMAN:**  I UNDERSTAND.  SURE.

**THE COURT:**  IS THAT WHAT WE'RE TALKING ABOUT?

**MR. SABA:**  THAT'S FINE.  OF COURSE, IF MR. FINEMAN GOES BACK TO HIS OFFICE AND BESIDES HITTING PRINT AND THE

REPORT WOULD BE THE EASIEST WAY TO DO IT.  I'LL ALLOW HIM TO ELECT THAT OPTION LATER.

THE COURT:  HE CAN CERTAINLY DO THAT AS WELL.  AGAIN, PRODUCED SUBJECT TO THE PROTECTIVE ORDER.

MR. FINEMAN:  SURE.

THE COURT:  I'LL DO THAT ORDER.  I'LL GO BACK AND DO THAT RIGHT NOW.

MR. SABA:  THANK YOU.

THE COURT:  SHOULD THERE BE ANY -- GO BACK AND ANY CONFUSION OR WHATEVER JUST CALL MS. MEANS BECAUSE WHAT I DON'T WANT TO HAVE YOU GUYS COME BACK ON THIS.

I THINK WE I'M NOT GOING TO SAY COMPROMISED BECAUSE I UNDERSTAND YOU OBJECT TO WHAT THE COURT HAS DONE, BUT IN TERMS OF AS AN ALTERNATIVE TO THE REPORT WE'VE COME UP WITH SOMETHING TO DO THAT.

WHEN CAN YOU GIVE THEM THAT -- YOU COULD BE GATHERING THAT INFORMATION NOW, SINCE YOU ALL BOTH SEEM TO BE WORKING THIS WEEK.

MR. SABA:  INTERROGATORY COULD BE SENT TOMORROW.

THE COURT:  CAN YOU GET HIM THAT INFORMATION THEN BY MONDAY?

MR. FINEMAN:  WHICH MONDAY?

THE COURT:  THE 9TH.  JULY 9TH.

MR. FINEMAN:  THAT'S --

THE COURT:  YES, MS. MAC GREGOR.

**MS. MAC GREGOR:** I'M SORRY, YOUR HONOR, BUT I AM NOT IN THE OFFICE THIS WEEK. I'M ACTUALLY CALLING FROM ANOTHER LOCATION AND I'M BACK IN THE OFFICE ON MONDAY.

SO I WOULD JUST LIKE THE OPPORTUNITY TO REVIEW THE PROPOSED RESPONSES. I THINK, WE NEED TO COORDINATE WITH MY CLIENT AS WELL AND I COULD USE A DAY OR TWO AFTER I GET BACK.

**THE COURT:** MR. --

**MS. MAC GREGOR:** MY FIRST DAY BACK IN THE OFFICE IS THE 9TH.

**THE COURT:** IF HE HAD TO PRODUCE IT BY THE 11TH IS THAT FINE?

**MR. SABA:** THAT'S SUFFICIENT.

**MS. MAC GREGOR:** I THINK, THAT SHOULD BE FINE.

**THE COURT:** OKAY. THE 11TH THEN?

**MR. FINEMAN:** YES.

**THE COURT:** I'LL ORDER THOSE TWO AGREEMENTS REDACTED, AS WELL AS THE RESPONSE TO THE -- YOU'RE GOING TO GET TOMORROW INTERROGATORY TO BE PRODUCED BY JULY 11TH, WEDNESDAY JULY 11TH?

**MR. SABA:** YES.

**THE COURT:** DID YOU GUYS -- ON A DIFFERENT MATTER, DID YOU GUYS TAKE MR. -- JUDGE CHEN UP ON HIS SUGGESTION THAT YOU FIND A PRIVATE MEDIATOR YET?

**MR. SABA:** WE HAVE HAD ONE MEDIATION SESSION WITH MR. ROTHMAN A PROMINENT MEDIATOR HERE IN SAN FRANCISCO AND THE PARTIES ARE CONTINUING TO DISCUSS AS EACH TRIGGERING EVENT IN

THIS LITIGATION HAPPENS.  THERE'S BEEN CERTAINLY OPEN AND FAIR DIALOGUE BETWEEN THE PARTIES.

MR. FINEMAN:  ABSOLUTELY.

THE COURT:  OKAY.  JUST SEEMS LIKE A CASE THAT SHOULD, I THINK, I DID SOMETHING, WAS IT LAST YEAR ON THIS CASE?

MR. SABA:  I BELIEVE SO.

THE COURT:  ANYWAY YOU'VE GONE A LONG TIME WITHOUT SEEING ME, THAT'S TERRIFIC.

MR. SABA:  WE DO GET ALONG EXTREMELY WELL, BUT AS LONG AS WE'RE HERE, CAN I BEND YOUR EAR ON ANOTHER WHOLLY DIFFERENT ISSUE?

THE COURT:  IS IT A DISCOVERY ISSUE?

MR. SABA:  I THINK SO.  THAT'S WHAT I WANT TO ASK YOU. IN THIS CASE.

THE COURT:  SHOULD IT SHOULD COME TO ME OR GO TO JUDGE CHEN?

MR. SABA:  CORRECT.  OBVIOUSLY NO SURPRISE.

THE COURT:  DOES MR. FINEMAN KNOW WHAT YOUR TALKING ABOUT?  I DON'T WANT YOU TO SURPRISE HIM.

MR. SABA:  WE TALKED ABOUT IT GENERALLY, IT'S JUST A PROCEDURAL QUESTION, AND YOU CAN JUMP IN AT ANY TIME.  WE ALSO HAVE FRAUD ALLEGATIONS IN OUR LAWSUIT, SINCE DISCOVERY IS COMING UP WE INTEND TO BRING OUR MOTION FOR PUNITIVE DAMAGE DISCOVERY, WOULD YOU HEAR THAT MOTION OR JUDGE CHEN?

THE COURT:  WHETHER YOU COULD TAKE PUNITIVE DAMAGE

DISCOVERY?  I THINK, THAT WOULD BE JUDGE CHEN.

MR. SABA:  WE SHOULD ADDRESS THAT MOTION WITH JUDGE CHEN?

THE COURT:  YES, I BELIEVE SO.  THAT'S REALLY A SUBSTANTIVE.

MR. SABA:  RIGHT.  YOU HAVE TO MEET A THRESHOLD BURDEN OF WHETHER A JURY IS LIKELY TO AWARD PUNITIVE DAMAGES BEFORE YOU'RE ENTITLED TO PUNITIVE DAMAGES.

THE COURT:  ALSO, LIKE A SUMMARY JUDGMENT ISSUE, I THINK.

MR. SABA:  THAT'S WHY I ASKED.

THE COURT:  IF HE FEELS DIFFERENTLY, HE ALWAYS FEELS COMFORTABLE SENDING THINGS TO ME.

MR. SABA:  FANTASTIC.  THANK YOU SO MUCH.

MR. FINEMAN:  THANK YOU.

THE COURT:  THANK YOU.

(PROCEEDINGS ADJOURNED.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 23RD DAY OF JULY, 2012.

/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR