UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-PASS TECHNOLOGIES,<br><br>    Plaintiff,<br><br>    v.<br><br>MOSES & SINGER, LLP, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-5967 EMC<br><br>**ORDER RE PARTIES' SECOND OFFERS OF PROOF AS TO PHASE ONE OF TRIAL** |

        On June 18, 2012, the Court issued an Order indicating that it would bifurcate trial on Plaintiff's legal malpractice action into two phases: (1) negligent/fraudulent initiation of the underlying patent litigation; and (2) negligent/fraudulent conduct during the litigation. The parties have now filed updated offers of proof addressing the Court's proposed Phase One. Because the parties disagree as to some of the details and implications of the Court's prior order, the Court issues this supplemental order to address the remaining issues raised by the parties' submissions.

A.    <u>Scope of Phase One – Post-Filing Evidence</u>

        Both sides proffer post-filing evidence to support their positions with respect to Plaintiff's claims regarding pre-filing negligence and/or fraud. The Court's previous Order stated the following as to post-filing evidence:

> Pursuant to Federal Rule of Evidence 403, the Court would likely limit evidence of what occurred after the litigation began to the extent such evidence were offered to show what the parties previously intended. Such after-the-fact evidence is likely to be confusing and prejudicial, yet minimally probative as to the parties' retrospective intent and states of mind at the outset of the litigation. It would likely involve several mini-trials as to whether post-filing conduct was in good faith.

> To be sure, evidence of events in one litigation matter that took place before suit was filed in one of the other cases might be relevant and probative of the parties' states of mind with respect to the propriety of the later filing. Such evidence may inform whether there was "probable cause" to initiate the subsequent litigation. Thus, to a limited extent, post-filing evidence may be admissible under narrow circumstances, subject to Rule 403.

Order, Docket No. 166, at 6-7.

The Court takes this opportunity to clarify its prior order based on the parties' updated submissions and argument. As a general matter, according to the Court's bifurcation plan, the Court will employ a default rule that post-filing evidence is inadmissible in Phase One unless Plaintiff can demonstrate otherwise, such as by showing that such evidence is necessary for purposes of impeachment, state of mind, or other Phase One-related considerations discussed below.

First, to the extent Plaintiff seeks to introduce post-filing evidence that is directly probative of pre-filing conduct or intent (*e.g.*, admissions by Defendants in post-filing documents as to what they did pre-filing), such evidence is likely to be admissible because it fits within the Court's parameters that the parties are to focus on what knew, did, or disclosed at the outset of the litigation.

Second, as discussed at length during the hearing, Plaintiff seeks to introduce post-filing evidence for purposes of impeachment. Specifically, Plaintiff seeks to use certain post-filing evidence to challenge Defendant Weiss's credibility and to demonstrate, *e.g.*, certain alleged lies during the conduct of trial and Weiss's alleged conflict of interest. The Court will employ a Rule 403 analysis to determine the admissibility of such evidence, focusing narrowly on evidence of direct impeachment or state of mind pre-filing which has substantial probative value. The Court directs Plaintiff to submit a motion *in limine* according to the pre-trial conference schedule with a sampling of selected impeachment-related documents for the Court's pre-trial review.

Similarly, Plaintiff seeks to admit evidence of Defendants' alleged fraud both pre- and post-filing for purposes of punitive damages,[1] including, *e.g.*, evidence of alleged false billing practices such as entering false time. The Court will permit evidence of discrete false representations and alleged fraudulent conduct apart from the merits of the litigation, but not evidence of litigation

---

[1] As discussed below, Plaintiff may seek punitive damages in Phase One.

2

decisions and their merits. Thus, for example, alleged *fake* billing practices may be tried during Phase One; however, alleged *unnecessary* billing practices shall be reserved for Phase Two. As with the impeachment evidence discussed above, the parties are directed to submit pre-trial motions *in limine* on this issue for the Court's review if the parties have any remaining disputes as to whether certain evidence belongs in Phase One or Phase Two.

Third, Defendants raise a specific concern with respect to court rulings and statements from the underlying litigation matters. Defendants argue that all orders, rulings, decisions, and court statements are inadmissible in Phase One to prove breach or causation. They contend that because any court rulings in the underlying litigation have no res judicata or collateral estoppel effect, such evidence is inadmissible in this case.

Defendants are correct that documents filed in the underlying actions, including court rulings, are hearsay absent a specific exception. The Ninth Circuit has succinctly held:

> Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A prior judgment is therefore hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment. A prior judgment is not hearsay, however, to the extent that it is offered as *legally operative verbal conduct that determined the rights and duties of the parties*. See United States v. Pang, 362 F.3d 1187, 1192 (9th Cir.2004). Although Rule 803 contains exceptions for certain kinds of judgments, such as judgments of previous felony convictions and judgments as to personal, family, or general history or boundaries, *see* Fed. R. Evid. 803(22) & (23), civil judgments do not fit comfortably into any hearsay exception.

*United States v. Boulware*, 384 F.3d 794, 805-06 (9th Cir. 2004) (emphasis added); *accord United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007).

However, the fact that court filings are hearsay as a general matter does not mean that they will be barred from evidence entirely. Some court documents may meet certain hearsay exceptions, and other documents or portions of documents may be admissible as legally operative conduct to demonstrate, *e.g.*, the fact that the court ruled against Plaintiff in the underlying litigation, or as a predicate for damages, costs, or other foundational facts. As noted at the hearing, the Court will employ a rigorous Rule 403 analysis to determine the admissibility of any court rulings in the underlying actions, given the limited probative value (beyond the mere fact of the court's ruling) and

the substantial potential prejudice to Defendants. It may be necessary to redact a court order or instruct the jury as to a particular outcome (and not the details) of a ruling. As the Court acknowledged, that 403 balance could change in Plaintiff's favor if, for example, the underlying courts made a finding of frivolousness or Rule 11 violations that is directly probative to the question whether Defendants had sufficient cause to bring suit in the first place. However, the Court reserves ruling on any particular underlying court documents pending the parties' expected pre-trial motions *in limine* on this issue.

B. <u>Expert Testimony on Merits of Underlying Actions</u>

Defendant seeks to clarify the Court's prior Order regarding the scope of expert testimony that will be permissible as to Defendants' standard of care in initiating the underlying actions. Defendant seeks to preclude expert testimony as to the merits of the actions themselves, *i.e.*, "whether the California or Texas litigations were without merit." Defendant's Offer of Proof as to Phase One ("DOP"), Docket No. 172, at 4. Defendant argues that under *Piscitelli*, testimony as to what a reasonable fact finder or judge would have done invades the role of the factfinder. *Piscitelli v. Freidenberg*, 87 Cal. App. 4th 953, 974-975 (2001). "Thus, permitting a standard of care expert on the issue of breach to speculate as to what the outcome of the California or Texas litigation was likely to be at the time the decision to file was made, is not permissible. To the extent Plaintiff's case is premised on an assertion that neither the California nor the Texas litigation could be won, this assertion must be tested via a case-within-the-case." DOP at 4.

Defendant's argument largely re-hashes its prior arguments in the last round of briefing, which failed to appreciate the difference between breach and causation in a legal malpractice case. The Court's prior Order stated:

> [C]ontrary to Defendants' argument, expert testimony may be appropriate to determine the relevant standard of care and whether Defendants met that standard of care. A critical difference between this case and a standard malpractice case is that typically, the merits of the underlying case present an issue of *causation* (whether a reasonable fact-finder would have found in plaintiff's favor absent the attorney's negligence). Thus, as discussed above, a full trial-within-a-trial is required in order to ensure that the attorney's malpractice actually caused a non-speculative harm. The determination of the ultimate question of causation is typically within the standard province of the jury.

4

>    Here, in contrast, the merits of the underlying case in Phase One focuses on whether Defendants *breached* their professional duties in advising Plaintiff to pursue litigation. While Defendants are correct that expert testimony to the jury cannot (typically) establish the merits of the underlying patent claims for purposes of *causation*, it can be used to help the jury determine the element of *breach* of duty. California courts have explicitly endorsed the use of expert testimony regarding the standard of care and whether any defendants have adhered to it. *See Lipscomb v. Krause*, 87 Cal. App. 3d 970, 976 (1978) ("Plaintiffs' proof relative to these issues generally requires the testimony of experts as to the standards of care and consequences of breach. '[E]xpert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony.'") (quoting *Lysick v. Walcom*, 258 Cal.App.2d 136, 156 (1968)). Indeed, in a case concerning whether a lawyer improperly withdrew from a case based on his (allegedly) erroneous conclusion that the case lacked merit, the California Supreme Court held that expert testimony was required on the issue of whether the attorney's investigation was adequate because "[t]he extent to which an attorney, in the exercise of due care, will advance funds to hire investigators, depose witnesses, or perform tests on a client is not a matter of common knowledge." *Kirsch v. Duryea*, 21 Cal. 3d 303, 311 (1978). Similarly, the question whether a reasonable lawyer would pursue a case with certain strengths and weaknesses is not something a lay juror could be expected to know, especially when the case involves patent law.
>
>    Thus, because the merits of the underlying matters in the instant case pose questions of breach, rather than questions of causation, expert testimony as to the reasonableness of Defendants' conduct is likely appropriate. This is not to say that experts will be permitted to testify as to the ultimate question (*i.e.*, whether there was a breach) but rather that experts may offer testimony that informs such a determination.

Order at 7-9.

Nothing in Defendants' current arguments suggests a need to revisit the above reasoning. While an expert cannot speculate as to whether the action *would* have been successful as a matter of fact, the expert(s) should testify as to whether the action had a reasonable chance of success, at the outset, from the perspective of an attorney acting under a reasonable standard of care. On this question, pursuing a case-within-a-case and precluding expert testimony would be unhelpful, because the question is whether the case was reasonably *winnable*, not whether it would or should win. Defendants do not have to show they would have won, only that there was sufficient

5

probability they would have won such that the advice to pursue litigation constituted competent advice. Thus, expert testimony is appropriate.

Similarly, as the Court noted at oral argument, because the relevant question is the reasonableness of Defendants' conduct with respect to, *e.g.*, claims construction, the Court will not conduct a claims construction hearing pre-trial. Rather, the Court is inclined to permit expert testimony as to the range of reasonable claims constructions and leave the issue for the jury to decide, absent indication that the Court must decide such issues (in whole or in part) before trial.

C.  Timing and Jury for Phase Two

The parties seek to clarify the Court's order as to the relationship between Phases One and Two of the bifurcated trial. Plaintiff seeks to try both phases before the same jury in immediate succession, while Defendant seeks to try the phases separate before different juries. Either option is open to the Court based on its discretion. Fed. R. Civ. P. 42(b); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 414 (2003) (noting without comment that "[a]t State Farm's request the trial court bifurcated the trial into two phases conducted before different juries"). However, any decision must guard the right to a jury trial. *See, e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries.").

First, because it is unclear at this point what effect the Phase One results will have on the necessity for and scope of any Phase Two, the Court will allow for a significant gap between the two phases of trial to maximize the judicial economy and resource conservation to be gained from bifurcation. The Court will permit discovery with respect to Phase Two, if necessary, after the conclusion of Phase One.

Second, due to the necessary gap between Phases One and Two, the two phases will be tried to different juries. Because, as discussed above, the two phases of trial are substantively distinct – Phase One will focus solely on the reasonableness or "probable cause" of filing the underlying actions in the first place, as well as discrete instances of alleged fraudulent conduct apart from the merits of the claims, while Phase Two will focus on Defendants' post-filing conduct in the course of litigating the underlying actions – the Phase Two jury will not revisit any factual findings from the

1 Phase One jury. If necessary, the Court will instruct the Phase Two jury as to prior facts found.
2 Accordingly, the bifurcated trial plan does not run afoul of the Seventh Amendment. *See generally*
3 *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169 n.13 (2d Cir. 2001) (noting in the
4 context of Title VII claims that "[t]rying a bifurcated claim before separate juries does not run afoul
5 of the Seventh Amendment, but a given [factual] issue may not be tried by different, successive
6 juries.") (internal citations and quotation marks omitted).

D. Damages Bifurcation

Defendants point out that the Phase One jury may decide some of the underlying actions were reasonable to pursue, while others were not. In addition, Defendants seek to raise certain defenses as against any claim for damages, even if Plaintiff prevails as to liability in Phase One. For example, Defendants indicate in their offer of proof that even if Plaintiff prevails on Phase One, certain costs are not recoverable because Plaintiff did not pay all of those costs itself, because certain costs are attributed to the appeal for which Defendants were not responsible, or because of general doctrines of, *e.g.*, unclean hands. Defendants seek to wait until after the liability portion of Phase One has concluded to introduce any necessary evidence regarding damages to the extent the parties cannot stipulate as to those damages. In effect, Defendants seek bifurcation of Phase One into liability and damages phases, essentially creating three phases of trial rather than two. Plaintiff intends to seek all damages, including compensatory, consequential, and punitive, in Phase One.

The Court declines to "trifurcate" this trial. Instead, the parties will present evidence as to both liability and damages at the same time during Phase One. The parties may introduce evidence as to, *e.g.*, the costs of each underlying action as a whole (and any of Defendants' defenses as to such costs), and to the extent the jury finds in Plaintiff's favor as to only some of the underlying actions, the jury can award damages accordingly.

///
///
///
///
///

E.  Conclusion

As the Court ordered on the record, the parties shall appear at a status conference on October 5, 2012, at 10:30 a.m. The parties are directed to file an updated joint CMC statement with their updated offers of proof as to Phase One of the trial (including Defendants's defenses to Phase One damages) no later than **September 21, 2012**.

IT IS SO ORDERED.

Dated: August 1, 2012

_____
EDWARD M. CHEN
United States District Judge

8